<u>CHAPTER 289</u>                                          <u>S.B. No. 1373</u>

<u>AN ACT</u>

1    relating to the creation, administration, powers, including  taxing
2    powers,  duties, operations, financing, and dissolution of the Town
3    Center Improvement District of Montgomery County,  Texas,  and  the
4    power of certain entities to contract with the district.
5        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
6        SECTION 1.  CREATION;       LEGISLATIVE       DECLARATION.
7    (a) Notwithstanding  the  general  law relating  to  consent    by
     political   subdivisions   to  the  creation  of  conservation  and
9    reclamation districts and the inclusion of land in those districts,
10   there is hereby created and established within  Montgomery  County,
11   Texas,  in  the  form  and  manner hereinafter set forth, a special
12   district, to be known as the Town Center  Improvement  District  of
13   Montgomery  County,  Texas, which shall be a governmental agency, a
14   body politic and corporate, and  a  political  subdivision  of  the
15   state.
16       (b)  The district is a unit of government for purposes of the
17   Texas Tort Claims Act (Chapter 101, Civil Practice and Remedies
18   Code),  and  operations  of  the  district  are  considered  to  be
19   essential governmental functions and not proprietary functions  for
20   all  purposes,  including  the application of the Texas Tort Claims
21   Act.
22       (c)  The name of the district may be changed by resolution of
23   the board of directors of the district at any time.

1

C.A. No. 4:23-cv-2847
**TOWNSHIP EXHIBIT**

**1**

S.B. No. 1373

1     (d)  The creation of the district is declared to be essential

2    to the accomplishment of the purposes of Article III,  Section  52,

3    and  Article  XVI, Section 59, of the Texas Constitution and to the

4    accomplishment of the several other public purposes stated in  this

5    Act.

6    (e)  The legislature finds, determines, and declares that the

7    creation  of  the  district  is  necessary  to  promote,  develop,

8    encourage, and maintain employment, commerce, economic development,

9    and the public welfare  in  the  Town  Center  area  of  Montgomery

10    County.   It  is  the legislature's intent that the creation of the

11    district  and  this  legislation  not  be  interpreted  to  relieve

12    Montgomery County  or  any  other  governmental  agency,  political

13    subdivision,  or  municipality  from providing the present level of

14    services to the area included within the district or to release the

15    obligations each entity has  or  may  hereafter  have  to  provide

16    services  to  that area.  The district is created to supplement and

17    not  supplant  such  services  in  the  area  included  within  the

18    district.

19    SECTION 2.  DEFINITIONS.  In this Act:

20    (1)  "Board"  means  the  board  of  directors  of  the

21    district.

22    (2)  "District"  means  the  Town  Center   Improvement

23    District of Montgomery County, Texas.

24    (3)  "Improvement  project"  means  any  program  or

25    project,  whether  individual,  intermittent,  or  continuing  and

S.B. No. 1373

1   whether located or conducted within or without the district, for

2   the construction, acquisition, lease, rental, installment purchase,

3   improvement, rehabilitation, repair, relocation, operation, or

4   maintenance of any works, improvements, or facilities or the

5   provision, support, enhancement, improvement, extension, or

6   expansion of services, whether provided to, for, by, or on behalf

7   of the district, necessary for the accomplishment of the public

8   purposes of the district, including:

9                    (A) landscaping; lighting, banners, and signs;

10  streets or sidewalks; hike and bike paths and trails, pedestrian

    walkways, skywalks, crosswalks, or tunnels; highway right-of-way or

12  transit corridor beautification and improvements; drainage or storm

13  water detention improvements; solid waste, water, sewer, or power

14  facilities and services, including but not limited to electrical,

15  gas, steam, and chilled water facilities; parks, lakes, gardens,

16  recreational facilities, open space, scenic areas, and related

17  exhibits and preserves; fountains, plazas, and pedestrian malls;

18  public art and sculpture and related exhibits and facilities;

19  educational and cultural exhibits and facilities; exhibits,

20  displays, attractions, and facilities for special events, holidays,

21  and seasonal or cultural celebrations; off-street parking

22  facilities, bus terminals, heliports, mass-transit, and

23  roadway-borne or water-borne transportation and people-mover

24  systems; and any other public improvements, facilities, or services

25  similar to the foregoing;

3

S.B. No. 1373

1          (B)  the removal, razing, demolition, or clearing

2    of land or improvements in connection with any improvement project;

3          (C)  the acquisition of real or personal property

4    or  any  interest  therein  in  connection  with  an  authorized

5    improvement  project  provided that the district shall not have the

6    power of eminent domain; and

7          (D)  any special or supplemental services for the

8    improvement and promotion of the district or adjacent areas or  for

9    the  protection  of  public health and safety within or adjacent to

10   the district, including but not limited to advertising,  promotion,

     tourism,  health  and  sanitation,  public  safety,  security, fire

12   protection and emergency medical  services,  business  recruitment,

13   development,  elimination  of traffic congestion, and recreational,

14   educational, and cultural improvements, enhancements, and services.

15       SECTION 3. BOUNDARIES. The district shall  include  all  of

16   the territory contained within the following described area:

17   Being  a  802.95  acre tract of land situated in Montgomery County,

18   Texas in the Walker County School Land Survey, A-599,  John  Taylor

19   Survey, A-547, and the Montgomery County School Land Survey, A-350,

20   and  being  more  particularly  described  by  metes  and bounds as

21   follows  with  all  control  referred  to  the  Texas  State   Plan

22   Coordinate System, Lambert Projection, South Central Zone:

23   BEGINNING  at  a point for corner in the south right-of-way line of

24   Woodlands Parkway, as recorded in Volume  823,  Page  224,  of  the

25   Montgomery  County  Deed  Records,  located in the west right-of-way

4

S.B. No. 1373

1  line of Interstate Highway No. 45 having a Texas State Plane

2  Coordinate Value of X= 3,121,407.94, Y= 861,543.52 and being S

3  41°54'27" E, 7,443.73 from the northwest corner of said Walker

4  County School Land Survey, A-599;

5  THENCE along the south right-of-way line of said Woodlands Parkway

6  as follows:

7       N 70°36'26" W, 91.17 feet to a point,

8       S 85°51'45" W, 577.61 feet to a point,

9       S 85°48'56" W, 525.94 feet to a point,

10      S 82°44'32" W, 186.58 feet to a point,

        S 83°46'10" W, 810.17 feet to a point,

12      S 84°39'07" W, 195.75 feet to a point,

13      S 81°43'27" W, 874.67 feet to a point,

14      S 82°50'02" W, 630.85 feet to a point,

15      S 86°32'35" W, 308.58 feet to a point,

16      S 86°22'47" W, 1,194.19 feet to a point,

17      S 84°28'14" W, 600.33 feet to a point,

18  And S 74°28'07" W, 745.32 feet to a point for corner at its

19  intersection with the east right-of-way line of Grogan's Mill Road;

20  THENCE S 32°48'58" W, 187.55 feet to a point for corner;

21  THENCE N 79°18'19" W, 210.00 feet to a point for corner;

22  THENCE N 22°12'11" W, 78.06 feet to a point for corner;

23  THENCE N 17°55'38" E, 654.45 feet to a point for corner;

24  THENCE N 40°07'24" E, 529.39 feet to a point for corner;

25  THENCE N 27°32'47" E, 1,121.03 feet to a point for corner;

S.B. No. 1373

1   THENCE N 21°50'09" E, 150.75 feet to a point for corner;

2   THENCE N 27°32'47" E, 43.97 feet to a point for corner;

3   THENCE N 62°27'13" W, 584.03 feet to a point for corner;

4   THENCE N 27°32'47" E, 382.16 feet to a point for corner;

5   THENCE  northwesterly along a curve to the right an arc distance of

6   21.26 feet based on a radius of 270.00 feet,  a  central  angle  of

7   04°30'45"  and  having  a  chord  which bears N 64°42'35" W a chord

8   distance of 21.26 feet to a point of tangency;

9   THENCE N 62°27'13" W, 352.65 feet to a point of curvature;

10  THENCE along a curve to the right an arc distance  of  194.65  feet

11  based  on a radius of 720.00 feet, a central angle of 15°29'24" and

12  having a chord which bears N 54°42'31" W a chord distance of 194.06

13  feet to a point of tangency;

14  THENCE N 46°57'49" W, 154.37 feet to a point for corner;

15  THENCE N 43°02'11" E, 50.00 feet to a point of curvature;

16  THENCE along a curve to the left an arc  distance  of  200.28  feet

17  based  on a radius of 425.00 feet, a central angle of 27°00'00" and

18  having a chord which bears N 29°32'11" E a chord distance of 198.43

19  feet to a point of tangency;

20  THENCE N 16°02'11" E, 295.95 feet to a point of curvature;

21  THENCE along a curve to the left an arc  distance  of  212.31  feet

22  based  on  a  radius of 1,450.00 feet, a central angle of 08°23'21"

23  and having a chord which bears N 11°50'30" E a  chord  distance  of

24  212.12 feet to a point of tangency;

25  THENCE N 07°38'50" E, 130.20 feet to a point for corner;

S.B. No. 1373

1   THENCE N 51°11'04" W, 374.66 feet to a point for corner;

2   THENCE N 48°00'30" W, 634.11 feet to a point for corner;

3   THENCE N 59°17'39" W, 62.45 feet to a point for corner;

4   THENCE N 18°23'46" W, 93.02 feet to a point for corner;

5   THENCE N 17°52'41" E, 59.29 feet to a point for corner;

6   THENCE N 45°34'13" E, 97.61 feet to a point for corner;

7   THENCE N 17°37'12" E, 183.70 feet to a point for corner;

8   THENCE N 14°17'46" W, 108.32 feet to a point for corner;

9   THENCE N 19°18'14" E, 72.16 feet to a point for corner;

10  THENCE N 33°37'34" E, 104.17 feet to a point for corner;

    THENCE S 75°57'49" E, 12.49 feet to a point of curvature;

12  THENCE  along  a  curve to the right an arc distance of 974.72 feet

13  based on a radius of 2,080.00 feet, a central  angle  of  26°50'59"

14  and  having  a  chord which bears S 62°32'20" E a chord distance of

15  965.83 feet to a  point of tangency;

16  THENCE S 49°06'50" E, 142.10 feet to a point for corner;

17  THENCE N 36°40'50" E, 828.08 feet to a point for corner;

18  THENCE S 49°08'52" E, 346.64 feet to a point for corner;

19  THENCE N 87°31'24" E, 536.99 feet to a point for corner;

20  THENCE S 02°29'55" E, 115.53 feet to a point for corner;

21  THENCE S 02°25'00" E, 590.05 feet to a point for corner;

22  THENCE S 47°18'01" E, 244.25 feet to a point for corner;

23  THENCE S 84°41'11" E, 194.52 feet to a point for corner;

24  THENCE N 89°00'34" E, 555.28 feet to a point for corner;

25  THENCE N 80°47'31" E, 300.00 feet to a point for corner;

S.B. No. 1373

1    THENCE N 11°02'00" W, 190.00 feet to a point for corner;

2    THENCE N 02°08'49" W, 975.00 feet to a point for corner;

3    THENCE N 87°51'11" E, 580.00 feet to a point for corner;

4    THENCE S 02°08'49" E, 126.11 feet to a point for corner;

5    THENCE N 87°51'11" E, 440.00 feet to a point for corner;

6    THENCE N 02°08'49" W, 486.11 feet to a point for corner;

7    THENCE N 87°51'11" E, 32.96 feet to a point of curvature;

8    THENCE along a curve to the right an arc distance of 528.31 feet

9    based on a radius of 5,045.00 feet, a central angle of 06°00'00"

10   and having a chord which bears S 89°08'49" E a chord distance of

     528.07 feet to a point of tangency;

12   THENCE S 86°08'49" E, 99.85 feet to a point for corner;

13   THENCE N 48°51'11" E, 14.14 feet to a point for corner;

14   THENCE N 03°51'11" E, 39.31 feet to a point of curvature;

15   THENCE along a curve to the right an arc distance of 372.34 feet

16   based on a radius of 1,255.00 feet, a central angle of 16°59'56"

17   and having a chord which bears N 12°21'09" E a chord distance of

18   370.98 feet to a point of tangency;

19   THENCE N 20°51'07" E 416.95 feet to a point for corner;

20   THENCE N 24°08'53" W, 35.36 feet to a point for corner;

21   THENCE N 69°08'53" W, 10.41 feet to a point for corner;

22   THENCE N 20°51'07" E, 110.00 feet to a point for corner;

23   THENCE S 69°08'53" E, 5.41 feet to a point for corner;

24   THENCE N 65°51'07" E, 35.36 feet to a point for corner;

25   THENCE S 69°08'53" E, 115.00 feet to a point for corner;

1   THENCE S 24°08'53" E, 35.36 feet to a point for corner;

2   THENCE S 69°08'53" E, 73.98 feet to a point of curvature;

3   THENCE along a curve to the left an arc distance of 379.33 feet

4   based on a radius of 945.00 feet, a central angle of 22°59'56" and

5   having a chord which bears S 80°38'51" E a chord distance of 376.79

6   feet to a point of tangency;

7   THENCE N 87°51'11" E, 478.87 feet to a point of curvature;

8   THENCE along a curve to the left an arc distance of 135.57 feet

9   based on a radius of 1,945.00 feet, a central angle of 03°59'37"

10  and having a chord which bears N 85°51'22" E a chord distance of

    135.54 feet to a point of tangency;

12  THENCE N 83°51'34" E, 330.58 feet to a point for corner;

13  THENCE S 06°08'26" E, 251.66 feet to a point for corner;

14  THENCE S 06°19'08" E, 104.20 feet to a point for corner;

15  THENCE S 05°34'08" E, 335.41 feet to a point for corner;

16  THENCE S 06°29'11" E, 327.06 feet to a point for corner;

17  THENCE S 07°44'55" E, 239.82 feet to a point for corner;

18  THENCE S 88°21'10" W, 186.42 feet to a point for corner;

19  THENCE S 02°08'52" E, 436.57 feet to a point for corner;

20  THENCE N 87°22'38" E, 220.97 feet to a point for corner;

21  THENCE S 06°37'09" E, 662.44 feet to a point for corner;

22  THENCE S 06°47'16" E, 337.68 feet to a point for corner;

23  THENCE S 06°39'37" E, 500.77 feet to a point for corner;

24  THENCE S 06°46'14" E, 576.28 feet to a point for corner;

25  THENCE S 08°56'30" E, 493.48 feet to a point for corner;

S.B. No. 1373

1   THENCE S 08°42'03" E, 450.64 feet to a point for corner;

2   THENCE S 08°48'51" E, 498.47 feet to a point for corner;

3   THENCE S 08°49'00" E, 368.85 feet to a point for corner;

4   THENCE S 20°16'52" E, 209.35 feet to a point for corner;

5   THENCE S 04°53'48" E, 289.23 feet to a point for corner;

6   THENCE S 78°41'39" W, 528.50 feet to a point for corner;

7   THENCE N 11°21'21" W, 49.94 feet to the POINT OF BEGINNING and

8   containing 802.95 acres of land.

9       SECTION 4.  FINDINGS RELATING TO BOUNDARIES.  The legislature

10  finds that the boundaries and field notes of the district form a

11  closure.  If any mistake is made in the field notes or in copying

12  the field notes in the legislative process, it in no way affects

13  the organization, existence, and validity of the district or the

14  right, power, or authority of the district to enter into any type

15  of contract for the purposes for which the district is created or

16  the right of the district to levy, assess, and collect taxes, fees,

17  or charges, as herein provided, and in no other manner affects the

18  legality or operations of the district or its board.

19      SECTION 5.  FINDING OF BENEFIT AND PUBLIC PURPOSE.  (a)  The

20  legislature finds that all of the land and other property included

21  within the boundaries of the district will be benefited by the

22  works, projects, improvements, and services that are to be

23  accomplished by the district under powers conferred by Article III,

24  Section 52, and Article XVI, Section 59, of the Texas Constitution

25  and other powers granted under this Act and that the district is

S.B. No. 1373

1   created to serve a public use and benefit.

2         (b)  The  legislature  finds  that  the  creation of the district

3   is  essential  to  further  the  public  purposes  of  the  economic

4   development  and  diversification  of the state, the elimination of

5   unemployment  and  underemployment,  and   the   stimulation   and

6   development  of  transportation  and  commerce;  that  it is in the

7   public  interest; and that it will promote the health,  safety,  and

8   general  welfare  of residents, employers, employees, and consumers

9   in  the  district  and  of  the  general  public.   The  present  and

10  prospective  traffic  congestion  in the district and the safety of

11  pedestrians  and the  limited  availability  of  funds  require  the

12  promotion  and  development of public transportation and pedestrian

13  facilities  and systems  by  new  and  alternative  means,  and  the

14  district  will  serve  the  public purpose of securing expanded and

15  improved transportation and pedestrian facilities and systems.   The

16  district will provide needed funding for the Town  Center  area  to

17  preserve,  maintain,  and enhance the economic health and vitality of

18  the  area  as  a  community  and business and commerce center.   The

19  district  will  further  promote  the  health,   safety,   welfare,

20  education,  convenience,  and enjoyment of the public by improving,

21  landscaping,  and developing certain areas within  and  adjacent  to

22  the  district  and  providing public services and facilities within

23  and  adjacent  to  the  district  which  are  necessary  for  the

24  restoration,  preservation,  enhancement, and enjoyment of scenic and

25  aesthetic  beauty.   Each  and  all  of  the  improvement  projects

11

S.B. No. 1373

1  authorized by this Act are hereby found and declared to be

2  essential to carrying out a public purpose.  The district will not

3  act as the agent or instrumentality of any private interests, even

4  though many private interests will be benefited by the district as

5  will the general public.

6  (c)  This Act shall be liberally construed in conformity with

7  the legislative findings and purposes set forth herein.

8  SECTION 6. GENERAL POWERS. (a) The district has all of the

9  rights, powers, privileges, authority, and functions conferred on

10  municipal management districts by Subchapter E, Chapter 375, Local

11  Government Code, and by the general laws of the state on

12  conservation and reclamation districts created under Article XVI,

13  Section 59, of the Texas Constitution, and on road districts and

14  road utility districts created pursuant to Article III, Section 52,

15  of the Texas Constitution, including those conferred by Chapter 54,

16  Water Code, and Chapter 13, Acts of the 68th Legislature, 2nd

17  Called Session, 1984 (Article 6674r-1, Vernon's Texas Civil

18  Statutes), together with the additional rights, powers, privileges,

19  authority, and functions contained in this Act.

20  (b)  If any provision of the general law is in conflict or

21  inconsistent with this Act, this Act prevails.  Any general law

22  which supplements the power and authority of the district, to the

23  extent not in conflict or inconsistent with this Act, is adopted

24  and incorporated by reference.

25  SECTION 7. ADDITIONAL SPECIFIC POWERS AND DUTIES. In

12

S.B. No. 1373

1    costs and reasonable carrying costs incurred by that person for  or

2    on behalf of the district, including all or part of the costs of

3    any improvement project;

4           (5) make application for and contract with any  person

5    or entity to receive, administer, and perform the district's duties

6    and obligations under any federal, state, local, or private gift,

7    grant, loan, conveyance, transfer, bequest, donation, or other

8    financial assistance arrangement relating to the investigation,

9    planning, analysis, study, design, acquisition, construction,

10   improvement, completion, implementation, or operation by the

11   district or others of a proposed or existing improvement project;

12           (6) make, adopt, revise, repeal, amend, promulgate,

13   and enforce by ordinary civil remedies reasonable rules and

14   regulations for the administration and operation of the district,

15   the use, enjoyment, availability, protection, security, and

16   maintenance of the district's properties and facilities, and

17   providing for public safety and security within the district;

18           (7) establish, revise, repeal, enforce, collect, and

19   apply the proceeds from user fees, concessions, admissions,

20   rentals, or other similar fees or charges for the enjoyment, sale,

21   rental, or other use of the district's facilities, services,

22   properties, or improvement projects; however, because the district

23   is created in an area that is devoted primarily to commercial and

24   business activity, the district may not impose an impact fee or

25   assessment on a single family residential property or a residential

S.B. No. 1373

1    duplex, triplex, quadruplex, or condominium;

2         (8)  provide or secure the payment or repayment of  the
3    costs  and  expenses  of  the  establishment,  administration,  and
4    operation  of the district and the district's costs or share of the
5    costs  of  any  improvement  project,  or  district  contractual
6    obligation  or  indebtedness,  by  or  through a lease, installment
7    purchase contract, or other agreement with any person or  the  levy
8    and  assessment of taxes, user fees, concessions, rentals, or other
9    revenues or resources of the district; and

10        (9)  undertake separately or jointly with other persons
11   or entities and pay all  or  part  of  the  cost  of  improvement
12   projects,  including improvement projects for improving, enhancing,
13   and supporting public safety  and  security,  fire  protection  and
14   emergency medical services, and law enforcement within and adjacent
15   to  the  district  and  improvement  projects that confer a general
16   benefit on the entire district and the areas adjacent thereto or  a
17   special  benefit  on a definable part of the district, which may be
18   the entire district or any  part  thereof;  however,  the  district
19   shall not be authorized to employ peace officers.

20        SECTION 8.  BOARD  OF  DIRECTORS.  (a)  The district is
21   governed by  a  board  of  eight  directors who shall serve  for
22   staggered terms of four years.

23        (b)(1)  Except  as  provided  by  Subdivisions (2) and (3) of
24   this subsection, to be qualified to serve as a director, a  person
25   must be at least 18 years old and be:

S.B. No. 1373

1             (A)  a resident of the district;

2             (B)  an  individual owner of real property in the

3 district;

4             (C)  an  individual  owner  of  stock,  whether

5 beneficial  or  otherwise, of a corporate owner of real property in

6 the district;

7             (D)  an individual owner of a beneficial interest

8 in a trust that owns real property in the district; or

9             (E)  an agent, employee, officer, or director  of

10 any  owner of real property described by Paragraph (B), (C), or (D)

11 of this subdivision.

12        (2)  To be eligible for appointment under Paragraph (F)

13 or (G) of Subdivision (1) of Subsection (c) of  this  section,  a

14 person  must  be  a resident of the city making the appointment and

15 may not be a person described by Paragraph (B), (C), (D), or (E) of

16 Subdivision (1) of this subsection.

17        (3)  To be eligible for appointment under Paragraph (H)

18 of Subdivision (1) of Subsection (c) of this section, a person must

19 be a member of the Woodlands Community Association and may not be a

20 person described by Paragraph (B), (C), (D), or (E) of  Subdivision

21 (1) of this subsection.

22        (4)  A  person  or  entity  that  owns an interest in a

23 general or limited partnership owning real property in the district

24 or who has a  lease  of  real  property  in  the  district  with  a

25 remaining  term  of 10 years  or  more, excluding  options,  is

16

S.B. No. 1373

1    considered to be an owner of real property for purposes of this

2    subsection.

3        (c)(1) On the effective date of this Act, the following

4    persons shall constitute the initial board and shall serve as

5    provided in this Act:

6                (A) Vicki D. Armstrong;

7                (B) Roger L. Galatas;

8                (C) R. A. Kutsche;

9                (D) Michael H. Richmond;

10               (E) Bruce M. Withers, Jr.;

                  (F) one individual appointed by the city council

12   of the City of Oak Ridge North;

13              (G) one individual appointed by the city council

14   of the City of Shenandoah; and

15              (H) one individual appointed by the board of

16   directors of the Woodlands Community Association.

17        (2) If one or more of the initial directors listed in

18   this subsection fails to qualify for office within 90 days after

19   the effective date of this Act, the remaining directors shall

20   appoint qualified persons to fill the vacancies for the unexpired

21   terms.

22      (d) Of the initial directors, four shall serve until the

23   first Saturday in May, 1994, or until their successors have been

24   elected or appointed and have qualified, and four shall serve until

25   the first Saturday in May, 1996, or until their successors have

<u>17</u>

S.B. No. 1373

1   been  elected  or  appointed  and  have qualified.  The board shall

2   determine the terms of the initial directors by mutual agreement or

3   by lot.

4        (e)  A vacancy in the office of director shall be  filled  by

5   appointment  by  a  majority  vote of the remaining directors.  The

6   board may remove a director for misconduct or failure to carry  out

7   his duties by unanimous vote of all of the remaining directors.

8        (f)  As  soon  as  practicable after a director is elected or

9   appointed, such person shall execute a bond for $10,000 payable  to

10  the  district  and  conditioned  on the faithful performance of his

    duties.  All bonds of the directors shall be approved by the board,

12  and each director shall take the oath of office prescribed  by  the

13  constitution for public officers.  The bond and oath shall be filed

14  with the district and retained in its records.

15       (g)  After  directors have been appointed or elected and have

16  qualified by executing a bond and  taking  the  proper  oath,  they

17  shall  organize  or  reorganize  by electing a  president,  a

18  vice-president, a secretary, and  any  other  officers  as  in  the

19  judgment of the board are necessary.

20       (h)  A  position  on  the  board may not be construed to be a

21  civil office of emolument for any purpose, including those purposes

22  described in Article XVI, Section 40, of the Texas Constitution.

23       (i)  A director is not entitled to compensation  for  service

24  on  the  board  but  is  entitled  to be  reimbursed for necessary

25  expenses incurred in carrying out the duties  and  responsibilities

18

S.B. No. 1373

1    of a director.

2          (j)  Except as provided in Subsection (e)  of  this  section,

3    five directors constitute a quorum for the consideration of matters

4    pertaining  to the purposes of the district, and a concurrence of a

5    majority of a quorum of  directors  shall  be  required  for  any

6    official action of the district.

7          (k)  A person who qualifies to  serve  on the board under

8    Subsection (b) of this section shall be qualified  to  serve  as  a

9    director and participate in all votes pertaining to the business of

10   the  district  regardless  of  any  statutory  provisions  to  the

11   contrary.

12         SECTION 9.  CONFIRMATION AND  DIRECTORS  ELECTIONS.  (a)  As

13   soon  as practicable after all initial directors have qualified for

14   office, the initial directors shall file the statement and take the

15   oath of office required of  appointed  officials  and  meet  in  an

16   organizational  session.   If  the board does not determine to call

17   hearings to exclude territory from the district, the board  at  the

18   organizational  meeting  shall  call  a confirmation election to be

19   held on the next lawfully available uniform election date occurring

20   not less than  45  days  after  the  date  of  such  organizational

21   meeting.

22         (b)  The  confirmation  election  shall be called and held to

23   confirm the establishment of the district in the manner provided by

24   general law applicable to  municipal  utility  districts.   In  the

25   event  a  majority  of the votes cast at a confirmation election is

19

<u>S.B. No. 1373</u>

1   against the creation of the district,  the  board  shall  not  call

2   another  confirmation  election  for  six months after the date the

3   former confirmation  election  is  held.   Prior  to  a  successful

4   confirmation election, the district may not borrow money or levy or

5   assess  taxes;  however, the district shall have the power to carry

6   on such other business as the board may determine.

7        (c)  An election to authorize or to discontinue the levy  and

8   assessment of taxes may be held at the same time and in conjunction

9   with a confirmation or directors election.

10       (d)  An  election  for  directors  shall be held on the first

11  Saturday in May in each even-numbered year in the  manner  provided

12  by  general  law applicable to municipal utility districts, and the

13  appropriate number of directors  shall  be  elected  for  four-year

14  terms.

15       SECTION 10.  OPEN  MEETINGS  AND  RECORDS.  The district is  a

16  political subdivision for  purposes  of  the  open  meetings  law,

17  Chapter  271,  Acts  of the 60th Legislature, Regular Session, 1967

18  (Article 6252-17, Vernon's Texas  Civil  Statutes),  and  the  open

19  records  law,  Chapter  424,  Acts of the 63rd Legislature, Regular

20  Session, 1973 (Article 6252-17a, Vernon's  Texas  Civil  Statutes),

21  and shall solely for the purposes thereof be considered a municipal

22  utility district.

23       SECTION 11.  LIMITED  SALES  AND USE TAX.  (a)  The words and

24  phrases used in this section and defined by Chapters 151  and  321,

25  Tax  Code,  have the meanings assigned by Chapters 151 and 321, Tax

<u>20</u>

S.B. No. 1373

1    Code.

2         (b)  Except as otherwise provided in this section,  Subtitles

3    A and B, Title 2, and Chapter 151, Tax Code, apply to the taxes and

4    to  the administration and enforcement of the taxes imposed by this

5    district pursuant to this Act in the same manner   that   those  laws

6    apply to state taxes.

7         (c)  The  district  may adopt or repeal the limited sales and

8    use tax authorized by this section at an  election  in  which  a

9    majority  of  the  qualified  voters of the district voting in such

10   election approve the adoption or   the   abolition  of  the  tax,  as

     applicable.

12        (d)  The  provisions  of  Subchapters C, D, E, and F, Chapter

13   323, Tax Code, relating to county sales and use taxes   shall   apply

14   to   the  application, collection, and administration of a sales and

15   use tax imposed under this Act, to the extent not inconsistent with

16   the provisions of  this  Act,  and  with  the  same  effect  as  if

17   references therein to a county or a commissioners court referred to

18   the  district  or its board; provided that Sections 323.401 through

19   323.404 and Section 323.505, Tax Code, do not apply.

20        (e)  A tax imposed under this Act or the repeal or  reduction

21   of  a  tax  under  this  Act  takes  effect  on October 1 after the

22   expiration of the first complete calendar quarter  occurring  after

23   the  date  on which the comptroller receives the notice required by

24   Subsection (b), Section 323.405, Tax Code,  or  Subsection  (i)  of

25   this section.

S.B. No. 1373

1      (f)  On  adoption  of  the  tax  authorized  by  this  Act,  there  is

2   imposed a tax on the receipts from the sale at  retail  of  taxable

3   items within the district at the rate of one percent, as well as an

4   excise  tax  on  the  use, storage, or other consumption within the

5   district of taxable items  purchased,  leased,  or  rented  from  a

6   retailer  during  the  period  that the tax is effective within the

7   district.  The rate of the excise tax is the same as  the  rate  of

8   the  sales tax portion of the tax and is applied to the sales price

9   of the taxable item.  With respect  to  a  taxable  service,  "use"

10  means  the derivation in the district of direct or indirect benefit

from the service.

12      (g)  An election to authorize or repeal a limited  sales  and

13  use tax may be called by order of the board and must be held on the

14  next  lawfully  available  uniform election date occurring not less

15  than 45 days after the date on which the order calling the election

16  was passed.  Notice of the election shall be given and the election

17  shall be held and conducted in the manner prescribed by general law

18  for bond elections for municipal utility  districts.   The  ballots

19  shall  be  printed  to  provide  for  voting  for  or  against  the

20  proposition "Adoption  of a one percent district sales and use tax

21  within the district" or "Abolition of the district  sales  and  use

22  tax within the district," as appropriate.

23      (h)  In  the  event  that all or part of the territory of the

24  district is annexed by a municipality  which  has  adopted  and  is

25  imposing  a sales and use tax, the sales and use tax imposed by the

S.B. No. 1373

1    district in such annexed territory shall be reduced, if required to
2    comply with the provisions hereof, in even  multiples  of  one-half
3    percent,  and  without the necessity for an election, such that the
4    combined rate of all sales and use taxes imposed by the county, the
5    annexing municipality, and all other political subdivisions  within
6    the  annexed territory of the district will not exceed two percent,
7    provided that a  sales  and  use  tax  previously  adopted  by  the
8    district  for  such  annexed territory shall not be reduced to less
9    than one-half percent and provided further that no reduction of the
10   district's sales and use tax in the portions of the district not so
11   annexed shall be required.

12        (i)  Within 10 days after  the  annexation  or  exclusion  of
13   territory  by  the district or the annexation of all or part of the
14   territory of the district by a municipality requiring  a  reduction
15   of  the district's sales and use tax, as provided in Subsection (h)
16   of this section, the board shall send to the comptroller by  United
17   States  certified  or  registered  mail  certified  copies  of  all
18   resolutions, orders, or ordinances pertaining to such events.

19        SECTION 12.  LIMITATIONS  ON  INDEBTEDNESS.  The district may
20   borrow  money  for  its  corporate  purposes  and  evidence   such
21   indebtedness by one or more contracts, promissory notes, or similar
22   instruments provided that no such indebtedness shall be incurred by
23   the district unless the taxes and other net revenues to be realized
24   by the district during the one-year period following the incurrence
25   of  such  indebtedness are projected by the board to be sufficient,

23

S.B. No. 1373

1  together with funds on hand and available or  projected  to  be  on

2  hand  and  available  to the district from other sources, including

3  gifts, grants, loans, conveyances, transfers, bequests,  donations,

4  or  other  financial  assistance,  to  repay  or  discharge  such

5  indebtedness within such one-year period.

6      SECTION 13.  CONTRACTS  WITH  DISTRICT.  The  district  is

7  authorized  to  contract  with  a  city,  county,  other  political

8  subdivision,  corporation,  or  other  persons  to  carry  out  the

9  purposes  of  this  Act  on  such terms and conditions and for such

10  period of time as the board may determine.  A state  agency,  city,

11  county,  other  political  subdivision, corporation, individual, or

12  other entity may contract  with  the  district  to  carry  out  the

13  purposes  of  this  Act  without  any  further  authorization,

14  notwithstanding any other law or charter provision to the contrary.

15      SECTION 14.  DISSOLUTION.  (a)  The  board  may  elect  by

16  majority  vote  to dissolve the district at any time, and the board

17  shall dissolve the district on written petition of the owners of 75

18  percent, in terms of acreage, of the real property in the district;

19  however, the district may not be dissolved  by  the  board  if  the

20  district  has  any  outstanding  indebtedness  or  contractual

21  obligations until such indebtedness or contractual obligations have

22  been repaid or discharged.

23      (b)  After the board elects to  dissolve  the  district,  the

24  board  shall  transfer  ownership of all property and assets of the

25  district to Montgomery County, except as provided by Subsection (c)

24

S.B. No. 1373

1    of this section.

2         (c)  If on the date of the vote to dissolve the district more

3    than 50 percent of the territory within the district is within  the

4    corporate  limits  of  a  municipality,  the  board  shall  transfer

5    ownership  of  the  district's  property  and  assets  to  that

6    municipality.

7         SECTION 15.  NOTICE  AND CONSENT.  The legislature finds that

8    the proper and legal notice of the intention to introduce this Act,

9    setting forth the general substance of this Act, has been published

10   as provided by law, and the notice and a copy of this Act have been

11   furnished to all persons, agencies, officials, or entities to which

12   they are required to be furnished by the constitution and  laws  of

13   this  state,  including  the governor, who has submitted the notice

14   and Act to the Texas Water  Commission.   The  legislature  further

15   finds that the Texas Water Commission has filed its recommendations

16   relating  to  this  Act with the governor, lieutenant governor, and

17   speaker of the house of representatives within the  required  time.

18   All requirements of the constitution and laws of this state and the

19   rules and procedures of the legislature with respect to the notice,

20   introduction,  and  passage  of  this  Act  have been fulfilled and

21   accomplished.

22        SECTION 16.  SEVERABILITY.  The provisions of  this  Act  are

23   severable.   If  any word, phrase, clause, sentence, section,

24   provision, or part of this Act is held invalid or unconstitutional,

25   it shall not affect the validity of the remaining portions, and  it

25

<u>S.B. No. 1373</u>

1   is declared to be the legislative intent that this Act would have

2   been passed as to the remaining portions regardless of the

3   invalidity of any part.

4        SECTION 17.  EMERGENCY.  The importance of this legislation

5   and the crowded condition of the calendars in both houses create an

6   emergency and an imperative public necessity that the

7   constitutional rule requiring bills to be read on three several

8   days in each house be suspended, and this rule is hereby suspended,

9   and that this Act take effect and be in force from and after its

10  passage, and it is so enacted.

S.B. No. 1373

_____        _____
President of the Senate              Speaker of the House

    I hereby certify that S.B. No. 1373 passed the Senate on April 22, 1993, by the following vote: Yeas 29, Nays 0; and that the Senate concurred in House amendments on May 13, 1993, by the following vote: Yeas 30, Nays 0. ——————————

_____
Secretary of the Senate

    I hereby certify that S.B. No. 1373 passed the House, with amendments, on May 11, 1993, by the following vote: Yeas 140, Nays 0, two present not voting. ——————————

_____
Chief Clerk of the House

Approved:

_____
Date

_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
............7:00p.........O'CLOCK

MAY 26 1993

_____
Secretary of State

# The State of Texas

## Secretary of State

I, ANTONIO O. GARZA, JR., Secretary of State of the State of Texas, DO HEREBY CERTIFY that the attached is a TRUE AND CORRECT copy of Senate Bill 26, passed by the 75th Legislature, Regular Session, 1997, as signed by the Governor on May 26, 1997, and as filed in this office on May 26, 1997.

Date Issued:  August 5, 1997



Antonio O. Garza, Jr.
Secretary of State

CHAPTER 255                                                    S.B. No. 26

## AN ACT

1   relating to the Town  Center  Improvement  District  of  Montgomery

2   County,  Texas;  authorizing  a  tax  and granting the authority to

3   issue bonds.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  Section  1,  Chapter  289,  Acts  of  the  73rd

6   Legislature,  1993,  is amended by adding Subsection (f) to read as

7   follows:

8        (f)  Except as otherwise provided by this Act,  the  district

9   is not subject to the jurisdiction or supervision of the commission

0   under Chapter 49, Water Code, or other law.

1        SECTION 2.  Section   2,   Chapter  289,  Acts  of  the  73rd

2   Legislature, 1993, is amended to read as follows:

3        Sec. 2.  DEFINITIONS.  In this Act:

4             (1)  "Board"  means  the  board  of  directors  of  the

5   district.

6             (2)  "Commission"  means  the  Texas  Natural  Resource

7   Conservation Commission.

8             (3)  "District"  means  the  Town  Center   Improvement

9   District of Montgomery County, Texas.

0             (4) [(3)]  "Improvement   project" means any program or

1   project,  whether  individual,  intermittent,  or  continuing  and

2   whether  located  or  conducted within or without the district, for

3   the planning, design,  construction,  acquisition,  lease,  rental,

S.B. No. 26

1    installment    purchase,    improvement,    provision of furnishings,

2    equipment, rehabilitation, repair, reconstruction, relocation, use,

3    management, operation, or maintenance of any  works,  improvements,

4    or  facilities or the provision, support, enhancement, improvement,

5    extension, or expansion of services, whether provided to, for,  by,

6    or  on  behalf of the district, necessary for the accomplishment of

7    the public purposes of the district, including:

8                        (A)  landscaping; lighting, banners,  and  signs;

9    streets  or  sidewalks;  hike and bike paths and trails, pedestrian

10   walkways, skywalks, crosswalks, or tunnels; highway right-of-way or

11   transit corridor beautification and improvements; drainage or storm

12   water detention improvements; solid waste, water, sewer,  or  power

13   facilities  and  services, including but not limited to electrical,

14   gas, steam, and chilled water facilities;  parks,  lakes,  gardens,

15   recreational  facilities,  open  space,  scenic  areas,  and related

16   exhibits and preserves; fountains, plazas,  and  pedestrian  malls;

17   public  art  and  sculpture  and  related  exhibits and facilities;

18   educational  and  cultural  exhibits  and  facilities; conferences,

19   conventions,  or  exhibitions;  manufacturer,  consumer,  or  trade

20   shows;  civic,  community,  or  institutional  events;  exhibits,

21   displays, attractions, and facilities for special events, holidays,

22   and  seasonal  or  cultural  celebrations;  off-street  parking

23   facilities,  bus  terminals,  heliports,  mass-transit,  and

24   roadway-borne  or  water-borne  transportation  and  people-mover

25   systems; and any other public improvements, facilities, or services

2

S.B. No. 26

similar to the foregoing;

        (B)   the removal, razing, demolition, or clearing of land or improvements in connection with any improvement project;

        (C)   the acquisition of real or personal property or   any   interest   therein   in   connection   with   an   authorized improvement project provided that the district shall not   have   the power of eminent domain; and

        (D)   any special or supplemental services for the improvement   and promotion of the district or adjacent areas or for the protection of public health and safety within   or   adjacent   to the   district, including but not limited to advertising, promotion, tourism, health   and   sanitation,   public   safety,   security,   fire protection   and   emergency   medical   services, business recruitment, development, elimination of traffic congestion,   and   recreational, educational, and cultural improvements, enhancements, and services.

    SECTION 3.   Subsection   (a),   Section 6, Chapter 289, Acts of the 73rd Legislature, 1993, is amended to read as follows:

    (a)   The district has all of the rights, powers,   privileges, authority,   and   functions   conferred   on   municipal   management districts by Subchapter E, Chapter 375, Local Government Code,   and by   the   general   laws of the state on conservation and reclamation districts created under Article   XVI,   Section   59,   of   the   Texas Constitution,   and   on   road   districts   and road utility districts created   pursuant   to   Article   III,   Section   52,   of   the   Texas Constitution,   including   those   conferred   by   <u>Chapters   49   and</u>

1    [~~Chapter~~] 54, Water Code, and Chapter <u>441, Transportation Code</u> [~~13,~~

2    ~~Acts-of-the-68th-Legislature,-2nd--Called--Session,--1984--(Article~~

3    ~~6674r-1,---Vernon's--Texas--Civil--Statutes)~~], together with the

4    additional rights, powers, privileges, authority, and functions

5    contained in this Act.

6           SECTION 4. Section 7, Chapter 289, Acts of the 73rd

7    Legislature, 1993, is amended to read as follows:

8           Sec. 7. ADDITIONAL SPECIFIC POWERS AND DUTIES. In addition

9    to the general powers set forth in Section 6 of this Act, the board

0    may, subject to the provisions and limitations hereinafter set

1    forth:

2               (1) levy, assess, and apply the proceeds from a

3    limited sales and use tax for the district's purposes, provided

4    that, during each interval of three calendar years following the

5    commencement of collection of such tax, the board shall, consistent

6    with the district's authorized powers and purposes and in its sound

7    discretion, endeavor to apply an annual average of not less than 10

8    percent of the net proceeds of such tax collections, after

9    deduction of the general and administrative costs and expenses of

0    the district and the costs and expenses of levying, assessing, and

1    collecting such taxes, toward mitigation of the impact of

2    development within the district on adjacent areas, including

3    without limitation effects on public utilities and services, public

4    transportation and traffic movement, and scenic and aesthetic

5    beauty;

1         (2)   borrow money for the corporate purposes of the

2   district;

3         (3)   add or exclude territory in the manner provided by

4   Subchapter  J [H], Chapter <u>49, and Section 54.016</u> [54], Water Code<u>,</u>

5   <u>except that Section 42.042, Local Government Code, and Section</u>

6   <u>54.016, Water Code, shall not apply to the annexation of land</u>

7   <u>restricted primarily to commercial or business use</u>;

8         (4)   contract with any person or entity for the

9   accomplishment of any of the district's purposes including without

0   limitation <u>contracting</u> [~~contracts~~] for<u>:</u>

1         <u>(A)</u> the payment, repayment, or reimbursement,

2   out of tax proceeds or any other specified source of funds, of any

3   costs and reasonable carrying costs incurred by that person for  or

4   on behalf of the district, including all or part of the costs of

5   any improvement project; <u>or</u>

6         <u>(B) the use, occupancy, lease, rental,</u>

7   <u>operation, maintenance, or management of all or part of a proposed</u>

8   <u>or existing improvement project;</u>

9         (5)   make application for and contract with any person

0   or entity to receive, administer, and perform the district's duties

1   and obligations under any federal, state, local, or private gift,

2   grant, loan, conveyance, transfer, bequest, donation, or other

3   financial assistance arrangement relating to the investigation,

4   planning, analysis, study, design, acquisition, construction,

5   improvement, completion, implementation, or operation by the

1    district or others of a proposed or existing improvement project;

2    (6) make, adopt, revise, repeal, amend, promulgate,

3    and enforce by ordinary civil remedies reasonable rules and

4    regulations for the administration and operation of the district,

5    the use, enjoyment, availability, protection, security, and

6    maintenance of the district's properties and facilities, and

7    providing for public safety and security within the district;

8    (7) establish, revise, repeal, enforce, collect, and

9    apply the proceeds from user fees, concessions, admissions,

0    rentals, or other similar fees or charges for the enjoyment, sale,

1    rental, or other use of the district's facilities, services,

2    properties, or improvement projects; however, because the district

3    is created in an area that is devoted primarily to commercial and

4    business activity, the district may not impose an impact fee or

5    assessment on a single family residential property or a residential

6    duplex, triplex, quadruplex, or condominium;

7    (8) provide or secure the payment or repayment of the

8    costs and expenses of the establishment, administration, and

9    operation of the district and the district's costs or share of the

0    costs of any improvement project, or district contractual

1    obligation or indebtedness, by or through a lease, installment

2    purchase contract, or other agreement with any person or the levy

3    and assessment of taxes, user fees, concessions, rentals, or other

4    revenues or resources of the district; [and]

5    (9) undertake separately or jointly with other persons

1    or entities and pay all or part of the cost of improvement

2    projects, including improvement projects for improving, enhancing,

3    and supporting public safety and security, fire protection and

4    emergency medical services, and law enforcement within and adjacent

5    to the district and improvement projects that confer a general

6    benefit on the entire district and the areas adjacent thereto or a

7    special benefit on a definable part of the district, which may be

8    the entire district or any part thereof; however, the district

9    shall not be authorized to employ peace officers; and

0           (10) impose, collect, and apply the proceeds from a

1    hotel occupancy tax as provided by Sections 11A and 11B of this

2    Act.

3           SECTION 5. Subsections (b), (c), (e), and (k), Section (8),

4    Chapter 289, Acts of the 73rd Legislature, 1993, are amended to

5    read as follows:

5           (b)(1) Except as provided by Subdivisions (2) and (3) of

7    this subsection, to be qualified to serve as a director, a person

3    must be at least 18 years old and be:

)               (A) a resident of the district;

)               (B) an individual owner of real property in the

l    district;

2               (C) an individual owner [of--stock], whether

3    beneficial or otherwise, of at least 10 percent of the outstanding

l    stock of a corporate owner of real property in the district or of a

i    corporate lessee of real property in the district with an original

S.B. No. 26

1   lease term of five years or more, excluding options;

2   (D) an individual owner of at least 10 percent

3   of the [a] beneficial interest in a trust that:

4   (i) owns real property in the district; or

5   (ii) leases real property in the district

6   under an original lease term of five years or more, excluding

7   options;

8   (E) an individual lessee of real property in the

9   district under an original lease term of five years or more,

0   excluding options;

1   (F) an individual owner of at least 10 percent

2   of the outstanding interest in a general or limited partnership

3   that:

4   (i) owns real property in the district; or

5   (ii) leases real property in the district

6   under an original lease term of five years or more, excluding

7   options; or

8   (G) [(E)] an individual agent, employee,

9   officer, or director of any individual, corporation, trust, or

0   partnership that owns or leases [owner of] real property described

1   by Paragraph (B), (C), [or] (D), (E), or (F) of this subdivision

2   who is designated by such owner or lessee to serve in that

3   capacity.

4   (2) To be eligible for appointment under [Paragraph

5   (F) or (G) of Subdivision (1) of] Subsection (c)(1)(F) or (G) of

8

S.B. No. 26

1    this section, a person must be a resident of the city making the
2    appointment [and-may-not-be-a-person-described--by--Paragraph--(B)₇
3    (C)₇-(D)₇-or-(E)-of-Subdivision-(1)-of-this-subsection].

4           (3)  To be eligible for appointment under [Paragraph
5    (H)-of-Subdivision-(1)-of] Subsection (c)(1)(H) of this section, a
6    person must be a member of The [the] Woodlands Community
7    Association, Inc [and-may-not-be-a-person--described--by--Paragraph
8    (B)₇-(C)₇-(D)₇-or-(E)-of-Subdivision-(1)-of-this-subsection.

9           [(4)--A--person--or--entity--that-owns-an-interest-in-a
10   general-or-limited-partnership-owning-real-property-in-the-district
11   or-who-has-a--lease--of--real--property--in--the--district--with--a
12   remaining---term--of--10--years--or--more₇--excluding--options₇--is
13   considered-to-be-an-owner-of-real-property--for--purposes--of--this
14   subsection].

15          (c)(1)  On the effective date of this Act, the following
16   persons shall constitute the initial board and shall serve as
17   provided in this Act:

18                  (A)  Vicki D. Armstrong;
19                  (B)  Roger L. Galatas;
20                  (C)  R. A. Kutsche;
21                  (D)  Michael H. Richmond;
22                  (E)  Bruce M. Withers, Jr.;
23                  (F)  one individual appointed by the city council
24   of the City of Oak Ridge North;
25                  (G)  one individual appointed by the city council

9

S.B. No. 26

1    of the City of Shenandoah; and

2                    (H)  one  individual  appointed  by  the board of

3    directors of The [the] Woodlands Community Association, Inc.

4                    (2)  If one or more of the initial directors listed  in

5    this  subsection  fails  to qualify for office within 90 days after

6    the effective date of  this  Act,  the  remaining  directors  shall

7    appoint  qualified  persons to fill the vacancies for the unexpired

8    terms.

9            (e)  A vacancy in the office of director shall be  filled  by

10   appointment  of a qualified individual by a majority vote of the

11   remaining directors, except that if the number of directors for any

12   reason is less than five, on petition of a resident of or owner  of

13   real  property  in  the  district, the commission shall appoint the

14   required number of qualified individuals  to  fill  the  vacancies.

15   The  board may remove a director for misconduct or failure to carry

16   out the director's [his] duties by unanimous vote  of  all  of  the

17   remaining directors.

18           (k)  A  person  who  qualifies  to  serve on the board [under

19   Subsection-(b)-of-this-section] shall be qualified to  serve  as  a

20   director and participate in all votes pertaining to the business of

21   the district regardless of any common-law doctrine or any statutory

22   conflict-of-interest,  incompatibility,  or  similar  provision

23   [provisions] to the contrary.

24           SECTION 6.  Section  11,  Chapter  289,  Acts  of  the  73rd

25   Legislature, 1993, is amended by amending Subsection (h) and adding

S.B. No. 26

1    Subsection (j) to read as follows:

2         (h)  In the event that all or part of the territory of the

3    district is annexed by or incorporated into a municipality that

4    [which] has adopted and is imposing a sales and use tax or that

5    later adopts and imposes a sales and use tax, the sales and use tax

6    imposed by the district in such annexed or incorporated territory

7    shall be reduced, if required to comply with the provisions hereof,

8    in even multiples of one-half percent, and without the necessity

9    for an election, such that the combined rate of all sales and use

0    taxes imposed by the county, the [annexing] municipality, and all

1    other political subdivisions within the annexed or incorporated

2    territory of the district will not exceed two percent, provided

3    that:

4         (1)  the municipality shall reimburse the district for

5    the amount of the tax reduced in the manner provided by Section

6    312.637(h), Tax Code, until the bonds of the district payable or

7    secured, wholly or partly, from the proceeds of the sales and use

8    tax are no longer outstanding;

9         (2)  a sales and use tax previously adopted by the

0    district for such annexed or incorporated territory shall not be

1    reduced to less than one-half percent; and

2         (3)  [provided---further--that] no reduction of the

3    district's sales and use tax in the portions of the district not so

4    annexed or incorporated shall be required.

5         (j)  The district is entitled to examine and receive

11

S.B. No. 26

information related to the levy, assessment, and collection of sales and use taxes to the same extent as if the district were a municipality.

SECTION 7. Chapter 289, Acts of the 73rd Legislature, 1993, is amended by adding Sections 11A and 11B to read as follows:

Sec. 11A. HOTEL OCCUPANCY TAX. (a) In this section, "hotel" has the meaning assigned by Section 156.001, Tax Code.

(b) The board by order may impose a tax on a person who, under a lease, concession, permit, right of access, license, contract, or agreement, pays for the use or possession or for the right to use or possess a room that is in a hotel located in the boundaries of the district, costs $2 or more each day, and is ordinarily used for sleeping. The amount of the tax may not exceed seven percent of the price paid for a room in a hotel.

(c) A district by order may repeal, increase, or decrease the rate of a tax imposed under this section.

(d) Except as inconsistent with this section and Section 11B of this Act and subject to the limitations prescribed by Sections 352.002(b) and (c), Tax Code, Subchapter A, Chapter 352, Tax Code, governs a hotel occupancy tax authorized under this section, including the collection of the tax.

(e) The district is entitled to examine and receive information related to the levy, assessment, and collection of hotel occupancy taxes to the same extent as if the district were a municipality.

1    (f)  For  purposes of this section, a reference in Subchapter

2  A, Chapter 352, Tax Code, to a county or the county's  officers  or

3  governing  body  is  a  reference to the district or the district's

4  officers or governing body, as appropriate.

5    Sec. 11B.  USE OF HOTEL  OCCUPANCY  TAX  PROCEEDS.    (a)  The

6  district  shall  apply  the  proceeds  from  a  hotel occupancy tax

7  imposed under Section 11A of this Act for  any  of  the  district's

8  purposes  and  for  the purposes described by Section 352.1015, Tax

9  Code, to the extent considered appropriate by the board.

10    (b)  During each interval of three calendar  years  following

11  the  date  on which a hotel occupancy tax imposed under Section 11A

12  of this Act is initially collected, the  board  may  not  apply  an

13  annual  average  of  more  than  10  percent  of  the amount of tax

14  collected under that section, excluding any  interest  earnings  or

15  investment  profits and after a deduction for the costs of imposing

16  and collecting the taxes, for the administrative  expenses  of  the

17  district or a district purpose other than:

18        (1)  the  costs  of  advertising and promoting tourism;

19  and

20        (2)  the costs of business  development  and  commerce,

21  including  the  costs  of  planning,  designing,  constructing,

22  acquiring,  leasing,  financing,  owning,  operating,  maintaining,

23  managing, improving, repairing, rehabilitating,  or  reconstructing

24  improvement projects for conferences, conventions, and exhibitions,

25  manufacturer,  consumer,  or  trade shows, and civic, community, or

S.B. No. 26

institutional events.

        (c)  For purposes of this section, a reference in  Subchapter
A,  Chapter  352,  Tax  Code, to a county or the county officers or
governing body means the district or  the  district's  officers  or
governing body, as appropriate.

        SECTION 8.  Chapter  289, Acts of the 73rd Legislature, 1993,
is amended by adding Section 12A to read as follows:

        Sec. 12A.  BONDS.  (a)  The board  may  issue  bonds  in  the
manner  provided  by  Subchapter  J,  Chapter 375, Local Government
Code.  Sections 375.207 and 375.208, Local Government Code, do  not
apply to bonds issued under this section.

        (b)  If  the district issues bonds for the primary purpose of
providing water, sewage, or drainage facilities, the district  must
obtain  the commission's approval in the manner provided by Chapter
49, Water Code.

        (c)  In  addition  to  the  sources  of  money  described  by
Subchapter J, Chapter 375, Local Government Code, the bonds of  the
district  may  be  secured and made payable, wholly or partly, by a
pledge of any part of the net proceeds the district receives from:

                (1)  a specified portion, but not  more  than  one-half
percent,  of the sales and use tax authorized by Section 11 of this
Act;

                (2)  the hotel occupancy tax authorized by Section  11A
of this Act; and

                (3)  repayments      the      district      receives      from      a

S.B. No. 26

1  municipality because of a required reduction of the district's

2  sales and use tax.

3  SECTION 9. Section 14, Chapter 289, Acts of the 73rd

4  Legislature, 1993, is amended by adding Subsection (d) to read as

5  follows:

6  (d) The district may not be dissolved by a municipality in

7  which the district is located.

8  SECTION 10. Section 12, Chapter 289, Acts of the 73rd

9  Legislature, 1993, is repealed.

10  SECTION 11. (a) The proper and legal notice of the

11  intention to introduce this Act, setting forth the general

12  substance of this Act, has been published as provided by law, and

13  the notice and a copy of this Act have been furnished to all

14  persons, agencies, officials, or entities to which they are

15  required to be furnished by the constitution and other laws of this

16  state, including the governor, who has submitted the notice and Act

17  to the Texas Natural Resource Conservation Commission.

18  (b) The Texas Natural Resource Conservation Commission has

19  filed its recommendations relating to this Act with the governor,

20  lieutenant governor, and speaker of the house of representatives

21  within the required time.

22  (c) All requirements of the constitution and laws of this

23  state and the rules and procedures of the legislature with respect

24  to the notice, introduction, and passage of this Act are fulfilled

25  and accomplished.

1    SECTION 12.  The  importance  of  this  legislation  and  the
2    crowded condition  of  the  calendars  in  both  houses  create  an
3    emergency  and  an  imperative  public  necessity  that  the
4    constitutional  rule  requiring  bills  to be read on three several
5    days in each house be suspended, and this rule is hereby suspended,
6    and that this Act take effect and be in force from  and  after  its
7    passage, and it is so enacted.

S.B. No. 26

_President of the Senate_                 _Speaker of the House_

I hereby certify that S.B. No. 26 passed the Senate on April 23, 1997, by the following vote: Yeas 30, Nays 1.

_Secretary of the Senate_

I hereby certify that S.B. No. 26 passed the House on May 10, 1997, by the following vote: Yeas 139, Nays 1, two present not voting.

_Chief Clerk of the House_

Approved:

5-26-97

_Date_

_Governor_

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
5:17pm O'CLOCK

MAY 2 6 1997

Secretary of State

17

# The State of Texas

## Secretary of State

I, ELTON BOMER, Secretary of State of the State of Texas, DO HEREBY CERTIFY that the attached is a TRUE AND CORRECT copy of Senate Bill 1807, as passed by the 76th Legislature, Regular Session, 1999, as signed by the Governor on June 19, 1999, and filed in this office on June 19, 1999.

Date Issued: July 1, 1999

EB/SDS/jr



*Elton Bomer*
*Secretary of State*

<u>Chapter 1562</u>                                              S.B. No. 1807

AN ACT

1   relating to the administration, powers,  including  taxing  powers,
2   operations,  and  financing of the Town Center Improvement District
3   of Montgomery County, Texas.
4          BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
5          SECTION 1. Section  2,  Chapter  289,  Acts  of   the   73rd
6   Legislature, Regular Session, 1993, is amended to read as follows:
7          Sec. 2.   DEFINITIONS.   In this Act:
8              (1)  "Board"  means  the  board  of  directors  of  the
9   district.
10             (2)  "Commission"  means  the  Texas  Natural  Resource
11  Conservation Commission.
12             (3)  "District"   means   the   Town  Center  Improvement
13  District of Montgomery County, Texas.
14             (4)  <u>"Impact area" includes the  territory  inside  the</u>
15  <u>corporate  limits  of  the  City  of Shenandoah and the City of Oak</u>
16  <u>Ridge North, any other territory the board by resolution designates</u>
17  <u>as part of the impact area, and the  unincorporated  area  that  is</u>
18  <u>located:</u>
19                 (A)  two  miles  or  less  from  any point on the
20  <u>district boundaries or one mile or less from  the  center  line  of</u>
21  <u>State Highway 242; and</u>
22                 (B)  in  the  area  subject to the authority of a
23  <u>nonprofit property owners' association that is authorized to impose</u>
24  <u>assessments on the taxable value of property that:</u>

1

S.B. No. 1807

1                     (i)  is on a tax or assessment  roll  of  a

2  local government; and

3                  (ii)  has  had an aggregate assessed value,

4  before exemptions and abatements are accounted for,  of  more  than

5  $100 million for at least two consecutive tax years.

6          (5)  "Improvement    project"   means   any  program  or

7  project, whether individual, intermittent, or continuing  and

8  whether  located  or  conducted within or without the district, for

9  the planning, design,  construction,  acquisition,  lease,  rental,

10  installment   purchase,   improvement,  provision  of  furnishings,

11  equipment, rehabilitation, repair, reconstruction, relocation, use,

12  management, operation, or maintenance of any  works,  improvements,

13  or  facilities or the provision, support, enhancement, improvement,

14  extension, or expansion of services, whether provided to, for,  by,

15  or  on  behalf of the district, necessary for the accomplishment of

16  the public purposes of the district, including:

17          (A)  landscaping; lighting, banners,  and  signs;

18  streets  or  sidewalks;  hike and bike paths and trails, pedestrian

19  walkways, skywalks, crosswalks, or tunnels; highway right-of-way or

20  transit corridor beautification and improvements; drainage or storm

21  water detention improvements; solid waste, water, sewer,  or  power

22  facilities  and  services, including but not limited to electrical,

23  gas, steam, and chilled water facilities; parks, lakes,  gardens,

24  recreational  facilities,  open  space,  scenic  areas, and related

25  exhibits and preserves; fountains, plazas,  and  pedestrian  malls;

26  public  art  and  sculpture  and  related  exhibits and facilities;

2

S.B. No. 1807

1    educational and cultural exhibits and facilities; conferences,
2    conventions, or exhibitions; manufacturer, consumer, or trade
3    shows; civic, community, or institutional events; exhibits,
4    displays, attractions, and facilities for special events, holidays,
5    and seasonal or cultural celebrations; off-street parking
6    facilities, bus terminals, heliports, mass-transit, and
7    roadway-borne or water-borne transportation and people-mover
8    systems; and any other public improvements, facilities, or services
9    similar to the foregoing;

10                      (B)  the removal, razing, demolition, or clearing
11   of land or improvements in connection with any improvement project;

12                      (C)  the acquisition of real or personal property
13   or any interest therein in connection with an authorized
14   improvement project provided that the district shall not have the
15   power of eminent domain; and

16                      (D)  any special or supplemental services for the
17   improvement and promotion of the district or adjacent areas or for
18   the protection of public health and safety within or adjacent to
19   the district, including but not limited to advertising, promotion,
20   tourism, health and sanitation, public safety, security, fire
21   protection and emergency medical services, business recruitment,
22   development, elimination of traffic congestion, and recreational,
23   educational, and cultural improvements, enhancements, and services.

24        SECTION 2.  Section 7, Chapter 289, Acts of the 73rd
25   Legislature, Regular Session, 1993, is amended to read as follows:

26        Sec. 7.  ADDITIONAL SPECIFIC POWERS AND DUTIES.  (a)  In

3

S.B. No. 1807

1    addition to the general powers set forth in Section 6 of this  Act,

2    the board has the powers provided by this section.

3        (b)   The   board   may[,---subject---to--the--provisions--and

4    limitations-hereinafter-set-forth:

5          [(1)] levy, assess, and apply the  proceeds  from  the

6    [a] limited  sales  and use taxes authorized by Section 11 of this

7    Act [tax] for authorized [the-district's] purposes, provided  that,

8    during   each   interval  of  three  calendar  years  following  the

9    commencement of collection of such tax, the board shall, consistent

10    with  constitutional limitations and  the  district's  authorized

11    powers and purposes, and in its sound discretion, endeavor to apply

12    an annual average of not less than 10 percent of the  net  proceeds

13    of  the taxes collected under  Section 11 of this Act [such-tax

14    collections], after deduction of  the  general  and  administrative

15    costs  and  expenses  of the district and the costs and expenses of

16    levying, assessing, and collecting such taxes, toward mitigation of

17    the net negative impact of development within the district  on  the

18    impact  area [adjacent-areas], including without limitation effects

19    on public utilities and services, public transportation and traffic

20    movement, and scenic and  aesthetic  beauty. Direct  expenditures

21    made for the district or the impact area are allocable to each area

22    for  which  the expenditure was made. Expenditures for the general

23    welfare, promotion, or benefit of the district and impact area  are

24    allocable  between  the district and the impact area in the amount,

25    as determined by the board, that is proportionate  to  the  benefit

26    conferred on each area.

4

S.B. No. 1807

1        (c)  The  board  may[;--(2)]  borrow  money  for  the  corporate

2    purposes  of  the  district.

3        (d)  The board may[;-(3)] add or  exclude  territory  in  the

4    manner  provided  by  Subchapter  J,  Chapter  49,  and  Section  54.016,

5    Water  Code,  except  that  for  purposes  of  this  subsection,  a

6    reference  in  that  section  to  a  tax  means  an  ad  valorem  tax  only  and

7    Section  42.042,  Local  Government  Code,  and  Section  54.016,  Water

8    Code,  apply only with respect to the consent of a municipality with

9    a  population  of  25,000  or  less and do  [shall]  not  apply  to  the

10    annexation  of  land  restricted  primarily  to  commercial   or  business

11    use.

12        (e)  The  board may[;-(4)] contract with any person or entity

13    for  the  accomplishment  of  any  of  the  district's  purposes,  including

14    without  limitation   contracting  for:

15        (1)  [(A)]  the  payment,  repayment,  or  reimbursement,

16    out  of  tax  proceeds  or  any  other  specified  source  of  funds,  of  any

17    costs  and  reasonable  carrying  costs  incurred  by  that  person  for   or

18    on  behalf  of  the  district,  including  all  or  part  of  the  costs  of

19    any  improvement  project;  or

20        (2)  [(B)]  the  use,  occupancy,  lease,  rental,

21    operation,  maintenance,  or  management  of  all  or  part  of  a  proposed

22    or  existing  improvement  project.

23        (f)  The board may[;-(5)] make application for  and  contract

24    with  any  person or entity to receive, administer, and perform the

25    district's  duties  and  obligations  under  any  federal,  state,  local,

26    or  private  gift,  grant,  loan,  conveyance,  transfer,  bequest,

S.B. No. 1807

1   donation, or other financial assistance arrangement relating to the
2   investigation, planning, analysis, study, design, acquisition,
3   construction, improvement, completion, implementation, or operation
4   by the district or others of a proposed or existing improvement
5   project.

6   (g)  The board may[,-(6)] make, adopt, revise, repeal, amend,
7   promulgate, and enforce by ordinary civil remedies reasonable rules
8   and regulations for the administration and operation of the
9   district, the use, enjoyment, availability, protection, security,
10  and maintenance of the district's properties and facilities, and
11  providing for public safety and security within the district.

12  (h)  The board may[,-(7)] establish, revise, repeal, enforce,
13  collect, and apply the proceeds from user fees, concessions,
14  admissions, rentals, or other similar fees or charges for the
15  enjoyment, sale, rental, or other use of the district's facilities,
16  services, properties, or improvement projects; however, because the
17  district is created in an area that is devoted primarily to
18  commercial and business activity, the district may not impose an
19  impact fee or assessment on a single family residential property or
20  a residential duplex, triplex, quadruplex, or condominium.

21  (i)  The board may[,-(8)] provide or secure the payment or
22  repayment of the costs and expenses of the establishment,
23  administration, and operation of the district and the district's
24  costs or share of the costs of any improvement project, or district
25  contractual obligation or indebtedness, by or through a lease,
26  installment purchase contract, or other agreement with any person

6

S.B. No. 1807

1    or  the  levy  and  assessment  of  taxes,  user fees, concessions,

2    rentals, or other revenues or resources of the district.

3        (j)  The board may[, (9)] undertake  separately  or  jointly

4    with  other  persons or entities and pay all or part of the cost of

5    improvement projects, including improvement projects for improving,

6    enhancing,  and  supporting  public  safety  and   security,   fire

7    protection  and  emergency  medical  services,  and law enforcement

8    within and adjacent to the district and improvement  projects  that

9    confer  a  general  benefit  on  the  entire district and the areas

10   adjacent thereto or a special benefit on a definable  part  of  the

11   district, which may be the entire district or any part thereof.

12       (k)  The[, however, the] district  may not  [shall not be

13   authorized to] employ peace officers, but may contract for off-duty

14   peace officers to provide public safety and  security  services  in

15   connection  with a special event, holiday, period with high traffic

16   congestion, or similar circumstance.

17       (l)  The board may[, and (10)] impose, collect, and apply the

18   proceeds from a hotel occupancy tax as provided by Sections 11A and

19   11B of this Act.

20       (m)  The board may exercise the economic  development  powers

21   and  authority that Chapter 380, Local Government Code, and Article

22   835s, Revised Statutes, provide a municipality with a population of

23   more than 100,000.

24       (n)  The board by rule may regulate the private use of public

25   roadways, open spaces, parks, sidewalks, and similar public  areas.

26   To  the  extent  the  rules  of  the district conflict with a rule,

7

S.B. No. 1807

1  order, ordinance, or regulation of a county or municipality with

2  jurisdiction in the district's territory, the rule, order,

3  ordinance, or regulation of the county or municipality controls.

4  The rules may provide for the safe and orderly use of public

5  roadways, open spaces, parks, sidewalks, and similar public areas

6  or facilities.

7  (o) The board may require a permit for a parade,

8  demonstration, celebration, entertainment event, or similar

9  nongovernmental activity in or on the public roadways, open spaces,

10  parks, sidewalks, and similar public areas or facilities. The

11  board may charge a fee for the permit application and for public

12  safety or security services in an amount the board considers

13  necessary.

14  (p) The board may require a permit or franchise agreement

15  with a vendor, concessionaire, exhibitor, or similar private or

16  commercial person or organization for the limited use of the area

17  or facilities on terms and conditions and on payment of a permit or

18  franchise fee the board may impose.

19  (q) The board may employ and establish the terms of

20  employment and compensation of a president, vice president,

21  executive director, general manager, and any other operating

22  officer of the district the board considers necessary.

23  SECTION 3. Subsections (a), (b), (c), (d), (e), and (g),

24  Section 8, Chapter 289, Acts of the 73rd Legislature, Regular

25  Session, 1993, are amended to read as follows:

26  (a) The district is governed by a board composed of 11

8

S.B. No. 1807

1    directors elected or appointed as provided  by  Subsection  (c)  of

2    this section.  Directors [of~eight~directors~who~shall] serve [for]

3    staggered terms of four years.

4        (b)(1)  Except as otherwise provided by [Subdivisions~(2)~and

5    (3)~of] this subsection, to be qualified to serve as a director, a

6    person must be at least 18 years old and be:

7            (A)  a resident of the district;

8            (B)  an individual owner of real property in  the

9    district;

10          (C)  an  individual  owner, whether beneficial or

11    otherwise, of at least 10 percent of the  outstanding  stock  of  a

12    corporate  owner of real property in the district or of a corporate

13    lessee of real property in the district with an original lease term

14    of five years or more, excluding options;

15          (D)  an individual owner of at least  10  percent

16    of the beneficial interest in a trust that:

17            (i)  owns real property in the district; or

18            (ii)  leases  real property in the district

19    under an original lease term  of  five  years  or  more,  excluding

20    options;

21          (E)  an individual lessee of real property in the

22    district  under  an  original  lease  term  of  five years or more,

23    excluding options;

24          (F)  an individual owner of at least  10  percent

25    of  the  outstanding  interest  in a general or limited partnership

26    that:

9

S.B. No. 1807

1    (i)  owns real property in the district; or

2    (ii)  leases real property in the  district

3  under  an  original  lease  term  of  five years or more, excluding

4  options; or

5    (G)  an individual agent, employee,  officer,  or

6  director of any individual, corporation, trust, or partnership that

7  owns  or leases real property described by Paragraph (B), (C), (D),

8  (E), or (F) of this subdivision who is designated by such owner  or

9  lessee to serve in that capacity.

10    (2)  To  be  eligible  for appointment under Subsection

11  (c)(1) [(e)(1)(F)] or (2) [(G)] of this section, a person must be a

12  resident of the city making the appointment.

13    (3)  To be eligible for  appointment  under  Subsection

14  (c)(3)  of  this  section, a person must be a resident described by

15  Subdivision (1) of this subsection and a  resident  of  any  county

16  commissioners  precinct  that  includes  all  or any portion of the

17  boundaries of the district or impact area.

18    (4)  To be eligible for  appointment  under  Subsection

19  (c)(4)  [(e)(1)(H)]  of  this section, a person must be a member of

20  The Woodlands Community Association, Inc.

21    (5)  To be eligible for  appointment  under  Subsection

22  (c)(5)  of this section, a person must be a member of The Woodlands

23  Association, Inc.

24    (6)  To be eligible for  appointment  under  Subsection

25  (c)(6)  of this section, a person must be a member of The Woodlands

26  Commercial Owners Association.

10

S.B. No. 1807

1    (7) Notwithstanding   any   other   provision   of   this

2    subsection,  not  more  than three members of the board at any time

3    may be agents,  employees,  officers,  or  directors  of  a  single

4    individual,  corporation, trust, or partnership that owns or leases

5    real property described by Subdivision (1)(B), (C), (D),  (E),  or

6    (F) of this subsection, regardless of whether the member is elected

7    or  appointed  under  this  section.  Any person filing a ballot or

8    write-in candidate's  application  or  any  person  who  is  to  be

9    appointed  to the board, whose election or appointment, at the time

10   of filing or  appointment,  would  cause  the  limitation  of  this

11   subdivision  to  be  violated,  is  ineligible  for  election  or

12   appointment.

13   (c)  The board of directors is composed of:

14   (1) [(c)(1)--On-the-effective-date--of--this--Act,--the

15   following--persons--shall--constitute--the--initial-board-and-shall

16   serve-as-provided-in-this-Act.

17   [(A)--Vicki-D.-Armstrong,

18   [(B)--Roger-L.-Galatas,

19   [(C)--R.-A.-Kutsche,

20   [(D)--Michael-H.-Richmond,

21   [(E)--Bruce-M.-Withers,-Jr.,

22   [(F)] one  individual  appointed  by  the  city

23   council of the City of Oak Ridge North;

24   (2) [(G)]  one individual appointed by the city council

25   of the City of Shenandoah;

26   (3)  one  individual  appointed  by  the  commissioners

11

S.B. No. 1807

1   court   of   the   county   in   which   the   majority   of the district's

2   territory is located;

3                    (4)   [and-(H)] one individual appointed by the board of

4   directors of The Woodlands Community Association, Inc.;

5                    (5)   one individual appointed by the board of directors

6   of The Woodlands Association, Inc.;

7                    (6)   one individual appointed by the board of directors

8   of The Woodlands Commercial Owners Association; and

9                    (7)   five individuals elected   by   the   voters   of   the

10   district at large.

11                    [(2)--If-one-or-more-of-the-initial-directors-listed-in

12   this--subsection--fails--to-qualify-for-office-within-90-days-after

13   the-effective-date-of--this--Act,--the--remaining--directors--shall

14   appoint--qualified--persons-to-fill-the-vacancies-for-the-unexpired

15   terms,]

16   (d)   Directors [Of-the-initial-directors,-four--shall]   serve

17   until   [the-first-Saturday-in-May,-1994,-or-until] their successors

18   have been elected or appointed and have qualified[,-and-four--shall

19   serve--until--the--first--Saturday--in--May,--1996,--or-until-their

20   successors-have-been-elected-or-appointed-and-have-qualified.---The

21   board--shall-determine-the-terms-of-the-initial-directors-by-mutual

22   agreement-or-by-lot].

23   (e)   A vacancy in the office of director shall be   filled   by

24   appointment   of   a   qualified   individual by a majority vote of the

25   remaining directors, except that if the number of directors for any

26   reason is less than six [five], on petition of   a   resident   of   or

12

S.B. No. 1807

1    owner  of  real  property  in  the  district,  the  commission shall

2    appoint the required number of qualified individuals  to  fill  the

3    vacancies.   The  board  may  remove  a  director for misconduct or

4    failure to carry out the director's duties by unanimous vote of all

5    of the remaining directors.

6         (g)  After directors have been appointed or elected and  have

7    qualified  by  executing  a  bond and taking the proper oath, they

8    shall organize or reorganize by electing a <u>chairman</u> [p̶r̶e̶s̶i̶d̶e̶n̶t̶],  a

9    <u>vice chairman</u> [v̶i̶c̶e̶-̶p̶r̶e̶s̶i̶d̶e̶n̶t̶], a secretary, and any other officers

10   <u>of  the  board</u>  as  [i̶n̶-̶-̶t̶h̶e̶-̶j̶u̶d̶g̶m̶e̶n̶t̶-̶o̶f̶] the board <u>considers</u> [a̶r̶e̶]

11   necessary.

12        SECTION 4.  Subsections (e) and (i), Section 11, Chapter 289,

13   Acts of the 73rd Legislature, Regular Session, 1993, are amended to

14   read as follows:

15        (e)  A tax imposed under this Act or the repeal or  reduction

16   of  a  tax  under  this  Act  takes  effect on <u>the first day of the</u>

17   [O̶c̶t̶o̶b̶e̶r̶-̶1̶-̶a̶f̶t̶e̶r̶-̶t̶h̶e̶-̶e̶x̶p̶i̶r̶a̶t̶i̶o̶n̶-̶o̶f̶-̶-̶t̶h̶e̶-̶-̶f̶i̶r̶s̶t̶-̶-̶c̶o̶m̶p̶l̶e̶t̶e̶] calendar

18   quarter  occurring after the date on which the comptroller receives

19   the notice required by Subsection (b), Section 323.405,  Tax  Code,

20   or Subsection (i) of this section.

21        (i)  Within 10  days  after  the  annexation or exclusion of

22   territory by the district [o̶r̶-̶t̶h̶e̶-̶a̶n̶n̶e̶x̶a̶t̶i̶o̶n̶-̶o̶f̶-̶a̶l̶l̶-̶o̶r̶-̶p̶a̶r̶t̶-̶o̶f̶-̶-̶t̶h̶e̶

23   t̶e̶r̶r̶i̶t̶o̶r̶y̶-̶-̶o̶f̶-̶-̶t̶h̶e̶-̶d̶i̶s̶t̶r̶i̶c̶t̶-̶b̶y̶-̶a̶-̶m̶u̶n̶i̶c̶i̶p̶a̶l̶i̶t̶y̶-̶r̶e̶q̶u̶i̶r̶i̶n̶g̶-̶a̶-̶r̶e̶d̶u̶c̶t̶i̶o̶n̶

24   o̶f̶-̶t̶h̶e̶-̶d̶i̶s̶t̶r̶i̶c̶t̶'̶s̶-̶s̶a̶l̶e̶s̶-̶a̶n̶d̶-̶u̶s̶e̶-̶t̶a̶x̶,̶-̶a̶s̶-̶p̶r̶o̶v̶i̶d̶e̶d̶-̶i̶n̶-̶S̶u̶b̶s̶e̶c̶t̶i̶o̶n̶-̶-̶(̶h̶)̶

25   o̶f̶-̶t̶h̶i̶s̶-̶s̶e̶c̶t̶i̶o̶n̶], the board shall send to the comptroller by United

26   States  certified  or  registered  mail  certified  copies  of  all

13

S.B. No. 1807

1    resolutions  or[,]  orders[,--or--ordinances]  pertaining  to  such

2    events.

3        SECTION 5.  Chapter  289,  Acts  of  the  73rd  Legislature,

4    Regular Session, 1993, is amended by adding Section 11C to read  as

5    follows:

6        Sec. 11C.  ECONOMIC  DEVELOPMENT ZONES.  (a)  As used in this

7    section:

8            (1)  "Development zone" means an  economic  development

9    zone created by the district under this section.

10           (2)  "Governing body" means the board of directors of a

11   development zone.

12           (3)  "Initial  development"  means the first buildings,

13   structures, and improvements on a parcel or  tract  included  in  a

14   development  zone.  The term does not include a street, utility, or

15   off-site facility or service.

16           (4)  "Substantial redevelopment" includes an expansion,

17   enlargement,  replacement,  and  relocation  of  a  building,

18   improvement, and facility located in a development zone.  The  term

19   does not include an improvement, modification, or rehabilitation of

20   a building, improvement, or facility that has been in existence for

21   less than 10 years.

22       (b)  The board, on its own motion or on receipt of a petition

23   signed  by the owners of all real property in a defined area of the

24   district, by resolution may create, designate, describe,  assign  a

25   name  to,  and appoint the governing body for a development zone in

26   the  district  to  promote  initial  development  or  substantial

14

S.B. No. 1807

1  redevelopment  of the area, if the board finds that the creation of
2  the zone will further the public purposes of:
3                    (1)  the development and diversification of the economy
4  of the district and the state;
5                    (2)  the elimination of unemployment or underemployment
6  in the district and the state;
7                    (3)  the development or expansion of transportation  or
8  commerce in the district and the state; or
9                    (4)  the  promotion  and  stimulation of business,
10 commercial, and economic activity in the district and the state.
11     (c)  Before designating a development zone,  the  board  must
12 prepare a preliminary financing plan for the zone that includes:
13                   (1)  estimated  project costs, including administrative
14 expenses;
15                   (2)  a list of the kind, number, and  location  of  all
16 proposed improvement projects in the zone;
17                   (3)  the  estimated amount of bonded indebtedness to be
18 incurred;
19                   (4)  a description of  the  methods  of  financing  and
20 expected  sources  of  revenue  to  pay  for  the costs of proposed
21 improvement projects; and
22                   (5)  the projected duration of the zone.
23     (d)  Before designating a development zone on its own  motion
24 or,  if  ad  valorem taxes are to be used, in whole or in part, for
25 the payment of improvement project costs in a development  zone  to
26 be  designated in response to a landowner petition, the board shall

15

S.B. No. 1807

1  call and hold a public hearing on the creation of the zone  in  the

2  manner  provided  by  Section  311.003,  Tax Code, for reinvestment

3  zones designated by a municipality.

4          (e)  A development zone may not be created if  more  than  10

5  percent  of  the property in the proposed zone, other than property

6  that is publicly owned, is used or planned for use for  residential

7  purposes.   For  purposes  of this subsection, property is used for

8  residential purposes if the property is occupied by  a  house  that

9  has fewer than five living units.

10         (f)  A  resolution  designating an area as a development zone

11  must:

12             (1)  describe the boundaries of the  zone  sufficiently

13  to identify with reasonable certainty the territory included;

14             (2)  provide  an effective date for the creation of the

15  zone;

16             (3)  provide a date for termination of the zone;

17             (4)  assign a name to the zone for identification;

18             (5)  adopt a preliminary financing plan for the zone;

19             (6)  establish a tax increment fund for the zone; and

20             (7)  appoint  the  governing body for  the  zone  or

21  authorize  the  board  to serve ex officio as the governing body of

22  the zone.

23         (g)  Members of the governing body shall be appointed  for  a

24  term  of  two  years,  except  that  the appointment of the initial

25  members of the governing body may provide  for  some  terms  to  be

26  limited  to one year in order to achieve staggered terms of office.

16

1  The district by appointment shall fill a vacancy on  the  governing
2  body of the zone for the unexpired portion of the term.

3      (h)  A  member  of a governing body must be at least 18 years
4  of age,  a  citizen  of  the  state,  and  a  person  described  in
5  Subsection  (b) of Section 8 of this Act.  A member of the board of
6  directors of the district may be appointed to the  governing  body.
7  Each   member   must   qualify   for   office   by  subscribing  to  the
8  constitutional oath of office for public officers and furnishing  a
9  fidelity  bond  issued  by  a  responsible   surety in the amount of
10  $10,000 in  favor  of  the  development  zone  to  secure  faithful
11  performance of the member's duties.

12      (i)  Following  appointment  and qualification, the governing
13  body of the development zone shall meet and organize by electing  a
14  president,  a  vice  president,  a  secretary-treasurer,  and other
15  officers the governing body considers appropriate.

16      (j)  The boundaries of a development zone may be  reduced  or
17  enlarged  in  the manner provided by this section for creation of a
18  zone.

19      (k)  A development zone created by the  district  under  this
20  section is a body politic and corporate and a political subdivision
21  of  the  state,  separate  from the district.  The district and the
22  development zone have the same power  and  authority  to  carry  out
23  this  section as Section 311.008, Tax Code, provides a municipality
24  to carry out Chapter 311, Tax Code.  In  addition  to  the  powers
25  granted  to  the governing body by this section, the board by order
26  may delegate, subject in whole or in part to final approval by  the

17

S.B. No. 1807

1  board, any powers and duties relating to the financing and

2  implementation of the project plan for the zone, including the

3  power and authority to:

4         (1) issue tax increment bonds or notes for and in the

5  name of the zone in the same manner as Section 311.010, Tax Code,

6  provides for a municipality, except that tax increment bonds or

7  notes of the zone must mature in not more than 30 years;

8         (2) pledge irrevocably all or part of the tax

9  increment fund for the zone, as Section 311.015, Tax Code, provides

10  for a municipality; and

11         (3) impose, assess, and collect ad valorem taxes,

12  assessments, and other charges in the zone, as Chapter 375, Local

13  Government Code, provides for municipal management districts, as

14  well as the incremental sales and use tax authorized by this

15  section, if the ad valorem tax or incremental sales and use tax has

16  been approved by the qualified voters of the district at an

17  election called and held for that purpose.

18         (1) The board and the governing body each may enter into an

19  agreement considered necessary or convenient to implement a project

20  plan and development zone financing plan and achieve their

21  purposes. An agreement may provide for the regulation or

22  restriction of the use of land by imposing conditions,

23  restrictions, or covenants that run with the land. An agreement

24  may dedicate revenue from the tax increment fund to pay project

25  costs and may provide that a restriction adopted by the governing

26  body continues in effect after the termination of the development

18

S.B. No. 1807

1    zone.   The   district   and   the development zone may agree that the
2    district   will   provide   administration,   management,   investment,
3    accounting,   and   other   services for the zone in consideration for
4    the benefits received by the district through the implementation of
5    the project plan for the zone.

6         (m)   Subject to approval by   resolution   of   the   board,   the
7    governing   body   shall   prepare and adopt, and may amend, a project
8    plan and a development zone financing plan for the development zone
9    containing generally the information   and   estimates   described   by
10   Section   311.011,   Tax   Code,   with   respect to reinvestment zones,
11   together with an estimate of total and incremental   sales   and   use
12   taxes   to be derived from the zone.   If a plan amendment reduces or
13   increases the geographic area of the zone, increases the amount   of
14   bonded   indebtedness   to   be   incurred,   creates   or   changes a tax
15   increment to be contributed by a   taxing   unit,   or   increases   the
16   total   estimated   project   costs, the amendment may be adopted only
17   after a public hearing meeting the procedural requirements of   this
18   section   for   a   meeting   on the creation of a development zone has
19   been held.

20        (n)   If the financing plan adopted by the governing   body   of
21   the   development   zone   uses ad valorem taxes, in whole or in part,
22   for payment of project costs, the provisions   of   Sections   311.012
23   and   311.013,   Tax   Code, shall apply to the development zone as if
24   the zone were a   taxing   unit   under   those   sections   and   to   the
25   governing   body   of   the   zone   as   if   the governing body were the
26   governing body of a taxing unit under those sections.

19

S.B. No. 1807

1      (o)  If  approved  at  an  election  by  a  majority  of  the

2  qualified voters voting in an election called  and  held  for  that

3  purpose,  the  district may adopt or repeal for the use and benefit

4  of one or more development zones created by the district before  or

5  after  the  election  an  incremental sales and use tax of not more

6  than one percent. An election on the adoption  or  repeal  of  the

7  maximum  rate  of  incremental  sales and use tax may be called and

8  held by the board as provided by Section 11  of  this  Act  for  an

9  election  on  the  adoption  of  the  limited  sales  and  use  tax

10  authorized  by  Section  11  of  this  Act.   After  adoption at an

11  election, to the extent the district has delegated the authority to

12  the zone, the governing body may impose, assess, and collect all or

13  any portion of the incremental sales and use tax, in increments  of

14  not  less  than  one-eighth  of one percent, for the benefit of the

15  zone, by order of the governing body.  The  incremental  sales  and

16  use  tax is in addition to the limited sales and use tax authorized

17  and imposed, assessed, and collected by the district under  Section

18  11  of  this  Act.   The  incremental  sales  and  use  tax becomes

19  effective on the first day of the calendar  quarter  following  the

20  date  the  comptroller receives written notice of the imposition of

21  the tax and shall be paid into  the  tax  increment  fund  for  the

22  development zone.

23      (p)  Sections  311.002 and 311.014 through 311.017, Tax Code,

24  apply to the district, except that for purposes of this subsection:

25          (1) a reference in those sections  to  a  municipality

26  means the district and the development zone;

20

S.B. No. 1807

1           (2)  a  reference  in  those  sections  to an ordinance

2  means an order;

3           (3)  a reference in those sections  to  a  reinvestment

4  zone means a development zone;

5           (4)  a reference in those sections to an agreement made

6  under Subsection (b), Section 311.010, Tax Code, means an agreement

7  made under Subsection (l) of this section;

8           (5)  "development" means initial development;

9           (6)  "redevelopment"  means  substantial redevelopment;

10  and

11           (7)  Section 311.016, Tax Code, applies  only  if  ad

12  valorem  taxes are used, in whole or in part, in payment of project

13  costs of a development zone.

14      SECTION 6.  Subsections (a) and  (c),  Section  12A,  Chapter

15  289,  Acts  of  the  73rd  Legislature,  Regular Session, 1993, are

16  amended to read as follows:

17      (a)  The board may issue bonds of the district in the  manner

18  provided  by  Subchapter  J,  Chapter  375,  Local Government Code.

19  Sections 375.207 and 375.208, Local Government Code, do  not  apply

20  to bonds issued by the district under this Act [section].

21      (c)  In  addition  to  the  sources  of  money  described  by

22  Subchapter  J, Chapter  375,  Local Government Code, the bonds of the

23  district may be secured and made payable, wholly or  partly,  by  a

24  pledge of any part of the net proceeds the district receives from:

25           (1)  a specified portion, but not more than one-half of

26  one  percent,  of the sales and use tax authorized by Section 11 of

21

S.B. No. 1807

1    this Act; and

2            (2)  the hotel occupancy tax authorized by Section  11A

3    of this Act[; and

4            [(3)--repayments---the---district---receives---from---a

5    municipality--because--of--a--required--reduction-of-the-district's

6    sales-and-use-tax].

7         SECTION 7. Section 13, Chapter 289, Acts of the  73rd

8    Legislature, Regular Session, 1993, is amended to read as follows:

9         Sec. 13.  CONTRACTS WITH DISTRICT.  (a) The district is

10    authorized to contract with a city, county, other political

11    subdivision, corporation, or other persons to carry out the

12    purposes of this Act on such terms and conditions and for such

13    period of time as the board may determine. A state agency, city,

14    county, other political subdivision, corporation, individual, or

15    other entity may contract with the district to carry out the

16    purposes of this Act without any further authorization,

17    notwithstanding any other law or charter provision to the contrary.

18        (b) The district and a municipality any part of which is

19    located in the boundaries of the district or impact area may enter

20    into and carry out an interlocal agreement for the accomplishment

21    of an improvement project or the provision of a facility, a

22    service, or equipment by the district in or for the benefit of the

23    municipality.  Notwithstanding any other law, payment for the

24    improvement project, facility, service, or equipment may be made or

25    pledged by the municipality to the district out of any money the

26    municipality collects under Chapter 351, Tax Code, or out of any

22

S.B. No. 1807

1    other available money.

2          SECTION 8.   Subsection (h), Section 11, Chapter 289, Acts   of
3    the 73rd Legislature, Regular Session, 1993, is repealed.

4          SECTION 9.   The  additional  directors  of  the  Town  Center
5    Improvement  District  of  Montgomery  County,  Texas,  provided by
6    Section 8, Chapter 289, Acts  of  the  73rd  Legislature,  Regular
7    Session,  1993,  as  amended  by  this  Act,  shall be appointed as
8    provided by that section as soon as practicable after the effective
9    date of this Act.  One of the additional directors shall serve  for
10   a term ending on the first Saturday in May, 2000, and the other two
11   additional  directors  shall  serve  for a term ending on the first
12   Saturday in May, 2002, as determined by the board of  directors  of
13   the  Town  Center Improvement District of Montgomery County, Texas,
14   by lot or by mutual agreement.  Nothing  in  this  Act  affects  the
15   terms of office of the existing directors.

16         SECTION 10.   (a)  The   proper   and   legal   notice  of  the
17   intention  to  introduce  this  Act,  setting  forth  the   general
18   substance  of  this Act, has been published as provided by law, and
19   the notice and a copy of  this  Act  have  been  furnished  to  all
20   persons,  agencies,  officials,  or  entities  to  which  they  are
21   required to be furnished by the constitution and other laws of this
22   state, including the governor, who has submitted the notice and Act
23   to the Texas Natural Resource Conservation Commission.

24         (b)  The   Texas   Natural Resource Conservation Commission has
25   filed its recommendations relating to this Act with  the  governor,
26   lieutenant  governor,  and  speaker  of the house of representatives

23

S.B. No. 1807

1   within the required time.

2          (c)  All requirements of the constitution and  laws  of  this
3   state  and the rules and procedures of the legislature with respect
4   to the notice, introduction, and passage of this Act are  fulfilled
5   and accomplished.

6          SECTION 11.  The  importance  of  this  legislation  and  the
7   crowded  condition  of  the  calendars  in  both  houses  create an
8   emergency  and  an  imperative  public  necessity  that  the
9   constitutional rule requiring bills to be  read  on  three  several
10  days in each house be suspended, and this rule is hereby suspended,
11  and  that  this  Act take effect and be in force from and after its
12  passage, and it is so enacted.

24

S.B. No. 1807



_____
President of the Senate

_____
Speaker of the House

I hereby certify that S.B. No. 1807 passed the Senate on April 29, 1999, by the following vote: Yeas 30, Nays 0.

_____
Secretary of the Senate

I hereby certify that S.B. No. 1807 passed the House on May 25, 1999, by the following vote: Yeas 145, Nays 0, two present not voting.

_____
Chief Clerk of the House

Approved:

6-19-99
_____
Date

_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:30 ᴘᴍ   O'CLOCK

JUN 19 1999

_____
Secretary of State

25



# The State of Texas

## Secretary of State

I, ROGER WILLIAMS, Secretary of State of the State of Texas, DO HEREBY CERTIFY that the attached is a true and correct copy of Senate Bill Number 1353, passed by the 79th Legislature, Regular Session, 2005, as signed by the Governor on June 17, 2005, and filed in this office on June 17, 2005.

Date issued: August 12, 2005

Roger Williams
Secretary of State



ST/ls

CHAPTER 373

S.B. No. 1353

1          AN ACT

2  relating to the powers and duties of the Town Center Improvement

3  District of Montgomery County, Texas, and of governmental entities

4  and peace officers that interact with the district; providing a

5  penalty.

6          BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

7          SECTION 1.  Subsections (k), (n), and (p), Section 7,

8  Chapter 289, Acts of the 73rd Legislature, Regular Session, 1993,

9  are amended to read as follows:

10          (k)  The district may not employ peace officers, but may

11  contract with:

12              (1)  a county or municipality that has territory wholly

13  or partly in or contiguous to the district's territory or impact

14  area for the county or municipality to provide law enforcement

15  services by any lawful means for the district, including a

16  warrantless arrest, to the same extent and with the same effect as

17  if the district were authorized to employ its own peace officers

18  directly; and

19              (2)  [for] off-duty peace officers directly to provide

20  public safety and security services in connection with a special

21  event, holiday, period with high traffic congestion, or similar

22  circumstance.

23          (n)  The board by rule may regulate the public or private use

24  of public roadways, open spaces, parks, sidewalks, and similar

1

S.B. No. 1353

1  public areas or facilities to provide for the safe and orderly use
2  of these places. [To the extent the rules of the district conflict
3  with a rule, order, ordinance, or regulation of a county or
4  municipality with jurisdiction in the district's territory, the
5  rule, order, ordinance, or regulation of the county or municipality
6  controls. The rules may provide for the safe and orderly use of
7  public roadways, open spaces, parks, sidewalks, and similar public
8  areas or facilities.]

9      (p) The board may require a permit or franchise agreement
10  with a vendor, concessionaire, exhibitor, or similar private or
11  commercial person or organization for the limited use of the public
12  roadways, open spaces, parks, sidewalks, and similar public areas
13  [area] or facilities on terms and conditions and on payment of a
14  permit or franchise fee the board may impose.

15      SECTION 2.  Chapter 289, Acts of the 73rd Legislature,
16  Regular Session, 1993, is amended by adding Sections 7A, 7B, 7C, 7D,
17  and 7E to read as follows:

18      Sec. 7A.  REGULATION OF DISTRICT REAL PROPERTY.  The board
19  may prohibit, restrict, permit, or otherwise regulate, on terms and
20  conditions deemed advisable, private or public use of district
21  property, including any real property in which the district has an
22  interest, to the extent the instrument that establishes the real
23  property interest does not prohibit the prohibition, restriction,
24  permit, or other regulation.

25      Sec. 7B.  HEARING REQUIRED FOR CERTAIN RULES.  A board rule
26  adopted under Section 7(n), (o), or (p) or Section 7A of this Act
27  may be adopted only after a public hearing held in the district.

2

S.B. No. 1353

1      Sec. 7C.  CONFLICT BETWEEN DISTRICT RULE AND OTHER LOCAL

2  REGULATIONS.  To the extent a district rule conflicts with a rule,

3  order, ordinance, or regulation of a county or municipality with

4  jurisdiction in the district's territory or impact area, the rule,

5  order, ordinance, or regulation of the county or municipality

6  controls.

7      Sec. 7D.  ENFORCEMENT OF DISTRICT RULES.  (a)  The board may

8  adopt rules that provide for the enforcement of a district rule,

9  including rules prescribing:

10        (1)  the elements of a criminal offense for violating a

11  district rule; and

12        (2)  the punishment for an offense prescribed under

13  Subdivision (1) of this subsection in accordance with the maximum

14  fines or penalties provided for the enforcement and punishment of a

15  municipal rule, ordinance, or police regulation under Section

16  54.001, Local Government Code.

17      (b)  The justice court in the precinct where the offense is

18  committed has jurisdiction over offenses prescribed under this

19  section.  The offense shall be prosecuted in the same manner as

20  similar classes of criminal offenses in the justice court's

21  jurisdiction.

22      (c)  A justice court shall remit to the county any fine or

23  other penalty the justice court collects for a violation of a

24  district rule in the same manner as a similar fine or penalty

25  imposed for a violation of a state law.

26      Sec. 7E.  JURISDICTION OF PEACE OFFICER. A peace officer who

27  has jurisdiction by any means, including by geography, other law,

3

S.B. No. 1353

1   or   interlocal   contract   between   the   district   and   another
2   governmental entity, is authorized to preserve the peace in the
3   officer's   jurisdiction   by   any   lawful   means,   including   the
4   prevention and suppression of an offense prescribed by the district
5   under Section 7D of this Act.

6   　　　SECTION 3.   Subsection (j), Section 11, Chapter 289, Acts of
7   the 73rd Legislature, Regular Session, 1993, is amended to read as
8   follows:

9   　　　(j)   The district and each economic development zone created
10  by the district is entitled to examine and receive information
11  related to the levy, assessment, and collection of sales and use
12  taxes to the same extent as if the district or economic development
13  zone were a municipality.

14  　　　SECTION 4.   Chapter 289, Acts of the 73rd Legislature,
15  Regular Session, 1993, is amended by adding Section 13A to read as
16  follows:

17  　　　Sec. 13A.   COMPETITIVE BIDDING.   The   district   is   not
18  required to seek a competitive bid or proposal for construction
19  work or for the purchase of material or equipment for an expenditure
20  of $25,000 or less.

21  　　　SECTION 5.   Section 13A, Chapter 289, Acts of the 73rd
22  Legislature, Regular Session, 1993, as added by this Act, applies
23  only to a contract for which the Town Center Improvement District of
24  Montgomery County, Texas, first advertises or otherwise solicits
25  bids, proposals, offers, or qualifications on or after the
26  effective date of this Act. A contract for which the district first
27  advertised or otherwise solicited bids, proposals, offers, or

4

S.B. No. 1353

1   qualifications before that date is governed by the law in effect

2   when the first advertisement or solicitation was given, and the

3   former law is continued in effect for that purpose.

4       SECTION 6. This Act takes effect immediately if it receives

5   a vote of two-thirds of all the members elected to each house, as

6   provided by Section 39, Article III, Texas Constitution. If this

7   Act does not receive the vote necessary for immediate effect, this

8   Act takes effect September 1, 2005.

_____    _____
    President of the Senate           Speaker of the House

    I hereby certify that S.B. No. 1353 passed the Senate on April 21, 2005, by the following vote: Yeas 31, Nays 0._____

_____
    Secretary of the Senate

    I hereby certify that S.B. No. 1353 passed the House on May 25, 2005, by the following vote: Yeas 144, Nays 0, two present not voting._____

_____
    Chief Clerk of the House

Approved:

_____
    17 JUNE '05
        Date

_____
    Rick Perry
      Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
9:20 AM O'CLOCK

JUN 17 2005

Secretary of State

5



# The State of Texas
## Secretary of State

I, PHIL WILSON, Secretary of State of the State of Texas, DO
HEREBY CERTIFY that the attached is a TRUE AND CORRECT copy of
Senate Bill 1012, as passed by the 80th Legislature, Regular Session, of the State
of Texas, as signed by the Governor on May 14, 2007, and as filed in this office
on May 14, 2007.

Date Issued:  July 12, 2007
PW/SDS/la

Phil Wilson
Secretary of State



Chapter 88                                                    <u>S.B. No. 1012</u>

1                                    <u>AN ACT</u>
2    relating to the establishment of regional participation agreements
3    between certain municipalities and districts; authorizing the
4    issuance of bonds.
5          BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
6          SECTION 1.   Subchapter D, Chapter 43, Local Government Code,
7    is amended by adding Section 43.0754 to read as follows:
8          <u>Sec. 43.0754.   REGIONAL PARTICIPATION AGREEMENTS.   (a)   In</u>
9    <u>this section:</u>
10               <u>(1)   "District" means a political subdivision created</u>
11   <u>by general or special law that has the powers of a municipal</u>
12   <u>management district under Chapter 375 and a conservation and</u>
13   <u>reclamation district under Chapters 49 and 54, Water Code, a</u>
14   <u>majority by area of the territory of which is located within a</u>
15   <u>planned community and within the extraterritorial jurisdiction of</u>
16   <u>one or more municipalities.</u>
17               <u>(2)   "Eligible municipality" means a municipality:</u>
18                    <u>(A)   that has a population of 1.5 million or more</u>
19   <u>and that includes in its extraterritorial jurisdiction at least 90</u>
20   <u>percent by area of the territory of a district; or</u>
21                    <u>(B)   that includes in its extraterritorial</u>
22   <u>jurisdiction not more than 10 percent of the territory of a district</u>
23   <u>that has entered into a regional participation agreement with</u>
24   <u>another eligible municipality under this section.</u>

<u>1</u>

1        (3)  "Party" means a district, eligible municipality,

2  or person that is a party to a regional participation agreement

3  approved and entered into under this section.

4        (4)  "Planned community" means a planned community of

5  20 square miles or more with a population of 50,000 or more that is

6  subject in whole or in part to a restrictive covenant that contains

7  an ad valorem-based assessment on real property used or to be used,

8  in any part, to fund governmental or quasi-governmental services

9  and facilities within and for the planned community.

10       (5)  "Regional participation agreement" means a

11  contract or agreement entered into under this section or in

12  anticipation of the enactment of this section and any amendment,

13  modification, supplement, addition, renewal, or extension to or of

14  the contract or agreement or any proceeding relating to the

15  contract or agreement.

16       (b)  Notwithstanding any contrary law or municipal charter

17  provision, the governing body of an eligible municipality, the

18  governing body of a district, and, if applicable, a person may

19  approve and authorize execution and performance of a regional

20  participation agreement to further regional participation in the

21  funding of eligible programs or projects.  A regional participation

22  agreement must include as parties at least one eligible

23  municipality and one district and may include as parties other

24  eligible municipalities, districts, or persons.

25       (c)  A regional participation agreement may provide or allow

26  for:

27       (1)  the establishment, administration, use,

2

1   investment, and application of a regional participation fund, which
2   shall be a special fund or escrow account to be used solely for
3   funding the costs and expenses of eligible programs or projects;
4       (2)  payments to be made by a party into the regional
5   participation fund for application, currently or in the future,
6   toward eligible programs or projects;
7       (3)  the methods and procedures by which eligible
8   programs or projects are prioritized, identified, and selected for
9   implementation and are planned, designed, bid, constructed,
10  administered, inspected, and completed;
11      (4)  the methods and procedures for accounting for
12  amounts on deposit in, to the credit of, or expended from the
13  regional participation fund, as well as any related investment
14  income or amounts due and owing to or from any party to the fund;
15      (5)  credits against payments otherwise due by any
16  party under the agreement resulting from taxes, charges, fees,
17  assessments, tolls, or other payments in support of or related to
18  the usage or costs of eligible programs or projects that are levied
19  or imposed upon, assessed against, or made applicable to a party or
20  its citizens, ratepayers, taxpayers, or constituents after the
21  effective date of the agreement;
22      (6)  any type of annexation of any part of the territory
23  of a district to be deferred by an eligible municipality that is a
24  party for a mutually agreeable period;
25      (7)  the release of all or part of the territory of a
26  district from the extraterritorial jurisdiction of an eligible
27  municipality that is a party at a specified time or upon the

3

S.B. No. 1012

1    occurrence of specified events;

2           (8)  the consent of an eligible municipality that is a

3    party to the incorporation of, or the adoption of an alternate form

4    of government by, all or part of the territory of a district at a

5    specified time or upon the occurrence of specified events;

6           (9)  remedies for breach of the agreement;

7           (10)  the modification, amendment, renewal, extension,

8    or termination of the agreement;

9           (11)  other districts, eligible municipalities, or

10   persons to join the agreement as a party at any time;

11          (12)  third-party beneficiaries to be specifically

12   designated and conferred rights or remedies under the agreement;

13          (13)  the duration of the agreement, including an

14   unlimited term;

15          (14)  the creation and administration of a nonprofit

16   corporation, joint powers agency, local government corporation, or

17   other agency for the purpose of administration and management of a

18   regional participation fund, program, or project under the

19   agreement; and

20          (15)  any other provision or term to which the parties

21   agree.

22        (d)  A regional participation agreement may provide for the

23   funding of any program or project, whether individual,

24   intermittent, or continuing and whether located or conducted within

25   or outside the boundaries of a party, for the planning, design,

26   construction, acquisition, lease, rental, installment purchase,

27   improvement, provision of furnishings or equipment,

4

1   rehabilitation, repair, reconstruction, relocation, preservation,
2   beautification, use, execution, administration, management,
3   operation, or maintenance of any works, improvements, or
4   facilities, or for providing any functions or services, whether
5   provided to, for, by, or on behalf of a party, that provide a
6   material benefit to each party in the accomplishment of the
7   purposes of each party, related to:
8            (1) mobility or transportation, including mass
9   transportation, traffic circulation, or ground, air, rail, water,
10  or other means of transportation or movement of people, freight,
11  goods, or materials;
12           (2) health care treatment, research, teaching, or
13  education facilities or infrastructure;
14           (3) parks or recreation, open space, and scenic,
15  wildlife, wetlands, or wilderness areas;
16           (4) public assembly or shelter, including halls,
17  arenas, stadiums or similar facilities for sporting events,
18  exhibitions, conventions, or other mass assembly purposes;
19           (5) environmental preservation or enhancement,
20  including air or water quality protection, improvement,
21  preservation, or enhancement, and noise abatement;
22           (6) the supply, conservation, transportation,
23  treatment, disposal, or reuse of water or wastewater;
24           (7) drainage, stormwater management or detention, and
25  flood control or prevention;
26           (8) solid waste collection, transfer, processing,
27  reuse, resale, disposal, and management; or

S.B. No. 1012

1      (9)  public  safety  and  security,  including  law
2  enforcement, firefighting and fire prevention, emergency services
3  and facilities, and homeland security.

4      (e)  A regional participation agreement must be:

5      (1)  in writing;

6      (2)  approved by the governing body of each eligible
7  municipality or district that is or that becomes a party to the
8  agreement; and

9      (3)  must be recorded in the deed records of any county
10  in which is located any territory of a district that is or that
11  becomes a party to the agreement.

12      (f)  A district, eligible municipality, or person may join or
13  become a party to a regional participation agreement in the manner
14  authorized in the agreement.

15      (g)  A regional participation agreement is not required to
16  describe the land contained within the boundaries of a district
17  that is a party to the agreement.

18      (h)  A regional participation agreement binds each party to
19  the agreement for the term specified in the agreement and each owner
20  and future owner of land that is subject to the agreement during any
21  annexation deferral period established in the agreement.  If a
22  party, land, or landowner is excluded or removed from an agreement,
23  the removal or exclusion is effective on the recordation of the
24  amendment, supplement, modification, or restatement of the
25  agreement implementing the removal or exclusion.

26      (i)  A regional participation agreement may not require a
27  district to make payments from any funds that are restricted,

6

S.B. No. 1012

1  encumbered, or pledged for the payment of contractual obligations
2  or indebtedness of the district.  Otherwise, any party may commit or
3  pledge or may issue bonds payable from or secured by a pledge of any
4  available source of funds, including unencumbered sales and use
5  taxes, to make payments due or to become due under an agreement.
6  　　　(j)  Notwithstanding any other law, a program or project to
7  be funded and any bonds to be issued by a district to make payments
8  under a regional participation agreement are not subject to review
9  or approval by the Texas Commission on Environmental Quality.
10  　　　(k)  A regional participation agreement and any action taken
11  under the agreement are not subject to any method of approval or
12  appeal under the Water Code.
13  　　　(l)  After due authorization, execution, delivery, and
14  recordation as provided by this section, a regional participation
15  agreement,  including  any  related  amendment,  supplement,
16  modification, or restatement, and a pledge of funds to make
17  payments under an agreement shall be final and incontestable in any
18  court of this state.
19  　　　(m)  Notwithstanding any defect, ambiguity, discrepancy,
20  invalidity, or unenforceability of a regional participation
21  agreement that has been voluntarily entered into and fully executed
22  by the parties, or any contrary law, common law doctrine, or
23  municipal charter provision, and for the duration of any annexation
24  deferral  period  established  in  the  agreement  during  which  a
25  district continues to perform its obligations under the agreement:
26  　　　　　(1)  Section 42.023 and any other law or municipal
27  charter provision relating to the reduction of the extraterritorial

7

S.B. No. 1012

1   jurisdiction of an eligible municipality that is a party do not
2   apply, and Sections 42.041(b)-(e) do not apply to any land or owner
3   of land within a district that is a party;
4           (2)  the governing body of an eligible municipality
5   that is a party may not initiate or continue an annexation
6   proceeding relating to that area but may include the area covered by
7   the agreement in a municipal annexation plan; and
8           (3)  any area of a district that is a party to be
9   released from the extraterritorial jurisdiction of an eligible
10  municipality that is a party under an agreement, or that is to be
11  incorporated or included within an alternate form of government
12  with the consent of a municipality that is a party under an
13  agreement, shall, by operation of law and without further action by
14  a  party  or  its  governing  body,  be  released  from  the
15  extraterritorial jurisdiction, or consent of the municipality to
16  the incorporation or adoption of an alternate form of government by
17  the district shall be deemed to have been given, as appropriate
18  under the agreement, at the time or upon the occurrence of the
19  events specified in the agreement.
20          (n)  Notwithstanding the provisions of any municipal charter
21  or other law, a district or an eligible municipality is not required
22  to hold an election to authorize a regional participation
23  agreement.  As long as such funds remain restricted for use under an
24  agreement, payments to or income from a regional participation fund
25  shall not be deemed revenues to an eligible municipality for
26  purposes of any law or municipal charter provision relating to
27  revenue or property tax caps or limits.

8

1     (o)  This section is cumulative of all other authority to

2 make, enter into, and perform a regional participation agreement.

3 In case of any conflict or ambiguity between this section and any

4 other law or municipal charter provision, this section shall

5 prevail and control.

6     (p)  This section shall be liberally construed so as to give

7 effect to its legislative purposes and to sustain the validity of a

8 regional participation agreement if the agreement was entered into

9 under or in anticipation of enactment of this section.

10     SECTION 2.  The legislature finds and determines that the

11 financial burdens of implementing essential economic development

12 programs and related regional public improvement projects,

13 including programs and projects located inside or outside municipal

14 boundaries that are of substantial benefit to areas within a

15 municipality and its extraterritorial jurisdiction, or to the state

16 as a whole, often are borne by large municipalities in the state;

17 that there exists insufficient legislative authority to promote and

18 facilitate regional participation in the funding and

19 implementation of such programs and projects; that annexation of

20 adjacent areas by large municipalities in many instances does not

21 provide a satisfactory means of apportioning such financial burdens

22 and may create or exacerbate public service delivery and financial

23 burdens of municipalities; that financial participation in such

24 programs or projects by populous, defined communities in close

25 proximity to large municipalities by mutual agreement provides an

26 equitable, material, and effective alternative means of addressing

27 such circumstances without resort to municipal annexation; that to

9

S.B. No. 1012

1  prevent the fragmentation of, or nonuniform allocation of costs to,
2  participating defined communities, provision should also be made
3  for   similar   agreements   with   other   municipalities   with
4  extraterritorial jurisdiction over insubstantial portions of such
5  defined communities; and that implementation of the provisions of
6  this  Act  will  be  of  substantial  benefit  to  participating
7  communities and municipalities, to the regions of the state that
8  include such participants, and to the state as a whole as a program
9  for promoting and facilitating regional governmental cooperation
10 and  the  funding  of  essential  economic  development  and  public
11 improvement  projects  under  Section  52-a,  Article  III,  Texas
12 Constitution,  thereby  accomplishing  the  public  purposes  of
13 promoting and advancing employment and economic diversification
14 and  development  and  stimulating  business  within  the  state,
15 conserving and preserving the natural resources of the state,
16 permitting the improvement of traffic circulation, the movement of
17 people,  freight,  goods,  and  materials,  mass  transportation,  and
18 health  care  facilities  and  infrastructure  within  the  state,
19 promoting the enhancement and improvement of air and water quality
20 and  noise  abatement  measures  within  the  state,  promoting  the
21 development of parks, recreational facilities, and public assembly
22 facilities within the state, and encouraging the preservation and
23 protection of scenic, wildlife, wetlands, and wilderness areas in
24 the state, and other purposes beneficial to the state.
25        SECTION 3.  The provisions of this Act are severable.  If any
26 word, phrase, clause, sentence, section, provision, or part of this
27 Act is held invalid or unconstitutional, it shall not affect the

10

S.B. No. 1012

1   validity of the remaining portions, and it is declared to be the

2   legislative intent that this Act would have been passed as to the

3   remaining portions regardless of the invalidity of any part.

4        SECTION 4.  A regional participation agreement entered into

5   in anticipation of this Act is not invalid because of the

6   agreement's authorization, execution, or delivery before the

7   effective date of this Act.

8        SECTION 5.  This Act takes effect immediately if it receives

9   a vote of two-thirds of all the members elected to each house, as

10  provided by Section 39, Article III, Texas Constitution.  If this

11  Act does not receive the vote necessary for immediate effect, this

12  Act takes effect September 1, 2007.

S.B. No. 1012

_David Dewhurst_
President of the Senate

_Tom Craddick_
Speaker of the House

I hereby certify that S.B. No. 1012 passed the Senate on April 4, 2007, by the following vote: Yeas 30, Nays 0; and that the Senate concurred in House amendment on May 1, 2007, by the following vote: Yeas 31, Nays 0.

_Patsy Spaw_
Secretary of the Senate

I hereby certify that S.B. No. 1012 passed the House, with amendment, on April 27, 2007, by the following vote: Yeas 133, Nays 0, two present not voting.

_Robert Haney_
Chief Clerk of the House

Approved:

14 MAY '07
Date

_Rick Perry_
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
5:00 PM O'CLOCK

MAY 1 4 2007

_Roger Williams_

12

# The State of Texas

## Secretary of State

I, HOPE ANDRADE, Secretary of State of the State of Texas, DO HEREBY CERTIFY that the attached is a TRUE AND CORRECT copy of Senate Bill 2515, as passed by the 81st Legislature, Regular Session, of the State of Texas, as signed by the Governor on June 19, 2009, and as filed in this office on June 19, 2009.

Date Issued:  October 6, 2009
HA/SDS/la



Hope Andrade
Secretary of State

Chapter 1397

<u>S.B. No. 2515</u>

1                               <u>AN ACT</u>

2   relating to the administration, powers and duties, operations, and

3   financing of The Woodlands Township; providing authority to impose

4   an events admission tax.

5        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

6        SECTION 1.  Subsection (c), Section 1, Chapter 289, Acts of

7   the 73rd Legislature, Regular Session, 1993, is amended to read as

8   follows:

9        (c)  The name of the district may be changed by resolution of

10  the board of directors of the district at any time.  <u>A reference in</u>

11  <u>this Act to the district means the name of the district as changed.</u>

12       SECTION 2.  Section 7, Chapter 289, Acts of the 73rd

13  Legislature, Regular Session, 1993, is amended by adding

14  Subsections (s), (t), (u), (v), (w), (x), (y), (z), (aa), (bb),

15  (cc), and (dd) to read as follows:

16       <u>(s)  The district may make, enter into, and enforce tax</u>

17  <u>abatement agreements in the same manner as other taxing units under</u>

18  <u>Chapter 312, Tax Code.  Before an ad valorem tax is first imposed,</u>

19  <u>the district may enter into a tax abatement agreement with the owner</u>

20  <u>of property subject to a tax abatement agreement with a county in</u>

21  <u>which any part of the district is located.  The agreement may</u>

22  <u>provide for the parties to be bound by the same terms as the county</u>

23  <u>agreement for the remaining term of the county agreement and</u>

24  <u>provide for the same share of the property exempted by the county</u>

<u>1</u>

S.B. No. 2515

1    agreement to be exempted from taxation by the district in each

2    remaining year of the county agreement.

3          (t)  In order to promote business retention, sustain

4    employment, and prevent substandard and blighted housing

5    conditions, the district may:

6          (1)  except as otherwise provided by this subsection

7    and in the same manner as a qualified association, assume, accept an

8    assignment of, succeed to, or contract to undertake, exercise, or

9    perform:

10         (A)  all or part of the rights, powers,

11   privileges, duties, responsibilities, assets, liabilities, and

12   obligations of a qualified association under community covenants;

13         (B)  any contracts, agreements, leases,

14   commitments, loans, pledges, instruments of indebtedness, or other

15   undertakings with any person, regardless of whether the person is a

16   qualified association, in the exercise of the rights, powers,

17   privileges, duties, or responsibilities described by Paragraph

18   (A);

19         (C)  the administration, enforcement, amendment,

20   supplementation, repeal, revocation, or rescission of a community

21   covenant as provided by the covenant; or

22         (D)  the functions, duties, and responsibilities

23   of the board of directors of a qualified association, without the

24   necessity of electing or appointing members of the board of

25   directors of the qualified association;

26         (2)  administer and perform procedures established in a

27   community covenant or a related agreement for the selection or

2

S.B. No. 2515

1  appointment of members or officers to committees, village
2  association governing bodies, or similar positions;
3          (3) arrange or contract with one or more
4  municipalities, political subdivisions, or nonprofit organizations
5  for the provision of services and facilities to all or part of the
6  territory in or adjacent to the district that are substantially
7  equivalent to the services or facilities provided by the district
8  or a qualified association in the district, provided that the
9  district may not transfer, assign, or abrogate responsibility for
10 the administration or enforcement of any land use restrictions or
11 negative covenants included in a community covenant that apply to
12 land in or adjacent to the district;
13         (4) own, acquire, construct, improve, repair,
14 rehabilitate, operate, maintain, lease, purchase, sell, dispose
15 of, encumber, abandon, or remove:
16              (A) any buildings, improvements, or facilities;
17 or
18              (B) any real, personal, or mixed property; and
19         (5) assess, charge, collect, pledge, encumber, and
20 apply any fees, rents, charges, or proceeds received for the use,
21 enjoyment, or disposition of a building, improvement, facility, or
22 property or for a service or facility.
23         (u) The actions and proceedings of the district and the
24 board of directors under Subsection (t) of this section are
25 governmental functions. Title 11, Property Code, does not apply to
26 the district. This Act may not be construed as constituting a
27 waiver of governmental or sovereign immunity from suit, liability,

S.B. No. 2515

1  or judgment.

2      (v)  In this section:

3          (1)  "Qualified   association"   means   a   nonprofit

4  property owners' association created and operated by a planned

5  community, as that term is defined by Section 43.0754, Local

6  Government Code.

7          (2)  "Community covenant" means recorded land use

8  restrictions and covenants applicable to a planned community, as

9  that term is defined by Section 43.0754, Local Government Code.

10     (w)  The district may develop and maintain and may sell,

11  lease, encumber, abandon, or dispose of recreational facilities,

12  including an open space and a related street, sidewalk, path,

13  building, structure, improvement, or appurtenance.  Subchapter N,

14  Chapter 49, Water Code, does not apply to the district, except that

15  the terms "develop and maintain" and "recreational facilities" have

16  the meanings assigned by Section 49.462 of that chapter.

17     (x)  The district is a special district but is treated as a

18  conservation   and   reclamation   district   that   is   entitled   to

19  participate in the election of the board of directors of an

20  appraisal district for the purposes of Section 6.03, Tax Code.

21     (y)  The district and a county tax assessor-collector may

22  contract for the collection of the delinquent assessments of a

23  qualified association for which the district has been assigned and

24  has assumed the duties, functions, and responsibilities.   The

25  assessments may be collected through the use of the county's tax

26  billing and collection procedures or other mutually agreeable

27  means.  A suit for collection of delinquent assessments under this

S.B. No. 2515

1  subsection:

2          (1)  has the same priority and preference as a
3  delinquent tax collection suit; and

4          (2)  shall be conducted in the same manner as a
5  delinquent tax collection suit.

6    (z)  The district has the same rights and powers as a
7  municipality annexing territory in a district that provides
8  emergency services to cause all or part of the territory of the
9  district to be removed from the district providing emergency
10  services.

11    (aa)  The board of directors by resolution may cause district
12  territory described in the resolution to be removed from the
13  boundaries and taxing jurisdiction of a transit authority whose
14  territory overlaps the district's territory if the district and a
15  municipality enter into a regional participation agreement under
16  Section 43.0754, Local Government Code, that requires the district
17  to deposit money into a regional participation fund for the
18  purpose, among others, of funding mobility projects of mutual
19  benefit to the district and municipality.  A removal of territory
20  under this subsection takes effect on the date the board provides a
21  certified copy of the resolution to:

22          (1)  the transit authority; and

23          (2)  the comptroller.

24    (bb)  Subject to approval by the county, the district by
25  rule, order, or resolution may, in the same manner provided for a
26  municipality by Chapter 393, Transportation Code, and Section
27  216.901, Local Government Code:

5

S.B. No. 2515

1       (1) prohibit, regulate, or authorize placement of

2 signs on the right-of-way of a road or highway maintained by the

3 county within the district, other than standard traffic control or

4 directional signs; or

5       (2) administer a kiosk program as provided by Section

6 393.0026, Transportation Code.

7    (cc) The district may enter into an interlocal agreement

8 with the county under which the county grants the district

9 permission to prohibit, regulate, or authorize placement of a

10 specific type or class of sign on the right-of-way of a highway that

11 is maintained by the county and located within the district.

12    (dd) Subsections (bb) and (cc) do not apply to a sign

13 regulated by another municipality, if all or part of the territory

14 of the district is incorporated, that is located within the

15 exclusive extraterritorial jurisdiction of that other

16 municipality.

17    SECTION 3. Section 7F, Chapter 289, Acts of the 73rd

18 Legislature, Regular Session, 1993, is amended by amending

19 Subsections (a) and (c) and adding Subsections (d), (e), (f), and

20 (g) to read as follows:

21    (a) In this section:

22       (1) "Fire-fighting services" has the meaning assigned

23 by Section 49.351(k), Water Code.

24       (2) "Fire[, "fire] protection personnel" has the

25 meaning assigned by Section 419.021, Government Code, except that a

26 reference to a fire department includes a nonprofit corporation

27 employing fire protection personnel and providing fire-fighting

6

S.B. No. 2515

1  services that is owned, operated, or controlled by the district.

2      (c)  Before January 1, 2012 [2010], the district may not

3  directly employ any fire protection personnel but may own, operate,

4  or control a nonprofit corporation employing fire protection

5  personnel and providing fire-fighting services.  This subsection

6  expires February [January] 1, 2012 [2010].

7      (d)  Except as provided by Subsection (c) of this section, a

8  district may:

9          (1)  directly, or through a nonprofit corporation

10  created, funded, owned, operated, or controlled by the district,

11  establish, acquire, operate, and maintain a fire department to

12  perform fire-fighting services in or adjacent to the district; and

13          (2)  issue  public  securities,  including  public

14  securities approved by district voters and payable wholly or partly

15  from ad valorem taxes, to finance the construction, acquisition,

16  improvement, renovation, repair, or rehabilitation of any related

17  buildings, facilities, interests in land, equipment, or supplies.

18      (e)  Subchapter L, Chapter 49, Water Code, does not apply to

19  the district.

20      (f)  Unless other law requires a prior election, the district

21  shall hold an election to determine whether the district shall

22  adopt the provisions of Chapter 174, Local Government Code, if the

23  district receives a timely petition signed by a majority of the fire

24  protection personnel of the fire department of the district or of

25  any nonprofit corporation owned, operated, or controlled by the

26  district.  On receipt and verification of the petition, the

27  district shall hold the election on a uniform election date that

S.B. No. 2515

1   occurs not later than the date of the last authorized uniform
2   election date in 2011 and shall conduct the election in compliance
3   with applicable law and Chapter 174, Local Government Code.  This
4   subsection expires January 1, 2012.
5       (g)  If an election is called under Subsection (f) of this
6   section and a majority of the voters voting in the election approve
7   the adoption by the district of the provisions of Chapter 174, Local
8   Government Code, the provisions of that chapter shall be binding on
9   the district when the district, or any municipality or other form of
10  local government succeeding to the principal assets, functions, and
11  liabilities of the district, directly employs fire protection
12  personnel.  The results of the election shall continue in effect
13  unless the adoption of Chapter 174, Local Government Code, is
14  repealed in the manner provided by that chapter.  A collective
15  bargaining agreement made and entered into by the district under
16  Chapter 174, Local Government Code, shall be binding on a successor
17  municipality or local government.
18      SECTION 4.  Chapter 289, Acts of the 73rd Legislature,
19  Regular Session, 1993, is amended by adding Section 7H to read as
20  follows:
21      Sec. 7H.  EVENT ADMISSIONS TAX.  (a)  In this section:
22          (1)  "Cultural education" means the exhibition or
23  promotion of or education about the performing, dramatic, visual,
24  literary, or fine arts, including historical, geological,
25  archeological, or paleontological sciences, and history, natural
26  history, scientific, cultural, ethnic, or heritage education
27  meeting local community standards in the district.

S.B. No. 2515

1        (2)  "Event"  means  any  performance,  exhibition,
2  showing, or similar presentation at a venue for which an admission
3  fee  or  charge  is  imposed  by  the  venue  user,  including  a  cultural
4  education event.
5        (3)  "Venue"  means  an  indoor  or  outdoor  theater,  music,
6  exhibition, rehearsal, or concert hall, opera house, auditorium,
7  park,  zoo,  museum,  aquarium,  plaza,  civic  center,  or  similar
8  building  or  forum  in  the  district,  other  than  a  motion  picture
9  theater, regardless of whether the district owns, operates, leases,
10  finances, or uses the venue.
11        (4)  "Venue user"  means  an  owner,  lessee,  operator,  or
12  other user of a venue that:
13           (A)  is not a governmental entity; and
14           (B)  presents more than four events in a calendar
15  year.
16   (b)  The district by order may impose a tax on each ticket
17  sold as admission to an event held at a venue.
18   (c)  The  amount  of  the  tax  may  be  imposed  at  any  uniform
19  percentage not to exceed five percent of the price of the ticket
20  sold as admission to an event held at a venue.
21   (d)  The district by order may increase, repeal, or decrease
22  the rate of the tax imposed under this section.
23   (e)  The  district  by  order  may  require  the  venue  user  to
24  collect the tax for the benefit of the district.
25   (f)  A  venue  user  required  to  collect  the  tax  under  this
26  section shall add the tax to the admissions price, and the tax is a
27  part of the admissions price, is a debt owed to the venue user by the

1  person admitted, and is recoverable at law in the same manner as the

2  admissions price.

3      (g)  The tax imposed by this section is not an occupation tax

4  imposed on the venue user.

5      (h)  A tax imposed under this section or a change in a tax

6  rate takes effect on the date prescribed by the order imposing the

7  tax or changing the rate.

8      (i)  A person required to collect a tax imposed under this

9  section shall report and remit the taxes to the district as provided

10  by order of the district.

11      (j)  The  district  by  order  may  prescribe  penalties  and

12  interest  charges  for  failure  to  keep  records  required  by  the

13  district, to report when required, or to fully and timely collect or

14  remit the tax.  The district may bring suit against a person who

15  fails to collect a tax under this section or to fully and timely

16  remit the tax to the district.

17      (k)  The  district  by  order  may  permit  a  person  who  is

18  required to collect a tax under this section to retain a percentage

19  of  the  amount  collected  and  required  to  be  reported  as

20  reimbursement to the person for the costs of collecting the tax.

21  The district may provide that the person may retain the amount only

22  if the person pays the tax and files reports as required by the

23  district.

24      (l)  The  district  and  any  venue  user  may  enter  into  an

25  agreement for a term of not more than 20 years:

26          (1)  providing for the payment or reimbursement, or the

27  reservation of tax proceeds for the payment or reimbursement, to

S.B. No. 2515

1  the venue user of all or any agreed portion of the venue user's

2  actual costs of operations, maintenance, management, financing,

3  funding development, capital costs, debt service, or other actual

4  costs of the production, promotion, or presentation of a cultural

5  education event at the venue; and

6          (2)  containing any other terms, conditions, and

7  provisions as may be considered necessary and appropriate to

8  support cultural education in the district.

9          (m)  The proceeds received by the district from the tax

10  authorized by this section may be used only to support cultural

11  education in the district.

12          (n)  The district may continue to impose the tax authorized

13  by this section after any contractual obligations have been

14  fulfilled if the tax revenue is used to support cultural education.

15          (o)  An agreement entered into in anticipation of this

16  section taking effect that otherwise meets the requirements of this

17  section is not invalid because it was authorized, executed, or

18  entered into before the effective date of this section.

19          SECTION 5.  Subsection (j), Section 8, Chapter 289, Acts of

20  the 73rd Legislature, Regular Session, 1993, is amended to read as

21  follows:

22          (j)  Except as provided by Subsection (e) of this section, a

23  majority of the total authorized number of [four] directors

24  constitutes [constitute] a quorum for the consideration of all

25  matters pertaining to the business of the district, and a

26  concurrence of a majority of a quorum of directors shall be required

27  for any official action of the district.

11

S.B. No. 2515

1    SECTION 6.  Section 9, Chapter 289, Acts of the 73rd

2  Legislature, Regular Session, 1993, is amended by amending

3  Subsection (g) and adding Subsection (l) to read as follows:

4    (g)  After passage of the propositions in the confirmation

5  election, as required by Subsection (e) of this section and Section

6  7-a of this Act:

7    (1)  an election shall be called for the uniform

8  election date in May of the next even-numbered year for the election

9  of five directors at large.  The three candidates receiving the

10  highest number of votes shall be elected for a term of three years,

11  and the two candidates receiving the next highest number of votes

12  shall be elected for a term of two years;

13    (2)  an election shall be called for the uniform

14  election date in May of the next succeeding even-numbered year

15  after the election held under Subdivision (1) of this subsection,

16  for the election of four directors by position [at large]. Each of

17  the [The] four candidates [receiving the highest number of votes

18  shall be] elected shall serve for a term of two years; and

19    (3)  an election shall be called annually thereafter

20  for the uniform election date in May of each year for the election

21  by position of either three or four directors, as appropriate, to

22  serve two-year terms.

23    (l)  An election held on the proposition of incorporating all

24  or part of the territory of the district under Subsection (h)(2) of

25  this section may be held regardless of population or area limits

26  described by Section 5.901, Local Government Code, or other law, if

27  the area to be incorporated has a population of 5,000 or more

12

S.B. No. 2515

1   inhabitants according to the most recent federal decennial census

2   or other credible population records.

3        SECTION 7.  Chapter  289,  Acts  of  the  73rd  Legislature,

4   Regular Session, 1993, is amended by adding Section 11B-1 to read as

5   follows:

6        Sec. 11B-1.  SUPPLEMENTAL  HOTEL  OCCUPANCY  TAX.   (a)  In

7   addition  to  the  tax  authorized  by  Section  11A  of  this  Act,  but

8   subject to Subsection (c) of this section, the board by order may

9   impose,  repeal,  increase,  or  decrease  a  supplemental  hotel

10  occupancy tax in the same manner as the tax authorized by Section

11  11A of this Act.  The rate of the supplemental tax may not exceed two

12  percent of the price paid for a room in a hotel.

13       (b)  The  district  shall  apply  the  proceeds  from  the

14  supplemental  tax  imposed  under  Subsection  (a)  of  this  section

15  solely  for  the  purposes  described  by  Sections  352.101(a)  and

16  352.1015,  Tax  Code,  provided  that  at  least  75  percent  of  the

17  proceeds  from  the  supplemental  tax,  as  determined  on  an  annual

18  average  basis,  must  be  used  for  the  purpose  of  establishing,

19  operating, and maintaining a convention and visitors bureau within

20  or  adjacent  to  the  district.   For  purposes  of  this  subsection,  a

21  reference in Section 352.101(a) or 352.1015, Tax Code, to a county,

22  county  officer,  or  commissioners  court  means  the  district,  a

23  district officer, or the board, as appropriate.

24       (c)  The board may not impose the supplemental tax authorized

25  by Subsection (a) of this section before January 1, 2011.  The board

26  may  impose  the  tax  at  a  rate  not  to  exceed  one  percent  until

27  December 31, 2011.  On  or  after  January  1,  2012,  the  board  may

13

S.B. No. 2515

1  impose the tax at a rate not to exceed two percent.

2      SECTION 8.  Section 11C, Chapter 289, Acts of the 73rd

3  Legislature, Regular Session, 1993, is amended by amending

4  Subsections (g), (k), and (p) and adding Subsections (g-1) and (s)

5  to read as follows:

6      (g)  Members of the governing body shall be appointed for a

7  term of two years, except that:

8          (1)  the appointment of the initial members of the

9  governing body may provide for some terms to be limited to one year

10 in order to achieve staggered terms of office; and

11         (2)  the board by resolution may:

12             (A)  extend the terms of office of members of the

13 governing body beyond two years to the extent necessary to

14 coordinate those terms with the next election of members of the

15 board of directors; or

16             (B)  provide for one-year terms of office for

17 members of a subsequent governing body.

18     (g-1)  The district by appointment shall fill a vacancy on

19 the governing body of the zone for the unexpired portion of the

20 term.

21     (k)  A development zone created by the district under this

22 section is a body politic and corporate and a political subdivision

23 of the state, separate from the district.  The district and the

24 development zone have the same power and authority to carry out this

25 section as Section 311.008, Tax Code, provides a municipality to

26 carry out Chapter 311, Tax Code.  In addition to the powers granted

27 to the governing body by this section, the board by order may

14

1  delegate, subject in whole or in part to final approval by the
2  board, any powers and duties relating to the financing and
3  implementation of the project plan for the zone, including the
4  power and authority to:

5          (1)  issue tax increment bonds or notes for and in the
6  name of the zone in the same manner as Section 311.015 [311.010],
7  Tax Code, provides for a municipality, except that tax increment
8  bonds or notes of the zone must mature in not more than 30 years, to
9  fund any project of the zone and pay any related bond issuance and
10  bond reserve costs or to refund any bonds, notes, contractual
11  obligations, commitments, or undertakings of the zone, including
12  the reimbursement to any person for project costs and related
13  interest for which the zone would have been authorized to issue its
14  bonds or notes;

15          (2)  pledge irrevocably all or part of the tax
16  increment fund for the zone, as Section 311.015, Tax Code, provides
17  for a municipality; and

18          (3)  impose, assess, and collect ad valorem taxes,
19  assessments, and other charges in the zone, as Chapter 375, Local
20  Government Code, provides for municipal management districts, as
21  well as the incremental sales and use tax authorized by this
22  section, if the ad valorem tax or incremental sales and use tax has
23  been approved by the qualified voters of the district at an election
24  called and held for that purpose.

25      (p)  Sections 311.002 and 311.014 through 311.017, Tax Code,
26  apply to the district, except that for purposes of this subsection:

27          (1)  a reference in those sections to a municipality

15

1  means the district and the development zone;

2          (2)  a  reference  in  those  sections  to  an  ordinance

3  means an order;

4          (3)  a  reference  in  those  sections  to  a  reinvestment

5  zone means a development zone;

6          (4)  a  reference  in  those  sections  to  an  agreement  made

7  under Subsection (b), Section 311.010, Tax Code, means an agreement

8  made under Subsection (l) of this section;

9          (5)  "development" means initial development;

10          (6)  "redevelopment"  means  substantial  redevelopment;

11  [and]

12          (7)  Section  311.016,  Tax  Code,  applies  only  if  ad

13  valorem taxes are used, in whole or in part, in payment of project

14  costs of a development zone; and

15          (8)  a  development  zone  created  without  a  duration  or

16  date of termination may be dissolved by a two-thirds vote of the

17  board of directors of the district or of the governing body of a

18  municipality or other form of local government succeeding to the

19  principal  assets,  powers,  functions,  and  liabilities  of  the

20  district, but only if:

21          (A)  the  development  zone  has  no  outstanding

22  indebtedness or other obligations; or

23          (B)  the  assets,  powers,  functions,  and

24  liabilities, and any outstanding indebtedness or obligations, of

25  the development zone are expressly assumed by the district or the

26  succeeding municipality or local government.

27      (s)  The district or a municipality or other local government

S.B. No. 2515

1  succeeding to the principal assets, powers, functions, and

2  liabilities of the district may assume, exercise, perform, and

3  discharge the assets, powers, functions, and liabilities of a

4  development zone in the same manner, to the same extent, and for the

5  same purposes as a development zone created under this section.

6  SECTION 9.  The heading to Section 12A, Chapter 289, Acts of

7  the 73rd Legislature, Regular Session, 1993, is amended to read as

8  follows:

9  Sec. 12A.  PUBLIC SECURITIES [BONDS].

10  SECTION 10.  Section 12A, Chapter 289, Acts of the 73rd

11  Legislature, Regular Session, 1993, is amended by amending

12  Subsections (a) and (c) and adding Subsections (d), (e), and (f) to

13  read as follows:

14  (a)  The board may issue, sell, and deliver the public

15  securities [bonds] of the district in the manner provided by this

16  section or other applicable law, including Chapter 1371, Government

17  Code, and Subchapter J, Chapter 375, Local Government Code, for any

18  district purpose or to finance or pay for any district facilities,

19  programs, or improvement projects [project], including for the

20  purpose of making or providing for payment of any amounts due or to

21  become due from the district under a regional participation

22  agreement authorized by this Act or other law, to refund or

23  refinance any public security or other contract, agreement,

24  commitment, or undertaking of the district in payment of which the

25  district could have issued its public securities, or to fund or pay

26  for any reserve fund or issuance expenses related to the public

27  securities. The public securities [which] shall be deemed to be in

17

1  furtherance of a program authorized pursuant to Section 52-a,

2  Article III, Texas Constitution[, in the manner provided by

3  Subchapter J, Chapter 375, Local Government Code].   Sections

4  375.207 and 375.208, Local Government Code, do not apply to public

5  securities [bonds] issued by the district under this Act.

6      (c)  In addition to the sources of money described by

7  Subchapter J, Chapter 375, Local Government Code, the public

8  securities [bonds] of the district may be secured and made payable,

9  wholly or partly, by a pledge of any part of the net proceeds the

10  district receives from:

11          (1)  a specified portion, but not more than one-half of

12  one percent, of the sales and use tax authorized by Section 11 of

13  this Act;

14          (2)  the hotel occupancy tax authorized by Section 11A

15  of this Act;

16          (3)  an ad valorem tax approved by the voters of the

17  district at an election called for that purpose;

18          (4)  any revenues, receipts, fees, charges, income,

19  funds, or proceeds received or to be received by the district from

20  refunding public securities, contracts, agreements, or other

21  [lawful] sources, including a contract with a development zone to

22  facilitate an improvement project or project plan of the district

23  or the development zone; or

24          (5)  [any other revenues, income, or proceeds that in

25  accordance with this Act or other law may be pledged or used for

26  purposes described by Subdivision (4) of this subsection; or

27          [(6)]  any combination of revenues, taxes, or proceeds

18

1  from one or more of the sources described by Subdivisions (1)-(4)

2  [(1)-(5)] of this subsection.

3      (d)  The board of directors or an officer or employee of the

4  district to whom the board delegates authority may sell a district

5  public security at a public or private sale in the form, at the

6  price, on the terms and conditions, at the interest rate or rates,

7  whether fixed, variable, floating, adjustable, or otherwise, as the

8  board determines appropriate.  The net effective interest rate of

9  the public securities under this section may not exceed the maximum

10  rate allowed by law.

11      (e)  The board may secure a district public security with a

12  security agreement, credit agreement, or both, with the security

13  interest or interests, other than a mortgage interest in real

14  property, and with the parity or priority of pledge and lien as the

15  board determines appropriate.

16      (f)  In this section:

17          (1)  "Public security" has the meaning assigned by

18  Section 1201.002, Government Code.

19          (2)  "Credit agreement," "security agreement," and

20  "security interest" have the meanings assigned by Section 1208.001,

21  Government Code.

22      SECTION 11.  (a)  The legislature ratifies and confirms all

23  governmental acts and proceedings of The Woodlands Township and its

24  board and of The Woodlands Township Economic Development Zone and

25  its governing body before the effective date of this Act, in:

26          (1)  calling, holding, conducting, and declaring the

27  results of the confirmation and tax election held in the district on

S.B. No. 2515

1   November 6, 2007;

2           (2)  conditionally   enlarging   the   boundaries   and

3   increasing  the  number  of  eligible  voters  of  the  district  for

4   conducting  the  election  described  by  Subdivision  (1)  of  this

5   subsection;

6           (3)  changing the name of the district to The Woodlands

7   Township;

8           (4)  describing the boundaries of the district for any

9   purpose,  including  the  election  described  by  Subdivision  (1)  of

10  this subsection;

11          (5)  creating,   establishing,   organizing,   and

12  describing  the  boundaries  of  The  Woodlands  Township  Economic

13  Development Zone;

14          (6)  dissolving,  abolishing,  and  transferring  the

15  funds,  assets,  liabilities,  and  obligations  of  all  existing

16  economic  development  zones  overlapped  by  The  Woodlands  Township

17  Economic Development Zone;

18          (7)  imposing and collecting an incremental sales and

19  use tax by The Woodlands Township Economic Development Zone; and

20          (8)  conditionally   excluding   territory   from   the

21  boundaries of The Woodlands Township Economic Development Zone and

22  reserving the right to repeal or rescind the exclusion.

23      (b)  Subsection  (a)  of  this  section  does  not  apply  to  a

24  matter that on the effective date of this Act:

25          (1)  is  involved  in  litigation,  if  the  litigation

26  ultimately results in the matter being held invalid by a final court

27  judgment; or

20

S.B. No. 2515

1          (2)  has been held invalid by a final court judgment.

2      SECTION 12.  The provisions of this Act are severable.  If

3  any word, phrase, clause, sentence, section, provision, or part of

4  this Act is held invalid or unconstitutional, it shall not affect

5  the validity of the remaining portions, and it is declared to be the

6  legislative intent that this Act would have been passed as to the

7  remaining portions regardless of the invalidity of any part.

8      SECTION 13.  (a)  The legislature finds that the powers,

9  authority, and functions of the district authorized by this Act are

10  essential and beneficial to the district and to the state as a whole

11  as a program for promoting, facilitating, and accomplishing the

12  public purposes of Section 52-a, Article III, Texas Constitution,

13  by:

14         (1)  promoting, sustaining, and advancing employment

15  and economic diversification and development in the state;

16         (2)  sustaining and stimulating business in the state;

17         (3)  conserving and sustaining property values and

18  living conditions in the state;

19         (4)  promoting traffic circulation and public safety in

20  the state;

21         (5)  promoting the development of parks, recreational

22  facilities, and cultural education in the state; and

23         (6)  serving other purposes beneficial to the state.

24     (b)  The legal notice of the intention to introduce this Act,

25  setting forth the general substance of this Act, has been published

26  as provided by law, and the notice and a copy of this Act have been

27  furnished to all persons, agencies, officials, or entities to which

21

S.B. No. 2515

1   they are required to be furnished under Section 59, Article XVI,

2   Texas Constitution, and Chapter 313, Government Code.

3       (c) The governor, one of the required recipients, has

4   submitted the notice and Act to the Texas Commission on

5   Environmental Quality.

6       (d) The Texas Commission on Environmental Quality has filed

7   its recommendations relating to this Act with the governor,

8   lieutenant governor, and speaker of the house of representatives

9   within the required time.

10      (e) All requirements of the constitution and laws of this

11   state and the rules and procedures of the legislature with respect

12   to the notice, introduction, and passage of this Act have been

13   fulfilled and accomplished.

14     SECTION 14. This Act takes effect immediately if it

15   receives a vote of two-thirds of all the members elected to each

16   house, as provided by Section 39, Article III, Texas Constitution.

17   If this Act does not receive the vote necessary for immediate

18   effect, this Act takes effect September 1, 2009.

22

S.B. No. 2515

_____          _____
President of the Senate                   Speaker of the House

    I hereby certify that S.B. No. 2515 passed the Senate on

May 7, 2009, by the following vote: Yeas 31, Nays 0._____

_____
Secretary of the Senate

    I hereby certify that S.B. No. 2515 passed the House on

May 25, 2009, by the following vote:  Yeas 143, Nays 0, one present

not voting._____

_____
Chief Clerk of the House

Approved:

19 JuN '09
_____
Date

Rick Perry
_____
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2 PM _____ O'CLOCK

JUN 19 2009

Coly Shster III

23



# The State of Texas

## Secretary of State

I, Carlos Cascos, Secretary of State of the State of Texas, DO HEREBY CERTIFY the attached are true and correct copies of **House Bill No. 4149, 84th Session of the Texas Legislature, Regular Session.**

Date Issued: July 6, 2015



Carlos H. Cascos,
Secretary of State

Chapter 446

H.B. No. 4149

1                           AN ACT

2  relating to the powers, operations, and boundaries of The Woodlands

3  Township; authorizing a fee.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  Section 5(b), Chapter 289, Acts of the 73rd

6  Legislature, Regular Session, 1993, is amended to read as follows:

7        (b)  The legislature finds that the creation of the district

8  is essential to further the public purposes of the economic

9  development and diversification of the state, the elimination of

10  unemployment and underemployment, and the stimulation and

11  development of transportation and commerce; that it is in the

12  public interest; and that it will promote the health, safety, and

13  general welfare of residents, employers, employees, and consumers

14  in the district and of the general public. The safe and efficient

15  movement of people by motor vehicle, rail, trolley, bus, bicycle,

16  pedestrian means, waterborne vessel, or other means of

17  transportation is a public purpose of the district. The present and

18  prospective traffic congestion in the district and the safety of

19  pedestrians and the limited availability of funds require the

20  promotion and development of public transportation and pedestrian

21  facilities and systems by new and alternative means, and the

22  district will serve the public purpose of securing expanded and

23  improved transportation and pedestrian facilities and systems. The

24  district will provide needed funding for the Town Center area to

1

H.B. No. 4149

1  preserve, maintain, and enhance the economic health and vitality of
2  the area as a community and business and commerce center.  The
3  district will further promote the health, safety, welfare,
4  education, convenience, and enjoyment of the public by improving,
5  landscaping, and developing certain areas within and adjacent to
6  the district and providing public services and facilities within
7  and adjacent to the district which are necessary for the
8  restoration, preservation, enhancement, and enjoyment of scenic
9  and aesthetic beauty.  Each and all of the improvement projects
10  authorized by this Act are hereby found and declared to be essential
11  to carrying out a public purpose.  The district will not act as the
12  agent or instrumentality of any private interests, even though many
13  private interests will be benefited by the district as will the
14  general public.

15     SECTION 2.  Sections 7(t) and (v), Chapter 289, Acts of the
16  73rd Legislature, Regular Session, 1993, are amended to read as
17  follows:

18     (t)  In order to promote business retention, sustain
19  employment, and prevent substandard and blighted housing
20  conditions, the district may:

21        (1)  merge or consolidate with a qualified association
22  to carry out a function described by this subsection;

23        (1-a) except as otherwise provided by this subsection
24  and in the same manner as a qualified association, assume, accept an
25  assignment of, succeed to, or contract to undertake, exercise, or
26  perform:

27           (A)  all or part of the rights, powers,

2

H.B. No. 4149

1   privileges, duties, responsibilities, assets, liabilities, and
2   obligations of a qualified association under community covenants;

3                    (B) any    contracts,    agreements,    leases,
4   commitments, loans, pledges, instruments of indebtedness, or other
5   undertakings with any person, regardless of whether the person is a
6   qualified association, in the exercise of the rights, powers,
7   privileges, duties, or responsibilities described by Paragraph
8   (A);

9                    (C) the administration, enforcement, amendment,
10  supplementation, repeal, revocation, or rescission of a community
11  covenant as provided by the covenant; or

12                    (D) the functions, duties, and responsibilities
13  of the board of directors of a qualified association, without the
14  necessity of electing or appointing members of the board of
15  directors of the qualified association;

16           (2) administer and perform procedures established in a
17  community covenant or a related agreement for the selection or
18  appointment of members or officers to committees, village
19  association governing bodies, or similar positions;

20           (3) arrange   or   contract   with   one   or   more
21  municipalities, political subdivisions, or nonprofit organizations
22  for the provision of services and facilities to all or part of the
23  territory in or adjacent to the district that are substantially
24  equivalent to the services or facilities provided by the district
25  or a qualified association in the district, provided that the
26  district may not transfer, assign, or abrogate responsibility for
27  the administration or enforcement of any land use restrictions or

3

H.B. No. 4149

1 negative covenants included in a community covenant that apply to
2 land in or adjacent to the district;

3          (4)  own,  acquire,  construct,  improve,  repair,
4 rehabilitate, operate, maintain, lease, purchase, sell, dispose
5 of, encumber, abandon, or remove:

6               (A)  any buildings, improvements, or facilities;
7 or

8               (B)  any real, personal, or mixed property; and

9          (5)  assess,  charge,  collect,  pledge,  encumber,  and
10 apply any fees, rents, charges, or proceeds received for the use,
11 enjoyment, or disposition of a building, improvement, facility, or
12 property or for a service or facility.

13     (v)  In this section:

14          (1)  "Qualified  association"  means  a  nonprofit
15 property owners' association created and operated by or in a
16 planned community, as that term is defined by Section 43.0754,
17 Local Government Code.

18          (2)  "Community covenant" means recorded land use
19 restrictions and covenants applicable to land in a planned
20 community, as that term is defined by Section 43.0754, Local
21 Government Code.

22     SECTION 3.  Section 7, Chapter 289, Acts of the 73rd
23 Legislature,  Regular  Session,  1993,  is  amended  by  adding
24 Subsections (ee) and (ff) to read as follows:

25     (ee)  The district is an "endorsing municipality" for the
26 purposes of Chapter 1507 (S.B. 456), Acts of the 76th Legislature,
27 Regular  Session,  1999  (Article  5190.14,  Vernon's  Texas  Civil

4

H.B. No. 4149

1  Statutes).

2      (ff)  The  district  is  entitled  to  receive  a  certified

3  appraisal roll, an estimate of the taxable value of property in the

4  district, and assistance in determining values of property in the

5  district in the manner provided by Section 26.01, Tax Code, for a

6  municipality.

7      SECTION 4.   Section 7-a(c), Chapter 289, Acts of the 73rd

8  Legislature, Regular Session, 1993, is amended to read as follows:

9      (c)  A description of [map or plat showing] the boundaries of

10  the district, as adjusted from time to time, shall be recorded in

11  the real property records of each county in which all or part of the

12  district is situated not later than the seventh day after the date

13  of each such boundary adjustment. The boundaries of the district

14  may be described by metes and bounds, plat, or reference to a

15  previously recorded instrument.

16      SECTION 5.   Chapter 289, Acts of the 73rd Legislature,

17  Regular Session, 1993, is amended by adding Section 7I to read as

18  follows:

19      Sec. 7I.  TRANSPORTATION PROJECTS, FACILITIES, PROGRAMS,

20  AND SERVICES.  (a)  The district may engage in or contract with

21  another  person  to  perform  activities  that  accomplish  the

22  transportation and traffic movement purposes of the district,

23  including  the  acquisition,  analysis,  construction,  design,

24  financing,  investigation,  implementation,  improvement,

25  maintenance,  operation,  ownership,  planning,  provision,

26  relocation, repair, replacement, or study of improvement projects,

27  facilities, programs, and services in the district and in areas

5

H.B. No. 4149

1  adjacent to the district for:

2         (1)  mass transportation;

3         (2)  parking;

4         (3)  pedestrian movement;

5         (4)  rail systems;

6         (5)  traffic movement;

7         (6)  transit terminals;

8         (7)  waterborne transit; or

9         (8)  other modes of transportation and mobility

10  enhancements that reduce congestion or promote or aid in the

11  circulation of traffic and movement of people in the district and in

12  areas adjacent to the district.

13      (b)  The district may apply for and receive state and federal

14  transportation funding, including grants or other assistance. The

15  district has the rights associated with the funding and may carry

16  out functions and perform obligations associated with the funding,

17  as the designated recipient or otherwise.

18      (c)  The district may contract for an improvement to a

19  boundary highway and consent to the imposition of an assessment by a

20  municipality in the manner provided by Sections 313.022 and

21  313.046, Transportation Code, for a municipality.

22      (d)  The district may adopt and enforce by ordinary civil

23  remedies rules regarding access to and use of the district's

24  transportation projects, facilities, programs, and services.

25      (e)  The district may charge a fare, fee, rate, toll, or

26  other charge for the use of a district transportation project,

27  facility, program, or service.

H.B. No. 4149

1    SECTION 6.  The  legislature  finds  that  the  powers,

2 authority, and functions of the district authorized by this Act are

3 essential and beneficial to the district and to the state as a whole

4 as a program for promoting, facilitating, and accomplishing the

5 public purposes of Section 52-a, Article III, Texas Constitution,

6 by:

7          (1)  promoting, sustaining, and advancing employment

8 and economic diversification and development in the state;

9          (2)  sustaining and stimulating business in the state;

10          (3)  conserving  and  sustaining  property  values  and

11 living conditions in the state;

12          (4)  promoting traffic circulation and public safety in

13 the state;

14          (5)  promoting the development of parks, recreational

15 facilities, and cultural education in the state; and

16          (6)  serving other purposes beneficial to the state.

17    SECTION 7.  (a)  The legal notice of the intention to

18 introduce this Act, setting forth the general substance of this

19 Act, has been published as provided by law, and the notice and a

20 copy of this Act have been furnished to all persons, agencies,

21 officials, or entities to which they are required to be furnished

22 under Section 59, Article XVI, Texas Constitution, and Chapter 313,

23 Government Code.

24    (b)  The governor has submitted the notice and Act to the

25 Texas Commission on Environmental Quality.

26    (c)  The Texas Commission on Environmental Quality has filed

27 its recommendations relating to this Act with the governor,

H.B. No. 4149

1   lieutenant governor, and speaker of the house of representatives
2   within the required time.
3       (d)  All requirements of the constitution and laws of this
4   state and the rules and procedures of the legislature with respect
5   to the notice, introduction, and passage of this Act are fulfilled
6   and accomplished.
7       SECTION 8.  This Act takes effect immediately if it receives
8   a vote of two-thirds of all the members elected to each house, as
9   provided by Section 39, Article III, Texas Constitution.  If this
10  Act does not receive the vote necessary for immediate effect, this
11  Act takes effect September 1, 2015.

H.B. No. 4149

_____          _____
President of the Senate                            Speaker of the House

I certify that H.B. No. 4149 was passed by the House on May 8, 2015, by the following vote:  Yeas 141, Nays 0, 2 present, not voting.

_____
Chief Clerk of the House

I certify that H.B. No. 4149 was passed by the Senate on May 22, 2015, by the following vote:  Yeas 31, Nays 0.

_____
Secretary of the Senate

APPROVED: _____
                        Date


                _____
                        Governor


FILED IN THE OFFICE OF THE
SECRETARY OF STATE
9:15 pm O'CLOCK

JUN 15 2015

_____
Secretary of State

9

# The State of Texas

## Secretary of State

I, Rolando B. Pablos, Secretary of State of the State of Texas, DO HEREBY CERTIFY the attached is a true and correct copy of **Senate Bill No. 1014, 85th Session of the Texas Legislature, Regular Session.**

Date Issued: June 30, 2017



Rolando B. Pablos,
Secretary of State



Chapter 592

S.B. No. 1014

1                              AN ACT

2    relating to The Woodlands Township.

3        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

4        SECTION 1.  Section 8(e), Chapter 289, Acts of the 73rd

5    Legislature, Regular Session, 1993, is amended to read as follows:

6        (e)  A vacancy in the office of director shall be filled by

7    appointment of a qualified individual by a majority vote of the

8    remaining directors[, except that if the number of directors for

9    any reason is less than four, on petition of a resident of or owner

10   of real property in the district, the commission shall appoint the

11   required number of qualified individuals to fill the vacancies].

12       SECTION 2.  Section 11B, Chapter 289, Acts of the 73rd

13   Legislature, Regular Session, 1993, is amended by adding Subsection

14   (b) to read as follows:

15       (b)  Notwithstanding Subsection (a) of this section, if at

16   least 99 percent of the territory of the district is incorporated

17   and the district is dissolved in the manner provided by Section 14A

18   of this Act, the district or municipality shall apply the proceeds

19   from a hotel occupancy tax imposed under Section 11A of this Act:

20           (1)  for the purposes described by Section 351.101, Tax

21   Code; or

22           (2)  as may otherwise be required in connection with

23   the district's debt and other obligations existing before the

24   incorporation to which the proceeds from a hotel occupancy tax

1

S.B. No. 1014

1   imposed under Section 11A of this Act have been pledged.

2        SECTION 3.  Section 11C(p), Chapter 289, Acts of the 73rd
3   Legislature, Regular Session, 1993, is amended to read as follows:

4        (p)  Sections 311.002 and 311.014 through 311.017, Tax Code,
5   apply to the district, except that for purposes of this subsection:

6             (1)  a reference in those sections to a municipality
7   means the district and the development zone;

8             (2)  a reference in those sections to an ordinance
9   means an order;

10            (3)  a reference in those sections to a reinvestment
11  zone means a development zone;

12            (4)  a reference in those sections to an agreement made
13  under Subsection (b), Section 311.010, Tax Code, means an agreement
14  made under Subsection (l) of this section;

15            (5)  "development" means initial development;

16            (6)  "redevelopment" means substantial redevelopment;

17            (7)  Section 311.016, Tax Code, applies only if ad
18  valorem taxes are used, in whole or in part, in payment of project
19  costs of a development zone; and

20            (8)  a development zone created without a duration or
21  date of termination may be dissolved by a two-thirds vote of the
22  board of directors of the district or of the governing body of a
23  municipality or other form of local government, other than the
24  development zone, succeeding to the principal assets, powers,
25  functions, and liabilities of the district, but only if:

26                 (A)  the development zone has no outstanding
27  indebtedness or other obligations; or

2

1          (B) the assets, powers, functions, and

2 liabilities, and any outstanding indebtedness or obligations, of

3 the development zone are expressly assumed by the district or the

4 succeeding municipality or local government.

5      SECTION 4. Chapter 289, Acts of the 73rd Legislature,

6 Regular Session, 1993, is amended by adding Section 14A to read as

7 follows:

8      Sec. 14A. INCORPORATION. (a) This section prevails over

9 any other provision of this Act that conflicts with or is

10 inconsistent with this section.

11     (b) Except as provided by Subsections (c) and (f) of this

12 section, and subject to any applicable limitations of the

13 constitution of this state, if the incorporation of at least 99

14 percent of the territory of the district and the transfer of the

15 rights, powers, privileges, duties, purposes, functions, and

16 responsibilities of the district and the district's authority to

17 issue bonds and impose a tax to the municipality are approved by a

18 majority of the voters voting in an election held for that purpose,

19 including an election described by Section 9(h)(2) of this Act:

20        (1) the assets, liabilities, obligations, rights,

21 powers, privileges, duties, purposes, functions, and

22 responsibilities of the district and the district's authority to

23 issue bonds and impose a tax are transferred to the municipality;

24 and

25        (2) the district is dissolved.

26     (c) If on the date the incorporation of the territory of the

27 district is approved at an election described by Subsection (b) of

S.B. No. 1014

1  this section the district owes any debt that cannot be transferred

2  to the municipality, the district is continued until the debt is

3  retired or is restructured in a manner that the debt may be

4  transferred to the municipality.

5      (d)  If the conditions described by Subsection (c) of this

6  section are met:

7          (1)  the board shall adopt an order certifying that the

8  conditions have been met; and

9          (2)  on the effective date of the order:

10              (A)  the assets, liabilities, obligations,

11  rights, powers, privileges, duties, purposes, functions, and

12  responsibilities of the district and the district's authority to

13  issue bonds and impose a tax are transferred to the municipality;

14  and

15              (B)  the district is dissolved.

16      (e)  In addition to any other restructuring methods

17  permitted by law, the district may restructure its outstanding debt

18  for the purpose of transferring the debt to the municipality by

19  issuing refunding bonds secured by:

20          (1)  a limited pledge of ad valorem tax revenue not

21  greater than that authorized to be levied by the municipality;

22          (2)  a pledge of one or more other sources of revenue

23  available to the district that are also available to the

24  municipality under this section or general law; or

25          (3)  a pledge of a combination of revenues described by

26  Subdivisions (1) and (2) of this subsection.

27      (f)  The transfer of assets, liabilities, obligations,

4

1   rights, powers, privileges, duties, purposes, functions, and

2   responsibilities of the district and the district's authority to

3   issue bonds and impose a tax to the municipality under this section

4   is  effective  regardless  of  whether  the  boundaries  of  the

5   municipality are coterminous with the boundaries of the district,

6   unless the transfer would materially impair the security for a debt

7   transferred to the municipality.  If the transfer would materially

8   impair the security for a debt transferred to the municipality, the

9   debt must be restructured in the manner provided by this section

10   before the transfer may occur.

11       SECTION 5.  Subtitle X, Title 6, Special District Local Laws

12   Code, is amended by adding Chapter 11011 to read as follows:

13             CHAPTER 11011.  THE WOODLANDS TOWNSHIP

14       Sec. 11011.001.  DEFINITION.  In this chapter, "district"

15   means The Woodlands Township.

16       Sec. 11011.002.  LAW GOVERNING DISTRICT.  The district is

17   governed by this chapter and Chapter 289, Acts of the 73rd

18   Legislature, Regular Session, 1993.

19       Sec. 11011.003.  DISSOLUTION OF DISTRICT.  (a)  If at least

20   99 percent of the territory of the district is incorporated and the

21   district is dissolved in the manner provided by Section 14A,

22   Chapter 289, Acts of the 73rd Legislature, Regular Session, 1993,

23   only the following sections of Chapter 289, Acts of the 73rd

24   Legislature, Regular Session, 1993, apply to the municipality in

25   addition to any applicable general law provisions, a reference in

26   those sections to the district means the municipality, and a

27   reference in those sections to the board or board of directors means

1  the governing body of the municipality:

2          (1)  Sections 6(a) and (c);

3          (2)  Sections 7(a), (b), (c), (e), (f), (g), (h), (i),

4  (j), (l), (n), (o), (p), (q), (r), (t), (u), (v), (w), (y), (z), and

5  (aa);

6          (3)  Section 7H;

7          (4)  Sections 9(h)(3), (4), and (5);

8          (5)  Section 11;

9          (6)  Section 11A;

10          (7)  Section 11B;

11          (8)  Section 11B-1;

12          (9)  Section 11C;

13          (10)  Sections 12A(a), (c), (d), (e), and (f); and

14          (11)  Section 13.

15      (b)  The remaining provisions of Chapter 289, Acts of the

16  73rd Legislature, Regular Session, 1993, do not apply to the

17  municipality after the dissolution of the district.

18      SECTION 6.  (a)  The  legal  notice  of  the  intention  to

19  introduce this Act, setting forth the general substance of this

20  Act, has been published as provided by law, and the notice and a

21  copy of this Act have been furnished to all persons, agencies,

22  officials, or entities to which they are required to be furnished

23  under Section 59, Article XVI, Texas Constitution, and Chapter 313,

24  Government Code.

25      (b)  The governor, one of the required recipients, has

26  submitted  the  notice  and  Act  to  the  Texas  Commission  on

27  Environmental Quality.

<u>S.B. No. 1014</u>

1    (c)  The Texas Commission on Environmental Quality has filed

2    its  recommendations  relating  to  this  Act  with  the  governor,

3    lieutenant  governor,  and  speaker  of  the  house  of  representatives

4    within the required time.

5    (d)  The  general  law  relating  to  consent  by  political

6    subdivisions  to  the  creation  of  districts  with  conservation,

7    reclamation,  and  road  powers  and  the  inclusion  of  land  in  those

8    districts has been complied with.

9    (e)  All  requirements  of  the  constitution  and  laws  of  this

10   state and the rules and procedures of the legislature with respect

11   to  the  notice,  introduction,  and  passage  of  this  Act  have  been

12   fulfilled and accomplished.

13   SECTION 7.  This Act takes effect immediately if it receives

14   a vote of two-thirds of all the members elected to each house, as

15   provided by Section 39, Article III, Texas Constitution.  If this

16   Act does not receive the vote necessary for immediate effect, this

17   Act takes effect September 1, 2017.

<u>7</u>

S.B. No. 1014

_President of the Senate_                         _Speaker of the House_

I hereby certify that S.B. No. 1014 passed the Senate on
April 25, 2017, by the following vote:  Yeas 31, Nays 0; and that
the Senate concurred in House amendment on May 27, 2017, by the
following vote: Yeas 31, Nays 0.

_Secretary of the Senate_

I hereby certify that S.B. No. 1014 passed the House, with
amendment, on May 24, 2017, by the following vote:   Yeas 146,
Nays 0, two present not voting.

_Chief Clerk of the House_

Approved:

6 - 7 - 2017
_Date_

_Governor_

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
7:00 PM O'CLOCK

JUN 0 9 2017

Secretary of State

8



# The State of Texas

## Secretary of State

I, Jane Nelson, Secretary of State of the State of Texas, DO HEREBY CERTIFY that the attached is a true and correct copy of **House Bill 5311, 88th Session of the Texas Legislature, Regular Session.**

Date Issued: August 4, 2023



_Jane Nelson_

Jane Nelson
Secretary of State

Chapter 375

H.B. No. 5311

1                          AN ACT

2 relating to the creation and operation of a development zone by and

3 the tax revenue received by The Woodlands Township; providing

4 authority to issue bonds; providing authority to impose assessments

5 and taxes.

6         BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

7         SECTION 1.  Section 7,  Chapter  289,  Acts  of  the  73rd

8 Legislature, Regular Session, 1993, is amended by adding Subsection

9 (gg) to read as follows:

10        (gg)  The district shall be treated the same in all respects

11 as  an  incorporated  municipality  for  the  purposes  of  Section

12 183.051, Tax Code.

13        SECTION 2.  Section 11C,  Chapter  289,  Acts  of  the  73rd

14 Legislature,  Regular  Session,  1993,  is  amended  by  amending

15 Subsections  (b),  (f),  (l),  (p),  and  (q)  and  adding  Subsections

16 (b-1) and (b-2) to read as follows:

17        (b)  The board, on its own motion or on receipt of a petition

18 signed by the owners of all real property in a defined area of the

19 district, by resolution may create, designate, describe, assign a

20 name to, and appoint the governing body for a development zone in

21 the district:

22            (1)  to promote  initial  development  or  substantial

23 redevelopment of the area; or

24            (2)  if the area to be designated as the development

1

H.B. No. 5311

1  zone is composed solely of one or more hotels, to undertake one or

2  more projects to provide supplemental advertising, promotion, or

3  business  recruitment  services  for  the  area  to  increase  hotel

4  activity[, if the board finds that the creation of the zone will

5  further the public purposes of:

6              [(1)  the  development  and  diversification  of  the

7  economy of the district and the state;

8              [(2)  the  elimination  of  unemployment  or

9  underemployment in the district and the state;

10              [(3)  the development or expansion of transportation or

11  commerce in the district and the state; or

12              [(4)  the  promotion  and  stimulation  of  business,

13  commercial, and economic activity in the district and the state].

14      (b-1)  The  board  may  create  a  development  zone  under

15  Subsection (b) of this section if the board finds that the creation

16  of the zone will further the public purposes of:

17              (1)  the development and diversification of the economy

18  of the district and the state;

19              (2)  the  elimination  of  unemployment  or

20  underemployment in the district and the state;

21              (3)  the development or expansion of transportation or

22  commerce in the district and the state; or

23              (4)  the  promotion  and  stimulation  of  business,

24  commercial, and economic activity in the district and the state.

25      (b-2)  A development zone composed solely of one or more

26  hotels may fund or provide services for the purposes for which the

27  zone was created.

2

H.B. No. 5311

1    (f)  A resolution designating an area as a development zone
2  must:

3         (1)  describe the boundaries of the zone sufficiently
4  to identify with reasonable certainty the territory included;

5         (2)  provide an effective date for the creation of the
6  zone;

7         (3)  provide a date for termination of the zone;

8         (4)  assign a name to the zone for identification;

9         (5)  adopt a preliminary financing plan for the zone;

10        (6)  establish a tax increment fund or project fund for
11  the zone; and

12        (7)  appoint the governing body for the zone or
13  authorize the board to serve ex officio as the governing body of the
14  zone.

15    (1)  The board and the governing body each may enter into an
16  agreement considered necessary or convenient to implement a project
17  plan and development zone financing plan and achieve their
18  purposes, including, for a development zone composed solely of one
19  or more hotels, an agreement with a convention and visitors bureau
20  within or adjacent to the district.  An agreement may provide for
21  the regulation or restriction of the use of land by imposing
22  conditions, restrictions, or covenants that run with the land.  An
23  agreement may dedicate revenue from the tax increment fund or
24  project fund to pay project costs and may provide that a restriction
25  adopted by the governing body continues in effect after the
26  termination of the development zone.  The district and the
27  development zone may agree that the district will provide

3

H.B. No. 5311

1  administration, management, investment, accounting, and other
2  services for the zone in consideration for the benefits received by
3  the district through the implementation of the project plan for the
4  zone.

5       (p)  Sections 311.002 and 311.014 through 311.017, Tax Code,
6  apply to the district, except that for purposes of this subsection:

7            (1)  a reference in those sections to a municipality
8  means the district and the development zone;

9            (2)  a reference in those sections to an ordinance
10 means an order;

11           (3)  a reference in those sections to a reinvestment
12 zone means a development zone;

13           (4)  a reference in those sections to an agreement made
14 under Subsection (b), Section 311.010, Tax Code, means an agreement
15 made under Subsection (l) of this section;

16           (5)  "development" means initial development;

17           (6)  "redevelopment" means substantial redevelopment;

18           (7)  Section 311.016, Tax Code, applies only if ad
19 valorem taxes are used, in whole or in part, in payment of project
20 costs of a development zone; [and]

21           (8)  a development zone created without a duration or
22 date of termination may be dissolved by a two-thirds vote of the
23 board of directors of the district or of the governing body of a
24 municipality or other form of local government, other than the
25 development zone, succeeding to the principal assets, powers,
26 functions, and liabilities of the district, but only if:

27                (A)  the development zone has no outstanding

4

H.B. No. 5311

1 indebtedness or other obligations; or

2                (B) the assets, powers, functions, and
3 liabilities, and any outstanding indebtedness or obligations, of
4 the development zone are expressly assumed by the district or the
5 succeeding municipality or local government; and

6                (9)  a development zone composed solely of one or more
7 hotels must be dissolved by the board of directors of the district
8 on receipt of a petition for dissolution of the development zone
9 signed by the owners of at least 60 percent of the assessed value of
10 the real property in the development zone and the district must
11 expressly assume the assets, powers, functions, and liabilities,
12 and any outstanding indebtedness or obligations, of the development
13 zone.

14      (q)  Upon the creation and organization of a development zone
15 over the territory of one or more existing development zones, and
16 upon the imposition or assessment by the governing body of an ad
17 valorem tax or limited sales and use tax for the development zone,
18 any [the] existing development zones that impose or assess an ad
19 valorem or sales and use tax are dissolved and abolished and all
20 assets, properties, indebtedness, obligations, and liabilities of
21 the existing development zones transfer to and are assumed by the
22 newly created and organized development zone.

23      SECTION 3.  Section 7(gg), Chapter 289, Acts of the 73rd
24 Legislature, Regular Session, 1993, as added by this Act, applies
25 only to taxes remitted to the comptroller of public accounts for a
26 calendar quarter beginning on or after October 1, 2023. The
27 comptroller shall make the first transfer required by that

H.B. No. 5311

1   subsection not later than January 31, 2024.

2        SECTION 4.   (a)   The legal notice of the intention to
3   introduce this Act, setting forth the general substance of this
4   Act, has been published as provided by law, and the notice and a
5   copy of this Act have been furnished to all persons, agencies,
6   officials, or entities to which they are required to be furnished
7   under Section 59, Article XVI, Texas Constitution, and Chapter 313,
8   Government Code.

9        (b)   The governor, one of the required recipients, has
10  submitted the notice and Act to the Texas Commission on
11  Environmental Quality.

12       (c)   The Texas Commission on Environmental Quality has filed
13  its recommendations relating to this Act with the governor,
14  lieutenant governor, and speaker of the house of representatives
15  within the required time.

16       (d)   All requirements of the constitution and laws of this
17  state and the rules and procedures of the legislature with respect
18  to the notice, introduction, and passage of this Act have been
19  fulfilled and accomplished.

20       SECTION 5.   This Act takes effect September 1, 2023.

6



H.B. No. 5311

President of the Senate                    Speaker of the House

    I certify that H.B. No. 5311 was passed by the House on May 5, 2023, by the following vote:  Yeas 114, Nays 30, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 5311 on May 19, 2023, by the following vote:  Yeas 127, Nays 9, 2 present, not voting.

Chief Clerk of the House

    I certify that H.B. No. 5311 was passed by the Senate, with amendments, on May 17, 2023, by the following vote:  Yeas 21, Nays 10.

Secretary of the Senate

APPROVED: _6 - 8 - 23_

              Date

              Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
9:00 PM O'CLOCK

JUN 09 2023

Secretary of State

7