## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

The Woodlands Pride, Inc.; Abilene Pride Alliance; Extragrams, LLC; 360 Queen Entertainment LLC; Brigitte Bandit,

      Plaintiffs,

v.

Angela Colmenero, in an official capacity as Interim Attorney General of Texas; Montgomery County, Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; City of Abilene, Texas; Taylor County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Delia Garza, in an official capacity as County Attorney of Travis County; Joe D. Gonzales, in an official capacity as District Attorney of Bexar County,

      Defendants.

Civil Action No. 4:23-cv-02847

**PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANT COLMENERO, COUNTY DEFENDANTS, AND CITY OF ABILENE'S MOTIONS TO DISMISS AND REPLY TO DEFENDANTS' RESPONSES TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................ iv

I.    Plaintiffs Have Standing to Sue Defendants. ...................................2

    A.    Plaintiffs Have Standing to Bring a Pre-Enforcement
        Challenge ...........................................................................2

    B.    Plaintiffs Also Have Standing Because Their Speech Is
        Chilled By the Threat of SB 12's Enforcement Against Them ............4

    C.    Defendants' Arguments Do Not Undermine Plaintiffs'
        Standing.............................................................................6

    D.    Plaintiffs' Claims Are Ripe ...............................................11

II.   Defendants Are Properly Named and Not Immune from Suit .....................12

    A.    This Court Has Jurisdiction over the Attorney General......................12

    B.    This Court Has Jurisdiction over the District Attorneys and the
        County Attorney..................................................................13

    C.    This Court Has Jurisdiction over the Named Counties and
        Municipalities.....................................................................18

III.  SB 12 Violates the First and Fourteenth Amendments .................................22

    A.    SB 12 Is an Unconstitutional Content and Viewpoint-Based
        Regulation .........................................................................23

        1.    Plaintiffs' Performances Are Constitutionally Protected .........23

        2.    SB 12 Establishes Content and Viewpoint-Based
            Restrictions.................................................................27

        3.    The Attorney General's Attempts to Evade Strict
            Scrutiny Fail...............................................................28

            i.    SB 12 Is Still Subject to Strict Scrutiny Even if
                Ostensibly Targeted at Minors ........................................28

            ii.   The Second Effects Doctrine Is Inapplicable.................31

        4.    SB 12 Fails Both Strict and Intermediate Scrutiny...................33

    B.    SB 12 Is Unconstitutionally Overbroad and Vague............................35

    C.    No Party Contests that SB 12 Is an Unconstitutional Prior
        Restraint...........................................................................41

IV.     Plaintiffs Have Established the Remaining Factors Required for Injunctive Relief ................................................................................41

Certificate of Service .............................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*,
851 F.3d 507 (5th Cir. 2017) ...............................................................................15

*Arnone v. Cnty. of Dallas Cnty.*,
29 F.4th 262 (5th Cir. 2022) ...............................................................................20

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979)......................................................................................5, 12

*Barilla v. City of Houston*,
13 F.4th 427 (5th Cir. 2021) ...........................................................................4, 6

*Bigford v. Taylor*,
834 F.2d 1213 (5th Cir. 1988) ...........................................................................20

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011)............................................................................................28

*California v. LaRue*,
409 U.S. 109 (1972)....................................................................................24, 37

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) .............................................................................15

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000)............................................................................................33

*City of Los Angeles v. Alameda Books, Inc.*,
535 U.S. 425 (2002)............................................................................................31

*Clapper v. Amnesty Int'l. USA*,
568 U.S. 398 (2013)............................................................................................10

*Communist Party of U.S. v. Subversive Activities Control Bd.*,
367 U.S. 1 (1961)................................................................................................26

*Cooper v. Dillon*,
   403 F.3d 1208 (11th Cir. 2005) ..........................................................................20

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ...............................................................................5

*D. Houston Inc. v. U. S. Small Bus. Admin.*,
   579 F. Supp. 3d 959 (S.D. Tex. 2020) ..........................................................23, 25

*Daves v. Dallas Cnty.*,
   22 F.4th 522 (5th Cir. 2022) (en banc) ...................................................19, 20, 22

*Denver Area Educ. Telecommuns. Consortium, Inc. v. F.C.C.*,
   518 U.S. 727 (1996)............................................................................................28

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1996)......................................................................................24, 25

*Dream Defs. v. DeSantis*,
   553 F. Supp. 3d 1052 (N.D. Fla. 2021) ..............................................................22

*Echols v. Parker*,
   909 F.2d 795 (5th Cir. 1990) ..............................................................................20

*Evers v. Custer Cnty.*,
   745 F.2d 1196 (9th Cir. 1984) ............................................................................21

*Familias Unidas v. Briscoe*,
   619 F.2d 391 (5th Cir. 1980) ..............................................................................20

*Fla. Pawnbrokers & Secondhand Dealers Ass'n, Inc. v. City of Fort
   Lauderdale*,
   699 F. Supp. 888 (S.D. Fla. 1988) ......................................................................21

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990)............................................................................................37

*Galassini v. Town of Fountain Hills*,
   No. CV-11-02097-PHX-JAT, 2013 WL 5445483 (D. Ariz. Sept. 30,
   2013) ..................................................................................................................21

*Ginsberg v. State of New York*,
   390 U.S. 629 (1968)......................................................................................30, 34

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
  515 U.S. 557 (1995)..............................................................................23, 25

*Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*,
  993 F.2d 386 (4th Cir. 1993) ...............................................................24

*J & B Ent., Inc. v. City of Jackson*,
  152 F.3d 362 (5th Cir. 1998) ................................................................32

*Jett v. Dallas Indep. Sch. Dist.*,
  491 U.S. 701 (1989)...............................................................................19

*Johnson Co. Sherriff's Posse, Inc. v. Endsley*,
  926 S.W.2d 284 (Tex. 1996) ............................................................8, 26

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952)..........................................................................24, 25

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ................................................................15

*Longoria v. Paxton*,
  No. 22-50110, 2022 WL 832239 (5th Cir. Mar. 21, 2022) .................17

*McCardell v. U.S. Dep't of Housing & Urban Dev.*,
  794 F.3d 510 (5th Cir. 2015) ................................................................10

*McMillian v. Monroe Cnty.*,
  520 U.S. 781 (1997)...............................................................................20

*Miller v. California*,
  413 U.S. 15 (1973).............................................................29, 30, 37, 39

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ................................................................15

*Nat'l Press Photographers Ass'n v. McCraw*,
  504 F. Supp. 3d 568 (W.D. Tex. 2020) ...............................................17

*NiGen Biotech, L.L.C. v. Paxton*,
  804 F.3d 389 (5th Cir. 2015) ................................................................15

vi

*Norma Kristie, Inc. v. City of Oklahoma City,*
572 F. Supp. 88 (W.D. Okla. 1983)..............................................................24, 27

*Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.,*
477 U.S. 619 (1986)............................................................................................12

*Opulent Life Church v. City of Holly Springs, Miss.,*
697 F.3d 279 (5th Cir. 2012) ..............................................................................42

*Ostrewich v. Tatum,*
72 F.4th 94 (5th Cir. 2023) ..........................................................................15, 17

*Owen v. City of Independence,*
445 U.S. 622 (1980)............................................................................................21

*Red Bluff Drive-In Inc. v. Vance,*
648 F2d 1020 (5th 1981) ..............................................................................36, 37

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015)............................................................................................27

*Reno v. American Civil Liberties Union,*
521 U.S. 844 (1997)......................................................................................passim

*Roark & Hardee LP v. City of Austin,*
522 F.3d 533 (5th Cir. 2008) ..............................................................................40

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
547 U.S. 47 (2006)..............................................................................................26

*Sable Commc'ns of Cal., Inc. v. F.C.C.,*
492 U.S. 115 (1989)............................................................................................28

*Schacht v. United States,*
398 U.S. 58 (1970)........................................................................................24, 25

*Southeastern Promotions, Ltd. v. Conrad,*
420 U.S. 546 (1975)............................................................................................24

*Speech First, Inc. v. Fenves,*
979 F.3d 319 (5th Cir. 2020) ........................................................................passim

*Spence v. State of Wash.*,
    418 U.S. 405 (1974)...................................................................................25

*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021) ...............................................17

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014 )................................................................................2

*Tawakkol v. Vasquez*,
    No. 22-50434, --- F.4th ---, 2023 WL 5444329 (5th Cir. Aug. 24,
    2023) .......................................................................................................17

*Texas Alliance for Retired Americans v. Scott*,
    No. 20-40643, 2022 WL 795862 (5th Cir. 2022)................................16

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ...............................................................16

*Texas Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ...............................................................16

*Texas v. Johnson*,
    491 U.S. 397 (1989)...................................................................25, 26, 34

*Thomas v. Union Carbide Agr. Prods. Co.*,
    473 U.S. 568 (1985)...............................................................................12

*Time Warner Cable, Inc. v. Hudson*,
    667 F.3d 630 (5th Cir. 2012) ...............................................................35

*Turtle Island Foods, S.P.C. v. Strain*,
    65 F.4th 211 (5th Cir. 2023) ...............................................................2, 9

*United States v. O'Brien*,
    391 U.S. 367 (1968)...........................................................................33, 34

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)...........................................................................28, 33

*United States v. Stevens*,
    559 U.S. 460 (2010)...............................................................................40

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*,
　726 F.3d 524 (5th Cir. 2013) ...............................................................22

*Virginia v. Am. Booksellers Ass'n*,
　484 U.S. 383 (1988)..............................................................................5

*Ward v. Rock Against Racism*,
　491 U.S. 781 (1989)............................................................................25

*Whole Woman's Health v. Jackson*,
　142 S. Ct. 522 (2021)...................................................................passim

STATUTES

Tex. Bus. & Com. Code § 102.051.....................................................36

Tex. Loc. Gov't Code Chapter 243......................................................18

Tex. Loc. Gov't Code § 243.0031(b)...................................................41

Tex. Penal Code §§ 6.01-.04................................................................39

Tex. Penal Code § 43.23(a)(2).............................................................36

Tex. Penal Code § 43.28(a)(1)(D) ..................................................27, 36

Texas Health & Safety Code § 769.002 ................................................7

Travis County Municipal Code § 250.129(a) .......................................18

OTHER AUTHORITIES

House Bill 17 .......................................................................................17

Senate Bill 12.................................................................................passim

Website of County Attorney for Travis, County, Enforcement Litigation
　and Collections Division, *available at*
　https://www.traviscountytx.gov/county-attorney/enforcement-
　litigation-and-collections-division....................................................18

In response to Plaintiffs' Complaint and Motion for a Preliminary Injunction, Dkts. 1 and 10, Defendants have filed multiple responses and motions to dismiss that are primarily concerned with avoiding responsibility for this unconstitutional law, not defending it.[1] Plaintiffs have sued the parties statutorily tasked with enforcing SB 12; and because Plaintiffs all either perform or hold drag performances that are directly targeted by this law, they meet every requirement necessary to bring a pre-enforcement challenge.[2]

Only the Attorney General attempts to defend SB 12 on the merits, but binding case law is clear that a generalized interest in protecting children is not enough to salvage a law that targets speech because of its content and viewpoint, is both vague and overbroad, and acts a prior restraint. SB 12 should be enjoined.

---

[1]    *See* Dkt. 42 (Motion to Dismiss by City of Abilene); Dkt. 44 (Response by City of Abilene and The Woodlands Township); Dkt. 49 (Joint Motion to Dismiss by Montgomery County, Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; Taylor County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Delia Garza, in an official capacity as County Attorney of Travis County; Joe D. Gonzales, in an official capacity as District Attorney of Bexar County (hereinafter "County Defendants"); Dkt. 52 (Motion to Dismiss and Response by Angela Colmenero).

[2]    On August 24, 2023, Plaintiffs and Defendant The Woodlands Township filed a joint notice of stipulation of dismissal without prejudice based on The Woodlands Township's assertion that it is not a "municipality" under SB 12. Dkt. 54. On August 25, 2023, the Court issued an order updating the caption of this case to no longer include The Woodlands Township as a party and to correct the spelling of Defendant Joe D. Gonzales's name. Dkt. 65. Because The Woodlands Township is no longer a defendant in this case, its pending motion to dismiss is now moot. Dkt. 40.

## I.     Plaintiffs Have Standing to Sue Defendants.

As established in Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. 10 at 32-34, and in their Complaint, Dkt. 1, and as incorporated herein, Plaintiffs have demonstrated standing to sue Defendants for a facial challenge to SB 12 under the First and Fourteenth Amendments. Defendants' arguments to the contrary are unavailing.

### A.     Plaintiffs Have Standing to Bring a Pre-Enforcement Challenge

To demonstrate injury-in-fact in the pre-enforcement context, a plaintiff must show: "(1) that it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute." *See Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215–16 (5th Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014 )). When dealing with pre-enforcement challenges to recently enacted statutes, **"[c]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence**." *Speech First, Inc. v. Fenves,* 979 F.3d 319, 335 (5th Cir. 2020), as revised (Oct. 30, 2020) (emphasis added).

Each Plaintiff here has established standing. Plaintiff The Woodlands Pride has standing against Defendant Angela Colmenero, in an official capacity as Interim Attorney General of Texas, Montgomery County, Texas, and Brett Ligon, in an

official capacity as District Attorney of Montgomery County, because it intends to hold and host performances on both public property and the premises of commercial establishments in Montgomery County that are arguably proscribed by SB 12, Dkt. 10-2 (Rocha Decl.). Defendants Colmenero, Montgomery County, and Ligon are statutorily tasked with enforcing SB 12 and have not presented any "compelling contrary evidence" that they will not enforce SB 12 against The Woodlands Pride.

Plaintiff Abilene Pride Alliance has standing against Defendants Colmenero, the City of Abilene, Taylor County, and James Hicks, in an official capacity as District Attorney of Taylor County, because it intends to hold and host performances on both public property and the premises of commercial establishments in the City of Abilene and Taylor County that are arguably proscribed by SB 12, Dkt. 10-3 (Hardegree Decl.). Defendants Colmenero, the City of Abilene, Taylor County, and James Hicks have not disavowed enforcement.

Plaintiff Extragrams has standing against Defendants Colmenero and Delia Garza, in an official capacity as County Attorney of Travis County, because it intends to hold and host performances on both public property and the premises of commercial establishments in Travis County that are arguably proscribed by SB 12, Dkt. 10-4 (Sieff Decl.). Defendants Colmenero and Garza have not presented any "compelling contrary evidence" that they will not enforce SB 12 against Extragrams.

3

Similarly, Plaintiff 360 Queen Entertainment has standing against Defendants Colmenero and Joe D. Gonzales, in an official capacity as District Attorney of Bexar County, because it intends to hold and host performances on the premises of commercial establishments in Bexar County that are arguably proscribed by SB 12, Dkt. 10-5 (Montez Decl.), and Defendants Colmenero and Gonzales have not disavowed enforcement.

Lastly, Plaintiff Brigitte Bandit has standing against Defendants Colmenero and Defendant Delia Garza, in an official capacity as County Attorney of Travis County, because she intends to hold and host performances on both public property and the premises of commercial establishments in Travis County that are arguably proscribed by SB 12, Dkt. 10-6 (Bandit Decl.). Defendants Colmenero and Garza have not presented any "compelling contrary evidence" that they will not enforce SB 12 against Brigitte Bandit.

### B.    Plaintiffs Also Have Standing Because Their Speech Is Chilled By the Threat of SB 12's Enforcement Against Them

Although each Plaintiff directly has standing against Defendants as described above, they also have standing against Defendants because the threat of enforcement under SB 12 chills their protected First Amendment rights and causes self-censorship. *See Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) ("In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self-censorship is

an injury sufficient to confer standing." (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988))); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) ("One does not have to await the consummation of threatened injury to obtain preventive relief." (citation omitted)). Self-censorship must arise from a fear of prosecution that is not "imaginary or wholly speculative." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006).

Defendants fail to address that Plaintiffs establish injury-in-fact through self-censorship and chilled speech derived from a reasonable fear of prosecution and civil penalties. For example, Plaintiff 360 Queen Entertainment has hosted drag shows on the patio of a restaurant for over a year, but has now decided to stop all performances after September 1, 2023, for fear of civil and criminal penalties under SB 12. Dkt. 10-5 (Montez Decl.) ¶ 20. This complete chill of 360 Queen Entertainment's expression is not "imaginative or wholly speculative"—its drag shows occur in view of the restaurant windows, where families with children often dine, as well as within the view of the restaurant's parking lot that is shared with other businesses. *Id.* ¶ 23.

The remaining Plaintiffs likewise establish injury-in-fact through "chilled speech or self-censorship." Plaintiff The Woodlands Pride has already had to expend resources planning two separate events for its upcoming Pride Festival in October— one that features drag performers and one that does not. Dkt. 10-2 (Rocha Decl.) ¶ 21. If SB 12 goes into effect, The Woodlands Pride will not be able to have drag

performers at its Festival, because of the fear of civil and criminal penalties under SB 12. *Id.* Similarly, Abilene Pride Alliance's plans for its upcoming Pride event on September 30 have been cast into doubt, and if SB 12 takes effect, Abilene Pride Alliance will be forced to cease or limit its planned drag performances. Dkt. 10-3 (Hardegree Decl.) ¶ 21.

Plaintiff Brigitte Bandit and Extragrams' expressive activities have also been chilled by SB 12, which will worsen if the law takes effect. Performing in drag is Brigitte Bandit's full-time job, and having such a large swath of her performances chilled by SB 12 would devastate her life, art, and livelihood. Dkt. 10-6 (Bandit Decl.) ¶ 32. Plaintiff Extragrams has also lost business opportunities because of the impending enactment of the law and has already had to start self-censoring and modifying its performances. Dkt. 10-4 (Sieff Decl.) ¶¶ 23-25. If SB 12 takes effect, it would drastically curtail Extragrams' freedom of expression and business. *Id.*

These instances of chilled speech and self-censorship constitute injuries-in-fact that have already caused—and will continue to cause—Plaintiffs irreparable harm if Defendants are not enjoined from enforcing SB 12. *See Barilla*, 13 F.4th at 431 ("Chilled speech or self-censorship is an injury sufficient to confer standing.").

### C.   Defendants' Arguments Do Not Undermine Plaintiffs' Standing

Defendants try to distract from Plaintiffs' straightforward demonstration of standing with arguments that are unavailing and unsupported by binding case law.

6

First, Defendant Colmenero contests that Plaintiffs' performances are affected with a constitutional interest, but as explained below, this view fundamentally misunderstands First Amendment case law. No other Defendant contests that this standard is met.

Second, Defendant Colmenero's argument that there is no credible threat of prosecution against Plaintiffs hinges on an unsupportable view of what it means to control a commercial premises, which still does not displace Plaintiffs' standing against Defendant Colmenero because of the chilling effect of Attorney General enforcement.

SB 12 tasks Defendant Colmenero with enforcing Section 1 of the law, which prohibits a person who controls "the premises of a commercial enterprise" from allowing sexually oriented performances to occur in the presence of a minor. SB 12 § 1 (proposed Texas Health & Safety Code § 769.002). Defendant Colmenero's argument largely rests on the idea that enforcement can only be targeted at owners of commercial properties, which, according to Defendant Colmenero, does not include Plaintiffs. *See, e.g.*, Dkt. 52 at 20. However, she offers no authority for this overly narrow interpretation of the term "control" in SB 12.

This statute does not define the word "control," and the plain meaning of the term is not limited to solely owners of a property. *See* CONTROL, Black's Law Dictionary (11th ed. 2019) ("To exercise power or influence over."). Further, there

7

are numerous other contexts in which Texas law has defined "control" and found that the legal owner of a premises can delegate "control" to others, including a renter, lessee, or temporary occupant. *See, e.g.*, *Johnson Co. Sherriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284 (Tex. 1996) (finding, in premise liability context, that arena owner delegated control of the arena grounds to rodeo tenant, who had responsibility to maintain and prepare arena grounds for their particular event).

Every Plaintiff reasonably fears that it could be said to "control the premises of a commercial enterprise" and be subject to Attorney General enforcement. Most obviously, Plaintiff 360 Queen Entertainment "rent[s] out the back patio of [a] restaurant at an agreed-upon cost," which they reasonably fear could lead the Attorney General to accuse them of controlling the commercial premises. Dkt. 10-5 (Montez Decl.) ¶¶ 16-17, 24. Defendant Colmenero argues that because 360 Queen Entertainment is not the owner of the property, they do not control it, but, as established above, that is an unsupported reading of the law. The other Plaintiffs have likewise plead facts that support the idea they could reasonable be accused of controlling the premises.[3]

---

[3]     Plaintiffs The Woodlands Pride and Abilene Pride Alliance both have held drag events at commercial enterprises in the past and intend to continue doing so in the future, including The Woodlands Pride's planned event at a car dealership in early 2024, which Defendant Colmenero's motion seemingly ignores, and where The Woodlands Pride will arguably "control" the premises. *See* Dkt. 10-2 (Rocha Decl.) ¶ 25; Dkt. 10-3 (Hardegree Decl.) ¶¶ 16, 18. Similarly, both Extragrams and

Because Plaintiffs' injuries are based on the suppression of speech and SB 12's chilling effect, Plaintiffs need not prove that their interpretation of the statute is the "best interpretation, the test doesn't require that." *Turtle Island Foods*, 65 F.4th at 218. Plaintiffs must show only that their activities are "arguably proscribed" by the statute, and here that test is easily met. *Id.* Because the Attorney General does not disavow enforcement against them, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First*, 979 F.3d at 335.

Third, Plaintiffs have standing with respect to Defendant Colmenero regardless of whether they can be said to control a commercial premises. Section 1 of SB 12 arguably prohibits commercial enterprises from allowing Plaintiffs' performances to occur anywhere that minors might be present and gives the Attorney General authority to enjoin and fine commercial enterprises from hosting Plaintiffs' performances. Contrary to Defendant Colmenero's argument, it is not a "highly attenuated chain of possibilities" for Plaintiffs to have injuries-in-fact traceable to her if the Attorney General is tasked with enforcing SB 12 against all commercial enterprises where they hold performances. *See* Dkt. 52 at 20 (citing *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 410 (2013)). Unlike in *Clapper*, no speculation is

---

Brigitte Bandit host, organize, or participate in drag performances in commercial enterprises, where they could arguably be accused of "control[ling]" the premises around them. Dkt. 10-4 (Sieff Decl.) ¶ 21; Dkt. 10-6 (Bandit Decl.) ¶ 30.

needed to show how SB 12 harms Plaintiffs in this scenario.[4] If the Attorney General stops commercial enterprises from hosting drag performances anywhere that a minor could be present on the premises, that enforcement authority directly injures drag performers and production companies because it chills their expression and stops them from performing in these spaces. *See McCardell v. U.S. Dep't of Housing & Urban Dev.*, 794 F.3d 510, 519-20 (5th Cir. 2015) (finding an alleged injury to not be "highly attenuated" when "the chain-of-events framework . . . involve[d] fewer steps and no 'unfounded assumptions'"(citation omitted)). Under Defendant Colmenero's overly cramped interpretation of standing, an artist could not sue a local government that shuts down all art galleries, a film producer could not sue a state that shuts down all movie theaters, and a speaker could not challenge a law that bans all soapboxes. The Attorney General's enforcement authority to close off avenues of free expression directly harms all Plaintiffs in this case, even in the instances where Plaintiffs are found to not directly "control the premises of a commercial enterprise" under SB 12.

Finally, Plaintiffs also have standing against the remaining Defendants, who are each statutorily tasked with enforcing SB 12 against them. The District Attorneys

---

[4]     Similarly, the City of Abeline's reliance on *Clapper* and other case law concerning the speculative nature of surveillance is misplaced. SB 12 mandates that counties ban expression that the Plaintiffs arguably engage in. There is nothing speculative about such a harm.

and County Attorney do not dispute that they are responsible for enforcing the criminal penalties associated with SB 12. *See* Dkt. 49. The City of Abilene, Montgomery County, and Taylor County also do not dispute that they "may not authorize" and are tasked with "regulat[ing]" Plaintiffs' performances under SB 12. *See* Dkts. 42, 44, and 49.

The County Defendants and the City of Abilene argue that Plaintiffs have failed to put forth any evidence of enforcement. Dkt. 49, at 13; Dkt. 42, at 7. But such evidence is not required to establish standing for a pre-enforcement challenge. As previously established, in the absence of compelling contrary evidence, "courts will assume a credible threat of prosecution." *Speech First*, 979 F.3d at 335. No such contrary evidence exists here.

As in other pre-enforcement free speech cases, the remaining two prongs for standing—causation and redressability—are satisfied. *See, e.g.*, *Id.* at 338 ("[P]otential enforcement of the [challenged policies] caused . . . self-censorship, and the injury could be redressed by enjoining enforcement of [those policies].").

### D.    Plaintiffs' Claims Are Ripe

The County Defendants and the City of Abilene incorrectly assert that Plaintiffs' claims are not ripe for adjudication, but this is a facial legal challenge to a law that is set to take effect in a matter of days, and there is no further factual development that is necessary to aid the Court in determining the constitutionality

of enforcement of SB 12. In a pre-enforcement challenge, Plaintiffs need not "await the consummation of threatened injury to obtain preventive relief." *See Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581 (1985); *Babbitt*, 442 U.S. at 298; *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 625 n.1 (1986) ("[A] reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy.").[5]

## II.   Defendants Are Properly Named and Not Immune from Suit

### A.   This Court Has Jurisdiction over the Attorney General

The Attorney General concedes that it is "tasked with the enforcement of section 1 of SB 12 related to sexually oriented performances on premises of commercial enterprises." Dkt. 52 at 10. As exemplified by the case law below, that

---

[5]   In a separate line of argument, the City of Abilene contends that the City-specific claims are not yet ripe because (1) the City does not consider itself an "adverse litigant" to any Plaintiff and (2) Plaintiffs can only speculate how the City will enforce SB 12 when it takes effect. Dkt. 42 at 8-9. Contrary to the City of Abilene's argument, it is not the type of docket-clerk bystander excluded from the meaning of "adverse litigant" in *Whole Woman's Health v. Jackson,* 142 S. Ct. 522, 532 (2021). The City of Abilene is an "adverse litigant" because SB 12 tasks the City of Abilene with enforcing a provision that has already caused injury to Plaintiffs by chilling free speech. Though the City of Abilene asserts that it "has yet to demonstrate any willingness to enforce SB 12 in a manner that chills Plaintiffs' free expression," *id.* at 10, such evidence is not necessary for a court's pre-enforcement review, s*ee Ohio C.R. Comm'n*, 477 U.S. at 626 n.1. No further factual development is necessary—Plaintiff's claims against the City of Abilene (and all Defendants) are ripe.

is sufficient to establish jurisdiction over the Attorney General, which Defendant Colmenero seemingly does not contest. *See id.*

### B.   This Court Has Jurisdiction over the District Attorneys and the County Attorney

The County Defendants argue that Plaintiffs have failed to satisfy the *Ex parte Young* exception to sovereign immunity because Plaintiffs did not plead an adequate connection between the District Attorneys, the County Attorney, and the challenged statute. Specifically, County Defendants argue that Plaintiffs must demonstrate that they took some "affirmative action" regarding enforcement of the statute. Dkt. 49 at 6. Regardless of whether that may be true in certain contexts, it is decidedly not the law with respect to pre-enforcement challenges.

In *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), the Supreme Court held that, with respect to a pre-enforcement challenge, *Ex parte Young* requires nothing more than the defendant have a specific duty to enforce the challenged statute. There, "[e]ight Members of the Court h[e]ld that sovereign immunity does not bar a pre-enforcement challenge to [the challenged law] against" licensing officials who had a duty to enforce part of the challenged statutory scheme. *Whole Woman's Health*, 142 S. Ct. at 525. The Court explained that *Ex parte Young* applied because "[e]ach of these individuals is an executive licensing official who **may or must take enforcement actions** against the petitioners if they violate the

13

terms of Texas's Health and Safety Code, including [the challenged law]." *Id.* at 535-36 (emphasis added).[6]

The Court reached this conclusion even though none of the licensing officials had taken an "affirmative action" towards enforcement, as County Defendants demand here. *See id.*; *see also id.* at 542. (Thomas, J., dissenting in part) (noting that the Court applied *Ex parte Young* even though "none of the licensing officials has threatened enforcement proceedings against petitioners"). In rejecting the dissent's argument that more was required for *Ex parte Young* to apply, the Court concluded that:

> The petitioners have plausibly alleged that [the challenged law] has already had a direct effect on their day-to-day operations. And they have identified provisions of state law that appear to impose a duty on the licensing-official defendants to bring disciplinary actions against them if they violate [the challenged law]. In our judgment, this is enough . . . to suggest the petitioners will be the target of an enforcement action and thus allow this suit to proceed.

*Whole Woman's Health*, 142 S. Ct. at 536–37. This Supreme Court holding is consistent with Fifth Circuit standing precedent regarding pre-enforcement challenges to newly enacted laws—which, as discussed above, do not require that

---

[6]     *See also Whole Woman's Health*, 142 S. Ct. at 536 n.3 ("The petitioners may proceed against [the executive commissioner of the Texas Health and Human Services Commission] solely **based on her authority** to supervise licensing of abortion facilities and ambulatory surgical centers.") (emphasis added).

the defendant have taken an affirmative step of enforcement. *Speech First*, 979 F.3d at 335; *Ostrewich v. Tatum*, 72 F.4th 94, 102 (5th Cir. 2023).[7]

The litany of cases marshalled by Defendants are therefore simply inapposite. They either are not pre-enforcement challenges to a newly enacted law or they pre-date or fail to address the relevant Supreme Court holding in *Whole Woman's Health*.[8] Nor do they support the conclusion asserted by Defendants that Plaintiffs cannot bring this pre-enforcement challenge.

In *Air Evac EMS, Inc. v. Texas, Department of Insurance, Division of Workers' Compensation*, 851 F.3d 507 (5th Cir. 2017), the Fifth Circuit analyzed its *Ex parte Young* jurisprudence and observed that the cases, including *Ex parte Young* itself, often turn on whether the defendant had "authority to enforce the statute at issue" or a "specific means through which to apply" the challenged statute. *Id.* at

---

[7] The case law sometimes refers to standing and *Ex parte Young* interchangeably because there is "significant[] overlap" between "Article III standing analysis" and "*Ex parte Young* analysis." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).

[8] *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014) was not a pre-enforcement challenge and held that a suit against the governor did not satisfy *Ex parte Young* where a separate state agency was specifically tasked with implementing the challenged law. *Id.* at 746. *City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019), predates *Whole Woman's Health,* did not involve a criminal statute, and involved the unique situation where the Attorney General could not enforce a statute directly but only by speculatively intervening in a hypothetical future lawsuit. *Id.* at 1000 n.1. Neither *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392-95 (5th Cir. 2015) nor *K.P. v. LeBlanc*, 627 F.3d 115, 119-25 (5th Cir. 2010) concerned a pre-enforcement challenge.

518-19. Defendants also rely on *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) and *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (hereinafter "*Tex. Democratic Party II*"). There, the Court considered a challenge to Texas' vote by mail rules that limited no-excuse voting to only those over the age of 65. Ultimately, the Court concluded that the Secretary of State satisfied the *Ex parte Young* exception to sovereign immunity precisely because she was statutorily tasked with creating the application form that contained the challenged rule. *Tex. Democratic Party II*, 978 F.3d at 180 ("[T]he Secretary's specific duties regarding the application form under Section 31.002 are enough for us to conclude that the Secretary **has at least a scintilla of enforcement authority** for Section 82.003.") (emphasis added).

In contrast, in *Texas Alliance for Retired Americans v. Scott*, No. 20-40643, 2022 WL 795862, at *2 (5th Cir. 2022), the court held that the Secretary of State was not a proper defendant under *Ex parte Young* because local officials were instead tasked with enforcing the law at issue.[9] Indeed, just days ago, the Fifth Circuit affirmed that under *Ex parte Young*, the correct defendant is "generally the

---

[9]     Defendants also misread *Texas Alliance for Retired Americans'* reference to "compulsion or constraint" to require a showing of prior compulsion of constraint. Instead, "compulsion or constraint" refers to the nature of the enforcement power at issue.  2022 WL 795862 at *2 ("If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation."). The power of a district attorney to prosecute plaintiffs for violation of SB 12 is a clear compulsion or constraint.

individual tasked with enforcing the challenged act." *Tawakkol v. Vasquez*, No. 22-50434, --- F.4th ---, 2023 WL 5444329, at *2 (5th Cir. Aug. 24, 2023).

Under *Whole Woman's Health* and *Speech First*, the County Defendants are properly named because SB 12 amends the Texas Penal Code to create a new criminal offense that the district and county attorneys have a specific duty to enforce. *See* Dkt. 49 at 4 n.4 (noting that role of district attorneys and county attorneys in representing the State is enshrined in the Texas Constitution). Recent precedent from the Texas Court of Criminal Appeals makes clear that district and county attorneys have the specific duty to enforce state criminal law. In *State v. Stephens*, 663 S.W.3d 45, 52 (Tex. Crim. App. 2021), the Court of Criminal Appeals held that enforcing criminal law is "the specific duty of county and district attorneys." *Id.*; *see also Longoria v. Paxton*, No. 22-50110, 2022 WL 832239, at *2 (5th Cir. Mar. 21, 2022) (relying on *Stephens* to find that Attorney General was not proper party in a challenge to criminal provisions, but allowing suit to go forward against district attorneys); *Ostrewich*, 72 F.4th at 102 (similar).[10]

Further, the soon-to-be-law House Bill 17 ("HB 17") emphasizes the duty of district attorneys to enforce criminal laws of Texas. HB 17, which goes into effect on September 1, 2023, establishes that district attorneys may be removed from office

---

[10]     *See also Nat'l Press Photographers Ass'n v. McCraw,* 504 F. Supp. 3d 568, 583 (W.D. Tex. 2020) (district attorney's duty to enforce state law sufficient to satisfy *Ex parte Young*).

if they adopt any policy that "prohibits or materially limits the enforcement of any criminal offense." HB 17 § 1.[11]

Plaintiffs have alleged that they intend to take action arguably proscribed by SB 12; the District Attorneys and County Attorneys have a specific duty to enforce SB 12. Nothing more is required to meet the *Ex parte Young* exception.

## C. This Court Has Jurisdiction over the Named Counties and Municipalities

This Court has jurisdiction over the municipalities and counties named in Plaintiffs' suit. The Supreme Court has long held that counties and municipalities are not immune from suit, and that suit may be brought against "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular

---

[11]   As a County Attorney, Defendant Delia Garza is also specifically charged with enforcing Section 2 of SB 12. Section 2 of SB 12 amends Local Government Code Chapter 243, which is entitled "Municipal and County Authority To Regulate Sexually Oriented Business."

Section 243.010 of that Chapter authorizes municipalities and counties to bring suit in district court to enforce violations of regulations adopted under the chapter. Section 250.129(a) of the Travis County Municipal Code specifically cites that provision in noting the county's authority to civilly enforce regulations related to Sexually Oriented Businesses. Section 250.129(c) then specifically authorizes the Travis County Attorney to bring suit seeking injunctive relief for violation of regulations concerning sexually oriented businesses. *See also* Website of County Attorney for Travis, County, Enforcement Litigation and Collections Division, *available at* https://www.traviscountytx.gov/county-attorney/enforcement-litigation-and-collections-division ("The lawyers in the Division provide civil enforcement of state laws and county regulations, pursue varied claims on behalf of Travis County and its officials.").

constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491

U.S. 701, 737 (1989). Further, it is clear that that counties and cities are properly

named persons for § 1983 claims. *Daves v. Dallas Cnty.*, 22 F.4th 522, 532 (5th Cir.

2022) (en banc).

This is a pre-enforcement challenge before a law has gone into effect. No

county or city defendant has disavowed SB 12—much less put forth compelling

evidence to show that they will not comply with it. As discussed above, in a pre-

enforcement challenge to a new law, the absence of such a disavowal is sufficient to

establish the inference that defendants will take unconstitutional enforcement

action—which for the city and county defendants will incur through their relevant

policy makers. *See Speech First*, 979 F.3d at 335.

Only the City of Abilene fully challenges that municipal liability exists in this

case.[12] But none of the cases cited by Abilene address the scenario at issue here—a

pre-enforcement challenge to a law that has not yet gone into effect, where the

counties and municipalities are specifically charged with civil enforcement of the

law. Instead, the majority of cases cited by Defendants involve either judges,

prosecutors, or sheriffs whose general duty to enforce criminal laws has allegedly

harmed plaintiffs. Importantly, these cases do not hold that municipalities are

---

[12]     Montgomery County and Taylor County's motion primarily refers to *Ex parte Young* liability with respect to their district attorneys. *See* Dkt. 49 at 4-7.

immune from liability; rather, they hold that under a state's particular constitutional structures, certain actors in the criminal system wear "two hats" and at times are acting for the state. *See, e.g.*, *Arnone v. Cnty. of Dallas Cnty.*, 29 F.4th 262, 266 (5th Cir. 2022) (referring to the "dual-hat" problem). In that scenario, the Supreme Court and Fifth Circuit have held that when judges, prosecutors, or sheriffs are acting for the state, they are not properly named under a *Monell* liability theory.[13]

The facts here are distinguishable. The City does not allege that it or its final policy makers—city council—wear dual hats and at times operate as state officials; nor do they cite any case law for that position. And, critically, in the context of a pre-enforcement challenge, none of the city or county defendants disavows SB 12 or offers compelling evidence they will not adopt policies and practices that prohibit drag shows and other First Amendment activity from occurring on city or county property. Such presumed prohibitions by the municipal defendants are sufficient to establish liability regardless of whether they flow from state law. *See, e.g.*, *Cooper*

---

[13]   *See Daves*, 22 F.4th at 533 (judges that set bail schedules were acting for the state); *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997) (in suit regarding suppression of evidence, under Alabama law, sheriffs act for the state when executing their duties); *Arnone v. Cnty. Of Dallas Cnty.*, 29 F.4th 262, 266 (5th Cir. 2022) (holding that district attorneys act for the state in promulgating polygraph policy); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (county judge acted for the state in issuing disclosure demands); *Bigford v. Taylor*, 834 F.2d 1213, 1223 (5th Cir. 1988) (magistrate acts for the state in setting bond); *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990) (district attorney and county attorney were acting for state in enforcing law).

*v. Dillon,* 403 F.3d 1208, 1223 (11th Cir. 2005) (police chief's "decision to enforce an unconstitutional statute against Cooper constituted a 'deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy.'"); *Evers v. Custer Cnty.*, 745 F.2d 1196, 1203 (9th Cir. 1984) (rejecting argument that because County was following state law it was immune from suit for its unconstitutional actions).[14]

This result is also consistent with the aim of *Monell* to encourage local officials to err against enforcing unconstitutional laws: "The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights." *Owen v. City of Independence*, 445 U.S. 622, 651–52 (1980).

Even if the City of Abeline were correct about *Monell*, at best their argument would show that in this unique context they are acting as officials for the state and

---

[14]     *See also Galassini v. Town of Fountain Hills*, No. CV-11-02097-PHX-JAT, 2013 WL 5445483, at *27 (D. Ariz. Sept. 30, 2013) ("If a policymaker deprives a person of their constitutional rights as a result of the application of a state statute, without regard to the application's constitutionality, the municipality could be subject to Monell liability because 'a municipality will be liable for all of its injurious conduct, whether committed in good faith or not.' (citation omitted)); *Fla. Pawnbrokers & Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale*, 699 F. Supp. 888, 890 (S.D. Fla. 1988) ("While it is true that the city did not enact the pawnbroker seizure statute, it is equally clear that the city's policy of enforcing the statute constitutes state action.").

therefore subject to suit under *Ex parte Young*. If the municipal defendants are correct that they are not directly liable under *Monell* because they are acting for the state, they would still be subject to suit as officials of the state—a result contemplated by the Fifth Circuit *See, Daves*, 22 F.4th at 542 (noting possibility that municipal parties acting as agent of the State could be sued under *Ex Parte* Young); *see also Dream Defs. v. DeSantis,* 553 F. Supp. 3d 1052, 1090 (N.D. Fla. 2021) (in pre-enforcement challenge finding that county sheriff was subject to suit as arm of the state).[15]

## III.   SB 12 Violates the First and Fourteenth Amendments

Among Defendants, only the Attorney General seeks to defend SB 12 on the merits. *See* Dkt. 52 at 24–41. However, this law is clearly unconstitutional on its face, and Defendants should be enjoined from enforcing SB 12 because it imposes

---

[15]    For the reasons expressed herein, jurisdiction is proper over each named Defendant. However, even if this Court finds that it lacks jurisdiction over certain Defendants, so long as one Defendant remains, the Court should still strike down the entirety of SB 12. Each section of SB 12 is inextricably intertwined with Section 3's unconstitutional creation of a new category of disfavored speech called "sexually oriented performances." No section can be interpreted or stand absent that portion of Section 3; accordingly, if the Court finds that the targeting of "sexually oriented performances" is unconstitutional, the whole law must fall. *See, e.g., Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 538 (5th Cir. 2013) ("[W]e conclude that the Ordinance's provisions are so 'essentially and inseparably connected in substance' that, despite the presence of a severability clause, they are not severable.") (citation omitted).

content and viewpoint-based restrictions that do not meet heightened scrutiny, is

overbroad, vague, and an impermissible prior restraint on free expression.

### A.   SB 12 Is an Unconstitutional Content and Viewpoint-Based Regulation

#### 1.   Plaintiffs' Performances Are Constitutionally Protected

The Attorney General does not dispute that SB 12 is content based because

"sexually oriented performances" are regulated based solely on their content. *See*

Dkt. 52 at 24-41. Instead, the Attorney General appears to assert that Plaintiffs have

no constitutional protections *at all* for the kinds of performances they engage in.

The Attorney General's novel interpretation of the First Amendment is

foreclosed by Supreme Court precedent. Expressive conduct need not convey one

singular message or be understood uniformly by others to be constitutionally

protected. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569

(1995) (holding that "a narrow, succinctly articulable message is not a condition of

constitutional protection, which if confined to expressions conveying a

'particularized message,' would never reach the unquestionably shielded painting of

Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis

Carroll") (internal citation omitted).

Contrary to the Attorney General's argument, Dkt. 52 at 28, even

performances held primarily for entertainment have been found to be expressive

conduct shielded by the First Amendment. *See, e.g.*, *D. Houston Inc. v. U. S. Small*

*Bus. Admin.,* 579 F. Supp. 3d 959, 966 (S.D. Tex. 2020) (Hittner, J.) ("Exotic dancing is within the range of speech that receives First Amendment protection.").[16]

Like many other art forms, drag performances are inherently expressive and Plaintiffs convey various political, social, cultural, emotional, spiritual, and aesthetic meanings through their performances. *See generally* Dkt. 10-4 (Sieff Decl.); Dkt. 10-6 (Bandit Decl.). As the Supreme Court recognized in *Southeastern Promotions, Ltd. v. Conrad*, "live drama is [not] unprotected by the First Amendment—or subject to a totally different standard from that applied to other forms of expression." 420 U.S. 546, 557–58 (1975) (invalidating a prior restraint on the Broadway musical *Hair*). Even where performers are "acting," "singing," or "frequently mix[ing] speech with live action or conduct," they still find shelter under the First Amendment and it does not matter whether audiences come away from their shows with conflicting messages or no message at all. *Id.; Cf. Doran v. Salem Inn, Inc.*, 422

---

[16] *See also Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88, 91 (W.D. Okla. 1983) (rejecting the government's contention that a "'Miss Gay America Pageant' is not accorded Constitutional protection because it is a commercial enterprise and not a noteworthy artistic endeavor such as a play or musical"); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 499 (1952) (finding films and movies are protected by the First Amendment even if aimed primarily at commercial entertainment); *Schacht v. United States,* 398 U.S. 58, 61–62 (1970) (holding an "amateurish and perhaps unappealing . . . street skit" to be protected First Amendment expression and noting that "[s]ince time immemorial, . . . theatrical performances, often performed by amateurs, have played an important part in the entertainment and the education of the people of the world"); *Iota Xi Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 391 (4th Cir. 1993) (finding that a fraternity "ugly woman contest" is protected expressive conduct).

U.S. 922, 932 (1975) (finding even "'barroom' type of nude dancing" to be inherently expressive and constitutionally protected) (discussing *California v. LaRue*, 409 U.S. 109, 118 (1972).

The Attorney General's reliance on *Texas v. Johnson*, 491 U.S. 397, 404 (1989), is misplaced. That case involved an incident of flag burning, and the Supreme Court asked whether a pure act of conduct might be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Id*. (quoting *Spence v. State of Wash*., 418 U.S. 405, 409 (1974)). In order for conduct to be considered inherently expressive, the Supreme Court asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id*.

The Supreme Court has never applied this requirement of a "particularized message" to music, *Ward v. Rock Against Racism*, 491 U.S. 781 (1989), movies, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 495 (1952), parades, *Hurley,* 515 U.S. at 557, or live performances, *Schacht v. United States,* 398 U.S. 58, 58 (1970), which are inherently expressive by their very nature. Indeed, even nude dancing is inherently expressive and shielded by the First Amendment. *D. Houston Inc*., 579 F. Supp. 3d at 966. There is no intelligible principle why drag performances (or other types of performances impacted by SB 12) could be categorically excluded from

25

First Amendment protections. And even under the Supreme Court's test for pure conduct in *Johnson*, Plaintiffs' performances in this case still convey particularized messages understood by their audiences. *See, e.g.*, Dkt. 10-4 (Sieff Decl.); Dkt. 10-6 (Bandit Decl.).

The Attorney General relies heavily on *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 65 (2006) ("*FAIR*"), but that case is inapposite. *FAIR* rejected a First Amendment challenge to the Solomon Amendment, which allows the Department of Defense to deny federal funds to law schools that prohibit or impede military representatives from participating in on-campus recruiting. 547 U.S. at 55. Because the Court found that no observer could possibly know why military recruiters were not present on campus absent accompanying speech, the law schools' decision to exclude them was considered pure conduct and not an inherently expressive activity. *Id.* A decision not to allow recruiters on campus is vastly different from Plaintiffs' performances here, which are filled with messages, meaning, and creative and expressive elements. Further, the *FAIR* court still subjected the challenged statute to intermediate scrutiny. *Id.* As described below, SB 12 fails both strict and intermediate scrutiny, so *FAIR* does not save SB 12 from being unconstitutional.

The Attorney General's attempt to insulate drag (and other) performances from any constitutional protection is a dangerous departure from established First

Amendment principles. *See Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 137 (1961) (Black, J., dissenting) ("[T]he freedoms of speech, press, petition and assembly guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish."). As Judge David L. Russell of the Western District of Oklahoma held 40 years ago when a local government tried to unconstitutionally stop drag artists from performing at a Miss Gay USA Pageant, "The First Amendment values free and open expression, even if distasteful to the majority, including personally distasteful to this Court. As Voltaire said, 'I disapprove of what you say, but I will defend to the death your right to say it.'" *Norma Kristie, Inc.*, 572 F. Supp. at 92.

> ### 2.    SB 12 Establishes Content and Viewpoint-Based Restrictions

SB 12 is content based because the statute facially restricts performances based on their content. *See* Dkt. 10 at 35–37. The Attorney General does not dispute this, nor respond to Plaintiffs' argument that the law is also viewpoint-based because it specifically seeks to prohibit performers from "using accessories or prosthetics *that exaggerate* male or female sexual characteristics." *Id.* at 36-37 (citing SB 12 § 3 (proposed Tex. Penal Code § 43.28(a)(1)(E)). Both content and viewpoint discrimination trigger strict scrutiny and make SB 12 "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

### 3.   The Attorney General's Attempts to Evade Strict Scrutiny Fail

#### i.   *SB 12 Is Still Subject to Strict Scrutiny Even if Ostensibly Targeted at Minors*

Without disputing that SB 12 regulates performances based on their content or viewpoint, the Attorney General tries to evade strict scrutiny by claiming that "States may restrict minors' access to sexual materials without violating the First Amendment." Dkt. 52 at 29. This assertion is unsupported by Supreme Court precedent, which requires all content and viewpoint-based laws to be subject to strict scrutiny, even where those laws are solely aimed at or limited to minors. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (applying strict scrutiny and invalidating a state law applying only to minors and prohibiting the sale of violent video games). While acknowledging the state's compelling interest in protecting children, the Supreme Court has consistently rejected attempts to sidestep First Amendment strict scrutiny. *See, e.g., United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 811 (2000) (applying strict scrutiny even where "[t]he overriding justification for the regulation is concern for the effect of the subject matter on young viewers"); *Denver Area Educ. Telecommuns. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 754 (1996) (applying strict scrutiny and invalidating a rule limiting "'patently offensive' sex-related material" based on the government's interest in "protecting the physical and psychological well-being of minors") (cleaned up); *Sable*

*Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 129 (1989) (applying strict scrutiny and invalidating a "ban on both obscene and indecent telephone communications" because there were "less restrictive means . . . to achieve the Government's interest in protecting minors").

*Reno v. American Civil Liberties Union*, 521 U.S. 844, 874 (1997), relied on by Defendant Colmenero, Dkt. 52 at 29, underscores the unconstitutionality of SB 12. There, the Supreme Court applied strict scrutiny and invalidated part of a statute prohibiting communications on the internet that were "obscene or indecent, knowing that the recipient of the communication is under 18 years of age." *Reno*, 521 U.S. at 859. "Notwithstanding the legitimacy and importance of the congressional goal of protecting children from harmful materials," the Court still found the law to violate the First Amendment and held that it was an impermissible content-based restriction on speech, facially overbroad, and unconstitutionally vague. *Id.* at 849. The government argued that it could prohibit materials for minors beyond the three-part obscenity test established in *Miller v. California*, 413 U.S. 15 (1973), and used one term from this test—"patently offensive"—in the statute at issue. But, as is the problem with SB 12 and its free-floating "prurient interest" requirement, the Supreme Court found that isolating one term from the *Miller* test and divorcing it from the other critical factors was constitutionally infirm. *Reno*, 521 U.S. at 873. Because the statute was content-based, overbroad, vague, and threatened criminal

penalties, the Court found there to be an "obvious chilling effect on free speech." *Id.* at 872.

The only other case cited by the Attorney General to claim sweeping authority for the state to restrict access to performances for minors is *Ginsberg v. State of New York*, 390 U.S. 629 (1968), but this case underscores the need for guardrails of the type missing from SB 12. *See* Dkt. 52 at 29. *Ginsberg* upheld a New York law that prohibited the sale of magazines to people under the age of 17 that contained nude photos, were harmful to minors, and "(i) predominantly appeal[ed] to the prurient, shameful or morbid interest of minors, [] (ii) [were] patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors, and (iii) [were] utterly without redeeming social importance for minors." *Ginsberg*, 390 U.S. at 632–33.

Although *Ginsberg* predates *Miller*, it previewed important aspects of the three-part obscenity test and specifically found that the material targeted by this regulation was obscene for minors. The *Ginsberg* court noted that "the prohibition against sales to minors does not bar parents who so desire from purchasing the magazines for their children," *id.* at 639, and the law contained an affirmative defense for any salesperson who made an "honest mistake" and a "reasonable bona fide attempt to ascertain the true age of such minor," *id.* at 644. SB 12 provides no such guardrails and goes far beyond *Ginsberg* to prohibit all performances where

minors might be present, regardless of "social importance" or value, honest mistakes, or if parents choose to bring their teenagers to a show that they believe to be age-appropriate.

### ii.    The Second Effects Doctrine Is Inapplicable

The Attorney General urges the Court to apply intermediate scrutiny by trying to analogize to cases involving the secondary effects doctrine. *See* Dkt. 52 at 29-30. The secondary effects doctrine applies primarily to zoning regulations on sexually oriented business that are enacted due to concerns about "the secondary effects of such [performances] on the surrounding community, namely, at crime rates, property values, and the quality of the city's neighborhoods." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 430 (2002) (upholding an ordinance after "the city of Los Angeles conducted a comprehensive study of adult establishments and concluded that concentrations of adult businesses are associated with higher rates of prostitution, robbery, assaults, and thefts in surrounding communities").

The secondary effects doctrine does not apply here because the *primary effect* of SB 12 is to regulate the content of performances. As discussed above and in Plaintiffs' Motion, Dkt. 10 at 35-37, the plain language of SB 12 constitutes a content-based restriction. Further, the legislative history confirms that the stated purpose and intent is to respond to a "recent cultural trend has been for drag shows to be performed in venues generally accessible to the public, including children."

*See, e.g.*, Dkt. 47-12 at 2 (Trial Exhibit 11); Dkt. 47-15 at 2 (Trial Exhibit 23); Dkt. 47-18 at 2 (Trial Exhibit 26); *see also* Dkt 10 at 11-13.

Unable to cite to any legislative history that does not evince a clear intent to target the content or views of performances, the Attorney General relies on the purported expert opinion of Dr. Michael Arambula to assert that "[t]he exposure of minors to sexually oriented performances can adversely affect them in different ways." Dkt. 52 at 31. This "ipse dixit" adds no value to this case and does not salvage the unconstitutionality of SB 12. As explained in more detail in Plaintiffs' Motion to Exclude Testimony and Strike Report of Michael Arambula, M.D., Dkt. 68, Dr. Arambula's declaration is fundamentally flawed and not useful to this Court. Moreover, a generalized concern about harm to minors is insufficient to establish a legislative intent focused on secondary effects, or even a post-hoc justification for the law to evade strict scrutiny. *See J & B Ent., Inc. v. City of Jackson*, 152 F.3d 362, 374 (5th Cir. 1998) ("[T]he mere incantation of the words 'secondary effects' may not save a statute 'formulated without specific attention to specific secondary effects.'" (citation omitted)).

Regardless, Dr. Arambula does not and cannot deny that SB 12 targets speech, even if the reason for such targeting ostensibly concerns the protection of children. Because SB 12 targets protected speech, the secondary effects doctrine is inapplicable. *Reno*, 521 U.S. at 867–68 (secondary effects doctrine did not apply

where statute's purpose is to "protect children from the primary effects of 'incident' and 'patently offensive' speech rather than any 'secondary' effect of such speech"). As the Supreme Court has observed:

> We have made clear that the lesser scrutiny afforded regulations targeting the secondary effects of crime or declining property values has no application to content-based regulations targeting the primary effects of protected speech. The statute now before us burdens speech because of its content; it must receive strict scrutiny.

*Playboy Ent. Grp., Inc.*, 529 U.S. at 815 (internal citation omitted). Even under the nude dancing cases cited by the Attorney General to urge the Court to apply intermediate scrutiny, the first step of analysis is "whether the State's regulation is related to the suppression of expression.'" *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Here, Senate Bill 12 fails that test because its text and legislative history make clear that it was enacted to target and restrict the content of performances.

### 4.   SB 12 Fails Both Strict and Intermediate Scrutiny

The Attorney General does not explain how SB 12 could survive strict scrutiny and specifically fails to explain how the bill is narrowly tailored or "the least restrictive means" to "serve a compelling governmental purpose." *Playboy Ent. Grp., Inc.*, 529 U.S. at 813 (citing *Reno*, 521 U.S. at 874).  Accordingly, SB 12 fails strict scrutiny. *See also* Dkt. 10 at 37-39.

The Attorney General urges this Court to apply intermediate scrutiny as articulated in *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968). But *O'Brien* is

inapplicable because here the government regulation is targeted at the suppression of free expression. *Johnson*, 491 U.S. at 407 (application of *O'Brien* is limited "to those cases in which the governmental interest is unrelated to the suppression of free expression") (citation and quotation marks omitted).

Regardless, even under the intermediate scrutiny test urged by the Attorney General, SB 12 is unconstitutional. Under *O'Brien*, a statute can only pass constitutional muster if it is enacted "if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 376–377. Here, the Attorney General fails to establish how SB 12 is "unrelated to the suppression of free expression" or imposes "incidental restriction[s]" no greater than necessary. There are clearly less restrictive means of accomplishing its purported objective than the sweeping law at issue that criminalizes performers, fines businesses, and mandates prior restraints on public property like the broad and vague requirements of SB 12.[17]

Even *Ginsberg*, relied upon by the Attorney General, is far narrower than SB 12. There, the statute explicitly contained an affirmative defense, incorporated all

---

[17]    For example, Hippie Hollow is a Travis County park that permits nude swimming, and allows only individuals who are 18 and older. *See* https://parks.traviscountytx.gov/parks/hippie-hollow. Under SB 12, Travis County could not allow a "sexually oriented performance" at Hippie Hollow even though no one under 18 would be in attendance.

three parts of the obscenity test, and applied only to people under the age of 17. 390 U.S. at 632–33. SB 12 contains no affirmative defenses, fails to include any exception for performances of serious artistic or other value, and treats all performances for 17-year-olds—who have legally reached the age of consent in Texas, *see* Tex. Penal Code§ 21.11—in the same way as 3-year-olds. Accordingly, the Attorney General has no support for its bald assertion that "[t]here is no less restrictive way for the government to further its interest in protecting minors from viewing sexually oriented performances" than to promulgate SB 12. Dkt. 52 at 32; *see also Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 641 (5th Cir. 2012) (finding that even when applying intermediate scrutiny, a Texas statute violated the First Amendment).

### B.   SB 12 Is Unconstitutionally Overbroad and Vague

As explained in Plaintiffs' Motion, SB 12 is unconstitutionally overbroad and vague. *See* Dkt. 10 at 40-49. The Attorney General's arguments regarding these constitutional safeguards focus narrowly on two singular terms while overlooking the multiple, vague, and broad-reaching definitions that doom SB 12 as unconstitutional. *See* Dkt. 52 at 34–40.

Defendant Colmenero argues that the terms "lewd" and "prurient interest in sex" employed in SB 12 are sufficiently defined either in case law, a dictionary, or common usage that Plaintiffs' overbreadth and vagueness claims fail. But Plaintiffs'

35

arguments do not rest on these two terms alone. SB 12 is riddled with multiple vague terms and broad-reaching definitions that combined criminalize substantial amounts of non-obscene expressive activity. For example, as argued in Plaintiffs' Motion, the statute applies to every "visual performance" regardless of the medium or venue, S.B. 12 § 3 (proposed Tex. Penal Code §43.23(a)(2)), and to all "performer[s]" financially compensated or not, *id.* (proposed Tex. Penal Code §43.28(a)(2)(A)(i)-(ii)). The definition of "nude" reaches so far as to include "*any* portion of the . . . buttocks." *Id.* (proposed Tex. Penal Code § 43.28(a)(2)(A)(i)) (citing Tex. Bus. & Com. Code § 102.051) (emphasis added). In addition, the five-part test for "sexual conduct" prohibits "actual contact or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person," *id.* (proposed Tex. Penal Code § 43.28(a)(1)(D)), as well as any "exhibition of sexual gesticulations using accessories or prosthetics that exaggerate male or female sexual characteristics," *id.* (proposed Tex. Penal Code § 43.28(a)(1)(E)).

Exacerbating the sweeping terminology in the statue is the utter lack of guardrails cabining the statute's reach to shield First Amendment protected activity. Defendant Colmenero relies on *Red Bluff Drive-In Inc. v. Vance*, 648 F2d 1020, 1026 (5th Cir. 1981), for the proposition that a statute withstands a constitutional challenge without a definition for "prurient interest in sex." But the Texas statute at issue in that case only withstood constitutional scrutiny because it incorporated

limitations to its reach. The Fifth Circuit noted that the statute "recites, with little variation, the familiar three-part *Miller* test for determining the boundary between protected expression and regulable obscenity." *Id*. at 1026. Specifically, "[t]o be obscene under the Texas obscenity statute [at issue in *Red Bluff*], expression must lack "serious literary, artistic, political and scientific value." *Id*. at 1027. In contrast, S.B. 12 lacks these safeguards. Indeed, in *Reno*, the Supreme Court determined a statute was overbroad where it adopted only part of the *Miller* test and not its entirety. 521 U.S. at 872–76.

SB 12's departure from *Miller* also refutes the Attorney General's argument that "prurient interest in sex" is well defined in the case law, because that case law largely mimics the *Miller* test. *See, e.g.*, *LaRue,* 409 U.S. at 127; *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 251 (1990) (Scalia, J., concurring in part and dissenting in part). SB 12's departure from *Miller*—jettisoning the reasonable person standard, untethering prurient interests from community standards, etc.—exacerbates the statute's vagueness and overbreadth. *See* Dkt. 10 at 43-44.

Further, without *Miller*'s several limits carving out expression that "taken as a whole" has "serious literary, artistic, political, or scientific value," *Miller*, 413 U.S. at 24, the statute penalizes vast amounts of non-obscene protected expression with criminal and civil liability. Such expression could incur civil and criminal penalties for the Dallas Cowboy cheerleaders as they thrust their hips while dancing on the

field or as they bend forward at the hips in formation. It reaches an Elvis impersonator gyrating while singing a song, or a Dolly Parton impersonator giving an audience member a hug during a performance. As applied to Plaintiffs, this statute could proscribe their performances. The Woodland Pride's and Abilene Pride Alliance's drag artists typically dance and lip-sync in costume, Dkt. 10-2 (Rocha Decl.) ¶ 5; Dkt. 10-3 (Hardegree Decl.) ¶ 8, while using accessories that "exaggerate male or female sexual characteristics" and sometimes moving in ways that could be interpreted as "sexual" or "represent[ing] . . .simulated . . . sexual acts" under S.B. 12 by others, Dkt. 10-2 (Rocha Decl.) ¶ 9 (alterations in original); *see* Dkt. 10-3 (Hardegree Decl.) ¶ 10. Some drag performers in Abilene Pride Alliance's performances sometimes give hip bumps, or front facing hugs to audience member and sometime sit in their laps, Dkt. 10-3 (Hardegree Decl.) ¶ 11, which SB 12 could target for civil or criminal enforcement. Extragrams' performers impersonate Dolly Parton, Cher, Freddy Mercury and Beyonce. Dkt. 10-4 (Sieff Decl.) ¶ 5. 360 Queen Entertainment host performances in which drag artists use accessories and prosthetics including "wigs, makeup, high heels, bodysuits, butt pads, hip pads, and prosthetic breasts" to exaggerate feminine characteristics. Dkt. 10-5 (Montez Decl.) ¶ 22. At times they also as twerk, dance, sitting on people's laps, or flirt with customers which could be interpreted as "sexual" by some and be swept up by SB 12's prohibitions. *See id.* Brigitte Bandit built a career as a drag artist by

impersonating Dolly Parton. Dkt. 10-6 (Bandit Decl.) ¶ 9. To perform as Dolly Parton, she uses a prosthetic breast plate, among other accessories, to exaggerate their female characteristics. *Id.* ¶ 11. When Bandit dances as Dolly and does the splits, shakes her hips and chest, some could consider this "sexual." While Plaintiffs do not consider any of this expression lewd, SB 12 arguably could trigger civil or criminal liability for Plaintiffs. These are not fanciful hypotheticals as Defendant Colmenero suggests—this is expression Plaintiffs have engaged in and plan to engage in in the future. The Constitution does not permit such sweeping incursion into protected expression.

Nor does a *mens rea* requirement imported from other Texas statutes salvage SB 12. Defendant Colmenero argues that the Texas Penal Code §§ 6.01-.04 provides default mental states for any offense that does not "prescribe" and that does not expressly dispense with the requirement. Dkt. 52 at 40. As an initial matter, this provision of the penal code is inapplicable to the civil penalties set forth in Section 1. Further, even under Defendant Colmenero's view, the State would need to show only that Plaintiffs were "reckless" to prosecute them. *Id.* at 40-41. Such a low standard does not accommodate the First Amendment protected activity demanded by the Supreme Court in *Miller*. 413 U.S. at 24. For instance, if Plaintiffs performed or hosted performances outdoors at a bar, they could arguably be charged under a reckless standard because they were aware of a risk that a passerby could be under

18. Even if a *mens rea* requirement is incorporated into SB 12, it would still chill and sanction vast amounts of First Amendment protected activity and this Court should enjoin the statute as overbroad. *United States v. Stevens*, 559 U.S. 460, 473 (2010).

This Court should also enjoin the statute as vague because the operation of SB 12's vague terms and broad definitions do not give Plaintiffs sufficient guidance as to how to comport themselves to avoid criminal or civil penalties. Defendant Colmenero argues that Plaintiffs' ability to tailor their performances to audiences' ages undercuts their argument that they do not know whether their performances would incur liability under SB 12. Dkt. 52 at 35-36. This argument fails because under the plain terms of the statute, performances that are appropriate for the whole family could nonetheless incur civil or criminal penalties. SB 12 could sweep in a performance by Plaintiffs where they give another performer an innocent hug or where they wear a push-up bra while dancing in any way that might be seen by any person in the audience as sexual. This is because, as argued above and in Plaintiffs' Motion, the five-part test for "sexual conduct" fails to define key terms and, where it does define terms, it does so expansively and because there are no safeguards to limit the statute's reach. As such, the statute fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and fails to provide "explicit standards" for applying the law "to avoid

arbitrary and discriminatory applications." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008). This Court should find SB 12 unconstitutional on vagueness grounds as well.

### C.   No Party Contests that SB 12 Is an Unconstitutional Prior Restraint

No Defendant in this case seeks to defend Section 2 of SB 12, which states that no municipality or county may authorize a "sexually oriented performance" on public property or in the presence of an individual younger than 18 years of age—while also granting municipalities and counties unbridled authority to "regulate" all other such performances.[18] As explained in Plaintiffs' Motion, this part of the law is an unconstitutional prior restraint on speech. Dkt. 10 at 49-50.

## IV.   Plaintiffs Have Established the Remaining Factors Required for Injunctive Relief

Defendants fail to meaningfully address any of Plaintiffs' arguments concerning the remaining factors required for injunctive relief. Indeed, besides briefly stating the standard for granting of a preliminary injunction, the County Defendants fail to discuss *any* of the factors delineated under that standard. *See* Dkt. 49 at 13-15. Likewise, Defendant Colmenero merely repeats the applicable preliminary injunction standard without meaningful opposition or evidence. Dkt. 52 at 7-8.

---

[18]   S.B. 12 § 2 (proposed Tex. Loc. Gov't Code § 243.0031(b)).

Contrary to Defendants' allegations, Plaintiffs have in fact shown (1) a substantial threat of irreparable harm if the injunction is not granted; (2) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (3) that the injunction will not disserve the public interest. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012); *see* Dkt. 10 at 58-62.

Respectfully submitted,

*/s/ Brian Klosterboer*
Brian Klosterboer, *attorney-in-charge*
TX Bar No. 24107833
SDTX No. 3314357
Chloe Kempf
TX Bar No. 24127325
SDTX No. 3852674
Thomas Buser-Clancy
TX Bar No. 24078344
SDTX No. 1671940
Edgar Saldivar
TX Bar No. 24038188
SDTX No. 618958
Adriana Pinon
TX Bar No. 24089768
SDTX No. 1829959
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
bklosterboer@aclutx.org
ckempf@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

*Attorneys for Plaintiffs*

*/s/ Emily Rohles*
Ali Andrews
TX Bar No. 24059381
SDTX No. 2247339
Emily Rohles
TX Bar No. 24125940
SDTX No. 3715273
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
Tel. (713) 229-1234
Fax (713) 229-1522
Ali.Andrews@BakerBotts.com
Emily.Rohles@BakerBotts.com

Derek McDonald
TX Bar No. 00786101
SDTX No. 18546
Maddy Dwertman
TX Bar No. 24092371
SDTX No. 3853795
BAKER BOTTS L.L.P.
401 S. 1st Street, Suite 1300
Austin, TX 78704
Tel. (512) 322-2500
Fax (512) 322-2501
Derek.McDonald@BakerBotts.com
Maddy.Dwertman@BakerBotts.com

Brandt Thomas Roessler
TX Bar No. 24127923
SDTX No. 3853796
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel. (212) 408-2500
Fax (212) 408-2501
Brandt.Roessler@BakerBotts.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 27, 2023, a true and correct copy of the foregoing was served via the CM/ECF system to all counsel of record.

*/s/ Emily Rohles*