# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| The Woodlands Pride, Inc.; Abilene Pride Alliance; Extragrams, LLC; 360 Queen Entertainment LLC; Brigitte Bandit, | |
| *Plaintiffs,* | |
| v. | Civil Action No. 4:23-cv-02847 |
| Angela Colmenero, in an official capacity as Interim Attorney General of Texas; Montgomery County, Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; City of Abilene, Texas; Taylor County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Delia Garza, in an official capacity as County Attorney of Travis County; Joe D. Gonzales, in an official capacity as District Attorney of Bexar County, | |
| *Defendants.* | |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

i

## **TABLE OF CONTENTS**

I.    Factual Findings...............................................................................2

    A.    SB 12 .....................................................................................2

    B.    Legislative History of SB 12 ...................................................6

    C.    Plaintiffs ................................................................................8

        1.    The Woodlands Pride....................................................8

        2.    Abilene Pride Alliance ................................................15

        3.    Extragrams, LLC.........................................................23

        4.    360 Queen Entertainment LLC....................................28

        5.    Brigitte Bandit      33

II.   Legal Conclusions ..........................................................................38

    A.    Plaintiffs Have Standing against Defendants......................38

        1.    The Woodlands Pride..................................................38

        2.    Abilene Pride Alliance ................................................40

        3.    Extragrams .................................................................42

        4.    360 Queen Entertainment ..........................................43

        5.    Brigitte Bandit ...........................................................45

    B.    SB 12 Is a Content and Viewpoint-Based Restriction ......47

    C.    SB 12 Is Not Narrowly Tailored and Is Therefore
        Unconstitutional ..................................................................47

    D.    SB 12 Is Unconstitutionally Overbroad .............................48

    E.    SB 12 Is Unconstitutionally Vague....................................49

    F.    SB 12 Establishes an Unconstitutional Prior Restraint......50

Certificate of Service ...............................................................................54

The Woodlands Pride, Inc., Abilene Pride Alliance, Extragrams, LLC, 360 Queen Entertainment LLC, and Brigitte Bandit (collectively, "Plaintiffs"), respectfully submit the following Proposed Findings of Fact and Conclusions of Law:

Senate Bill 12 ("SB 12") was signed into law on June 18, 2023, and is scheduled to take effect on September 1, 2023. On August 2, 2023, Plaintiffs sued Defendants Angela Colmenero, in an official capacity as Interim Attorney General of Texas; The Woodlands Township; Montgomery County, Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; City of Abilene, Texas; Taylor County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Delia Garza, in an official capacity as County Attorney of Travis County; Joe D. Gonzales, in an official capacity as District Attorney of Bexar County (collectively, "Defendants"[1]) for violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. 1983. Dkt. 1. On August 9, 2023, Plaintiffs filed a motion for temporary restraining order and preliminary injunction, seeking to enjoin the enforcement of SB 12 before it goes into effect on September 1, 2023. Dkt. 10.

---

[1]      On August 25, this Court granted Plaintiffs' unopposed motion to amend the caption and style, which altered the spelling of Gonzalez to Gonzales and removed The Woodlands Township as a party. Dkt. No. 65.

On August 28, 2023, the Court conducted a trial on the merits in the above-captioned matter. During the proceeding, the Court received evidence and heard sworn testimony. After considering all evidence presented, this Court finds in favor of Plaintiffs and against Defendants. In support of this Court's Final Judgment in favor of Plaintiffs, this Court makes the following Findings of Fact and Conclusions of Law set forth herein.

# I.    FACTUAL FINDINGS

## A.    SB 12

1.    SB 12 was signed by Governor Abbott on June 18, 2023, and is scheduled to take effect on September 1, 2023.

2.    SB 12 purports to ban "sexually oriented performances" by (1) criminalizing many such performances; (2) creating civil penalties for commercial entities that host such performances; and (3) mandating that counties and municipalities ban many "sexually oriented performances," and granting them authority to regulate other such performances.[2]

3.    SB 12 defines a "sexually oriented performance" as a "visual performance" that (A) features (i) a performer who is nude or (ii) a performer who engages in

---

[2]    S.B. 12 §§ 1–3 (proposed Tex. Health & Safety Code § 769.002; Tex. Local Gov. Code § 243.0031; Tex. Penal Code § 43.28).

"sexual conduct"; and (B) appeals to the prurient interest in sex.[3] "Visual performance" is not defined in SB 12 or elsewhere in Texas law.

4.      SB 12 borrows a definition of "nude" from the Texas Penal Code and from the Business and Commerce Code,[4] which includes anyone who is "entirely unclothed" or "clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks."[5]

5.      SB 12 establishes five categories of "sexual conduct," these definitions include: (1) "the exhibition or representation, actual or simulated, of sexual acts, including vaginal sex, anal sex, and masturbation."[6]; (2) the "exhibition or representation, actual or simulated, of male or female genitals in a lewd state, including a state of sexual stimulation or arousal."[7]; "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals."[8]; (4) "actual contact or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person."[9]; and

---

[3]      S.B. 12 § 3 (proposed Tex. Penal Code § 43.28(a)(2)).
[4]      S.B. 12 § 3 (proposed Tex. Penal Code § 43.28(a)(2)(A)(1))).
[5]      Tex. Bus. & Com. Code § 102.051.
[6]      S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(1)(A)).
[7]      S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(1)(B)).
[8]      S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(1)(C)).
[9]      S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(1)(D)).

(5) "the exhibition of sexual gesticulations using accessories or prosthetics that exaggerate male or female sexual characteristics."[10]

6.    Any performer who is "nude" or "engages in sexual conduct" during a visual performance engages in a "sexually oriented performance" if their conduct "appeals to the prurient interest in sex."[11] "[P]rurient interest" is undefined under Texas law.

7.    SB 12 amends the Texas Health and Safety Code to prohibit anyone who "controls the premises of a commercial enterprise" from "allow[ing] a sexually oriented performance to be presented on the premises in the presence of an individual younger than 18 years of age."[12]

8.    The law does not specify that the individual must have knowledge that the minor is present or have allowed the minor to be present, nor does it define "commercial enterprise," what it means to "control" the premises, or what it means for a performance to be presented "on the premises in the presence of an individual younger than 18."[13]  The penalty for violating this section of SB 12 is a $10,000 fine "for each violation."[14]

9.    The Attorney General is tasked with bringing actions to recover penalties, seeking temporary and permanent injunctions, and recovering attorney's fees,

---

[10]    S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(1)(E)).
[11]    S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(2)(A)(B)).
[12]    S.B. 12 § 1 (proposed Tex. Health & Safety Code § 769.002).
[13]    S.B. 12 § 1 (proposed Tex. Health & Safety Code § 769.002(b)).
[14]    S.B. 12 § 1 (proposed Tex. Health & Safety Code § 769.002(b)).

"investigative costs," and other expenses against businesses and anyone who violates this section.[15]

10.     SB 12 amends the Texas Local Government Code to prohibit municipalities and counties from "authoriz[ing]" a "sexually oriented performance" on public property or in the presence of anyone under the age of 18.[16]

11.     SB 12 allows municipalities and counties to "regulate sexually oriented performances as the municipality or county considers necessary to promote the public health, safety, or welfare," with no set standards or procedures for such regulations.[17]

12.     SB 12 amends the Texas Penal Code to create a new category of criminal offense "if, regardless of whether compensation for the performance is expected or received, the person engages in a sexually oriented performance: (1) on public property at a time, in a place, and in a manner that could reasonably be expected to be viewed by a child; or (2) in the presence of an individual younger than 18 years of age."[18]

13.     This criminal offense is a Class A misdemeanor with penalties of up to a year in jail and a fine of up to $4,000.[19]

---

[15]     S.B. 12 § 1 (proposed Tex. Health & Safety Code §§ 769.002(b)-(f)).
[16]     S.B. 12 § 2 (proposed Tex. Loc. Gov't Code § 243.0031(c)).
[17]     S.B. 12 § 2 (proposed Tex. Loc. Gov't Code § 243.0031(b)).
[18]     S.B. 12 § 3 (proposed Tex. Penal Code § 43.28(b)).
[19]     Tex. Penal Code § 12.21.

### B.    Legislative History of SB 12

14.    When SB 12 was first introduced on March 21, 2023, and enrolled on June 19, 2023, the Author's/Sponsor's Statement of Intent noted a concern about a "recent cultural trend" of "drag shows . . . performed in venues generally accessible to the public, including children."[20] The Statement of Intent stated, "While drag shows have received the most media attention, S.B. 12 is not limited to this type of sexually oriented performance. Drag shows today may be replaced by other types of harmful performances in the future. S.B. 12 applies to and will protect children from sexually oriented performances in general."[21]

15.    The Bill Analysis before the Texas House of Representatives State Affairs Committee cited a specific instance of a drag show being performed at a restaurant in Plano, Texas, on October 18, 2022, and referenced an article from the *New York Post*.[22] The *New York Post* article is entitled "Video of drag queen gyrating in front of child has Texas pols pushing for legislative action."[23]

16.    On March 23, 2023, the author of SB 12 introduced it to the Senate State Affairs Committee and stated in a post online: "Children should not be exposed to

---

[20]    Plaintiffs' Trial Exhibits 6 and 11.
[21]    *Id.*
[22]    Plaintiffs' Trial Exhibit 9.
[23]    Plaintiffs' Trial Exhibit 21.

sexually explicit performances like drag shows. I presented SB 12 and SB 1601 today to the State Affairs Committee to protect kids from these shows."[24]

17.    Governor Abbott signed SB 12 into law on June 18, 2023.[25]

18.    On June 24, 2023, Governor Abbott stated: "Texas Governor Signs Law Banning Drag Performances in Public. That's right."[26]

19.    At the start of this year's regular Texas legislative session, Lieutenant Governor Dan Patrick, the head of the Texas Senate, listed Senate Bill 12 as one of his top 30 priority bills and titled the law: "Banning Children's Exposure to Drag Shows."[27]

20.    After the Texas House of Representatives adopted the Conference Committee Report for SB 12 in its final form,[28] Lieutenant Governor Dan Patrick released the following statement: "I named SB 12 to be one of my top priorities this session because someone must push back against the radical left's disgusting drag performances which harm Texas children. It is shocking to me that any parent would allow their young child to be sexualized by drag shows. Children, who cannot make decisions on their own, must be protected from this scourge facing our state."[29]

---

[24]    Plaintiffs' Trial Exhibit 25.
[25]    Plaintiffs' Trial Exhibit 2.
[26]    Plaintiffs' Trial Exhibit 23.
[27]    Plaintiffs' Trial Exhibit 24.
[28]    Plaintiffs' Trial Exhibit 10.
[29]    Plaintiffs' Trial Exhibit 26.

21.     On May 20, 2023, Representative Carrie Isaac, a joint sponsor of SB 12, stated: "Today we passed SB 12 to protect our children from being groomed by restricting sexually oriented performances also know [sic] as "drag shows" in the presence of children."[30]

22.     On May 22, 2023, Representative Caroline Harris, a joint sponsor of SB 12, stated: "Drag shows and sexually explicit performances have no business being around children. I am proud to joint author SB 12, which bans these performances and protects a child's innocence."[31]

23.     On June 8, 2023, Representative Matt Shaheen, the sponsor of SB 12 in the House, stated: "Working with @SenBryanHughes, I passed legislation in the TX House protecting children from explicit, hyper-sexualized drag performances in Texas. #SB12."[32]

### C.     Plaintiffs

#### 1.     The Woodlands Pride

24.     Jason Rocha testified at trial on behalf of The Woodlands Pride. Mr. Rocha is a U.S. Army veteran and the Founder and President of The Woodlands Pride, Inc. ("The Woodlands Pride"), a non-profit organization headquartered in The Woodlands Township in Montgomery County, Texas.[33]

---

[30]     Plaintiffs' Trial Exhibit 29.
[31]     Plaintiffs' Trial Exhibit 28.
[32]     Plaintiffs' Trial Exhibit 27.
[33]     Dkt. 10-2, Rocha Decl. ¶ 2.

25.     Mr. Rocha has been the President of The Woodlands Pride since it was founded in 2018. [34]

26.     Since 2018, The Woodlands Pride has held their annual pride festival ("The Woodlands Pride Festival" or the "Festival") every year except for 2020.[35]

27.     The Woodlands Pride Festival is one of the largest free pride festivals in the state and is open to everyone and all ages, including teenagers and children.[36]

28.     The Woodlands Pride Festival and other events prominently features drag performers, and these drag performers are one of the most popular aspects of The Woodlands Pride Festival and one of the primary draws for attendees.[37]

29.     Drag performers and emcees at The Woodlands Pride Festival typically wear accessories or prosthetics, such as wigs, makeup, high heels, panty hose, earrings, and padded bras.[38]

30.     Drag performers at The Woodlands Pride Festival typically dance and lip-synch to popular music in costume.[39]

31.     In July 2023, weeks after SB 12 was signed into law, The Woodlands Pride marched in the South Montgomery County Fourth of July parade, which was

---

[34]     *Id.*
[35]     *Id.* ¶ 4.
[36]     *Id.*
[37]     *Id.* ¶ 5.
[38]     *Id.*
[39]     *Id.*

sponsored by The Woodland's Township. Following the parade, anti-LGBTQIA+ activists have attended Township board meetings to complain about The Woodland Pride's participation in the parade, falsely accusing The Woodlands Pride of being "groomers and pedophiles."[40]

32.     Although Mr. Rocha and The Woodlands Pride believe that the drag performances at The Woodlands Pride Festival are appropriate for The Woodlands Pride Festival's age-diverse audience, Mr. Rocha is fearful that common aspects of these drag performances could be criminalized or otherwise prohibited by SB 12.[41]

33.     Mr. Rocha is also afraid that regular attendees of The Woodlands Pride Festival who may just be dancing or singing in the audience near the stage area may be accused of giving a "sexually oriented performance" because SB 12 does not define the terms "performer" or "performance."[42]

34.     The Woodlands Pride is concerned that the accessories and prosthetics that drag performers and emcees at The Woodlands Pride Festival typically use, such as wigs, makeup, high heels, panty hose, earrings, and padded bras, could be said to "exaggerate male or female sexual characteristics."[43]

---

[40]     *Id.* ¶ 7.
[41]     *Id.* ¶ 8.
[42]     *Id.*
[43]     *Id.* ¶ 9.

35.     The Woodlands Pride is concerned that the dance routines of the drag performers and emcees at the Festival contain gestures or gesticulations that could be interpreted as "sexual" or "represent[ing] . . . simulated . . . sexual acts" by others.[44]

36.     Although Mr. Rocha and The Woodlands Pride believe that the drag performances at The Woodlands Pride Festival are appropriate for the diverse audience of The Woodlands Pride Festival, they cannot control or predict what public officials view as "sexual" and reasonably fear that The Woodlands Pride would be targeted by SB 12.[45]

37.     Drag performers and attendees at past The Woodlands Pride Festivals have sometimes danced with each other during performances and may have pretended to, or actually, touched each other's butts or hips in what could be characterized as "actual . . . or simulated contact occurring between one person and the buttocks . . . of another person."[46]

38.     Drag performers and attendees of The Woodlands Pride Festival have also worn speedos and bikinis, which could be considered by some to be "the exhibition or representation, actual or simulated, of male or female genitals in a lewd state." Although these articles of clothing are not "lewd" from Mr. Rocha's perspective, he

---

[44]     *Id.*
[45]     *Id.*
[46]     *Id.* ¶ 10.

fears that because the term is undefined and may have a subjective meaning, others, including public officials, may accuse our performers and attendees of representing genitals in a "lewd state."[47]

39.   The Woodlands Pride has previously allowed exhibitor participants—including at sexually transmitted infection screening booths—to hand out condoms and sexual lubricant to attendees. Mr. Rocha is fearful that this activity could cause The Woodlands Pride to be accused of "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals."[48]

40.   Mr. Rocha is fearful that some, including state and local government officials, may accuse performers and attendees at The Woodlands Pride Festival of acting in ways that "appeal[] to the prurient interest in sex."[49]

41.   Although no performer at The Woodlands Pride events is "nude" under Mr. Rocha's view of the term, Mr. Rocha fears that because "performer" is not defined and that "nude" is defined so broadly, the law could trigger harsh penalties for anyone who shows even a part of their breast or buttocks or has even a momentary wardrobe malfunction.[50]

---

[47]   *Id.* ¶ 11.
[48]   *Id.* ¶ 12.
[49]   *Id.* ¶ 13.
[50]   *Id.* ¶ 14.

42.     The 2023 Woodlands Pride Festival is scheduled for October 21, 2023, at Town Green Park, a public park in Montgomery County, Texas.[51]

43.     The Woodlands Pride has also featured drag performers at other events on both public and private property, such as a June 2023 Pride Summit on a college campus and a Pride party at a local hotel.[52]

44.     The Woodlands Pride has plans to hold a gala in early 2024 in the showroom of a local car dealership or at a corporate office and plans to feature drag performers at this event.[53]

45.     Mr. Rocha fears that The Woodlands Pride may have to cancel drag performances at future events, including a planned gala in early 2024, to ensure the organization does not incur SB 12's penalties.[54]

46.     Mr. Rocha is concerned that it will likely be too burdensome, if not impossible, to ensure that everyone who might catch a glimpse of the drag performers would be 18 and older. Mr. Rocha is worried about someone on the catering staff of the upcoming gala being 17 years old, a teenager sneaking into the event with a fake ID, or a family with kids simply walking past the gala and seeing the performers through the windows.[55]

---

[51]     *Id.* ¶ 17.
[52]     *Id.* ¶18.
[53]     *Id.*
[54]     *Id.*
[55]     *Id.* ¶ 19.

47.     As a result of the law's vagueness and broadness, and uncertainty of how to comply with said law, The Woodlands Pride's future plans have been thrown into a state of doubt and disorder. The Woodlands Pride have already used up precious time and resources to plan two alternative Pride Festivals for this October—one that features drag performers and one that does not.[56]

48.     Mr. Rocha is fearful that because SB 12 grants specific enforcement power to Montgomery County to restrict and regulate any "sexually oriented performance," the County will restrict or stop drag performances hosted by The Woodlands Pride if SB 12 takes effect. Even if local government officials do not stop or restrict our drag performances in advance, The Woodlands Pride may be forced to self-censor its drag performances to avoid SB 12's harsh civil or criminal penalties for our organization, attendees, and performers.[57]

49.     The Woodlands Pride is concerned that The Woodlands Pride could be accused of aiding and abetting that performance, and their organization, volunteers, and performers could be subject to criminal liability, including jail time, if a performer at one of The Woodlands Pride events was accused of giving a "sexually oriented performance."[58]

---

[56]      *Id.* ¶ 21.
[57]      *Id.* ¶¶ 24-25.
[58]      *Id.* ¶ 25.

50.     Stopping or age-limiting drag performances would chill The Woodlands Pride's ability to engage in speech and performances and place The Woodlands Pride at list of financial hardship or collapse, since drag performances are some of the most popular aspects of The Woodlands Pride's Festivals and fundraisers. Stopping or age-limiting these drag performances would risk a decline in attendees and in advertising, sponsorship, and sales revenue at The Woodlands Pride events.[59]

### 2.     Abilene Pride Alliance

51.     Gavyn Hardegree[60] testified as the President of the Abilene Pride Alliance. Mx. Hardegree has held this position since October 2022 and first joined the group as a board member in 2021.[61]

52.     The Abilene Pride Alliance is a non-profit organization focused on supporting Abilene's LGBTQIA+ community. It was founded in 2019 and received non-profit status in 2021.[62]

53.     The Abilene Pride Alliance's mission is to develop an environment of diversity, equity, and inclusion for the LGBTQIA+ community through advocacy, programs, and education in Abilene. It also seeks to foster a supportive and inclusive

---

[59]     *Id.* ¶ 28.
[60]     Mx. Hardegree's legal name is Gabrielle Hardegree but they go by Gavyn Hardegree in every other aspect of their life.
[61]     Dkt. 10-3, Hardegree Decl. ¶ 2.
[62]     *Id.* ¶3.

environment where the community embraces and celebrates each person's authentic identity.[63]

54.    The Abilene Pride Alliance hosts social support groups and free events in Abilene, with the goal of fostering a strong community, including monthly social support meetings for transgender and nonbinary individuals, free game nights, and a free support group facilitated by a therapist.[64]

55.    In September 2022, the Abilene Pride Alliance held Abilene's first full-scale Pride event, which included a parade and a festival at Grover Nelson Park. Approximately 1,800 people attended the event.[65]

56.    The 2022 parade, through the streets of downtown Abilene, featured a drag float and the festival included a drag show.[66]

57.    The Abilene Pride Alliance has also hosted other events that feature drag performances. In June and July of 2022, it hosted two drag brunch fundraisers at a local coffee shop in Abilene that gave it the exclusive use of the space. It has also hosted two drag bingo events at the Abilene Community Theatre, which donated the use of the theater to the Abilene Pride Alliance. These events were open to all ages, and many children attended.[67]

---

[63]    *Id.*
[64]    *Id.* ¶ 4.
[65]    *Id.* ¶ 5.
[66]    *Id.*
[67]    *Id.* ¶ 6.

58.     Many of the Abilene Pride Alliance's events have been targeted by anti-drag and anti-LGBTQIA+ protestors. After the organization's coffee shop drag brunches, the coffee shop was targeted by anti-drag activists, who sent harassing and threatening phone calls and emails and entered the shop to scream at employees.[68]

59.     Mx. Hardegree believes drag is an artform in which performers of any gender dress in ways that exaggerate traditional male or female characteristics. While anyone can participate in drag, it has been historically used as means of self-expression and celebration in the LGBTQIA+ community and as way to challenge cultural stereotypes of gender.[69]

60.     The Abilene Pride Alliance's past drag performances have featured a variety of performers (both drag queen and kings), content, and artistic styles. Many of the drag performers dance or lip-sync to popular rock, pop, hip-hop, musical theater, and country music while dancing with, hugging, or accepting tips from audience members. Some performers impersonate pop stars or cartoon characters. Others play instruments and sing live. Others serve as emcees to keep the audience engaged, call bingo numbers, or introduce the next performer.[70]

---

[68]     *Id*. ¶ 7.
[69]     *Id*. ¶ 8.
[70]     *Id*.

61.   Mx. Hardegree has discussed SB 12 with the Abilene Pride Alliance's board. The board does not know how comply with SB 12 because the law's standards for prohibited performances are confusing and vague.[71]

62.   The Abilene Pride Alliance does not know whether drag shows and performers, so often featured in the organization's events, comply with SB 12. In particular, the organization does not know how to assess whether a performance appeals to "the prurient interest in sex," since that term is open to interpretation and undefined by SB 12.[72]

63.   While Mx. Hardegree does not believe that any of their organization's drag shows should be categorized in that way, they are aware of the sentiment among the lawmakers that passed the SB 12 that drag shows are inherently sexual and explicit.[73]

64.   Drag performers at past events have used accessories and prosthetics "that exaggerate male or female sexual characteristics" like wigs, makeup, dresses, prosthetic facial hair, false eyelashes, body and bra padding, and jewelry.[74]

65.   Performers sometimes thrust and shake their hips or do the splits during dance routines. Mx. Hardegree fears these movements could be interpreted by public

---

[71]   *Id*. ¶ 9.

[72]   *Id*.

[73]   *Id*.

[74]   *Id*. ¶ 10.

officials as "sexual gesticulations" or "representation[s] [of] . . . simulated . . . sexual acts" under SB 12.[75]

66.    Drag performers at Abilene Pride Alliance events occasionally give front-facing hugs and hip-bumps to audience members or even sit in their laps. Mx. Hardegree fears that public officials might consider this conduct to be a type of "actual . . . or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person."[76]

67.    The organization occasionally employs "drag kings" who use devices called "packers," which are worn under pants to give the appearance of a masculine "bulge"—essentially simulating or exaggerating the presence of a penis.[77]

68.    Mx. Hardegree is concerned that people could accuse drag kings of "exhibition or representation, actual or simulated, of male or female genitals in a lewd state," prohibited under SB 12.[78]

69.    While Mx. Hardegree does not believe that the prosthetics used by drag kings are "lewd," they are aware that others, including public officials, might feel differently as SB 12 does not define the term.[79]

---

[75]    *Id.*
[76]    *Id.* ¶ 11.
[77]    *Id.* ¶ 12.
[78]    *Id.*
[79]    *Id.*

70.     Some of the vendors at the Abilene Pride Alliance's 2022 Pride event distributed free condoms and sexual lubricant to attendees. Mx. Hardegree is concerned that this could lead the organization to be accused of "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals."[80]

71.     Some attendees at the 2022 Pride event danced with each other near the performance stage. Mx. Hardegree fears that because the words "performer" and "performance" are not defined by SB 12—and because it explicitly notes that "performers" need not be compensated to be found in violation of the law—regular festival attendees who may just be dancing near the stage area could also be accused of giving a "sexually oriented performance."[81]

72.     Mx. Hardegree is concerned SB 12's broad definition of "nude" could also subject individuals attending the organization's events to civil or criminal sanctions.[82]

73.     Even though no performer at any event is "nude" under Mx. Hardegree's view of that term, "performer" is not defined and "nude" is defined so broadly under SB

---

[80]     *Id.* ¶ 13.
[81]     *Id.* ¶ 14.
[82]     *Id.* ¶ 15.

12 that it could trigger harsh penalties for anyone who shows even a part of their breast or buttocks, or has a momentary wardrobe malfunction.[83]

74.    The Abilene Pride Alliance is currently planning its annual Pride event on September 30, 2023.[84]

75.    The Pride event will include a parade through Abilene's public downtown streets and a festival at the Expo Center of Taylor County, which is operated by a non-profit organization who rents the facility from Taylor County. The City of Abilene has issued the Abilene Pride Alliance with a permit for the parade. The organization plans to include drag performers in the parade and the festival.[85]

76.    If SB 12 is not enjoined, Mx. Hardegree worries that Abilene Pride Alliance's drag performers and festival attendees could be subject to criminal liability under SB 12.[86]

77.    Mx. Hardegree also worries that Abilene Pride Alliance, its board members, and themself could be exposed to criminal penalties for organizing and employing drag performers for events, thereby "aiding and abetting" a prohibited performance.[87]

---

[83]      *Id.*
[84]      *Id.* ¶ 16.
[85]      *Id.*
[86]      *Id.* ¶ 17.
[87]      *Id.*

78.     Mx. Hardegree is concerned that when Abilene Pride Alliance rents or reserves private spaces for drag events and fundraisers, it becomes an entity "who controls the premises of a commercial enterprise," making it liable for a $10,000 civil penalty or other Texas Attorney General enforcement action for a violation of SB 12.[88]

79.     Mx. Hardegree is concerned that the Abilene Pride Alliance's permit for the use of Abilene's city streets for the upcoming parade may be revoked by the City of Abilene because of the organization's plans to include drag performers.[89]

80.     Mx. Hardegree fears the City Council is already scrutinizing local drag shows, as an item called "Drag Show Performances" appeared on the executive session agenda at its July 27, 2023, meeting. Because this was a closed executive session, Mx. Hardegree is not aware of the content or outcome of the discussion.[90]

81.     Finally, because SB 12 also gives Taylor County the power to restrict and regulate any "sexually oriented performance," Mx. Hardegree is worried that the County will stop or limit the organization's planned drag performances, especially because its upcoming festival will take place on County property.[91]

---

[88]     *Id.* ¶ 18.
[89]     *Id.* ¶ 19.
[90]     *Id.*
[91]     *Id.* ¶ 20.

82.   If SB 12 is not enjoined, Mx. Hardegree feels the law will force the Abilene Pride Alliance to end or limit planned drag performances.[92]

83.   This will cause the organization irreparable harm. The Abilene Pride Alliance considers drag to be the glue that holds the organization, and Abilene's greater LGBTQIA+ community, together. It is through drag artistry that the organization works to achieve its vision of an inclusive community that embraces and celebrates each person's authentic identity.[93]

84.   Censoring the Abilene Pride Alliance's drag performances would amount to an abandonment of the organization's fundamental mission and would limit its fundraising potential.[94]

### 3.   Extragrams, LLC

85.   Extragrams, LLC ("Extragrams") is a drag entertainment and delivery service based in Austin, Texas.[95] Kerry Lynn Sieff, Extragrams' Founder and Creative Services Director, testified on its behalf.

86.   Extragrams operates by connecting drag performers, who work as independent contractors, with customers seeking entertainment for birthday parties,

---

[92]   *Id.* ¶ 21.
[93]   *Id.*
[94]   *Id.*
[95]   Dkt. 10-4, Sieff Decl. ¶ 3.

corporate events, festivals, fundraisers, weddings, university orientations, bachelorette parties, and more.[96]

87.    Extragrams' drag performers use acting, dancing, and costuming to exaggerate masculine and feminine characteristics as a form of expression and to provide entertainment to audiences.[97]

88.    Extragrams retains a level of creative control over the performances of its drag artists and often approves their costumes, songs, and routines.[98]

89.    Extragrams' performers perform in publicly owned spaces like parks and public universities and in parades, and these performances often require the approval of the municipality or county that owns the space.[99]

90.    Extragrams' performers also perform in privately owned commercial venues such as hotels, restaurants, wedding venues, ballrooms, and corporate offices.[100]

91.    Extragrams is sometimes hired to provide drag artists to host events.[101] For example, Extragrams' performers direct bingo nights, officiate weddings, and act as emcees for receptions.[102]

---

[96]    *Id.* ¶ 4.
[97]    *Id.* ¶¶ 3-5, 13.
[98]    *Id.* ¶ 6.
[99]    *Id.* ¶¶ 22-23.
[100]   *Id.* ¶ 21.
[101]   *Id.* ¶ 5.
[102]   *Id.*

92.   Extragrams does not set age limits for its audiences and its performers often perform in public spaces and for people under the age of 18.[103]

93.   Extragrams cannot guarantee or know the ages of its audience members or anyone who might catch a glimpse of its performers.[104]

94.   Extragrams' drag performers wear clothing and accessories that "exaggerate male or female sexual characteristics," such as wigs, makeup, high heels, dresses, body padding, pantyhose, false eyelashes, fake fingernails, waist cinchers and corsets, push-up bras, breast plates, and crotch packers, which simulate or enhance a pubic "bulge."[105]

95.   Extragrams' drag performers also shimmy, shake and thrust their hips and butts, touch their own bodies, do the splits, and blow kisses during some of their performances, which could be interpreted by government officials as "sexual gesticulations" or "representation[s] [of] . . . simulated . . . sexual acts" under SB 12.[106]

96.   Extragrams' performers also dance with or hug other performers or audience members, or sit in audience member's laps, which sometimes results in a performer briefly touching or brushing up against another person's chest, butt, or lap.[107]   These

---

[103]   *Id.* ¶ 4.
[104]   *Id.* ¶ 20.
[105]   *Id.* ¶ 13.
[106]   *Id.* ¶ 14.
[107]   *Id.* ¶ 15.

actions could constitute "actual . . . or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person.[108]

97.   Extragrams' "drag kings" often wear prosthetic bulges, or "packers," which enhance or simulate the presence of a penis and could be construed by government officials as "the exhibition or representation, actual or simulated, of male or female genitals in a lewd state."[109]

98.   Extragrams reasonably fears that one of its performers could be accused of being "nude" simply by revealing any portion of a breast or buttocks or having a momentary and accidental wardrobe malfunction.[110]

99.   Extragrams reasonably fears that aspects of their performances could be accused by government officials of "appeal[ing] to the prurient interest in sex," especially because the term is undefined, and because lawmakers have recently accused drag performances of being "sexually explicit" and a way to "sexualize children."[111]

100.  Extragrams reasonably fears its performers will be vulnerable to criminal penalties under SB 12 if they are accused of giving a "sexually oriented

---

[108]   *Id.*

[109]   *Id.* ¶ 16.

[110]   *Id.* ¶ 18.

[111]   *Id.* ¶ 17.

performance."[112] As a result, Extragrams also fears that it could be charged with aiding and abetting a prohibited performance and face its own criminal penalties.[113]

101.   Extragrams reasonably fears that private and commercial venues that typically host Extragrams' drag performers will no longer book or allow drag performances on their premises, for fear of incurring SB 12's civil penalties and Texas Attorney General enforcement action.[114]

102.   Extragrams reasonably fears that it could also be targeted for Texas Attorney General investigation and enforcement if it is considered to "control" its shows and the spaces that its performers utilize.[115]

103.   Extragrams also reasonably fears that municipalities will no longer authorize events featuring its drag performers on public property—such as parades and music festivals—after SB 12 takes effect.[116] Extragrams also fears that it could be subject to aiding and abetting liability and criminal penalties if SB 12 takes effect.[117]

104.   Extragrams reasonably fears that if SB 12 takes effect and its drag performances are banned, criminalized, or limited, its First Amendment right to expressive activity and its business reputation will be further harmed.[118]

---

[112]   *Id*. ¶ 19.
[113]   *Id*.
[114]   *Id*. ¶ 21.
[115]   *Id*.
[116]   *Id*. ¶ 22.
[117]   *Id*. ¶ 25.
[118]   *Id*. ¶ 22, 25.

105.  Extragrams intends to continue providing drag performers and facilitating drag performances for its customers in Texas in the future, and has multiple public performances scheduled for September of this year.[119]

### 4.    360 Queen Entertainment LLC

106.  Richard Montez Jr. is a resident of Bexar County, Texas and the co-owner of 360 Queen Entertainment LLC ("360 Queen Entertainment"), which is a drag production company in Bexar County, Texas.[120] Mr. Montez testified on behalf of 360 Queen Entertainment.

107.  Mr. Montez and his partner founded 360 Queen Entertainment in early 2022.[121]

108.  Mr. Montez's parents own a restaurant in Bexar County which has a back patio that 360 Queen Entertainment rents out where they host monthly commercial drag shows, the first of which was held in July 2022.[122] During these performances, 360 Queen Entertainment sells tickets and controls who may enter or exit the patio.

109.  360 Queen Entertainment received significant support from the community and there was a high demand for drag performers from *RuPaul's Drag Race* to come to San Antonio.[123]

---

[119]   *Id*. ¶25.
[120]   Dkt. 10-5, Montez Decl. ¶¶ 3-4.
[121]   *Id*. ¶ 6.
[122]   *Id*.
[123]   *Id*.

110.   360 Queen Entertainment's drag performers engage in artistic expression that involves performers acting, dancing, or wearing outfits in ways that exaggerate masculine or feminine characteristics. They often sing, lip-sync, and do dance routines to entertain and connect with their audiences.[124]

111.   360 Queen Entertainment's shows take performers are typically booked months in advance and require flight and hotel arrangements for performers. [125]

112.   The San Antonio Current recently ranked 360 Queen Entertainment's "Bottoms Up Diva Dinner" as the third best drag show in San Antonio for 2023.[126]

113.   360 Queen Entertainment has chosen to limit ticket sales to guests ages 18 and up because of threats of violence against drag venues and performers and to create a child-free relaxing atmosphere.[127]

114.   Mr. Montez and his partner have permitted children to watch the drag shows on occasion if a parent individually makes a request to do so, and 360 Queen Entertainment wants to have the choice and ability to grant similar requests in the future.[128]

---

[124]   *Id*. ¶ 5.
[125]   *Id*.
[126]   *Id*. ¶ 10.
[127]   *Id*. ¶ 12.
[128]   *Id*. ¶ 13.

115.   Even when 360 Queen Entertainment limits ticket sales to guests over the age of 18, they cannot guarantee that the drag shows will not be presented "on the premises in the presence of an individual younger than 18 years of age."[129]

116.   360 Queen Entertainment believes that the phrase "on the premises in the presence of an individual younger than 18 years of age" is vague, but they reasonably fear that it will lead to Attorney General enforcement against them.[130]

117.   The back patio where 360 Queen Entertainment hosts their drag shows is adjacent to the main dining room where families and kids sit inside and walk around.[131]

118.   Their drag shows are visible from the parking lot and also through windows in the indoor dining area.[132]

119.   In April 2023, as SB 12 was making its way through the Legislature, someone called the police on 360 Queen Entertainment and accused Mr. Montez and his family of engaging in "illegal" activity by hosting a drag show at a restaurant where families and kids were present. The same person complained that "what you're doing here is illegal," "there are children around," "it's inappropriate," and "it's

---

[129]    *Id*. ¶ 14.
[130]    *Id*.
[131]    *Id*.
[132]    *Id*.

perverted." When someone explained that hosting a drag show was not illegal, the person complaining said, "well, one day it's going to be."[133]

120.   360 Queen Entertainment has already changed their business operations in anticipation of SB 12. On July 1, 2023, 360 Queen Entertainment held their monthly drag show half an hour later than usual to try to give more time for families and kids to clear out of the restaurant before drag artists were present on the premises, but there were still families and children in the restaurant who could view the show.[134]

121.   360 Queen Entertainment hosted their next show on August 25, 2023, which they significantly modified to start after the restaurant closes at 9 p.m. To accommodate the later start time, the restaurant had to shut down two hours early and lose out on business and revenue in the dining room while maintaining the same level of staffing to serve customers at the drag show on the back patio.[135]

122.   Even though the restaurant was shut down at 9:00pm, Mr. Montez could not guarantee that every family and child would leave the establishment as some guests preferred to linger even after service was closed and could maintain visibility of the drag show being held on the patio.[136]

---

[133]      *Id*. ¶15.
[134]      *Id*. ¶ 16.
[135]      *Id*. ¶ 17.
[136]      *Id*. ¶ 19.

123.  360 Queen Entertainment has canceled all shows after September 1 for fear of prosecution or penalties under SB 12, but they intend to continue holding shows in the future if this law is enjoined.[137]

124.  Mr. Montez is fearful that someone could consider 360 Queen Entertainment's show to "appeal[] to the prurient interest in sex."[138]

125.  Drag entertainers at 360 Queen Entertainment sometimes perform gestures or gesticulations that could arguably be interpreted as "sexual" by others, such as twerking, dancing, sitting on people's laps, or flirting with customers.[139]

126.  360 Queen Entertainment is concerned that SB 12 could lead to their performers to be accused of "representation [of] . . . simulated . . . sexual acts," or "simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person."[140]

127.  360 Queen Entertainment is concerned that when their performers use prosthetics or wear tight outfits, they could be accused of the "exhibition or representation, actual or simulated, of male or female genitals in a lewd state," especially since these terms are vague and undefined. And because the term "nude" is so broadly defined, they worry that they could be targeted by SB 12 if one of their

---

[137]    *Id.* ¶ 20.
[138]    *Id.* ¶ 21.
[139]    *Id.* ¶ 22.
[140]    *Id.*

performers even partially or momentarily reveals part of a breast or buttocks, or has an accidental wardrobe malfunction.[141]

128.   360 Queen Entertainment is one of the only drag shows in San Antonio that is hosted at a restaurant instead of a bar and their show is visible from inside the restaurant and the parking lot.[142]

129.   Even though Mr. Montez doesn't perform drag himself, he worries that he could be accused of aiding and abetting if SB 12 takes effect.[143]

130.   Exposing 360 Queen Entertainment or Mr. Montez's parents' restaurant to fines of $10,000 for each alleged violation, plus attorney's fees and investigation costs would cause financial ruin for 360 Queen Entertainment.[144]

### 5.   Brigitte Bandit

131.   Brigitte Bandit[145] is a non-binary drag artist who was assigned female at birth.[146] Ms. Bandit testified as a Plaintiff.

132.   Ms. Bandit lives and performs in Travis County, Texas.[147]

---

[141]   *Id.*
[142]   *Id.* ¶ 23.
[143]   *Id.*
[144]   *Id.* ¶ 24.
[145]   For reasons of personal safety and privacy, Plaintiff Brigitte Bandit is proceeding under a pseudonym, and the Court has granted her motion to do so. Dkt. No. 36.
[146]   Dkt. 10-6, Bandit Decl. ¶¶ 3-4.
[147]   *Id* ¶¶ 2, 30.

133.   Ms. Bandit performs in, produces, and hosts drag shows as her full-time job and has worked as a drag artist for the past five years.[148]

134.   Ms. Bandit considers drag to be a creative, artistic endeavor that allows her to express herself, explore her identity, challenge gender stereotypes, connect with her community, fundraise for charitable causes, and convey comedy, laughter, and joy.[149]

135.   Ms. Bandit sometimes performs, hosts, and produces shows for audiences of all ages and sometimes performs, hosts, and produces shows in venues that are generally limited to people who are 18 or 21 and up.[150]

Even at shows for adult audiences, Ms. Bandit cannot know or control the ages of every member of her audience or control who may be able to catch a glimpse of her show.[151]

136.   Ms. Bandit performs and hosts performances on publicly owned property, such as schools and parks, and she seeks to continue doing so in the future.[152]

---

[148]   *Id.* ¶4.
[149]   *Id.* ¶¶ 5, 8, 10, 11, 32-33.
[150]   *Id.* ¶¶ 25-27, 33.
[151]   *Id.* ¶¶ 23-24.
[152]   *Id.* ¶ 27.

137.   Ms. Bandit performs and hosts performances in private, commercial venues such as coffee shops, corporate offices, bars, and restaurants, and she seeks to continue doing so in the future.[153]

138.   As part of her artistic expression, Ms. Bandit uses a prosthetic breast plate and various accessories like wigs, eyelash extensions, makeup, rhinestones, cowboy boots, high heels, and clothing to impersonate other female stars like Amy Winehouse, Cher, Britney Spears, Lady Gaga, Cyndi Lauper, and Shania Twain.[154] These accessories and prosthetics exaggerate her female sexual characteristics.[155]

139.   Ms. Bandit reasonably fears that her gestures or gesticulations could be interpreted as "sexual" by others, including when she dances, does the splits, or shakes her hips or chest.[156]

140.   Ms. Bandit reasonably fears that her performances could be accused by government officials of "representation [of] . . . simulated . . .sexual acts," since she occasionally hugs, blows kisses, or dances in ways that could be considered "sexual."[157]

141.   Ms. Bandit reasonably fears that she will be accused of "simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of

---

[153]   *Id.* ¶¶ 27-30.
[154]   *Id.* ¶¶ 5, 10-11.
[155]   *Id.*
[156]   *Id.* ¶ 20.
[157]   *Id.* ¶21.

another person," since she sometimes dances closely with other performers, and they sometimes brush up against or touch each other.[158]

142.   Ms. Bandit reasonably fears that she will be accused of "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals" because some of her routines involve her using a dildo as a pretend microphone.[159]

143.   Ms. Bandit reasonably fears that she could be accused of the "exhibition or representation, actual or simulated, of male or female genitals in a lewd state" because of the prosthetic breasts that she wears in many of her performances.[160]

144.   Ms. Bandit reasonably fears that she could be accused of being "nude," as defined by SB 12, during a performance because she wears tight and revealing clothing during some performances.[161]

145.   Ms. Bandit reasonably fears that other people, including Defendants, will accuse her shows of "appeal[ing] to the prurient interest in sex," as she cannot predict how certain members of the public or government officials will react to her performances.[162]

---

[158]     *Id.*
[159]     *Id.* ¶ 23.
[160]     *Id.* ¶22.
[161]     *Id.*
[162]     *Id.* ¶20.

146.   Ms. Bandit reasonably fears that she will be vulnerable to SB 12's criminal penalties if she is accused of giving a "sexually oriented performance."[163]

147.   Ms. Bandit reasonably fears that private and commercial venues that typically host her performances will no longer book or allow drag performances on their premises, for fear of incurring SB 12's penalties.[164]

148.   Ms. Bandit reasonably fears that she could incur SB 12's civil penalties because she could be deemed to "control" the spaces in which she hosts, organizes, and produces drag shows.[165]

149.   Ms. Bandit reasonably fears that SB 12 will chill and censor her free expression.[166]

150.   Ms. Bandit has performances scheduled after SB 12's effective date.[167]

\*\*\*

151.   If any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such; and if any of the following Conclusions of Law constitute Findings of Fact, they are adopted as such.

---

[163]   *Id*. ¶¶ 19, 24, 28, 30-31.
[164]   *Id.* ¶¶ 28-30.
[165]   *Id*. ¶¶ 27-30.
[166]   *Id*. at ¶¶ 31, 33.
[167]   *Id*. at ¶28.

## II.     LEGAL CONCLUSIONS

### A.     Plaintiffs Have Standing against Defendants

#### 1.     The Woodlands Pride

152.   Plaintiff The Woodlands Pride has standing against Defendants Angela Colmenero, in her official capacity as Interim Attorney General of Texas; Montgomery County, Texas; and Brett Ligon, in an official capacity as District Attorney of Montgomery County.

153.   The Woodlands Pride hosts and organizes performances and events, including drag performances, which are inherently expressive and fall within the scope of First Amendment protections. *S. Utah Drag Stars v. City of St. George*, No. 4:23-CV-00044-DN-PK, 2023 WL 4053395, at *20 (D. Utah June 16, 2023) (finding that "drag shows . . . are indisputably protected speech").

154.   The Woodlands Pride intends to continue hosting and organizing drag performances at upcoming events, including its Pride Festival this October and at commercial enterprises where it seeks to hold events and will arguably control the premises.

155.   The Woodlands Pride has demonstrated that some of the performances and events it has hosted in the past and intends to hold in the future are arguably proscribed by SB 12.

156.   The Woodlands Pride has demonstrated a credible threat of prosecution under the statute, and Defendants Colmenero, Montgomery County, and Ligon have not

presented any "compelling contrary evidence" that they will not enforce the statute that facially restricts expressive activity by The Woodlands Pride. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020).

157.   If SB 12 takes effect, The Woodlands Pride's speech will be chilled, which is itself a constitutional harm adequate to satisfy the injury-in-fact requirement. *Ostrewich v. Tatum*, 72 F.4th 94, 102 (5th Cir. 2023).

158.   The Woodlands Pride's injuries are "certainly impending" and there is a "substantial risk" that the harm will occur if SB 12 goes into effect. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

159.   The Woodlands Pride's injuries are traceable to Defendants Angela Colmenero, Montgomery County, and Brett Ligon because they are statutorily tasked with enforcing SB 12 and because The Woodlands Pride has shown that it intends to engage in conduct arguably proscribed by SB 12 on the premises of a commercial enterprise that it intends to control, on public property in Montgomery County, and by facilitating performances that arguably are subject to criminal charges under SB 12.

160.   The Woodlands Pride's injuries are redressable through injunctive and declaratory relief.

161.   Defendants Angela Colmenero, Montgomery County, and Brett Ligon are properly named and not immune from injunctive and declaratory relief under 42 U.S.C. § 1983 and *Ex parte Young*.

### 2.   Abilene Pride Alliance

162.   Plaintiff Abilene Pride Alliance has standing against Defendants Angela Colmenero, in her official capacity as Interim Attorney General of Texas; the City of Abilene, Texas; Taylor County, Texas; and James Hicks, in an official capacity as District Attorney of Taylor County.

163.   The Abilene Pride Alliance hosts and organizes events and performances, including drag performances, which are inherently expressive and fall within the scope of First Amendment protections.

164.   The Abilene Pride Alliance intends to continue hosting and organizing drag performances at upcoming events, including its Pride Festival this September, which will take place both on public property in the City of Abilene and Taylor County. Abilene Pride Alliance also intends to host drag events on the premises of commercial enterprises where it will arguably control the premises.

165.   Abilene Pride Alliance has demonstrated that some of the events and performances it has hosted in the past and intends to host in the future are arguably proscribed by SB 12.

166.   Abilene Pride Alliance has demonstrated a credible threat of prosecution under the statute, and Defendants Colmenero, the City of Abilene, Taylor County, and James Hicks have not presented any "compelling contrary evidence" that they will not enforce the statute that facially restricts expressive activity by Abilene Pride Alliance.

167.   If SB 12 takes effect, Abilene Pride Alliance's speech will continue to be chilled, which is itself a constitutional harm adequate to satisfy the injury-in-fact requirement.

168.   Abilene Pride Alliance's injuries are "certainly impending" and there is a "substantial risk" that the harm will occur if SB 12 goes into effect.

169.   Abilene Pride Alliance's injuries are traceable to Defendants Angela Colmenero, the City of Abilene, Montgomery County, and James Hicks because they are statutorily tasked with enforcing SB 12 and because Abilene Pride Alliance has shown that it intends to engage in conduct arguably proscribed by SB 12 on the premises of commercial enterprises that it seeks to rent and arguably control, on public property in the City of Abilene and Taylor County, and by facilitating performances that arguably are subject to criminal charges under SB 12.

170.   Abilene Pride Alliance's injuries are redressable through injunctive and declaratory relief.

171.   Defendants Angela Colmenero, the City of Abilene, Taylor County, and James Hicks are properly named and not immune from injunctive and declaratory relief under 42 U.S.C. § 1983 and *Ex parte Young*.

### 3.   Extragrams

172.   Plaintiff Extragrams has standing against Defendants Angela Colmenero, in her official capacity as Interim Attorney General of Texas and Delia Garza, in her official capacity as County Attorney of Travis County.

173.   Extragrams organizes and produces drag performances and events, which are inherently expressive and fall within the scope of First Amendment protections.

174.   Extragrams intends to continue organizing and producing drag performances at upcoming events, including at commercial establishments that it could arguably control and on public property in Travis County.

175.   Extragrams has demonstrated that some of the events and performances it has hosted in the past and intends to host in the future are arguably proscribed by SB 12.

176.   Extragrams has demonstrated a credible threat of prosecution under the statute, and Defendants Colmenero and Delia Garza have not presented any "compelling contrary evidence" that they will not enforce the statute that facially restricts expressive activity by Extragrams.

177.   If SB 12 takes effect, Extragrams' speech will be chilled, which is itself a constitutional harm adequate to satisfy the injury-in-fact requirement.

178. Extragrams' injuries are "certainly impending" and there is a "substantial risk" that the harm will occur if SB 12 goes into effect.

179. Extragrams' injuries are traceable to Defendants Angela Colmenero and Delia Garza because they are statutorily tasked with enforcing SB 12 and because Extragrams has shown that it intends to engage in conduct arguably proscribed by SB 12 on the premises of commercial enterprises, on public property in Travis County, and by facilitating performances that arguably are subject to criminal charges under SB 12.

180. Extragrams' injuries are redressable through injunctive and declaratory relief.

181. Defendants Angela Colmenero and Delia Garza are properly named and not immune from injunctive and declaratory relief under 42 U.S.C. § 1983 and *Ex parte Young*.

#### 4. 360 Queen Entertainment

182. Plaintiff 360 Queen Entertainment has standing against Defendants Angela Colmenero, in her official capacity as Interim Attorney General of Texas and Joe D. Gonzales, in his official capacity as District Attorney of Bexar County.

183. 360 Queen Entertainment hosts and organizes events and performances, including drag performances, which are inherently expressive and fall within the scope of First Amendment protections.

184.   360 Queen Entertainment intends to continue hosting and organizing drag performances at upcoming events at the commercial establishment that it rents and controls, but it has already had to modify its performances and has canceled all performances after September 1 due to SB 12.

185.   360 Queen Entertainment has demonstrated that the events and performances it has hosted in the past and hopes to host in the future are arguably proscribed by SB 12.

186.   360 Queen Entertainment has demonstrated a credible threat of prosecution under the statute, and Defendants Colmenero and Gonzales have not presented any "compelling contrary evidence" that they will not enforce the statute that facially restricts expressive activity by 360 Queen Entertainment.

187.   If SB 12 takes effect, 360 Queen Entertainment's speech will continue to be chilled, which is itself a constitutional harm adequate to satisfy the injury-in-fact requirement.

188.   360 Queen Entertainment's injuries are "certainly impending" and there is a "substantial risk" that the harm will occur if SB 12 goes into effect.

189.   360 Queen Entertainment's injuries are traceable to Defendants Colmenero and Gonzales because they are statutorily tasked with enforcing SB 12 and because 360 Queen Entertainment has shown that it intends to engage in conduct arguably proscribed by SB 12 on the premises of a commercial enterprise that it arguably

controls in Bexar County and by facilitating performances that arguably are subject to criminal charges under SB 12.

190.   360 Queen Entertainment's injuries are redressable through injunctive and declaratory relief.

191.   Defendants Colmenero and Gonzales are properly named and not immune from injunctive and declaratory relief under 42 U.S.C. § 1983 and *Ex parte Young*.

### 5.   Brigitte Bandit

192.   Plaintiff Brigitte Bandit has standing against Defendants Angela Colmenero, in her official capacity as Interim Attorney General of Texas and Delia Garza, in her official capacity as County Attorney of Travis County.

193.   Brigitte Bandit performs in, hosts, and organizes drag performances and events, which are inherently expressive and fall within the scope of First Amendment protections.

194.   Brigitte Bandit intends to continue performing in, hosting, and organizing drag performances at upcoming events, including at commercial establishments that she arguably controls and on public property in Travis County.[168]

195.   Brigitte Bandit has demonstrated that some of her past and future events and performances are arguably proscribed by SB 12.

---

[168]   Dkt. 10-6 (Bandit Decl.) ¶¶ 16-18.

196.   Brigitte Bandit has demonstrated a credible threat of prosecution under the statute, and Defendants Colmenero and Delia Garza have not presented any "compelling contrary evidence" that they will not enforce the statute that facially restricts expressive activity by Brigitte Bandit.

197.   If SB 12 takes effect, Brigitte Bandit's speech will be chilled, which is itself a constitutional harm adequate to satisfy the injury-in-fact requirement.

198.   Brigitte Bandit's injuries are "certainly impending" and there is a "substantial risk" that the harm will occur if SB 12 goes into effect.

199.   Brigitte Bandit's injuries are traceable to Defendants Angela Colmenero and Delia Garza because they are statutorily tasked with enforcing SB 12 and because Brigitte Bandit has shown that she intends to engage in conduct arguably proscribed by SB 12 on the premises of commercial enterprises and on public property in Travis County.

200.   Brigitte Bandit's injuries are redressable through injunctive and declaratory relief.

201.   Defendants Angela Colmenero and Delia Garza are properly named and not immune from injunctive and declaratory relief under 42 U.S.C. § 1983 and *Ex parte Young*.

### B.  SB 12 Is a Content and Viewpoint-Based Restriction

202.  SB 12 is a content-based restriction that regulates Plaintiffs' drag performances and other kinds of performances based on the content of those performances. The statute on its face explicitly regulates the content of performances, including by creating five categories of "sexual conduct" and restricting or prohibiting performances that involve "sexual conduct" or a performer who is nude and "appeal[] to the prurient interest in sex." SB 12 § 3 (proposed Tex. Penal Code § 43.28(a)).

203.  SB 12 is also a viewpoint-based restriction because it specifically prohibits "the exhibition of sexual gesticulations using accessories or prosthetics that *exaggerate* male or female sexual characteristics." S.B. 12 § 3 (proposed Tex. Penal Code § 43.28 (a)(1)(E)).

204.  Although SB 12 is facially a content and viewpoint-based restriction, the legislative history of the statute further indicates that it was intended to target and restrict the content and viewpoint of performances, including drag shows in Texas.[169]

### C.  SB 12 Is Not Narrowly Tailored and Is Therefore Unconstitutional

205.  Because all of SB 12 is content-based, and at least one aspect is viewpoint-based, the law is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state

---

[169]   *See* Plaintiffs' Trial Exhibits 1-29.

interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). This accords with the constitutional mandate that the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.*

206.   Even assuming that the government has a compelling interest in protecting minors from obscenity or sexually explicit content, SB 12 is not narrowly tailored.

207.   SB 12 could have been more narrowly drawn in multiple ways, including by incorporating more or all of the three-part obscenity test from *Miller v. California*, 413 U.S. 15, 24 (1973), containing affirmative defenses, creating a parental exception, or differentiating between minors who are 17 and those in pre-school. Because SB 12 does none of those things, it is not narrowly tailored and is unconstitutional.

### D.     SB 12 Is Unconstitutionally Overbroad

208.   SB 12 is facially unconstitutional because a significant number of its applications are unconstitutional, considering the statute's intended scope. *United States v. Stevens*, 559 U.S. 460, 473 (2010).

209.   SB 12 has already had a chilling effect on free expression and will imminently "deter or chill" large swaths of constitutionally protected activities if allowed to take effect. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). This will cause Plaintiffs and other performers to remain silent, thereby causing society to lose their contributions to the "marketplace of ideas." *Id.*

210.   The reasonable constructions of SB 12 that infringe on constitutionally protected expression far outweigh legitimate applications of the statute's intended scope.

211.   Other Texas statutes already prohibit anyone from "produc[ing], present[ing], or direct[ing] an obscene performance or participate[ing] in a portion thereof that is obscene or that contributes to its obscenity" while "knowing its content and character." Tex. Penal Code § 43.23. To the extent that SB 12 would have prohibited performances that are obscene from public spaces or in the presence of minors, the Court finds that such performances are already prohibited. The applications of SB 12 that extend beyond already existing Texas laws are constitutionally overbroad.

212.   The definition of "sexually oriented performance" in the law is overbroad. Because all parts of SB 12 refer to this definition, the statute cannot be severed and the law on its face is unconstitutionally overbroad.

### E.     SB 12 Is Unconstitutionally Vague

213.   SB 12 is unconstitutionally vague because it fails to provide "a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and fails to provide "explicit standards" for applying the law "to avoid arbitrary and discriminatory applications." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008).

214.   A more stringent vagueness test is required for this law because it regulates free expression and imposes criminal penalties. *Nat'l Press Photographers Ass'n v. McCraw*, 594 F. Supp. 3d 789, 809 (W.D. Tex. 2022).

215.   There are a litany of terms in SB 12 that are vague and open-ended, and Plaintiffs testified that they do not have a reasonable opportunity to conform their conduct and expression to this law, even when they make good-faith efforts to do so.

216.   If allowed to take effect, SB 12 would lead to arbitrary and discriminatory enforcement, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), and "have the capacity 'to chill constitutionally protected conduct, especially conduct protected by the First Amendment.'" *Roark*, 522 F.3d at 546 (quoting *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988)).

217.   The definition of "sexually oriented performance" in the law is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Because all parts of SB 12 refer to this definition, the statute cannot be severed and the law on its face is unconstitutionally vague.

### F.   SB 12 Establishes an Unconstitutional Prior Restraint

218.   SB 12 establishes an unconstitutional prior restraint on free expression. Section 2 of the law states that no municipality or county may authorize a "sexually oriented performances" on public property or in the presence of an individual

younger than 18 years of age, and it also grants municipalities and counties unbridled authority to "regulate" all other such performances with no specified limitations on such regulations.[170]

219.   This prior restraint on free expression bears a "heavy presumption [of] unconstitutionality." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990). SB 12 imposes an unconstitutional prior restraint in violation of the First Amendment because it prohibits certain communications before they occur and allows for excessive discretion in regulating speech. *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 437 (5th Cir. 2014).

220.   SB 12 also lacks constitutionally adequate safeguards for imposing a prior restraint on expression. The prior restraint in Section 2 is not: (1) limited to a specified, brief period of time during which the status quo is maintained; (2) allowing for prompt judicial review; and (3) imposing on the censor the burdens of providing the basis to suppress the speech. *See N.W. Enters. v. City of Houston*, 352 F.3d 162, 193–94 (5th Cir. 2003). Because Section 2 of SB 12 lacks these safeguards, it is unconstitutional as a prior restraint on free expression.

221.   If any of the foregoing Findings of Fact constitute Conclusions of Law, they are adopted as such; and if any of the following Conclusions of Law constitute Findings of Fact, they are adopted as such.

---

[170]     S.B. 12 § 2 (proposed Tex. Loc. Gov't Code § 243.0031(b)).

## ORDER

Based on the above findings of fact and conclusions of law, this Court declares SB 12 to be facially unconstitutional, in violation of the First and Fourteenth Amendments.

Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are hereby permanently enjoined from enforcing SB 12.

Plaintiffs are awarded reasonable costs and attorneys' fees to be determined at a later date.

*** 

Signed on this _____day of August, 2023.

_____
Judge David Hittner

Respectfully submitted,

*/s/ Brian Klosterboer*
Brian Klosterboer, *attorney-in-charge*
TX Bar No. 24107833
SDTX No. 3314357
Chloe Kempf
TX Bar No. 24127325
SDTX No. 3852674
Thomas Buser-Clancy
TX Bar No. 24078344
SDTX No. 1671940
Edgar Saldivar
TX Bar No. 24038188
SDTX No. 618958
Adriana Pinon
TX Bar No. 24089768
SDTX No. 1829959
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
bklosterboer@aclutx.org
ckempf@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

*Attorneys for Plaintiffs*

*/s/ Emily Rohles*
Ali Andrews
TX Bar No. 24059381
SDTX No. 2247339
Emily Rohles
TX Bar No. 24125940
SDTX No. 3715273
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
Tel. (713) 229-1234
Fax (713) 229-1522
Ali.Andrews@BakerBotts.com
Emily.Rohles@BakerBotts.com

Derek McDonald
TX Bar No. 00786101
SDTX No. 18546
Maddy Dwertman
TX Bar No. 24092371
SDTX No. 3853795
BAKER BOTTS L.L.P.
401 S. 1st Street, Suite 1300
Austin, TX 78704
Tel. (512) 322-2500
Fax (512) 322-2501
Derek.McDonald@BakerBotts.com
Maddy.Dwertman@BakerBotts.com

Brandt Thomas Roessler
TX Bar No. 24127923
SDTX No. 3853796
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel. (212) 408-2500
Fax (212) 408-2501
Brandt.Roessler@BakerBotts.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 27, 2023, a true and correct copy of the foregoing was served via the CM/ECF system to all counsel of record.


*<u>/s/ Emily Rohles</u>*
Emily Rohles