IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| The Woodlands Pride, Inc.; et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | C.A. No. 4:23-cv-2847 |
| vs. | § | **JURY TRIAL DEMANDED** |
| | § | |
| Angela Colmenero, in an official | § | |
| capacity as Interim Attorney General | § | |
| of Texas, et al., | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT CITY OF ABILENE'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant City of Abilene (the "City") appears under Fed. R. Civ. P. 52 to propose findings of fact and conclusions of law on all claims against the City.

**I.   CITY'S PROPOSED FINDINGS OF FACT.**

1.   Abilene Pride Alliance is a non-profit organization that has hosted drag-type festivals and activities within the City of Abilene. 1 Tr. 118-21.

2.   None of the Plaintiffs other than Abilene Pride Alliance offered any evidence showing that they plan to host or engage in any drag performances, festivals, or related activities within the City of Abilene.

3.   In September 2022, the City permitted Abilene Pride Alliance to host a street parade that featured drag performers on street floats; and in conjunction with

that street parade, the City permitted a Pride Festival featuring drag performances at a City park. 1 Tr. 123-25.

4.    The Abilene Pride Alliance's street parade and festival were conducted in an age-appropriate manner that did not involve performers dressing indecently (exposing breasts, buttocks, or genitals) or engaging in simulated sex acts in the presence of children. The drag performances hosted by Abilene Pride Alliance do involve performers wearing sequins, wigs, breastplates, hip pads, packers (that simulate a penis bulge), and exaggerated jewelry. The performers typically dance, lip synch, and engage with the audience by hugging, kissing on the cheek, sometimes bumping hips. 1 Tr. 121-23. No one comes into contact with breasts except by hugging or by accidental contact. 1 Tr. 135-36. The performers' dances do not involve gestures or gesticulations that are sexually-oriented. 1 Tr. 136. The packers worn by 'drag-king' performers do not simulate an erect penis. 1 Tr. 139.

5.    The Abilene Pride Alliance applied for, and received a permit for its street parade currently scheduled for September 30, 2023. 1 Tr. 126. The parade for 2023 will be similar to the parade held in 2022. 1 Tr. 127. Abilene Pride Alliance does not plan or propose for its 2023 festival to be conducted on city property. 1 Tr. 126.

6.     The Abilene Pride Alliance does not plan or intend to violate SB 12 in its upcoming September 30, 2023 parade or festival. 1 Tr. 137-43.

7.     No proof was offered to show that the City of Abilene will revoke the permit granted to Abilene Pride Alliance to conduct its 2023 street parade, although Abilene Pride Alliance subjectively fears the City might do so. No proof has been submitted to show that the City of Abilene believes, or has reason to believe, that the planned parade will violate SB 12. Abilene Pride Alliance has not cancelled its plans to have its parade. No threat of prosecution by the City has chilled any planned speech or expression by Abilene Pride Alliance on public property which the City has any power or legal authority to control.

8.     Historically, the Abilene Pride Alliance has not been harassed by the Abilene Police Department. 1 Tr. 126. On one occasion, a call was made to police by an unspecified caller during a drag show function hosted by the Alliance. 1 Tr. 137. The purpose of the call is unknown. *Id*. Police responded to the call, asked questions and then left. *Id*. No arrests were made or charges filed. 1 Tr. 137.

9.     Plaintiffs have not shown that the City of Abilene proposes to issue any regulations pursuant to the authority conferred by SB 12's new Section 243.0031(b) of the Texas Local Government Code.

10.    In this litigation, the City has maintained neutrality on the validity of SB 12.

3

II.   **CITY'S PROPOSED CONCLUSIONS OF LAW.**

A.   **City Organization.**

1.   The City of Abilene is a Texas home-rule municipality, operating under a home-rule city charter. The Court takes judicial notice of the certified Abilene City Charter attached as Exhibit 1 [Dkt. 42-1] to the City's Motion to Dismiss.

2.   "'Home-rule' cities in Texas, such as [Abilene], derive their authority from the Texas constitution. *See* Tex. Const. art. XI, § 5. As the Texas Supreme Court has consistently acknowledged, '[h]ome-rule cities have the full power of self-government and look to the Legislature, not for grants of power, but only for limitations on their powers.'" *Republic Waste Servs. of Tex. v. Tex. Disposal Sys.*, 848 F.3d 342, 344 (5th Cir. 2016) (quoting *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013)). Any limitation by the Texas Legislature on the City's home-rule powers "must be imposed with unmistakable clarity." *Id*. at 345.

3.   The Texas Constitution has empowered the people of Abilene, through their City Charter, to authorize the City to legislate for the health, safety, and welfare of its inhabitants. *See* ABILENE CHARTER, Art. I, § 3. The City does not look to, or need, statutory authority for such powers.

4

**B.      Standing, Generally.**

4.      "Under Article III of the Constitution, the federal courts have jurisdiction over a claim between a plaintiff and a defendant only if it presents a 'case or controversy.'" *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). "This is a 'bedrock requirement.'" *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To establish a case or controversy sufficient to give a federal court jurisdiction over their claims, Plaintiffs must satisfy three criteria. *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)):

> First, they must show that they have suffered, or are about to suffer, an "injury in fact." Second, "there must be a causal connection between the injury and the conduct complained of." Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." If any one of these three elements – injury, causation, and redressability – is absent, plaintiffs have no standing in federal court under Article III of the constitution to assert their claim.

*Okpalobi*, 244 F.3d at 425 (quoting *Lujan*, 504 U.S. at 560 (internal citation omitted). "The party invoking federal jurisdiction bears the burden of establishing standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted). "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof,

5

i.e., with the manner and degree of evidence required at the successive stages

of the litigation." *Id.* (internal quotations omitted).

5.    Because "standing is not dispensed in gross," *Town of Chester, N.Y. v. Laroe

Estates, Inc*., 581 U.S. 433, 439 (2017), "a plaintiff must demonstrate standing

for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

332, 352 (2006). To do so, each plaintiff must demonstrate that it has standing

separately as to each defendant. *See Daves v. Dallas Cnty*., 22 F.4th 522, 542

(5th Cir. 2022) (en banc) ("Standing to sue one defendant does not, on its own,

confer standing to sue a different defendant."); *Fontenot v. McCraw*, 777 F.3d

741, 746 (5th Cir. 2015) ("The court must evaluate each plaintiff's Article III

standing for each claim; 'standing is not dispensed in gross.'")(quoting *Lewis

v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Further, just as standing is not

dispensed in gross, neither is ripeness. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th

421, 434 n.27 (5th Cir. 2021) ("We assess ripeness claim by claim."). Unless

a statute cannot be severed, "a plaintiff must demonstrate standing for each part

of the statute that he wants to challenge." *Murphy v. NCAA*, 138 S. Ct. 1461,

1487 (2018).

**C.      No Standing to Sue the City of Abilene.**

6.      Preliminarily, none of the Plaintiffs except for Abilene Pride Alliance contends
that the City of Abilene is likely to enforce SB 12 against them. Therefore, the
Court will dismiss for lack of subject-matter jurisdiction all of the claims
brought against the City of Abilene by Plaintiffs Extragrams, LLC, 360 Queen
Entertainment LLC, and Brigitte Bandit, because none of these Plaintiffs are
proper plaintiffs to sue the City. *See Fontenot*, 777 F.3d at 746-47.

7.      "When a state statute directs the actions of an official, as here, the officer, be
he state or local, is acting as a state official." *Echols v. Parker*, 909 F.2d 795,
799 (5th Cir. 1990); *see also Buffin v. California*, 23 F.4th 951, 962 (9th Cir.
2022) ("any officer, be he state or local, is acting as a state official, i.e., a state
agent when a state statutory regime comprehensively directs his actions")
(internal quotations omitted) (citing *Echols*, 909 F.2d at 799 (5th Cir. 1990)).
Where a plaintiff has complained that local actors "acting for the State" have
violated plaintiff's rights, such actors are deemed "state actors" and "there is
no case or controversy with, and no Article III jurisdiction over," the local
government for which such "state actors" serve. *Daves v. Dallas Cnty.*, 22 F.4th
522, 532 (5th Cir. 2022) (en banc).

8.      Plaintiffs complain that they fear that SB 12, when effective, will direct City actors to infringe their constitutional rights. Plaintiffs' contend the City of Abilene "[is] sued because [it is] statutorily tasked with enforcing this unconstitutional law [SB 12]." Complt., at ¶ 2; *see also id*., at ¶ 19. Because the gravamen of the complaint is directed at the validity of a state law that the Plaintiffs claim the City is tasked with enforcing, and the suit is brought pre-enforcement (i.e., there has been no enforcement of this law by any city actor), there is no case or controversy between the Plaintiffs and the City *as such*. The proper defendant, if any, may be a "state actor" charged with the duty to enforce the law, not the local governmental entity that did not enact the law. *Daves*, 22 F.4th at 532.

9.      In addition, Plaintiffs have not demonstrated standing to sue the City of Abilene for each part of the statute Plaintiffs want to challenge, either because (a) the City as such is not tasked with enforcing that part of SB 12; or the City has not regulated under SB 12; and, in any event, no injury-in-fact is traceable to any threatened enforcement of SB 12 by the City. To wit:

**Section 1 of SB 12**

10.     Section 1 of Texas Senate Bill 12 (SB 12) amends the Texas Health and Safety Code to add a new Chapter 769, entitled "Sexually Oriented Performances."

8

Section 1 does not empower the City or any of its officials to enforce that part of SB 12; Section 1 may only be enforced by the Texas Attorney General. The City of Abilene has no enforcement powers under Section 1 of SB 12. Therefore, the City is an improper defendant for the purpose of facially challenging the constitutionality of Section 1 of SB 12. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court.").

### Section 2 of SB 12

11.  Section 2 of Texas Senate Bill 12 (SB 12) amends the Texas Local Government Code by creating a new Section 243.0031 to the Code. In relevant part, SB 12 provides that:

> Sec. 243.0031. AUTHORITY TO REGULATE CERTAIN SEXUALLY ORIENTED PERFORMANCES.
>
> (a) In this section, "sexually oriented performance" has the meaning assigned by Section 43.28, Penal Code.
>
> (b) Subject to Subsection (c), a municipality or county may regulate sexually oriented performances as the municipality or county considers necessary to promote the public health, safety, or welfare.

9

(c) A municipality or county may not authorize a sexually oriented performance:
    (1)    on public property; or
    (2)    in the presence of an individual younger than 18 years of age.

In short, Plaintiffs have sued the City to challenge two subsections of proposed Section 243.001 of the Local Government Code – Subsection (b), which confers authority on municipalities to regulate "sexually oriented performances" (hereinafter, the "Municipal Authorization Provision"); and Subsection (c), which prohibits municipalities from authorizing such performances on public property or in the presence of minors (hereinafter, the "Municipal De-Authorization Provision").

12.    Plaintiffs' challenge to the facial constitutionality of the Municipal Authorization Provision, SB 12's grant of regulatory authorization to the City (proposed Tex. Loc. Gov't Code § 242.0031(b)), is premature. This statute does not regulate expression; it merely authorizes municipalities to do so. But no City regulation has been enacted or threatened to be enacted under this Provision. Thus, there is no ripe controversy to support a claim against the City as to the Municipal Authorization Provision of SB 12. *See Nixon v. Administrator of Gen. Serv.*, 433 U.S. 425, 438 (1977) ("For [the Court] to review regulations not yet promulgated, the final form of which has been only

hinted at, would be wholly novel."); *Western Mining Council v. Watt*, 643 F.2d 618, 627 (9th Cir. 1981) ("The mere possibility that the Secretary may act in an arguably unconstitutional manner pursuant to one or more of [the legislative acts] is insufficient to establish the 'real and substantial controversy' required to render a case justiciable under Article III.").

13.     Plaintiffs' suit against the City to challenge SB 12's Municipal De-Authorization Provision – SB 12's mandatory *limitation* on municipal authority to allow "sexually oriented performances" on public property or in the presence of minors – presents no justiciable controversy between Plaintiffs and the City of Abilene. This portion of SB 12 does not direct a municipality to punish, prosecute, or sanction "sexually oriented performances." This portion of SB 12 does not require performers to file permit applications with the City. This statutory prohibition runs only against cities and counties, by limiting municipal authority; it does not run against performers. And it does not chill speech. It merely requires cities and counties to *deny authorization* for certain "sexually oriented performances" in situations where authorization or permission my otherwise be necessary, such as for street parades.

14.     To have standing to sue a particular defendant, a plaintiff must show that the defendant can redress the alleged injury. *See Okpalobi v. Foster*, 244 F.3d 405,

426-27 (5th Cir. 2001) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court."). Plaintiffs seek to enjoin the City from "enforcing" the Municipal De-Authorization Provision – a statute by which the State of Texas has limited the inherent powers of municipalities to authorize "sexually oriented performances." The City of Abilene, however, lacks power to reinstate plenary power that a Texas statute has withdrawn from cities generally. *See generally Republic Waste Servs. of Tex. v. Tex. Disposal Sys*., 848 F.3d 342, 346 (5th Cir. 2016) (discussing statutory abrogation of home-rule municipal authority); *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 628 (Tex. 2010) (city council's statutory obligation *to comply* with a state law does not by itself confer authority on the city council *to enforce* that law).

15. When a plaintiff seeks to enjoin the activity of a government agency, . . ., his case must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Allen v. Wright*, 468 U.S. 737, 761 (1984) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976)); *see also Allen*, 468 U.S. at 761-62 (hesitating to recognize standing in such cases). Under this principle the Court cannot grant

the redress sought, because to enjoin the City from disallowing "sexually oriented performances" generally would *implicitly* enjoin the City from disallowing *any* conduct prohibited by SB 12, such as lewd acts or nudity in public spaces or in the presence of minors, conduct which merits no First Amendment protection.

16. Only one Plaintiff – Abilene Pride Alliance – has sought permission to conduct its Pride Parade on City streets on September 30, 2023; and that permit, as Plaintiffs judicially admit, has been granted by the City. *See* Complt., at ¶ 83 ("The City of Abilene has issued a permit for the parade."). There is no allegation, or evidence, that the City requires a parade permit based on the content of any applicant's speech. Indeed, Plaintiffs have not offered any evidence at all about the City of Abilene's permitting policies for street parades. Plaintiff Abilene Pride Alliance has not been chilled to request the permit to use city streets for its 2022 and 2023 Pride Parades; and the existence of SB 12 has not caused Abilene Pride Alliance to self-censor, such as by renouncing the permit granted by the City for the Alliance's planned 2023 Pride Parade.

17. The only fear alleged in this case by Abilene Pride Alliance is that the City "may" revoke the 2023 parade permit already issued. Such fear, however, if any, has not been proven to be objectively credible; nor does the hypothetical

13

prospect of the permit being revoked cause any chill or self-censorship of free expression. Indeed, Abilene Price Alliance does not plan to engage in conduct that violates SB 12. Nor is there any evidence in the trial record showing that any City permit official has threatened to revoke the permit. The Alliance's fear that its 2023 permit will be revoked, therefore, is not a justiciable injury-in-fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.") (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)); *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 41 (1999) ("Resort to a facial challenge here is not warranted because there is 'no possibility that protected speech will be muted.'") (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977)).

### Section 3 of SB 12

18.   Section 3 of Texas Senate Bill 12 (SB 12) amends the Texas Penal Code by creating a new Section 43.28 to the Penal Code. The City *as such* is not an enforcement authority under the Texas Penal Code or the Texas Code of Criminal Procedure. *See generally*, TEX. CODE CRIM. PROC. art. 2.12 (defining "peace officers" as officers licensed by the State under the Texas Occupations Code); art. 2.13 (assigning enforcement duties to "peace officers," not to cities

14

*per se*). Under Texas law, the City *as such* has no legal power to enforce the Texas Penal Code. *See Office of the AG v. Weatherspoon*, 472 S.W.3d 280, 283 (Tex. 2015) ("An entire agency does not become an appropriate law-enforcement authority merely because some divisions have such power."); *Jones v. City of Port Arthur*, No. 09-14-00442, 2016 Tex. App. LEXIS 12357, *23 (Tex. App.—Beaumont 2016, no pet.) (mem. op.) ("That the City has a division within it, the Police Department, charged with investigating and prosecuting crimes, does not transform the entire City as a governmental entity into an appropriate law-enforcement entity.") (following *Weatherspoon*, *supra*). Accordingly, the City *as such* is an improper defendant to facially challenge the constitutionality of Section 3 of SB 12. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court.").

19.   Since there is no justiciable controversy between Plaintiffs and the City of Abilene, the City's motion to dismiss for want of jurisdiction [Dkt. 42] is granted; and Plaintiffs' claims against the City are dismissed for want of jurisdiction.

### D.     No Section 1983 Liability Proven Against the City.[1]

20.     "[U]nder § 1983, local governments are responsible only for 'their *own* illegal

acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis original in

*Connick*) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986));

*see also Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 665-83

(1978). "It is well-established that a city is not liable under § 1983 on the theory

of *respondeat superior*." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th

Cir. 2009) (citing *Monell*). Likewise, there is no Section 1983 liability on the

theory of "*respondeat inferior*" – that is, "imputing statutory liability in the

opposite direction, from a culpable principal to an innocent agent." *Coleman*

*v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 535 (5th Cir. 1997) (quoting

*Brownlee v. Lear Siegler Management Servs. Corp.*, 15 F.3d 976, 978 (10th

Cir. 1994)). This case presents a Section 1983 claim against the City based

upon an improper theory of *respondeat inferior* – that the City (as agent)

becomes liable for being tasked by the State (as principal) to enforce an

unconstitutional statutory mandate of the State's.

---

[1] The City submits Section II.D of its proposed Conclusions of Law in the event the Court decides it has subject-matter jurisdiction to reach the merits of some or all of Plaintiffs' facial challenges to SB 12 that are asserted against the City.

21.   Section 1983 claims against a local government "require three elements: '(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Arnone v. Dallas Cnty.*, 29 F.4th 262, 265-66 (5th Cir. 2022) (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc)). "This 'policy or custom' requirement extends to claims for injunctive and declaratory relief." *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Los Angeles County v. Humphries*, 562 U.S. 29, 31 (2010)).

22.   "Section 1983 litigation requires [the Court] to identify the level of government for which an official was acting when establishing the policy that is relevant to the claims." *Daves v. Dallas Cnty.*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc) (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997)). The City of Abilene is not liable under Section 1983 for just any official policy that may violate these Plaintiffs' constitutional rights. Only a policy of the City's own – a policy of the City itself – must be shown to have caused Plaintiffs' injuries. *See Arnone v. Cnty. of Dallas Cnty.*, 29 F.4th 262, 266 (5th Cir. 2022) ("Dallas County can be held liable only for those decided or acquiesced to by a *county* policymaker.") (emphasis original).

23.     The City's final policymakers are "the officials or governmental bodies who

speak with final policymaking authority for the local governmental actor

concerning the action alleged to have caused the particular constitutional or

statutory violation at issue." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th

Cir. 2008) (quoting *McMillian*, 520 U.S. at 784-85 (quoting *Jett v. Dallas

Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989))); *see also City of St. Louis v.

Praprotnik*, 485 U.S. 112, 124-25 (1988).

24.     The relevant final policymaker for the City is its elected City Council. *See

Abilene Charter*, Art. 2, § 10.

25.     Plaintiffs' Section 1983 claims against the City fail on the first element of that

cause of action. SB 12, as a statutory mandate, is a policy of the State's, not of

the City's. Section 1983 local governmental liability cannot be based upon state

statutory mandates. *See, e.g.*, *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85

(1997); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980) (holding

that a county was not liable under § 1983 for county's judge's enforcement of

a state statute); *Crane v. Texas*, 759 F.2d 412, 430 (5th Cir. 1985) ("[L]ocal

governments and their officials who act in conformance with a state statutory

scheme will not be held liable for § 1983 damages if the scheme is later held

unconstitutional."); *Bigford v. Taylor*, 834 F.2d 1213, 1223 (5th Cir. 1988) (a

local magistrate is not a county policymaker when carrying out the statutory policy of the State of Texas); *Arnone*, 29 F.4th at 266 (affirming dismissal of county where actions of county official were directed by state law); *Daves*, 22 F.4th at 545 ("if there is no defendant county official who acts as a policymaker as to the function at issue, then the County must be dismissed as a party") (citing *McMillian*, 520 U.S. at 783); *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990) (where arrestees brought a federal civil rights action against local county officials, county officials were acting as state agents, not county agents, when they enforced the state's anti-boycott statute, reasoning:

> [T]he State cannot dissociate itself from actions taken under its laws by labeling those it commands to act as local officials. A county official pursues his duties as a state agent when he is enforcing state law or policy. He acts as a county agent when he is enforcing county law or policy. It may be possible for the officer to wear both state and county hats at the same time, but **when a state statute directs the actions of an official, as here, the officer, be he state or local, is acting as a state official**.

*Id.*, at 800-01 (emphasis added).

26.   Accordingly, Plaintiffs failed to prove their Section 1983 claims against the City of Abilene, and thus, those claims are dismissed with prejudice.

19

**E.      No *Ex Parte Young* Liability Against the City.[2]**

27.    *Ex parte Young*, 209 U.S. 123 (1908), is an exception to State sovereign

immunity under the Eleventh Amendment. It is "a legal fiction that allows

private parties to bring suits for injunctive or declaratory relief against

individual state officials acting in violation of federal law." *City of Austin v.*

*Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). "For the exception to apply, the

state official, 'by virtue of his office,' must have 'some connection with the

enforcement of the [challenged] act, or else [the suit] is merely making him a

party as a representative of the state, and thereby attempting to make the state

a party.'" *Id*. (quoting *Young*, 209 U.S. at 157).

28.    Plaintiffs have not sued the City of Abilene under *Ex parte Young*. There is no

allegation that the City of Abilene is an "individual state official" having "some

connection with enforcement of" SB 12. Therefore, no *Ex parte Young* claim

against the City is before this Court. Plaintiffs have not sued the City as an

---

[2] The City submits Section II.E of its proposed Conclusions of Law in the event
the Court (1) declines to grant the City's motion to dismiss for lack of subject matter
jurisdiction and (2) entertains Plaintiffs' argument during closing argument that
Plaintiffs' failure to prove municipal liability under Section 1983 can be cured by
treating the same claims as having been brought pursuant to *Ex parte Young*. *Ex Parte
Young* is an exception to 11th Amendment immunity, not to Article III's "case or
controversy" requirement.

"arm of the state." Thus, no *Ex parte Young* claim against the City is properly before this Court.

29.    Furthermore, even if an *Ex parte Young* claim were now asserted against the City on this record, it would be futile. A City *as such* is not an arm of the State of Texas entitled to Eleventh Amendment immunity. *Alden v. Maine*, 527 U.S. 706, 756-57 (1999). However, were the City deemed a state agency, it too would have Eleventh Amendment immunity. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex parte Young* "has no application in suits against. . .States and their agencies" ). The City *as such* is plainly not an "individual state official." *See Daves v. Dallas Cnty.*, 22 F.4th at 542 (holding that where district and county judges acted for the State of Texas when they created bail schedules and that such actions could be subject to a claim for prospective relief under *Ex parte Young*, such officials "cannot create liability for Dallas County for those actions"). Thus, the City *as such* is not a proper defendant for a suit under *Ex parte Young*.

**F.      Claims Against City Mooted by Relief Granted Against the Attorney General.[3]**

30.      The Court's Final Judgment declaring SB 12 unconstitutional and enjoining the Texas Attorney General Attorney from enforcing it binds all state and local governmental actors commanded or authorized to act under it. *Harris County v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 318 (5th Cir. 1999) (recognizing that "a local law enforcement official is bound when his interests are represented by the state attorney general") (citing cases). Accordingly, Plaintiffs' claims against the City of Abilene are moot. *See Buquer v. City of Indianapolis*, No. 1:11-cv-708-SEB, 2013 U.S. Dist. LEXIS 45084, 2013 WL 1332158 (S.D. Ind. Mar. 28, 2013) (after invalidating a state law on a facial challenge, court dismissed Section 1983 claim for injunctive relief against a city as "no longer ripe for adjudication.").

---

[3] The City submits Section II.F of its proposed Conclusions of Law in the event the Court (1) declines to dismiss Plaintiffs' claims against the City for want of jurisdiction or (2) for failure to state a claim, and (3) declares SB 12 unconstitutional in a judgment binding the Attorney General.

### G.     No Section 1988 Fee Award Against the City.[4]

31.     An attorney fee award may be properly entered against the State alone when both State and local enforcement officials are sued for their actions enforcing a challenged state law. *Echols v. Parker*, 909 F.2d 795, 800 (5th Cir. 1990) (affirming order directing State of Mississippi to pay attorney fee award though state was not a party where action of local officials "much like that of a county sheriff in enforcing a state law, may more fairly be characterized as the effectuation of the policy of the State ... embodied in that statute, for which the citizens of a particular county should not bear singular responsibility") (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)); *Buffin v. California*, 23 F.4th 951, 962 (9th Cir. 2022) (citing *Echols*, 909 F.2d at 799 and holding that "the district court correctly found that the Sheriff acted as a state official for the purposes of this action, subjecting the State to liability for attorney's fees under § 1988."); *Herbst v. Ryan*, 90 F.3d 1300, 1302, 1306 (7th Cir. 1996) (affirming district court order directing payment by State of Illinois of attorneys' fees incurred in litigation naming two state officials and 102 county district attorneys as defendants).

---

[4] The City submits Section II.G of its proposed Conclusions of Law in the event the Court decides it has subject-matter jurisdiction to reach the merits of some or all of Plaintiffs' facial challenges to SB 12 that are asserted against the City.

32.    The City did not enact SB 12, and Plaintiffs' quarrel with SB 12 is not a quarrel with the City. The City has granted Plaintiffs' requested parade permit; and Plaintiffs have pointed to no unconstitutional regulation the City is poised to enact pursuant to SB 12. Accordingly, since Plaintiffs' claims challenge only the effectuation of the policy of the State embodied in SB 12, the citizens of the City of Abilene should not bear singular responsibility for any attorney fee award. Plaintiffs' request for attorneys' fees against the City of Abilene are thus denied.

Respectfully submitted,

VIADA & STRAYER

By: /s/ ***Ramón G. Viada III***
　　Ramón G. Viada III
　　State Bar No. 20559350
　　Fed I.D. No. 10689
　　rayviada@viadastrayer.com
　　17 Swallow Tail Court
　　The Woodlands, Texas 77381
　　281-419-6338

COUNSEL FOR DEFENDANT
CITY OF ABILENE

## <u>CERTIFICATE OF SERVICE</u>

I certify that all counsel of record have been served a true and correct copy of this document by electronic submission for filing and service through the Electronic Case Files System of the Southern District of Texas on September 6, 2023.

/s/ ***Ramón G. Viada III***

Ramón G. Viada III