UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| The Woodlands Pride, Inc.; Abilene Pride Alliance; Extragrams, LLC; 360 Queen Entertainment LLC; Brigitte Bandit,<br><br>　　　Plaintiffs,<br><br>v.<br><br>Warren Kenneth Paxton, in an official capacity as Attorney General of Texas; Montgomery County, Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; City of Abilene, Texas; Taylor County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Delia Garza, in an official capacity as County Attorney of Travis County; Joe D. Gonzales, in an official capacity as District Attorney of Bexar County,<br><br>　　　Defendants. | Civil Action No. 4:23-cv-02847 |

**PLAINTIFFS' RESPONSE TO DEFENDANT PAXTON'S NOTICE OF SUPPLEMENTAL AUTHORITY**

The Woodlands Pride, Inc., Abilene Pride Alliance, Extragrams, LLC, 360 Queen Entertainment LLC, and Brigitte Bandit (collectively, "Plaintiffs"), file this

response to Defendant Paxton's Notice of Supplemental Authority (Dkt. 92). The decision that the Attorney General cites, *Spectrum WT, et al., v. Walter Wendler, et al.,* Case No. 2:23-cv-048-Z (N.D. Tex. Sept. 21, 2023) (hereinafter, "Decision"), is distinguishable for the reasons outlined below, is not yet final, and is inapplicable to a statewide ban on expressive activity as sweeping as S.B. 12.

First, the court in *Spectrum WT* repeatedly emphasized that the drag performances at issue take place on university property, which the court found to substantially change the legal analysis that applies to a more sweeping statewide ban like S.B. 12. *See, e.g.*, Decision at 5 (applying "'campus protest' cases applicable to school settings"); *id.* at 6 (asking whether university property is a "limited public forum" or "non-public forum" for purposes of First Amendment analysis); *id.* at 10 (explaining that *Norma Kristie* "is not a campus case and therefore cannot clearly establish the rights of students on campus beyond debate") (citing *Norma Kristie, Inc., v. City of Okla. City*, 572 F. Supp. 88, 91 (W.D. Okla. 1983)). These campus speech cases are substantially different from S.B. 12, which limits and restricts Plaintiffs' expressive activity in all traditional public forums—such as parks and streets—as well as on all other public property, and at private commercial enterprises across the state.

Second, the court repeatedly emphasized the preliminary and non-final nature of its decision. *See, e.g.*, Decision at 5 ("[A]lthough Plaintiffs recite and repeat

2

'expressive conduct' boilerplate from landmark cases, they elide the constitutional and statutory taxonomies necessary to decide a Free Speech campus case – *at least at this MTD Phase*") (emphasis added); *id.* at 9 ("At this MTD Phase, Plaintiffs fall short"); *id.* at 25 ("Plaintiffs may still ultimately prevail on their request for declaratory relief, but that is a matter for another day.").[1]

Third, there is only one overlapping legal claim between this case and *Spectrum WT*—viewpoint discrimination—and the court emphasized that the plaintiffs there did not raise any "overbreadth issues or arguments in this case." Decision at 14. Even for the claim of viewpoint discrimination, the court explained that its analysis was preliminary and "Plaintiffs may still ultimately prevail on their request for declaratory relief, but that is a matter for another day." *Id.* at 25. Critically, the court distinguished a refusal to host a drag performance on a college campus from binding Supreme Court precedent invalidating content-based, vague, and overbroad restrictions on "*all* live entertainment, including nonobscene nude

---

[1] The court's qualified immunity analysis is also inapplicable to this case because the court's analysis hinged on whether the plaintiffs in *Spectrum WT* could cite a case directly on point. *Id.* at 5 (finding that the plaintiffs did not "plead a 'clearly established right' to host a sexualized drag show on campus"); *id.* at 9 ("it is the plaintiff's burden 'to find a case in his favor that does not define the law at a high level of generality.'") (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)). Even though the court dismissed the plaintiffs' claims for damages based on qualified immunity, it allowed the plaintiffs' claims for declaratory relief to proceed, acknowledging that the failure to point to a case directly on point in the context of drag performances at a public university did not foreclose all of plaintiffs' claims.

dancing . . . otherwise protected by the First Amendment." *Id.* at 13 (quoting *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 76 (1981)). Thus, under the court's own reasoning, S.B. 12 is much more similar to state laws that the Supreme Court has repeatedly invalidated as content-based discrimination, overbroad, vague, and impermissible prior restraints. The court in *Spectrum WT* did not cite to the binding precedent of *Reno v. Am. C.L. Union*, 521 U.S. 844, 885 (1997), nor did it distinguish the uniform case law across the country blocking state laws restricting drag performances, including on grounds of content-based discrimination, overbreadth, vagueness, and prior restraint. *See, e.g.*, *Friends of Georges, Inc. V. Mulroy*, 2023 WL 3790583 (W.D. Tenn. June 2, 2023); *HM Fla.-ORL, LLC v. Griffin,* No. 6:23-CV-950-GAP-LHP, 2023 WL 4157542, at *9 (M.D. Fla. June 23, 2023); *Imperial Sovereign Ct. of Montana v. Knudsen*, No. CV 23-50-BU-BMM, 2023 WL 4847007, at *7 (D. Mont. July 28, 2023).

Fourth, the court's decision on viewpoint discrimination is inapplicable to this case because the court interpreted the university president's prohibition on drag performances to be related solely to conduct within those performances, and not to the message or expression they sought to convey. *See* Decision at 3 ("Throughout the letter, President Wendler expressed support for the underlying mission and message of the proposed event"); *id.* at 18 ("[I]t is the conduct contained in the fundraiser that President Wendler identified as the problem – not the message"). In

4

contrast, S.B. 12 explicitly discriminates based on the viewpoint of performances by restricting "sexual gesticulations using accessories or prosthetics *that exaggerate* male or female sexual characteristics." S.B. 12 § 3 (proposed Tex. Penal Code § 43.28(a)(1)(E)) (emphasis added). This "exaggerat[ion]" is not pure conduct, as the court determined in *Spectrum WT*, but instead expressly limits the message that performers can convey and imposes the government's viewpoint of appropriate gender expression.

Fifth, the court's finding that "it is not clearly established that all drag shows are inherently expressive," Decision at 14, departs from longstanding Supreme Court precedent, and Plaintiffs respectfully disagree with the court's analysis. As explained in Plaintiffs' Omnibus Response Brief, Dkt. 70 at 23-27, drag performances are substantially different from acts of pure conduct like flag burning or refusing to allow recruiters on a law school campus, as in *Texas v. Johnson*, 491 U.S. 397, 404 (1989), and *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 65 (2006) ("*FAIR*"). Drag performances are instead forms of art substantially similar to other types of constitutionally protected expression. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) (music), *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 495 (1952) (movies), *Schacht v. United States*, 398 U.S. 58, 58 (1970) (live performances); *D. Houston Inc. v. U. S. Small Bus. Admin.*, 579 F. Supp. 3d

959, 966 (S.D. Tex. 2020) (Hittner, J.) ("Exotic dancing is within the range of speech that receives First Amendment protection.").

But even to the extent that the *Spectrum WT* decision is correct that drag performances must convey particularized messages that are likely to be understood by others who view their performances, the Plaintiffs in this case presented unrebutted evidence at trial that their performances *are* "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments" and convey particularized messages likely to be understood by others. *See Johnson*, 491 U.S. at 404. For example, the performances at The Woodlands Pride events convey messages of celebration, equality, and acceptance for attendees in suburban area; of strength and solidarity with the LGBTQ+ community; and of liberation. Trial Tr., Vol. 1 178:10-179:1; 185:8-187:1; 202:11-17. The Abilene Pride Alliance testified that in their community, "our drag performers are kind of a nexus of belonging. It's a way for people in our community to see themselves represented on a larger scale." *Id.* 121:4-6. Extragrams' performances convey messages of celebration and express the "overdramatization of a character or a gender." *Id.* 44:24-45:3, 45:9-17, 54:21-23, 57:1-5. 360 Queen Entertainment testified that "every drag queen tries to articulate something different through their performance art," and cited how one performer conveys messages of race and social justice through music and dance. *Id.* 102:4-10. Brigitte Bandit testified that "[d]rag

6

is an art form in which somebody can express themselves in or outside gender norms and expectations." *Id.* 234:1-2. *See also id.* 235:12-22. She uses her drag performances to "share [a] message of kindness and respect and accepting of other people" and to convey political messages. *Id.* 234:11-235:1. Unlike the allegations that the court reviewed in *Spectrum WT,* this Court has heard significant evidence that Plaintiffs' performances are inherently expressive and are protected by the First Amendment.

For these reasons and others explained in Plaintiffs' briefing and at trial, the Plaintiffs respectfully ask the Court to permanently enjoin S.B. 12 and declare it to be unconstitutional and void.

Respectfully submitted,

*By: /s/ Brian Klosterboer*
Brian Klosterboer, *attorney-in-charge*
   TX Bar No. 24107833
   SDTX No. 3314357
Chloe Kempf
   TX Bar No. 24127325
   SDTX No. 3852674
Thomas Buser-Clancy
   TX Bar No. 24078344
   SDTX No. 1671940
Edgar Saldivar
   TX Bar No. 24038188
   SDTX No. 618958
Adriana Pinon
   TX Bar No. 24089768
   SDTX No. 1829959
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
bklosterboer@aclutx.org
ckempf@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

*/s/ Emily Rohles*
Alison Andrews
   TX Bar No. 24059381
   SDTX No. 2247339
Emily Rohles
   TX Bar No. 24125940
   SDTX No. 3715273
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
Tel. (713) 229-1234
Fax (713) 229-1522
Ali.Andrews@BakerBotts.com
Emily.Rohles@BakerBotts.com

Derek R. McDonald
   TX Bar No. 00786101
   SDTX No. 18546
Maddy Dwertman
   TX Bar No. 24092371
   SDTX No. 3853795
BAKER BOTTS L.L.P.
401 S. 1st Street, Suite 1300
Austin, TX 78704
Tel. (512) 322-2500
Fax (512) 322-2501
Derek.McDonald@BakerBotts.com
Maddy.Dwertman@BakerBotts.com

Brandt Thomas Roessler
   TX Bar No. 24127923
   SDTX No. 3853796
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel. (212) 408-2500
Fax (212) 408-2501
Brandt.Roessler@BakerBotts.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September 2023, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

*/s/ Emily Rohles*