# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THE WOODLSLANDS PRIDE, INC., *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-CV-2847 |
| | § | |
| KEN PAXTON, in his official capacity as Attorney General of Texas, *et al.*, | § § § | |
| Defendants. | § § | |

---

## DEFENDANT PAXTON'S OPPOSED MOTION TO STAY JUDGMENT PENDING APPEAL

---

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), and for the reasons outlined below, Defendant, Ken Paxton, in his official capacity as Attorney General for the State of Texas, moves this Court to stay all granted injunctive relief in this case pending his appeal to the United States Court of Appeals for the Fifth Circuit.

## I.
## INTRODUCTION

On September 26, 2023, the Court declared that S.B. 12 is an unconstitutional restriction on speech and that S.B. 12 violates the First Amendment as incorporated to Texas by the Fourteenth Amendment of the United States Constitution. ECF 94. The Court further ordered that Defendants are immediately enjoined from enforcing S.B.

12. *Id.* On September 29, Defendant Paxton filed a notice of appeal, ECF 95, and now files this motion to stay judgment pending appeal.

Paxton has raised substantial arguments on the merits of the Court's judgment, and a stay pending appeal is warranted to permit the Fifth Circuit to assess the merits of the Court's rulings. A stay is also supported by the widely recognized principle that enjoining a state law inflicts irreparable harm on the State, and that the public's interest is aligned with the State's interest and harm. Plaintiffs, in contrast, will not be irreparably harmed if a stay is granted, given that none of the Plaintiffs intend to do anything prohibited by S.B. 12. For these reasons, and as further set forth below, a temporary stay while the Fifth Circuit considers the merits of this Court's Judgment is warranted.

## II.
## STANDARD

A party must ordinarily file a motion for stay in the district court seeking a stay of a judgment or order pending appeal or seeking an order suspending an injunction while an appeal is pending before seeking relief from the Fifth Circuit. Fed. R. App. P. 8(a)(1). "The Supreme Court has repeatedly stated that a four-factor test governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (quoting

*Nken v. Holder*, 556 U.S. 418, 426 (2009)). The Fifth Circuit "has refused to apply these factors in a rigid, mechanical fashion," and has "held that the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981)). A stay is especially warranted when existing case law does not provide clarity or guidance in resolving the serious legal questions involved. *Texas v. Ysleta Del Sur Pueblo*, 2019 WL 5589051 (W.D. Tex. Mar. 28, 2019) (district court granting stay given serious legal question raised and lack of clarity or guidance from existing caselaw). A stay pending appeal "simply suspend[s] judicial alteration of the status quo," so as to allow appellate courts to bring "considered judgment" to the matter before them and "responsibly fulfill their role in the judicial process." *Nken*, 556 U.S. at 429.

Similarly, Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction." FED. R. CIV. P. 62(d). The same four factors delineated above are considered when determining whether to suspend an injunction while an appeal is pending from the final judgment granting the injunction.

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

**III.**
**THE COURT'S ORDER**

This Court declared that S.B. 12 is an unconstitutional restriction on speech and permanently enjoined Defendants from enforcing S.B. 12. The Court concluded:

- Plaintiffs have standing. ECF 94 at 26–33.

- S.B. 12 is not severable as to Section 3. *Id.* at 33–34.

- Drag shows are inherently expressive. *Id.* at 35–39.

- S.B. 12 discriminates based on content and is not narrowly tailored to protect minors. *Id.* at 39–45.

- S.B. 12 discriminates based on viewpoint. *Id.* at 45–47.

- S.B. 12 is unconstitutionally overbroad. *Id.* at 47–50.

- S.B. 12 is unconstitutionally vague. *Id.* at 51–53.

- S.B. 12 is an impermissible prior restraint on speech. *Id.* at 53–54.

- Plaintiffs have a substantial threat of injury because loss of First Amendment rights is sufficient to show irreparable harm. *Id.* at 54.

- The balance of harms and the public interest favor a permanent injunction against enforcement of S.B. 12.

# IV.
# ARGUMENT AND AUTHORITIES

## A.    This case involves a serious legal question.

When a serious legal question is involved, the movant need only present a substantial case on the merits and show that the balance of equities weighs heavily in favor of granting a stay of judgment pending appeal. *Wildmon*, 983 at 23; *Baylor*, 711 F.2d at 39.

The Attorney General has raised a substantial case on the merits regarding the serious legal questions of standing and sovereign immunity, which go to the heart of whether this Court has subject matter jurisdiction to consider Plaintiffs' claims at all. Correspondingly, the Attorney General has demonstrated a likelihood of success on the merits regarding Plaintiffs' First Amendment claims. *See Ruiz*, 650 F.2d at 565; *Baylor*, 711 F.2d at 39. This Court rejected these arguments but recognized the novel and unique issues presented by this case. No appellate court has ruled on the merits of whether a state can restrict the conduct proscribed by S.B. 12 and whether laws similar to S.B. 12 unconstitutionally infringe on an individual's First Amendment right. Therefore, given the novel nature of Plaintiffs' claims and the substantial support for the Defendants' arguments, the Court of Appeals should have an opportunity to consider these issues before the injunction is implemented. The Defendants' significant

jurisdictional and merits arguments raise serious legal questions that support staying this Court's permanent injunction pending appeal.

**B.    Standing**

As in every case, standing is crucial. Here, respectfully, the Court's finding that Plaintiffs have standing is highly questionable. Plaintiffs do not satisfy any of the elements necessary to have standing to assert their claims: an injury in fact fairly traceable to the actions of the Attorney General and redressable by an Order enjoining his conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Attorney General has raised substantial, meritorious arguments that Plaintiffs did not meet their burden of proving standing, warranting a stay of the permanent injunction pending appeal.

A First Amendment injury, like any other, must be imminent and non-speculative. *See Google, Inc. v. Hood*, 822 F.3d 212, 227-28 (5th Cir. 2016) ("[I]nvocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury."); *Ark. Project v. Shaw*, 775 F.3d 641, 663-64 (5th Cir. 2014) ("Federal courts are not obligated to grant an injunction for every violation of law," and the "court's power to order injunctive relief depends" on "whether plaintiffs have established . . . a reasonably certain threat of imminent harm." (citation omitted)). Plaintiffs cannot satisfy these standards.

1.     **There is no evidence that Plaintiffs' conduct is proscribed by S.B. 12.**

S.B. 12 does not ban "drag" performances. It prohibits certain "sexually oriented performances." Section 3 of S.B. 12 defines "Sexually oriented performance" as "a visual performance that: (A) features: (i) a performer who is nude, as defined by Section 102.051, Business & Commerce Code; or (ii) any other performer who engages in sexual conduct [defined as five specific actions]; *and* (B) appeals to the prurient interest in sex." *Id.* § 3 (emphasis added) (codified as Tex. Pen. Code § 43.28(a)(2)).

According to their own testimony, Plaintiffs lack standing to challenge S.B. 12 because they have no intention of engaging in conduct that would violate S.B. 12. All the Plaintiffs recognize that some drag shows have sexual content that is inappropriate for children; however, none of the Plaintiffs testified that they plan or want to engage in nude performances or any "sexual conduct" as defined by S.B. 12 that appeal to the prurient interest in sex in front of children. Although they presented some evidence of the performances they wish to put on, none of that evidence shows any conduct that is proscribed by S.B. 12.

Specifically, no Plaintiff testified to intending to perform nude in front of children. Thus, Plaintiffs lack standing to complain about the regulation of nudity in front of children (§ 43.28(a)(2)(A)(i)).

Nor do any Plaintiffs desire to do any of the five activities defined as "sexual conduct" in front of children.

S.B. 12 first defines "sexual conduct" as "the exhibition or representation, actual or simulated, of sexual acts, including vaginal sex, anal sex, and masturbation [that] appeals to the prurient interest in sex [that appeals to the prurient interest in sex]." *Id.* (codified as Tex. Pen. Code § 43.28(a)(1)(A)). No Plaintiff desires to do anything regulated by that subsection in front of children. Plaintiffs lack standing to complain about S.B. 12's regulation of such activity.

S.B. 12's second definition of "sexual conduct" is "the exhibition or representation, actual or simulated, of male or female genitals in a lewd state, including a state of sexual stimulation or arousal [*that] appeals to the prurient interest in sex.*" *Id.* (codified as Tex. Pen. Code § 43.28(a)(1)(B)). No Plaintiff desires to do anything regulated by that subsection in front of children. Plaintiffs lack standing to complain about S.B. 12's regulation of such activity.

No Plaintiffs wants any performer to exhibit *actual* genitals in front of children. The *only* evidence about *simulated* genitals was a verbal description of "packers," which supposedly simulate the appearance of a normally appearing bulge in a male's pants caused by male genitals. Plaintiffs did not show the Court any "packers," so we must take them at their word. There was no evidence that "packers" simulate male genitals in a "lewd state" or a "state of sexual stimulation or arousal," let alone that performing while wearing them would appeal to the prurient interest in sex. Thus, on this record, when one wears a "packer," one does not perform anything regulated by (B) of the definition.

S.B. 12's third definition of "sexual conduct" is "the exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals [*that*] *appeals to the prurient interest in sex*." *Id.* (codified as Tex. Pen. Code § 43.28(a)(1)(C)). There was no evidence that any Plaintiff desires for children to see such devices at all, let alone see such devices exhibited in a manner that appeals to the prurient interest in sex.

There was also evidence that condoms are sometimes distributed as drag shows, but no evidence that they are "exhibited," and of course condoms are primarily used to prevent pregnancy and sexually-transmitted diseases, as opposed to sexually stimulating male of female genitals.

S.B. 12's fourth definition of "sexual conduct" is "actual contact or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person [*that*] *appeals to the prurient interest in sex*." *Id.* (codified as Tex. Pen. Code § 43.28(a)(1)(D)). There was evidence that there is sometimes contact between one person and the buttocks, breast, or any part of the genitals of another person at Plaintiffs' performances—specifically, contact while dancing, inadvertent contact, front hugs, hip bumps, and conga lines. But none of those activities appeal to the prurient interest in sex nor did this Court's conclude that such conduct appeals to the prurient interest in sex. No Plaintiff desires to do anything regulated by that subsection in front of children. Plaintiffs lack standing to complain about S.B. 12's regulation of such activity.

S.B. 12's fifth and final definition of "sexual conduct" is "the exhibition of sexual gesticulations using accessories or prosthetics that exaggerate male or female sexual characteristics *[that] appeals to the prurient interest in sex*." *Id.* (codified as Tex. Pen. Code § 43.28(a)(1)(E)).

Plaintiffs do want to wear accessories and prosthetics in front of children, such as wigs, padded bras, and breastplates. But S.B. 12 does not prohibit that, unless the performer "*exhibit[s] sexual gesticulations* using accessories and prosthetics that exaggerate male or female sex characteristics" *and* "appeal[s] to the prurient interest in sex." None of the Plaintiffs want to do that. Merely wearing a wig, padded bra or a breastplate does not violate S.B. 12, notwithstanding that doing so might "exaggerate female characteristics." S.B. does not make that illegal.

There is *no evidence* that Plaintiffs intend to violate S.B. 12. "There must be some evidence that [a] rule would be applied to the plaintiff in order for that plaintiff to bring an as-applied challenge." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020).

On the other hand, "when dealing with pre-enforcement challenges to recently enacted statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* But S.B. 12 does not facially restrict expressive activity. *See* Part C, below. Therefore, the Court cannot assume a credible threat of prosecution, and Plaintiffs lack standing to being a facial challenge as well.

### 2.     Plaintiffs' alleged injuries are self-inflicted.

There is no credible threat of enforcement of S.B. 12 *for legal conduct*. Because none of the Plaintiffs testified that they intend to engage in any illegal conduct, their claimed injuries are self-inflicted. As the Fifth Circuit has explained: An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries that are not "fairly traceable to the actions of the defendant." *Association of Community Organizations for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999)

In *Clapper v. Amnesty International*, 568 U.S. 398 (2013) the plaintiffs claimed they suffered actual injuries as they incurred "present costs and burdens that are based on a fear of surveillance" attributable to the challenged statute. The Supreme Court rejected this theory of standing:

> Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending. In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.  If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.

*Id.* at 416.

In *Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018), a college professor claimed she would censor her speech due to a set of laws and policies effectively allowing handguns on college campuses. *Id.* at 236–38. The Fifth Circuit, applying the *Amnesty International*, focused the analysis on the "catalyst" for the professor's self-censorship—the harm she

sought to avoid by curbing her speech. *Id.* at 239. The Court explained, "[The professor's] fear of potential violent acts by firearm-carrying students prompts her to self-censor by avoiding topics she worries might incite such violence or intimidation, which would be unnecessary but for the law and policy that prevent her from banning firearms in her classroom." *Id.* at 240. The Fifth Circuit concluded that the professor had no standing because the injury was entirely self-inflicted. *Id.* at 239–41 (citing *Clapper v. Amnesty International*).

In sum, Plaintiffs may not manufacture standing based merely on their evidence-free fear that they *might* be prosecuted for doing things that are not prohibited by S.B. 12.

### C.    Plaintiffs do not control the premises of a commercial enterprise.

Plaintiffs lacks standing to raise claims against Defendant Paxton for the additional reason that they do not present evidence that they control the premises of a commercial establishment. Paxton has enforcement authority over the following: "A person who controls the premises of a commercial enterprise may not allow a sexually oriented performance to be presented on the premises in the presence of an individual younger than 18 years of age." S.B. 12 § 1 (codified at Tex. Health & Safety Code § 769.002(a)). "A person who violates this section is liable to this state for a civil penalty of not more than $10,000 for each violation." *Id.* (codified at Tex. Health & Safety Code § 769.002(b)). "The attorney general may bring an action to: (1) recover the civil penalty

imposed under this section; or (2) obtain a temporary or permanent injunction to restrain the violation." *Id.* (codified at Tex. Health & Safety Code § 769.002(c)).

Woodlands Pride says it fears it will not be able to have its event on public property in a public park. Paxton has no enforcement power over public property. And there is no evidence that the show will be cancelled.

Abilene Pride says it fears that it will not be able to have its parade on city streets and a county expo center. Again, Paxton has no enforcement authority over public property, and the evidence shows that no one is threatening to cancel those events. In fact, the evidence is to the contrary.

Extragrams brokers drag performances by independent contractors. It does not control the space where the independent contractors perform.

360 Queen Entertainment testified that it uses space in a restaurant owned by one of the partners' parents. But it gave no evidence that it, rather than the parents, control the space. The owner of the space should be presumed to be the controller of a space. 360 Queen Entertainment did not overcome that presumption.

Bridge Bandit hosts and organizes events. But that is not self-evidentially controlling the space where the event takes place. She could have explained how she controls the space, but did not do so, and did not meet her burden.

Consequently, the Court lacks standing over Plaintiffs' claims against Paxton.

## C.   S.B. 12 regulates conduct, not speech.

Being nude is conduct, not speech.

13

The "exhibition or representation, actual or simulated, of sexual acts, including vaginal sex, anal sex, and masturbation," is conduct, not speech.

The "exhibition or representation, actual or simulated, of male or female genitals in a lewd state, including a state of sexual stimulation or arousal" is conduct, not speech.

The "exhibition of a device designed and marketed as useful primarily for the sexual stimulation of male or female genitals" is conduct, not speech.

"[A]ctual contact or simulated contact occurring between one person and the buttocks, breast, or any part of the genitals of another person" is conduct, not speech.

The "exhibition of sexual gesticulations using accessories or prosthetics that exaggerate male or female sexual characteristics" is conduct, not speech.

In other words, everything S.B. 12 regulates is conduct, not speech.

If anyone who was *not* engaged in a drag performance performed any of the above activities, no one would hesitate to think that the activities were conduct that can be regulated, rather than "speech." No observer of anyone doing any of the above activities would understand any message supposedly conveyed by a person engaged in such activities.

Nonetheless, under the Court's ruling, it is not just people who say they are performing a "drag" show who may perform the above activities—in front of children—unmolested by state law. Anyone can, including strippers, exhibitionists. That is wrong. And it would be equally wrong for the Court to declare that persons

14

who say they are performing a "drag" show may perform the above activities—in front of children—unmolested by state law, while others cannot.

S.B. 12 was inspired by drag performances in front of children that were inappropriate for children. The State did not just make that up. Plaintiffs themselves admit that some drag shows are sexual and inappropriate for children. The bill applies to *anyone* who performs the regulated conduct in front of children, not just to drag performers.

The origin of S.B. 12 is a reaction to *some* drag shows—drag shows that are inappropriate for children—not a reaction to all drag shows. And it applies to everyone, not just drag performers. As the Author's/Sponsor's Statement of Intent states, "While drag shows have received the most media attention, S.B. 12 is not limited to this type of sexually oriented performance. Drag shows today may be replaced by other types of harmful performances in the future. S.B. 12 applies to and will protect children from sexually oriented performances in general." Finding of Fact no. 9. This statement is 100% correct. There is no evidence that this statement is wrong.

The Court's ruling seems inspired by the idea that drag shows are not just fun things that some adults like to perform and watch, like football games or square dancing, but are instead a much higher form of intellectual activity—"speech"—always and at all times. And Plaintiffs cannot compare themselves to supposedly-expressive "exotic dancing" because they agree that performances that appeal to the prurient interest in sex are not appropriate for minors.

The Court's conclusions of law do not even identify the "speech" that all drag shows are supposedly always and at all times emitting to a comprehending audience. According to the Court, "Plaintiffs contend there are multiple messages and expressive purposes to drag performances, including messages of celebration, equality, and acceptance. Further, Brigitte Bandit testified to messages of a political and social justice nature." Conclusion of Law no. 106 (footnotes omitted). They did so contend, but they did not so prove.

As the Court notes, Paxton relies on *Rumsfeld v. Forum for Acad. and Institutional Rights*, 547 U.S. 47 (2006), in which the Supreme Court rejected an argument that banning military recruiters from campus was "speech," in part because an observer would not know what the "speech" supposedly was. Conclusion of Law 111. But the Court's explanation is self-refuting: "[T]his is distinguishable from drag shows, which are performances that express conduct with no need for extra explanation. The Court finds it is evident drag shows express either pure entertainment or, like most types of expressive art, an underlying deeper message. (Such as music, theater, and poetry)." *Id.* But even if drag performance (unlike similar activities like football games or square dancing) are "pure entertainment" or "expressive art," that does not mean that an observer knows what the message is. Thus, under *FAIR*, drag performances are not "speech."

The Court also concluded that the only reason that performances covered by S.B. 12 are regulated is because some people do not like drag. Conclusion of Law Nos.

16

108, 112, 113. No evidence supports this conclusion, and in fact Paxton was prepared to submit expert testimony explaining how conduct regulated by S.B. 12 (drag or not) harms minors. The Court would not hear the testimony.

Plaintiffs challenge a law that does not exist—there is no "drag ban" in Texas.

**D.    Even if Plaintiffs do engage in "speech," S.B. 12 is a permissible regulation of that speech.**

**1.    S.B. 12 is not a content-based restriction.**

The Court concluded that S.B. 12 discriminates based on content because: "The law targets conduct deemed to be 'sexual oriented.' That alone suggests a content-based restriction." Conclusion of Law No. 120. This conclusion is self-refuting because it acknowledges that S.B. 12 "target conduct," rather than the content of "speech." "Conduct" and "content" are different categories. The Court also incorrectly deduced, from that premise that S.B. 12 regulates performances that are not obscene, the conclusion that S.B. 12 is a content-based restriction. The conclusion does not follow.

Because the Court erroneously determined that S.B. 12 is content-based, the Court applied strict scrutiny, such that Paxton must prove that S.B. 12 "furthers a compelling interest and is narrowly tailored to achieve that interest." The Court and Plaintiffs agree that protecting children is a compelling interest, but disagreed that S.B. 12 is narrowly tailored to achieve that interest (again, without hearing Paxton's expert testimony that would have provided evidence that it is). The Court's conclusion is based first on the idea that "S.B. 12 does not distinguish children by the age of the child [and]

treats an older teenager the same as a much younger child," and second on the idea that S.B. 12 does not allow an affirmative defense for "consent of the parent or a mistake on the part of the performer." Conclusion of Law 125.

But there is no legal authority that state laws protecting minors must treat older minors differently than younger minors or that such laws must make exceptions if the parent consents. For instance, neither parental consent nor the supposition that a seventeen-year-old is more mature than a sixteen-year-old has constitutional relevance to whether a state must allow a seventeen-year-old into a strip club or get a tattoo. Not all imaginable narrowings of statutes are relevant to strict-scrutiny determinations.

And the Court's complaint that S.B. 12 has no affirmative defense for "a mistake on the part of the performer" is misplaced. A performer does not violate S.B. 12 unless he or she *intentionally, knowingly, or recklessly* "engages in a sexually oriented performance (1) on public property at a time, in a place, and in a manner that could reasonably be expected to be viewed by a child; or (2) in the presence of an individual younger than 18 years of age." S.B. 12 § 3 (codified at Tex. Pen. Code § 43.28(b)); Tex. Pen. Code § 6.02(c). A "mistake" is not punishable.

### 2.    S.B. 12 is not a viewpoint-based restriction.

The Court held that S.B. 12 is viewpoint-based because it is "directed at the specific act of impersonating or exaggerating a sex other than the one a performer is assigned," which the Court seems to believe defines drag shows. But the only drag performer who testified—Brigitte Bandit—is a woman who performs as a woman. If

S.B. 12 were directed at Brigitte Bandit's performances, they would not be directed at the "specific act of impersonating or exaggerating a sex other than the one a performer is assigned," and therefore is not viewpoint-based under this theory. Moreover, S.B. 12's prohibitions on nude performances and the other four types of sexually oriented performances are very different regulations that are not viewpoint-based under this Court's theory.

The Court also finds viewpoint discrimination in the origin of S.B. 12 as a reaction to sexual drag shows in front of children. But as explained above, that fact is of no constitutional relevance.

### 3.      S.B. 12 is not unconstitutionally overbroad.

The Court concluded that S.B. 12 is overboard for three reasons.

*First*, the Court noted that S.B. 12 regulates "material" that is not obscene. Conclusions of Law Nos. 139–41. But this is irrelevant. It is simply untrue that the State may only prohibit minors from seeing "material" that is obscene. For instance, strip shows and "nudie magazines" have been found non-obscene, yet the State may prohibit minors from attending strip shows and looking at or buying "nudie magazines."

*Second,* the Court concluded, "It is not unreasonable to read S.B. 12 and conclude that activities such as cheerleading, dancing, live theater, and other common public occurrences could possibly become a civil or criminal violation of S.B. 12." But none of those activities will be regulated by S.B. 12 unless they include nude performances or sexually oriented performances *and appeal to the prurient interest in sex.*

*Third*, the Court concluded that S.B. 12's "place" provisions "could virtually ban any performance in public that is deemed to violate S.B. 12, including drag shows." Conclusion of Law No. 142. Well, yes. S.B. 12 does indeed ban such performances that *appeal to the prurient interest in sex* in public. But that does not make S.B. 12 overbroad.

### 4. S.B. 12 is not unconstitutionally vague.

The Court concluded that S.B. 12 is unconstitutionally vague because the terms "prurient interest in sex" does not have a "clear understanding." Conclusion of Law No. 149. That is an incorrect and unsupported statement of the law in Texas. In *Red Bluff Drive-In, Inc. v. Vance*, the Fifth Circuit held that the "lack of a statutory definition of the term 'prurient interest'" did not render a Texas obscenity statute "constitutionally deficient." 648 F.2d 1020, 1026 (5th Cir. 1981). There is sufficient discussion in both state and federal case law to give a person of ordinary intelligence a roadmap for navigating what is and is not a "prurient interest in sex." *See, e.g., City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986); *California v. LaRue*, 409 U.S. 109, 127 (1972); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 251 (1990); *Vonderhaar v. Parish of St. Tammany*, 633 So.2d 217, 223 (1993). And likewise, that legal roadmap provides clear guidance to those tasked with enforcing S.B. 12 for navigating what is legal versus illegal conduct under S.B. 12.

### E. The Attorney General will be irreparably injured absent a stay.

When the State seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam)

(citation omitted). *See also, e.g.*, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (recognizing that, when a duly enacted law cannot be enforced, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws"). The "inability [for a State] to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). *See also, e.g.*, *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (per curiam) (A State suffers irreparable harm when an injunction "would frustrate the State's program" and "deprive . . . the State of the opportunity to implement its own legislature's decisions.).

These factors exist here. The injunction inhibits the State from protecting its children and deprives Texas of the opportunity to implement its Legislature's decisions. Enjoining state officials from carrying out validly enacted laws imposes irreparable harm. *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

"[T]he State . . . has a significant interest in enforcing its enacted laws." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 742 (S.D. Miss. 2014); *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 197 (2008). *See also, e.g.*, *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992) (noting that the "sound and efficient operation" of government programs is

in the public interest); *Hamer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987) (recognizing that the proper implementation of state programs is a matter of public interest).

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Exercising caution is especially important where the defendant is itself a state actor because of the federalism concerns attendant to a federal court intervening to grant preliminary injunctive relief against a state agency. *NetChoice*, 49 F.4th at 449.

The public interest is monumental. There is no more compelling interest than safeguarding the emotional, mental, and physical health of our kids. Their exposure to overly sexually explicit performances must stop. Compare the *de minimus* burden of complying with S.B. 12 to the immense, immediate, and irreparable harm to kids from exposure to such performances. The balance of interest weighs heavily in favor of allowing the implementation of S.B. 12 to proceed as soon as possible.

## CONCLUSION

For these reasons, Defendant Paxton respectfully requests this Court to stay the Judgment pending Defendant Paxton's appeal.

Dated: September 29, 2023.          Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Deputy Chief, General Litigation Division

**RYAN KERCHER**
Deputy Chief, General Litigation Division

*/s/ Taylor Gifford*
**TAYLOR GIFFORD**
Assistant Attorney General
Attorney-in-Charge
Texas Bar No.  24027262
Southern District ID No. 3624053

**CHARLES K. ELDRED**
Chief, Legal Strategy Division
Texas Bar No. 00793681
Southern District ID No. 20772

**JOHNATHAN STONE**
Assistant Attorney General
Texas Bar No. 24071779
Southern Dist. No. 1635446

General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

23

(512) 463-2120 | FAX: (512) 320-0667
Taylor.Gifford@oag.texas.gov
Charles.Eldred@oag.texas.gov
Johnathan.Stone@oag.texas.gov
*ATTORNEYS FOR DEFENDANT*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2023, a true and correct copy of the foregoing document was served via the Court's electronic filing manager system to all counsel of record.

*/s/ Taylor Gifford*
**TAYLOR GIFFORD**
Assistant Attorney General