UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| The Woodlands Pride, Inc.; Abilene Pride Alliance; Extragrams, LLC; 360 Queen Entertainment LLC; Brigitte Bandit,<br><br>    Plaintiffs,<br><br>v.<br><br>Warren Kenneth Paxton, in an official capacity as Attorney General of Texas; Montgomery County, Texas; Brett Ligon, in an official capacity as District Attorney of Montgomery County; City of Abilene, Texas; Taylor County, Texas; James Hicks, in an official capacity as District Attorney of Taylor County; Delia Garza, in an official capacity as County Attorney of Travis County; Joe D. Gonzales, in an official capacity as District Attorney of Bexar County,<br><br>    Defendants. | Civil Action No. 4:23-cv-02847 |

**PLAINTIFFS' RESPONSE TO DEFENDANT PAXTON'S
MOTION TO STAY JUDGMENT PENDING APPEAL**

The Woodlands Pride, Inc., Abilene Pride Alliance, Extragrams, LLC, 360

Queen Entertainment LLC, and Brigitte Bandit (collectively, "Plaintiffs") file this

response to the Motion to Stay Judgment Pending Appeal (Dkt. 96, the "Motion") filed by Defendant Warren Kenneth Paxton, in an official capacity as Attorney General of Texas (the "Attorney General"). Because a stay is not warranted, Plaintiffs respectfully ask the Court to deny the Motion.

## STANDARD OF REVIEW

A stay is an "intrusion into the ordinary processes of administration and judicial review," and accordingly "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted). In considering whether to stay injunctive relief pending appeal, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426 (citation omitted). "The first two factors are the most critical," *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (per curiam), and "if the balance of equities (*i.e.*, consideration of the [last] three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of

likelihood of success on the merits in order to obtain a stay pending appeal." *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. Unit A 1981) (per curiam).[1]

"[T]he maintenance of the status quo is an important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)). The status quo is "defined as the last, peaceable, noncontested status of the parties." *Horizon Radiology, P.A. v. McKesson Corp.*, No. H-06-2724, 2008 WL 11389572, at *2 (S.D. Tex. Apr. 29, 2008) (Hittner, J.); *see also Barber*, 833 F.3d at 512 (denying motion to stay pending appeal because "our decision maintains the status quo in Mississippi as it existed before the Legislature's passage and attempted enactment of HB 1523").

## SUMMARY OF ARGUMENT

A stay is not warranted in this case because this Court correctly determined that it has jurisdiction and that Senate Bill 12 ("S.B.12") is unconstitutional. Granting a stay would upend the status quo and allow an unconstitutional law to take effect and impose criminal and civil penalties on Plaintiffs and other Texans. A stay would also cause confusion and upheaval as police, prosecutors, the Attorney

---

[1] The Attorney General distorts this legal standard because the movant for a stay may only rely on the more lenient "substantial case" standard if the "balance of the equities weighs heavily in favor of granting the stay." *Ruiz*, 650 F.2d at 565. Here, the balance of the equities weighs against the Attorney General, and all four factors—including hardship to the non-movant and the public interest—must be taken into account. *Id.* at 565–66.

General, and municipalities and counties across the state would be suddenly tasked with enforcing a new law—containing penalties of up to a year in jail and $10,000 fines—that has already been blocked for over seven weeks, is now permanently enjoined, and has been declared unconstitutional on five independent grounds.

After carefully considering two days of trial testimony and legal arguments regarding S.B. 12, this Court found that Plaintiffs demonstrated actual success on the merits that S.B. 12 is unconstitutional as: (1) content discrimination; (2) viewpoint discrimination; (3) overbroad; (4) vague; and (5) a prior restraint on speech. *Woodlands Pride, Inc. v. Paxton*, --- F. Supp. 3d ---, No. H-23-2847, 2023 WL 6226113, at *15, 17, 19–20 (S.D. Tex. Sept. 26, 2023). The Court also found that "the impending chilling effect S.B. 12 will have is an irreparable injury which favors enjoining" the law, and that "the impending chilling effect S.B. 12 will have on speech in general outweighs any hardship on the State of Texas." *Id.* at *20.

In seeking a stay, the Attorney General does not raise any arguments that justify upending the status quo or allowing S.B. 12 to take effect during the pendency of appeal. The Attorney General concedes that "[n]o appellate court has ruled on the merits of whether a state can restrict the conduct proscribed by S.B. 12 and whether laws similar to S.B. 12 unconstitutionally infringe on an individual's First Amendment right." Dkt. 96 at 5. Indeed, the Eleventh Circuit recently denied Florida's request for a partial stay of the district court injunction blocking the state's

4

attempt to restrict drag shows under the guise of "adult live performance[s]." *See HM Florida-Orl, LLC, v. Governor of Florida, et al.,* No. 23-12160, 2023 WL 6785071, at *4 (11th Cir. Oct. 11, 2023). This Court should likewise maintain the status quo and not allow an unconstitutional law to suddenly take effect and chill free expression.

Without asserting any valid reason to disrupt the status quo, the Attorney General insinuates that denying a stay could open the floodgates to allow "strippers" or "exhibitionists" to engage in performances "unmolested by state law." Dkt. 96 at 14–15. But this Court's orders blocking S.B. 12 have already been in effect for over seven weeks, and the Attorney General does not point to any harms imposed while the status quo has been preserved. Moreover, longstanding Texas laws already prohibit obscene performances across the state. As this Court noted, "the Texas Penal Code already prohibits anyone from 'produc[ing], present[ing], or direct[ing] an obscene performance or participat[ing] in a portion thereof that is obscene or that contributes to its obscenity' while 'knowing its content and character.'" *Woodlands Pride*, 2023 WL 6226113, at *19 n.102 (alterations in original) (quoting Tex. Penal Code § 43.23). At trial, the Attorney General did not present any evidence that S.B. 12 advances or furthers the State's compelling interest in protecting children; and the Attorney General does not challenge the fact that existing Texas laws already prohibit obscene performances at every venue where minors might be present.

5

The State's generalized interest in protecting children does not absolve it of following the U.S. Constitution or allow it to trample the First Amendment freedoms of both minors and adults. *See, e.g., Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) ("No doubt a State possesses legitimate power to protect children from harm . . . but that does not include a free-floating power to restrict the ideas to which children may be exposed") (citations omitted). Particularly where a law creates a brand new category of state regulation, attaches to it steep criminal and civil penalties, and prohibits huge swaths of artistic performances from being held on all public property in the state—even when performed solely among adults—equity is best served by maintaining the status quo, allowing ample breathing room for the protection of First Amendment rights, and giving the Fifth Circuit the time it needs to consider the Attorney General's arguments through the normal course of appeal. The Attorney General's Motion should be denied.

## ARGUMENT

The Attorney General re-urges many of the same arguments that the Court has already considered and rejected, and to which Plaintiffs responded at length during trial and in previous briefing. *See, e.g.*, Dkt. 70 (Plaintiffs' Omnibus Response Brief); Dkt. 83 (Plaintiffs' Amended Proposed Findings of Fact). Plaintiffs reference and incorporate their previous arguments demonstrating standing, waiver of sovereign immunity, and actual success on the merits of their claims that S.B. 12

violates the First and Fourteenth Amendments as content discrimination, viewpoint discrimination, overbroad, vague, and a prior restraint on speech. *Id.*

1. **The Attorney General Does Not Show a Substantial Likelihood of Success or Even a Substantial Case on the Merits**

As this Court properly found, each Plaintiff has standing to challenge S.B. 12 in this pre-enforcement challenge. The Attorney General once again asks the Court to apply the wrong standard for standing by implying that the Plaintiffs must show that their performances fully and completely violate S.B. 12. Dkt. 96 at 7–10. But as this Court correctly concluded, "[b]ecause the Plaintiffs' injuries are based on the suppression of speech and S.B. 12's chilling effect, the Plaintiffs need not prove that their interpretation of the statute is the 'best interpretation, the test doesn't require that.' Plaintiffs must only show that their activities are 'arguably proscribed' by the statute, and here that test is met." *Woodlands Pride*, 2023 WL 6226113, at *10 (internal citation omitted) (quoting *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023)).

Plaintiffs dispute the Attorney General's bald contention that "[t]here is *no evidence* that Plaintiffs intend to violate S.B. 12," Dkt. 96 at 10, particularly when each Plaintiff testified at length that they reasonably believe that their performances arguably violate S.B. 12. Specifically—and contrary to the Attorney General's assertions that lack any citations—Plaintiffs testified that they had a reasonable fear that their performances arguably exhibit or represent actual or simulated sexual acts;

7

arguably constitute the exhibition of simulated male or female genitals in a lewd state; arguably include the exhibition of devices that are designed and marketed as useful primarily for the sexual stimulation of male or female genitals; often include actual or simulated contact between one person and the buttocks, breast, or any part of the genitals of another person; arguably exhibit sexual gesticulations using accessories or prosthetics that exaggerate male or female sexual characteristics; arguably include nudity at that terms is defined in S.B. 12; and arguably appeal to the prurient interest in sex, particularly considering that this term is vague and undefined under the law. *See generally* Dkt. 83 at 9-40, 41–58.[2]

The Attorney General appears to hinge the bulk of his standing argument on the unsupported assertion that Plaintiffs' performances do not occur in front of children, *see* Dkt. 96 at 7, but each Plaintiff testified precisely the opposite;[3] and even those Plaintiffs who testified to having adult-oriented performances specifically noted that they could not ensure that children would not be present.[4] Based on extensive testimony at trial, this Court properly held that "all Plaintiffs partake in conduct arguably proscribed by S.B. 12." *Woodlands Pride*, 2023 WL 6226113, at *10.

---

[2]   *See* Dkt. 94 at 10-21 (Court's finding of fact with respect to Plaintiffs); *id.* at 26-33 (Court's conclusions of law with respect to standing).
[3]   *See* Dkt. 83 at 10, 17-19, 26, 31, 37.
[4]   *See* Dkt 83 at 14, 26, 31-32, 37.

Because Plaintiffs' have shown that they partake in conduct arguably proscribed by S.B. 12, the Attorney General's argument that "Plaintiffs' alleged injuries are self-inflicted" fails. Dkt. 96 at 11.[5] This is particularly true in a pre-enforcement challenge to a newly enacted state law, where "chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021). In such circumstances, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020). The chilling of Plaintiffs' speech and Plaintiffs' fear of civil and criminal penalties are not "self-inflicted," but rather imposed by the enactment and threatened enforcement of S.B. 12.

The Attorney General once again argues that no Plaintiff could be said to "control the premises of a commercial establishment," Dkt. 96 at 12–13, but this argument is based on an overly narrow interpretation of the word "control" that strays from its plain meaning. *See Woodlands Pride,* 2023 WL 6226113, at *11 n.82; *see also* Dkt. 70 at 7-8. Under its plain meaning, each Plaintiff arguably controls a

---

[5] As Plaintiffs previously explained because the harm to them from S.B. 12 is direct and not speculative, *Clapper v. Amnesty International*, 568 U.S. 398 (2013) is inapposite. *See* Dkt. No. 70 at 9-10. *Glass v. Paxton*, 900 F.3d 233 (5th Cir. 2018) is not relevant here for the same reason.

commercial enterprise for some of their performances. *See* Dkt. 70 at 8, n.3.[6] Plaintiffs also have standing against the Attorney General because S.B. 12 tasks the Attorney General with shutting down commercial enterprises at which Plaintiffs wish to host performances. *See id* at 9-10.

On the merits, the Attorney General again raises the same argument that Plaintiffs' performances arguably proscribed by S.B. 12 are not shielded by the First Amendment because they are conduct instead of inherently expressive activities. Dkt. 96 at 13–17. This Court has already carefully considered and rejected that argument, *Woodlands Pride,* 2023 WL 6226113, at *13–14, including the Attorney General's misplaced reliance on *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006), and Plaintiffs incorporate their prior response to the Attorney General's arguments that stray from Supreme Court precedent, Dkt. 70 at

---

[6] The Attorney General also misleadingly omits testimony from The Woodlands Pride and Abilene Pride Alliance (as well as the Court's Findings of Fact) establishing that both groups host performances at commercial enterprises, and not just on public property. In addition to this glaring omission, the Attorney General's brief strays in significant ways from the trial record and makes several significant factual misrepresentations. For example, the Attorney General contends that "[N]o Plaintiff testified to intending to perform nude in front of children," Dkt. 96 at 7, which is substantially misleading since multiple Plaintiffs testified that they reasonably fear being targeted based on how "nude" is defined in S.B. 12.
  Similarly, the Attorney General ignores Plaintiffs' testimony about sexual lubricant to focus solely on condoms in one part of his argument, *id.* at 9, while also claiming without any citation or evidence that "All the Plaintiffs recognize that some drag shows have sexual content that is inappropriate for children." *Id.* at 7. Plaintiffs object to the Attorney General's improper departure from (and lack of citations to) the trial transcript and this Court's Findings of Fact.

23–27. The Supreme Court has long held that even nude dancing is afforded some constitutional protection, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000), but the Attorney General seeks to exempt S.B. 12's creation of a new category of "sexually oriented performances" from all judicial review. This argument contravenes clearly established Supreme Court precedent and would allow any government official to arbitrarily and unconstitutionally censor and suppress the "painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995); *see also Brown*, 564 U.S. at 790 ("The Free Speech Clause exists principally to protect discourse on public matters, but we have long recognized that it is difficult to distinguish politics from entertainment, and dangerous to try.").

This Court correctly determined that because S.B. 12 singles out particular expressive conduct based on its content as "sexually oriented," it is not content neutral. *Woodlands Pride,* 2023 WL 6226113, at *15–16; *see also* Dkt. 10 at 35-36. In claiming that S.B. 12 does not discriminate based on content, the Attorney General takes issue with the wording of this Court's order but does not actually explain how the statute could possibly be considered content-neutral. Dkt. 96 at 17–18. As at trial, the Attorney General makes no attempt to show that S.B. 12 is narrowly tailored, even under intermediate scrutiny. Instead, the Attorney General broadly asserts that "[n]ot all imaginable narrowings of statutes are relevant to strict-

11

scrutiny determinations," *id.* at 18, without meeting the state's burden of showing that the law is the least restrictive means of serving the government's purpose (strict scrutiny) or that it does not burden substantially more speech than is necessary (intermediate scrutiny). That S.B. 12 lacks any sort of exception for parental consent; does not distinguish between a 5-year-old and a 17-year-old; and does not contain any mens rea requirement for its civil penalties and lacks an affirmative defense for mistakes with respect to criminal penalties are all examples of how the statute burdens more speech than is necessary. *See generally* Dkt. 70 at 33-35.

Under viewpoint discrimination, the Attorney General misinterprets the Court's analysis to add the words "specific act of impersonating or exaggerating a sex *other than the one a performer is assigned*" to the statute. Dkt. 96 at 19 (emphasis added). But the Court's example of one way that S.B. 12 would be applied does not impose new statutory requirements or cure the viewpoint discrimination inherent in the law. Instead, the law regulates "the exhibition of sexual gesticulations using accessories or prosthetics *that exaggerate* male or female sexual characteristics,"[7] and discriminates based on viewpoint with respect to any

---

[7]   S.B. 12 § 3 (emphasis added) (proposed Tex. Penal Code § 43.28 (a)(1)(E)).

performer or entity accused of violating this provision.[8] The Attorney General fails to explain how this part of S.B. 12 does not discriminate based on viewpoint.

On overbreadth, the Attorney General does not raise any arguments that disturb the Court's analysis. The Attorney General asserts without citation to authority that the State may regulate minors' access to strip shows and "nudie magazines" even though they are not obscene, *id.* at 19—but that does not mean that the State may use the specter of certain obscene performances to regulate vast swaths of protected speech by adults as it attempts to do here. The Attorney General relies on the phrase "prurient interest in sex" to try to limit the scope of S.B. 12. *Id.* at 19–20 (emphasis omitted). But this argument fails to address the fact that S.B. 12 "excludes language that gives the test limitations such as requiring 'the average person, applying contemporary community standards' . . . [to] evaluate the work

---

[8] The Attorney General also argues that S.B. 12 does not single out drag shows, but as this Court found, the legislative history demonstrates the opposite. *Woodlands Pride*, 2023 WL 6226113, at *17. Indeed, following this Court's issuance of a permanent injunction, the Lieutenant Governor tweeted, "#SB12, which restricts children from being exposed to drag queen performances, is about protecting young children and families. This story is not over. #txlege." Office of the Lieutenant Governor Dan Patrick (@LtGovTX), X (formerly Twitter) (Sept. 26, 2023, 2:58 PM), https://x.com/LtGovTX/status/1706760120846205098?s=20; *Hawaii v. Trump*, 859 F.3d 741, 773 n. 14 (9th Cir.) (taking judicial notice of President Trump's statement made via Twitter), *vacated on other grounds*, 138 S. Ct. 377 (2017). This further adds to the legislative history that S.B. 12 is intended to target drag performers and drag performances, although the statute's prohibitions sweep much broader than "young children and families," to encompass shows and performances on all public property, even where no minors are present at all. *See* S.B. 12 § 2 (proposed Tex. Loc. Gov't Code § 243.0031(c)).

'taken as a whole,'" and fails to contain other critical guardrails, such as an exception for works of serious artistic, literary or scientific value. *Woodlands Pride*, 2023 WL 6226113, at *18 (citation omitted); *see also* Dkt 10 at 42-44; Dkt. 70 at 36-38.

Likewise, the Attorney General does not diminish the Court's findings on vagueness but instead relies solely on the phrase "prurient interest in sex" to try to narrow the vague and broad terms of S.B. 12 and salvage the statute's constitutionality. Dkt. 96 at 20. Contrary to the Attorney General's argument, this phrase does not "provide[] clear guidance to those tasked with enforcing S.B. 12 for navigating what is legal versus illegal conduct under S.B. 12." *Id.* Untethered from the other factors of the *Miller* test, the phrase "prurient interest in sex" and other operative terms of S.B. 12 are "matter[s] of great divergence amongst the population" and lack "clear guidance," which renders the statute unconstitutionally vague. *Woodlands Pride*, 2023 WL 6226113, at *20.

As at trial, the Attorney General does not defend Section 2 of S.B. 12 nor challenge the Court's finding that it is an unconstitutional prior restraint on speech. *See generally* Dkt. 96. This section of the statute should therefore remain enjoined, even if the Court grants part or all of the Attorney General's Motion.

For the reasons stated above, as well as those explained at trial and in Plaintiffs' briefing, the Attorney General has not established a substantial likelihood of success—or even a substantial case—of prevailing on the merits. Moreover, the

more lenient "substantial case" standard is only available where "the balance of equities (*i.e.*, consideration of the other three factors) is [] heavily tilted in the movant's favor." *Ruiz*, 650 F.2d at 565–66. For the reasons explained below, the other three factors do not weigh in the Attorney General's favor. But even if they did, the Motion should still be denied because mere disagreement with the Court's decision, or the fact that a case presents "novel and unique issues," *see* Dkt. 96 at 5, does not establish a "substantial case" warranting a stay on appeal, *see ODonnell v. Harris County*, 260 F. Supp. 3d 810, 818 (S.D. Tex. 2017) (Rosenthal, J.) ("[M]erely stating the importance of the issues and the seriousness of the legal questions does not mean that the defendants have presented a substantial case on the merits" allowing for a stay.).

### 2. The Attorney General Has Not Shown that He Will Be Irreparably Harmed Absent a Stay

The Attorney General cannot establish irreparable harm from enjoining an unconstitutional law that violates Plaintiffs' First Amendment rights. A "governmental entity is not harmed by an order enjoining enforcement of an 'unlawful (and likely unconstitutional)' law because any interest in enforcing such a law is 'illegitimate.'" *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, 609 F. Supp. 3d 504, 513 (E.D. Tex. 2022) (Jordan, J.) (quoting *BST Holdings, L.L.C. v. Occupational Safety & Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021)). Here, the Attorney General is sued in an official capacity and must comply with the U.S.

Constitution. It causes no injury for a public official to be enjoined from enforcing an unconstitutional law, particularly when that law has never taken effect and has already been blocked for over seven weeks. Even if the Attorney General ultimately prevails on appeal, "any harm to the State as a result of a stay is temporal[;] . . . the State's ability to enforce its laws is frustrated only for the duration of an appeal." *Texas v. Ysleta Del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 5589051, at *2 (W.D. Tex. Mar. 28, 2019) (Martinez, J.).

### 3. Allowing S.B. 12 to Take Effect Would Substantially Injure Plaintiffs and Countless Others

As this Court found, the steep criminal and civil penalties of S.B. 12—as well as the content and viewpoint discrimination, overbreadth, vagueness, and prior restraint inherent in the law—"impermissibly infringe[] on the First Amendment and chill[] free speech." *Woodlands Pride*, 2023 WL 6226113, at *20. The Court found that all five Plaintiffs would be irreparably harmed if S.B. 12 is permitted to take effect. For example, The Woodlands Pride "is fearful state and local government officials may accuse performers and attendees at The Woodlands Pride Festival of acting in ways that 'appeal[s] to the prurient interest in sex.'" *Id.* at *5 (alteration in original) (citation omitted). The Woodlands Pride is also actively preparing for its Pride Festival on October 21, 2023, and seeks to host family-friendly drag performances arguably proscribed by S.B. 12 without fear of criminal prosecution or other penalties. Trial Tr. Vol. 1, 178:25-179:1; 203:1-15.

Other Plaintiffs will also be irreparably harmed and have their First Amendment rights chilled if S.B. 12 takes effect. The Abilene Pride Alliance "cannot give performers guidance because S.B. 12 is vague and confusing." *Woodlands Pride*, 2023 WL 6226113, at *5. "Extragrams fears its performances could come into violation with S.B. 12 triggering both criminal liability for its performers and civil liability for the venues it often uses." *Id.* at *6. Plaintiff 360 Queen Entertainment "fears th[at] S.B. 12 will be enforced against 360 Queen Entertainment and its performers. This uncertainty has caused 360 Queen Entertainment to refrain from booking drag performers," *id.* at *7, and it would have to go out of business entirely if S.B. 12 goes into effect. And if the law takes effect, "Brigitte Bandit will be at risk of criminal prosecution, and as such, she will likely have to limit or modify her performances." *Id.* at *8.

The Court also found that "[i]t is not unreasonable to read S.B. 12 and conclude that activities such as cheerleading, dancing, live theater, and other common public occurrences could possibly become a civil or criminal violation of S.B. 12." *Id.* at *18. Thus, maintaining the status quo is not only critical to ensure that Plaintiffs' First Amendment rights are protected, but also to guarantee that every person in Texas may host, engage in, or attend constitutionally protected performances without fear of unconstitutional government interference.

17

### 4. The Public Interest Weighs Greatly in Favor of Maintaining the Status Quo and Prohibiting S.B. 12 from Taking Effect

As the Attorney General acknowledges, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Dkt. 96 at 22 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Here, the public consequences of allowing S.B. 12 to take effect would be drastic, severe, and irreparable.

As this Court properly found, S.B. 12 would immediately chill the free expression of Plaintiffs and countless others across the state if permitted to take effect. *Woodlands Pride*, 2023 WL 6226113, at *20. Because the law is unconstitutionally overbroad and vague and fails to give adequate guidance as to what is prohibited, *id.* at 19–20, it would also lead to arbitrary and uneven enforcement across the state. Granting a stay would upend the status quo and force police, prosecutors, the Attorney General, counties, municipalities, performers, businesses, and audiences to wrestle with the consequences of this new and unconstitutional law. And because this Court has already declared S.B. 12 to be unconstitutional, granting a stay of that decision would conflict with this Court's findings and spur confusion and uncertainty that would irreparably harm and chill performing arts across the state.

For these reasons and others explained in Plaintiffs' briefing and at trial, Plaintiffs respectfully ask the Court to deny the Motion.

Respectfully submitted,

<div style="display: flex;">
<div>

*By: /s/ Brian Klosterboer*
Brian Klosterboer, *attorney-in-charge*
  TX Bar No. 24107833
  SDTX No. 3314357
Chloe Kempf
  TX Bar No. 24127325
  SDTX No. 3852674
Thomas Buser-Clancy
  TX Bar No. 24078344
  SDTX No. 1671940
Edgar Saldivar
  TX Bar No. 24038188
  SDTX No. 618958
Adriana Pinon
  TX Bar No. 24089768
  SDTX No. 1829959
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax (713) 942-8966
bklosterboer@aclutx.org
ckempf@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org
apinon@aclutx.org

</div>
<div>

*/s/ Emily Rohles*
Emily Rohles
  TX Bar No. 24125940
  SDTX No. 3715273
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
Tel. (713) 229-1234
Fax (713) 229-1522
Emily.Rohles@BakerBotts.com

Derek R. McDonald
  TX Bar No. 00786101
  SDTX No. 18546
Maddy Dwertman
  TX Bar No. 24092371
  SDTX No. 3853795
BAKER BOTTS L.L.P.
401 S. 1st Street, Suite 1300
Austin, TX 78704
Tel. (512) 322-2500
Fax (512) 322-2501
Derek.McDonald@BakerBotts.com
Maddy.Dwertman@BakerBotts.com

Brandt Thomas Roessler
  TX Bar No. 24127923
  SDTX No. 3853796
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
Tel. (212) 408-2500
Fax (212) 408-2501
Brandt.Roessler@BakerBotts.com

</div>
</div>

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

   I hereby certify that on the 19th day of October 2023, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system.

               */s/ Emily Rohles*
               Emily Rohles