UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE WOODLANDS PRIDE, INC., *ET AL.*,<br>*Plaintiffs*,<br>v.<br>WARREN KENNETH PAXTON, *ET AL.*;<br>*Defendants*. | Case 4:23-cv-02847 |

**DEFENDANT PAXTON'S PRIORITY MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant Warren Kenneth Paxton, in his official capacity as Attorney General of Texas ("Attorney General Paxton"), files his priority motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## I. INTRODUCTION

The Fifth Circuit vacated the judgment of permanent injunction in this case and remanded to this Court for further proceedings, *Woodlands Pride, Inc. v. Paxton,* 168 F. 4th 293 (5th Cir. Feb. 25, 2026). The remaining Plaintiffs ExtraGrams, L.L.C. ("ExtraGrams"), 360 Queen Entertainment, L. L. C. ("360 Queen"), and Brigitte Bandit ("Bandit") chose to continue this case pursuant to the Original Complaint filed on August 2, 2023 (ECF No. 1). Attorney General Paxton is the sole Defendant as to which the Fifth Circuit found any Plaintiffs have standing. This case remains a pre-enforcement facial challenge to S.B. 12.

The Attorney General has no authority to enforce any criminal provisions of S. B. 12, so the only portion of that statute now at issue in this case is Section One.

> Section One prohibits 'a person who controls the premises of a commercial enterprise' from 'allow[ing] a sexually oriented performance to be presented on the premises in the presence of an individual younger than 18 years of age.' Tex. Health & Safety Code § 769.002(a). It is enforced by the Attorney General of Texas, *see id*. § 769.002(c), who is an appellant here.

*Woodlands Pride, Inc. v. Paxton*, 168 F.4th 293 (5th Cir. 2026). The Attorney General may sue only for civil penalties or injunctive relief against violations of Section One. Tex. Health & Safety Code § 769.002(c). Attorney General Paxton has not filed or threatened to file any such suits against any of the Plaintiffs in this case.

As an initial matter, "[f]acial challenges are disfavored." *Moody v. NetChoice, LLC*, 603 U. S. 707, 744 (2024). Indeed, the Fifth Circuit recently warned:

> There are a host of reasons for this judicial skepticism. For example, facial challenges rest on speculation, short circuit the democratic process, and sit uncomfortably with Article III. Because of the significant risks associated with facial challenges -even those under the First Amendment - challengers bear a heavy burden.

*NetChoice, L.L.C. v. Paxton*, 121 F.4th 494, 497 (5th Cir. 2024) (internal citations and quotations omitted). "The choice to litigate a facial challenge 'comes at a cost': facial challenges are 'hard to win.'" *Woodlands Pride*, 2026 U. S. App. LEXIS 5616, at *23 (quoting *Moody*, 603 U. S. at 724).

The Fifth Circuit recently elaborated on these principles:

> Facial challenges too often degenerate into conjecture rather than rulings on concrete controversies . . . . Shoddy hypothetical analysis is not what our federalist system requires . . . . Proper judicial restraint requires a federal court to construe the provisions so as to avoid a constitutional conflict. A democratically enacted statute is entitled to every reasonable construction in order to save it from being held facially unconstitutional.

*La Union de Pueblo Entero v. Abbott*, 167 F.4th 743, 754-55 (5th Cir. 2026) (internal citations and punctuation omitted). The Court added:

> It is hard to sustain a facial challenge against a democratically enacted state law. With the exception of First Amendment cases, a facial challenge will succeed only if the plaintiff establishes that the act is invalid under all of its applications Even in the First Amendment context, the burden to sustain a facial challenge is daunting. In a facial challenge under the First Amendment, a state law is unconstitutional only if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.

*Id.* at 756 (internal quotations and citations omitted).

Plaintiffs also claim that S. B. 12 is vague and overbroad, even as to the Section One civil penalty provisions. To be unconstitutionally vague, "a statute must be 'impermissibly vague in all its applications,' including its application to the party

bringing the vagueness challenge [.]" *E.g., United States v. Clark*, 582 F.3d 607, 612-13 (5th Cir. 2009). The plaintiff must establish that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *La Union de Pueblo Entero*, 167 F.4th at 756 (quoting *Coates v. City of Cincinnati*, 402 U. S. 611, 614 (1971)). Accordingly, the plaintiff shoulders "the weighty burden of demonstrating that the law is "impermissibly vague in all its applications." *Id.* (quoting *McClelland v. Katy ISD*, 63 F.4th 996, 1013 (5th Cir. 2023)).

The overbreadth doctrine is "sparingly invoked" because its function "attenuates as the regulated expression moves from pure speech toward conduct." Ass'n of Club Execs. of Tex. v. Paxton, 143 F.4t 602, 616 (5th Cir. 2025) (citing L. A. Police Dept. v. United Rep. Pub. Corp., 528 U. S. 32, 39-40 (1999)). Critically, "[a] statute is overbroad only if a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *La Union de Pueblo Entero*, 167 F.4th at 762. Thus "[a]n overbreadth challenge requires far more than a court's 'conceiving of some impermissible applications of a statute.'" *Id.* at 763 (*United States v. Williams*, 553 U. S. 285, 303 (2008)). "[B]orderline hypotheticals" are best handled by as-applied challenges, not facial challenges. *Id.* That is because of the "presumption that officials will not execute the law in a way that is impermissibly broad and standardless." *Id.*

## II. This Jurisdictional Motion Is Entitled to Priority Over Any Other Motion, Including Any Motion for a TRO.

Attorney General Paxton asserts his right to state sovereign immunity against suit and liability as to all of Plaintiffs' claims in this action. Such claims by private plaintiffs, like those who filed this suit, are also barred by the Eleventh Amendment to the United States Constitution. State sovereign immunity goes directly to the subject matter jurisdiction of this Court.

"Jurisdiction comes first." *In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523, 533 (5th Cir. 2022). Courts have a non-discretionary obligation to consider a challenge to their subject matter jurisdiction. *In re Paxton*, 60 F.4th 252, 256 (5th Cir. 2023. An appropriate jurisdictional challenge like this motion triggers a duty of making further inquiry as to the court's own jurisdiction. *Id.*

Because sovereign immunity is an immunity from *suit*, and not just from *liability*, a court is not free to proceed to discovery or to the merits of a lawsuit without first determining whether or not it has subject matter jurisdiction of the case. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 334 (5th Cir. 2024) (district courts "carefully consider . . . jurisdictional challenges before proceeding to the merits."); *Russell v. Jones,* 49 F.4th 507, 512, 514 (5th Cir. 2022). As stated in *Russell*:

> Where sovereign immunity applies, it applies totally. Plaintiffs stop at the Rule 12(b)(1) stage and don't get discovery. They don't pass go.

Accordingly, the Court should consider this motion on a priority basis and determine whether subject matter jurisdiction exists. If state sovereign immunity and

the Eleventh Amendment preclude such subject matter jurisdiction, the Court should dismiss this action forthwith. Fed. R. Civ. P. 12(h).

Plaintiff ExtraGrams on March 19, 2026, filed a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 129). This motion seeks an "extraordinary and drastic remedy." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). It should be denied for multiple reasons that Attorney General Paxton will set forth in a response in opposition to that motion. However, the Court should first determine whether it has subject matter jurisdiction before considering the ExtraGrams motion for a TRO.

## III. THE ATTORNEY GENERAL HAS SOVEREIGN IMMUNITY FROM THIS SUIT.

Plaintiffs sued Attorney General Paxton in his official capacity only. Such a suit is regarded as a suit against the State of Texas. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024). Plaintiffs do not allege that the State or Attorney General Paxton have consented to suit in this case or waived sovereign immunity.

### A. The *Ex parte Young* Exception Does Not Apply Here.

The law recognizes a "narrow" exception to state sovereign immunity and the Eleventh Amendment, though it is inapplicable here. *See United States v. Abbott*, 55 F.4th 328, 334 (5th Cir. 2023). The legal fiction of *Ex parte Young*, 209 U. S. 155-56 (1908), permits federal courts to enjoin ongoing unconstitutional conduct against a plaintiff by "individuals who are officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature." *See Mi Familia Vota*, 105 F.4th at 325.

The plaintiff is required to allege "ongoing violations of federal law" by the state official defendant. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U. S. 635, 645 (2002) (court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law); *Ambriz v. Hancock*, 2025 U. S. App. LEXIS 27170, 2025 WL 2945681 (5th Cir. 2025) (*Ex parte Young* exception did not apply because no ongoing violation of federal law by defendant was alleged).

Simply stating these requirements for the narrow *Ex parte Young* exception to sovereign immunity is enough to show that exception does not apply here. Plaintiffs make no allegation or showing that the Attorney General has "threaten[ed]" to enforce Section One against any Plaintiffs. *See id.* The Complaint alleges no "ongoing violations of federal law" by him.[1]

The *Ex parte Young* exception requires a showing that the "state official must have taken some step to enforce the statute." *Id.* at 329 (quoting *Texas Democratic Party*, 961 F.3d at 401). So, Plaintiffs were required to point to some action by Attorney General Paxton to "show a demonstrated willingness to enforce the challenged statute" against them. *Id.* at 330. But here, Plaintiffs fail to do so, even though it is their burden to show that sovereign immunity does not apply.

---

[1] Obviously, no enforcement of any sort by Attorney General Paxton has happened to date. Plaintiffs filed this facial challenge against S.B. 12 before Section One was even to go into effect in September 2023. The Court enjoined enforcement of S. B. 12 in August 2023; any enforcement has blocked since then.

### B. The Lower Standing Requirement in First Amendment "Chilling" Cases Do Not Apply to Claimed Sovereign Immunity.

Plaintiffs' claims of chilled "speech" do not give them an end-run around the *Ex parte Young* exception requirements. Federal courts may relax Article III *standing* requirements when reviewing First Amendment facial challenges. *E.g., Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). Under this relaxed standard, plaintiffs may establish standing by showing their protected speech has been "chilled." *Id.* at 754-55. While there is "'significant overlap' between the standing and *Ex Parte Young* inquiries," the two inquiries "are not completely coterminous[.]" *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024) (finding standing but upholding sovereign immunity).

Crucially, the relaxation of standing requirements in the First Amendment context "does not mean that 'the requirements of *Ex parte Young* have in any way been relaxed or vitiated." *Id.* (quoting *Okpalobi v. Foster*, 244 F.3d 405, 417 n.17 (5th Cir. 2011) (en banc)). Allegations of chilled speech do not obviate plaintiffs' burden to demonstrate the state actor's willingness to enforce the challenged statute. *Id.* Such evidence was required to trigger the *Ex parte Young* exception. *Id.*

Having failed to show requisite enforcement action, Plaintiffs' suit against Attorney General Paxton is squarely foreclosed by sovereign immunity.

But even if Plaintiffs *could* invoke a lowered showing to satisfy the requirements under the *Ex parte Young* exception, that lowered showing would be inapplicable here. That is because the conduct proscribed by Section One of S. B. 12 is not protected by the First Amendment.

First, Plaintiffs have no First Amendment right to engage in sexualized performances in the presence of minors that violate Section One of S. B. 12. Neither the parties nor the Court in 2023 had the benefit of the Supreme Court's decision in *Free Speech Coalition, Inc. v. Paxton*, 606 U. S. 461, 145 S. Ct. 2291 (2025), or the Fifth Circuit decision it affirmed, 95 F.4th 263 (5th Cir. 2024). In *Free Speech Coalition*, the Supreme Court upheld a Texas statute requiring adults to verify their age before accessing speech that was obscene as to minors.

The Court noted that "from 1791 to the present" it has been understood that not all speech is protected by the First Amendment. 606 U. S. at 471. Categories of speech such as obscenity, defamation, fraud, and incitement "fall outside the scope of the First Amendment" and generally may be prohibited "without raising any Constitutional problem." *Id.* (quoting *Chaplinski v. New Hampshire*, 315 U. S. 568, 571 (1942)). Among these categories of speech that is *not* protected by the First Amendment is speech that is obscene as to minors, regardless of whether that speech is also obscene as to adults. *Id.* at 473-74.

The Supreme Court and the Fifth Circuit have consistently held, for example, that state regulations of the distribution to minors of materials obscene for minorsare subjec t only to rational basis review. *See, e.g., Ginsberg v. New York*, 390 U. S. 629, 641 (1968); *Brown v. Ent. Merchs. Ass'n*, 564 U. S. 786, 793-94 (1975); *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 269-79 (5th Cir. 2024).

It is also well established that States like Texas have a compelling interest in protecting minors. *Comp. & Commc'ns Ind. Ass'n v. Uthmeier*, 2025 U. S. App. LEXIS 30966, 2025 WL 3458571 (11th Cir. 2025) at *15 ("The State has a compelling interest

in protecting minors in general [.]"); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U. S. 115, 126 (1989) ("[T]here is a compelling interest in protecting the physical and psychological well-being of minors.").

S. B. 12 imposes potential civil penalties on commercial enterprises that allow on their premises certain sexualized performances that appeal to the prurient interest[2] in the presence of minors. Such sexualized performances themselves are not "speech" in the constitutional sense at all but only conduct. Though such conduct in the presence of adults may marginally receive some First Amendment protection, *Free Speech Coalition* makes it clear this conduct in the presence of minors is not protected at all by the First Amendment.

If Plaintiffs' sexualized performances can be said to have any expressive content at all, they are obscene as to minors, like the S. B. 1181 statute the Supreme Court upheld in *Free Speech Coalition*. That statute, like the challenged portion of S. B. 12, covers "*explicit portrayals of nudity or sex acts* that predominantly appeal to the prurient interest." *See* 606 U. S. at 481 n.7. Thus, Section One of S. B. 12 does not prohibit any "speech" by Plaintiffs that is protected by the First Amendment.

As the Supreme Court stated in *Free Speech Coalition*, such a statute is subject only to "rational-basis review, the minimum constitutional standard that all legislation must satisfy." *Id.* at 471. "Under that standard, a law will be upheld if there is any

[2] Like S. B. 1181, Section One of S. B. 12 thus limits "the statute's applicability to [conduct] designed to excite sexual arousal." *See Free Speech Coalition*, 95 F.4th at 273 n.22.

reasonably conceivable state of facts that could provide a rational basis." 606 U. S. at 471-72 (internal quotations omitted). "Texas's interest in shielding children from sexual content is important, even 'compelling'." 606 U. S. at 496 (quoting *Reno v. ACLU*, 521 U. S. 844, 889 (1997)).

S.B. 12 applies only to sexualized performances in the presence of minors—it does not regulate performances in the presence of adult-only audiences. Nor does it impose any age verification requirements. Thus, the challenged portion of S. B. 12 does not burden the rights of adults to access or view such performances. For this reason, S.B. 12 is not even subject to the "intermediate scrutiny" that the Supreme Court held S. B. 1181 "readily" withstood in *Free Speech Coalition*. *See* 606 U. S. at 495-97. The Court made it very clear that strict scrutiny review does not apply to statutes like this one that do not burden the constitutional rights of adults but only affect conduct that is unprotected as to minors. *See id.* at 481 n.7.

Second, the challenged portion of S. B. 12 does not apply to Plaintiffs based on the allegations in their Complaint. Plaintiffs are drag performers who intend to engage in sexualized performances to audiences including minors, or businesses that provide such drag performers to engage in such performances. Section One of S. B. 12 does not itself render performers as such subject to civil penalties.

Instead, the challenged portion of S. B. 12 subjects to potential civil penalties only "commercial enterprises" which "allow" the "premises" they "control" to be used for sexualized performances in the presence of minors. None of Plaintiffs allege in the Complaint (ECF No. 1) that they are "commercial enterprises" that control "premises" and intend to "allow" those premises to be used for sexualized

performances in the presence of minors. To the contrary,ExtraGrams alleges that it is a "drag production and entertainment company that coordinates and hosts drag events [.]" Complaint ¶ 12. 360 Queen alleges that it is a "drag production and entertainment company [.]" Complaint ¶ 13. Bandit alleges she is a "drag artist and performer" who "performs, hosts, and produces drag events." Complaint ¶ 14.

Accordingly, the Complaint provides no basis to infer that *any* of Plaintiffs are potentially subject to suits by Attorney General Paxton to recover civil penalties by reason of violations of Section One of S. B. 12. Plaintiffs may engage in sexual performances in public spaces, at homes or offices, or on the premises of commercial enterprises like hotels or theatres, but they have not even alleged that Plaintiffs themselves are "commercial enterprises" in control of business premises that "allow" such performances in the presence of minors. Because of this, they have alleged no facts which could subject them to enforcement of Section One of S. B. 12 by the Attorney General, and the Court lacks jurisdiction over their suit.

Plaintiffs also cannot maintain this suit to vindicate any rights of third parties, but only their own. *See Powers v. Ohio*, 499 U. S. 410-11 (1991) (a litigant must assert his own rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties); *Rogers v. Brockette*, 588 F.2d 1057, 1060 (5th Cir. 1979). Non-party commercial enterprises who might wish to allow the business premises they own or otherwise control to be used for sexualized performances in the presence of minors

conceivably could claim Section One violates their own rights,[3] but Plaintiffs here cannot assert such third-party rights.

But even if such commercial enterprises were parties to this action, they would have no First Amendment right to allow the business premises they own or otherwise control to be used for sexualized performances by others in the presence of minors. Any conceivable First Amendment free speech right to engage in expressive conduct belongs to the party that engages in such conduct, not one who merely "allows" it by others. A commercial enterprise has no constitutional right to make a financial profit by allowing such sexualized performances in the presence of minors on the premises it controls. And drag performers like Plaintiffs have n rights to compel or require others to provide their premises to allow Plaintiffs to engage in sexualized performances in the presence of minors.

Plaintiffs' Complaint is based largely on speculative fears that Defendants will prosecute or seek civil penalties against them not for actually *violating* S. B. 12, but for engaging in conduct that does *not* violate S. B. 12 and allegedly is constitutionally protected. But such speculative fears of misapplication of a state statute depend on a "fanciful" and "highly attenuated chain of possibilities," and are insufficient. *See La Union de Pueblo Entero v. Abbott*, 151 F.4th 273, 287 (5th Cir. 2025) (quoting *Clapper v. Amnesty Int'l USA*, 568 U. S. 398, 410 (2013)). Federal courts cannot adjudicate

---

[3] Defendant Paxton believes any such claim would be meritless, because the First Amendment Free Speech Clause only provides protection (in limited circumstances) to commercial speech by the commercial enterprise itself.

hypothetical scenarios. *TransUnion LLC v. Ramirez*, 594 U. S. 413, 423 (2021). In addition to all its other defects, Plaintiffs' suit simply is not ripe for adjudication. Accordingly, all claims should be dismissed forthwith. As the Fifth Circuit recently stated:

> The Supreme Court 'has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court.' The simple fact is that 'many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one.'

*Mi Familia Vota*, 105 F.4th at 333. "[T]hose seeking to challenge the constitutionality of state laws are not able to pick and choose the timing and preferred forum for their arguments." *Id.* If any Plaintiff in this case is ever sued for civil penalties under Section One of S. B. 12, their claims in this case would then become ripe for judicial resolution. That day likely will never arrive. Today, those claims are not ripe. Attorney General Paxton has sovereign immunity from this suit, and this Court does not have subject matter jurisdiction to decide this case.

## CONCLUSION

Attorney General Paxton respectfully asks the Court to dismiss this action without prejudice for lack of subject matter jurisdiction.

Dated: March 24, 2026

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted.

/s/ *David Bryant*
DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
Southern Dist. No. 808332

MUNERA AL-FUHAID
Special Counsel
Texas Bar No. 24094501
Southern Dist. No. 3379673

**OFFICE OF THE ATTORNEY GENERAL**
Special Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
David.Bryant@oag.texas.gov
Munera.Al-Fuhaid@oag.texas.gov

***Attorneys For Defendant Paxton,***
*in his official capacity as*
*Attorney General of Texas*

## CERTIFICATE OF SERVICE

On March 24, 2026, I filed this document through the Court's CM/ECF system, which automatically serves it upon all counsel of record as follows:

/s/ *David Bryant*
DAVID BRYANT